**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. **JAYSON JEFFREY PENN**,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. **ROGER BORN AUSTIN**,

      Defendants.

---

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANTS
JAYSON PENN'S AND ROGER AUSTIN'S MOTIONS FOR A BILL OF
PARTICULARS**

---

The government respectfully requests that the Court deny defendants' motions for a bill of particulars (ECF Nos. 59, 60). While the government acknowledges that discovery is voluminous, the defendants are not simply adrift in a sea of documents. Rather, they have a twenty-page speaking indictment, a legend de-anonymizing that indictment, the names of numerous potential witnesses and co-conspirators in the "no contact order," witness interview reports that will be supplemented as additional interviews occur, and are receiving full, annotated (and electronically searchable) discovery—including more than 2,000 documents flagged as highly relevant and accompanying indices describing each production in detail—which provide them fair notice as to the nature of the charges, an ability to meaningfully prepare a defense, and

protection against double jeopardy. That is all the law requires (and more) and accordingly the motions should be denied in their entirety.

### I.   FACTS

On June 2, 2020, defendants Jayson Penn and Roger Austin, along with two other individuals, were charged in a twenty-page speaking indictment in the District of Colorado with one count of conspiracy to suppress and eliminate competition by rigging bids and fixing prices in violation of Section 1 of the Sherman Act. More than half of the indictment—fifty paragraphs, not including sub-paragraphs—outlines the means and methods of the conspiracy and explains in detail eight episodes during the charged period. Each episode recounted in the means and methods includes dates, affected products, key individuals, direct quotations from relevant documents, and specific prices where applicable.

On June 4, 2020, Defendants Penn and Austin were released by the Court pursuant to certain conditions, including a "no contact order" listing numerous potential witnesses, including many of the defendants' potential co-conspirators, with whom the defendants may not initiate contact. (Penn Order and Attachment A, ECF Nos. 23, 35; Austin Order and Attachment A, ECF Nos. 26, 40).

On June 15, 2020, the government and counsel for Defendants came to an agreement in principle on a joint proposed protective order. The next day, the government sent defense counsel its first set of productions, including a DVD containing 2,840 documents the government currently considers highly relevant to the charges. The government informed defense counsel that the DVD contained such materials both orally and in writing.  On June 18, 2020, the government provided defense counsel a

legend de-anonymizing the companies and individuals identified in the indictment via electronic mail.

The government is providing full, annotated and electronically searchable discovery to the defendants through a rolling production at a rate averaging over 1 million documents per week. Productions are accompanied by an index that identifies the original producing party, describes the documents, identifies the custodians, and provides a record count.[1] As a part of discovery, on July 1, 2020 the government produced all but three[2] of the agent interview reports summarizing the government's witness interviews thus far. The government will produce the remaining three interview reports, in addition to any future interview reports, as soon as practicable. By August 4, and in compliance with the discovery conference memoranda and orders entered by the Court, the government anticipates it will have produced approximately 12.5 million documents.[3]

Notwithstanding the government's extensive disclosures, Defendants Penn and Austin filed separate motions for a bill of particulars, requesting far-reaching details, including:[4] (1) a list of every co-conspirator (Def. Austin Mot. for BOP (hereafter "Austin Mot.") 4, 6–7, ECF No. 59; Def. Penn Mot. for BOP (hereafter "Penn Mot."), 4, 8–10, ECF No. 60); (2) the dates that each co-conspirator joined the conspiracy and when the

---

[1] See Exhibit A for an excerpt of one such index.
[2] Three interview reports were not produced on July 1 because they were still in the process of being loaded to the government's own database.
[3] The government recognizes that the trial date is currently set for August 10—six days after the discovery deadline agreed upon by the parties and ordered by Judge Mix— which is why the government did not oppose the defendants' pending Ends-of-Justice motion.  However, the government also stands ready to commence trial on that date.
[4] For the sake of efficiency, the government consolidated the lists of requests from each defendant into a single list.

conspiracy ended (Penn Mot. 4, 8–10); (3) a list of every bid rigged or price fixed, implicated contract, price, time frame, relevant product, and suppliers involved in each instance of price-fixing (Austin Mot. 4–5; Penn Mot. 4, 10–12); (4) the terms of the agreement between co-conspirators (Austin Mot. 4, 5–6); and (5) an outline of the legal theories against defendant Jayson Penn (Penn Mot. 4, 12).

## II.   LEGAL STANDARD

The purpose of an indictment is to provide a defendant with fair notice of the charges and to shield him from being placed in double jeopardy with respect to any future charges. *United States v. Poole*, 929 F.2d 1476, 1479 (10th Cir. 1991). It need not allege "in detail the factual proof that will be relied upon to support the charges." *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (citation omitted). Thus, an indictment is sufficient if it "sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial." *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (citation omitted). Importantly, a bill of particulars cannot be used as a discovery device, or to compel the government to outline its factual proof or legal theories against a defendant. *United States v. Hernandez*, No. 17-cr-00134-CMA-10, 2018 WL 899255, at *4 (D. Colo. Feb. 15, 2018) (citing *Dunn*, 841 F.2d at 1029); *see also United States v. Antoine*, No. 17–cr–00134–CMA–02, 2018 WL 858734, at *2 (D. Colo. Feb. 14, 2018) (quoting *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983) ("Nor is it a way to require the government's explanation of the legal theories expected at trial."). Finally, a bill of particulars cannot be used a means to lock the government into its proof at trial. *United States v. Rigas*, 258 F.Supp.2d 299, 304 (S.D.N.Y. 2003) ("bill of particulars cannot ...

4

be used as a discovery vehicle or as a means to lock the government into its proof");
*see also United States v. Fruchter*, 104 F.Supp.2d 289, 311–12 (S.D.N.Y. 2000*); United States v. Perez*, 940 F. Supp. 540, 550 (S.D.N.Y. 1996); *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995).

It is therefore a defendant's burden to demonstrate that "failure to grant the request [for a bill of particulars] would result in prejudicial surprise, the preclusion of an opportunity for meaningful defense preparation, or double jeopardy problems." *Hernandez*, 2018 WL 899255, at *4 (quoting *United States v. Anderson*, 31 F. Supp. 2d 933, 938 (D. Kan. 1998)); *see United States v. Santiago-Mesinas*, No. 18-cr-00209-CMA-11, 2019 WL 176829, at *3 (D. Colo. Jan. 11, 2019). In *United States v. Rogers*, a court in this district pointed to three relevant considerations when considering whether a bill of particulars is warranted: "the complexity of the offense charged, the clarity of the indictment and the degree of discovery available to the defendant without the bill [of particulars]." 617 F. Supp. 1024, 1026 (D. Colo. 1985). However, "[m]ere recitation of volume [of discovery] and complexity" is insufficient to show a defendant's need for a bill of particulars. *United States v. Wright*, 826 F.2d 938, 944 (10th Cir. 1987). In fact, the Tenth Circuit has repeatedly held that complete discovery avoids the need for a bill of particulars altogether. *See, e.g.*, *United States v. Jenkins*, 313 F.3d 549, 558 (10th Cir. 2002) (citing *United States v. Sturmoski*, 971 F.2d 452, 460 (10th Cir. 1992)); *see also United States v. Kunzman*, 54 F.3d 1522, 1526 (10th Cir. 1995).

III.    **ANALYSIS**

A bill of particulars is unnecessary in this case because the government has provided (and will continue to provide) the defendants with ample information to understand the charges, to prepare a defense, and to avoid double jeopardy. The government does not dispute that there is a lot of discovery, but the defendants have and will continue to receive a clear and continuously updated roadmap of the government's case: a twenty-page speaking indictment coupled with full, annotated discovery including more than 2,000 documents flagged as highly relevant and accompanied by indices describing each production in detail, and witness interview reports that will be supplemented as additional interviews occur.

Indeed, in *Rogers*, a case relied upon by the defendants, the three relevant considerations—the clarity of the indictment, the degree of discovery, and the complexity of the charges—all factor against granting the defendants' motion. First, the government's indictment is clear. In paragraphs 28-77, the indictment recounts eight episodes of the conspiracy in very specific detail, providing exact dates and times of inculpatory communications, as well as verbatim quotes from the defendants and their co-conspirators.  Moreover, the government provided the defendants with a legend identifying each individual and entity to aid the defendants' understanding of the anonymized indictment.  Thus, there can be no serious contention that the indictment is unclear.

Second, the degree of discovery provided is more than sufficient in this case. The government's productions include text-searchable electronic documents and detailed indices that allow the defendants to hone in on virtually any evidence they

desire. *See* Exhibit A. The government further sharpened the defendants' focus by identifying more than 2,000 documents as highly relevant to its case. Additionally, and perhaps most importantly, agent interview reports provide the defendants with a supplementary, ongoing roadmap to the government's investigation. For example, many interview reports that have already been produced relate to the episodes in the indictment and likely to be featured at trial. As the government's investigation continues, and as the contours of the evidence to be used at trial take shape, the government will timely provide additional interview reports, as well as any newly received documents. Together, the reports and documents will provide a roadmap to the government's continued investigation, and will permit the defendants to prepare for trial as the government follows additional leads. In light of the granular detail the government's productions have provided and will continue to provide, any attempt to capitalize on the high volume of discovery as justification for a bill of particulars rings hollow.

Third, the single charge at issue here is not complex;[5] in fact, it is quite straightforward, both factually and legally. Unlike cases involving obscure financial

---

[5] At page 6 of his motion, defendant Penn suggests that the government's non-opposition to the defendants' joint motion to designate this case as complex and exclude time under the Speedy Trial Act is tantamount to a concession by the government that this is a complex case for the purposes of the bill-of-particulars analysis. Such a suggestion conflates two different uses of the term "complex." In the Speedy Trial Act context, the term "complex" encompasses *logistical* complexity arising from such things as voluminous discovery, *see, e.g.*, *United States v. Gordon*, 710 F.3d 1124, 1158 (10th Cir. 2013) (affirming a district court's granting of a continuance under the Speedy Trial Act because of "the voluminous discovery in the case"), whereas the term "complex" in the bill-of-particulars context does not. Indeed, the government's provision of full discovery counsels against ordering a bill of particulars. *See, e.g.*, *Jenkins*, 313 F.3d at 558 (citing *Sturmoski*, 971 F.2d 452 at 460); *Kunzman*, 54 F.3d at 1526. Thus, the government's non-opposition to the complexity designation in the EOJ motion—as well as the government's statement in its June 4, 2020, email to the Court that "this is a complex, document-intensive case"—should be read as the government

instruments or sophisticated tax schemes, this case is about selling broiler chicken products—an activity with which the defendants themselves are intimately familiar. Nor is the case legally complex. Under the Sherman Act, the agreement itself is the crime. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940); *Nash v. United States*, 229 U.S. 373, 378 (1913) (Holmes, J.). Thus, the government must only prove that the conspiracy to eliminate and suppress competition existed, the defendants knowingly joined that conspiracy, and the conspiracy affected interstate or foreign commerce. *See* 15 U.S.C. § 1; *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 445-46 (1978); *Socony-Vacuum Oil Co.*, 310 U.S. at 219-20; *United States v. Koppers*, 652 F.2d 290, 294 (2d Cir. 1981).

And nothing about the fact that the indictment charges an antitrust crime entitles the defendants to a bill of particulars. To be sure, defendant Penn does point to two pre-electronic discovery cases in which motions for a bill of particulars were partially granted. *See United States v. Bestway Disposal Corp.*, 681 F. Supp. 1027 (W.D.N.Y. 1988); *United States v. Fischbach & Moore, Inc.*, 576 F. Supp. 1384 (W.D. Pa. 1983). However, in the very case he cites as standing for the proposition that "courts are 'unanimous' in recognizing antitrust cases are different when deciding a motion for a bill of particulars," Penn Mot. 8, the court denied the motion entirely, *United States v. Greater Syracuse Bd. of Realtors, Inc.*, 438 F. Supp. 376, 381 (N.D.N.Y. 1977). Of additional significance, the *Greater Syracuse* court noted that "[o]n the matter of requests for Bills of Particulars, [antitrust] cases reach such diverse results, as could be

---

agreeing to nothing more than the logistical complexity of the case due to the volume of discovery alone, and not complexity in the bill-of-particulars sense because there are no especially complex or novel questions of fact or law that risk unfair surprise at trial.

expected when dealing with matters of discretion, that their use as precedents in this case is, for the most part, futile." 438 F. Supp. at 380.[6] In other words, whether a bill of particulars is appropriate is highly dependent on the circumstances.

Several other cases cited as complex by defense counsel, while representing instances where a bill of particulars was granted, are not analogous to this case, where the government has provided and will continue to provide the defendants with concrete direction and detailed information. *See, e.g.*, *Rogers*, 617 F. Supp. at 1028-29 (granting a few particulars, but in a case with a 30-count indictment that did not list overt acts); *Fischbach & Moore*, 576 F. Supp. at 1389 (granting one request out of a long list but noting that there were 150 separate bids at issue); *United States v. Tedesco*, 441 F. Supp. 1336, 1340 (M.D. Pa. 1977) ("[T]he indictment in this case is not a model of specificity. . ."); *United States v. Metro. Leather & Findings Ass'n*, 82 F. Supp. 449, 454-55 (S.D.N.Y. 1949) (granting a few of the numerous requested particulars where the indictment did not include overt acts).

As to the defendants' specific requests—as consolidated above—each should be denied:

### <u>Identities of Co-Conspirators</u>

The defendants' request for a list of every co-conspirator should be denied because the government has already provided names of key individuals in the

---

[6] The government notes that two cases cited by defendant Penn as examples of cases "requiring bill of particulars in antitrust case[s]," Penn Mot. 8, are not actually antitrust cases as represented in his brief. *See United States v. Wong*, No. 06-cr-428, 2007 WL 404807, at *2 (N.D. Cal. Feb. 2, 2007) (marijuana distribution); *United States v. Feil*, No. 09-cr-00863, 2010 WL 1525263, at *3 (N.D. Cal. Apr. 15, 2010) (marijuana distribution and money laundering).

indictment and the names of numerous potential co-conspirators in the "no contact order." As a threshold matter, conspiracy law does not require the government to establish each member of the conspiracy to reach a conviction. *See Antoine*, 2018 WL 858734, at *2. And while defendants were able to find some in-circuit support for the idea that the government must sometimes disclose names of unindicted co-conspirators, the case law is not as conclusive as they suggest. *Compare Rogers*, 617 F. Supp. at 1028, *with United States v. Hajduk*, 370 F. Supp. 2d 1103, 1112-13 (D. Colo. 2005) ("The government is not required to identify unindicted co-conspirators."). *See also United States v. Welch*, 198 F.R.D. 545, 551 (D. Utah 2001) (rejecting defendant's request for the names of unindicted coconspirators where defendant's "interest [was] informational in the evidentiary sense" and noting that the disclosure of unindicted coconspirators may subject them to public identification and accusation, with no way of defending against the allegation).

The defendants' reliance on *United States v. Kahale*, 789 F. Supp. 2d 359 (E.D.N.Y. 2009), is misplaced. Similar to this case (and myriad other conspiracy cases), the indictment in *Kahale* referred to unnamed co-conspirators. *Id.* at 373. But that is where the similarity ends. The *Kahale* prosecutors simply (and correctly, in the government's view) argued that the identities of unindicted co-conspirators were "precisely the type of 'whens' and 'wheres' and 'with whoms' (*i.e.*, coconspirators) for which applications for bills of particulars are routinely denied." *See* Gov. Mem. Resp. to Defs. Omnibus Pretrial Mots. at 11, *United States v. Kahale*, 789 F. Supp. 2d 359 (E.D.N.Y. 2009) (No. 09-CR-159, ECF No. 68) (relevant portion attached as Exhibit B). Apparent from reading the *Kahale* prosecutors' brief, however, is that the defendants in

that case were not provided with anything similar to what the defendants were provided

here, namely, a legend de-anonymizing the indictment or a list of numerous potential

co-conspirators in the form of a "no contact order."[7] Because the defendants in this case

have been provided with that information, they are not similarly situated to the *Kahale*

defendants. Consequently, the identification of co-conspirators should be denied.

### *Dates Each Co-Conspirator Joined the Conspiracy and End Date*

Defendant Penn's related request that the government specify the date that each

person joined the conspiracy—while possibly relevant to the admissibility of evidence at

trial—should be denied because the more relevant dates for purpose of mounting a

defense, for example, the dates of the charged conspiracy and the dates involved in

each episode, are clear on the face of the indictment. *United States v. Ostrer*, 481 F.

Supp. 407, 417 (S.D.N.Y. 1979) (rejecting a bill of particulars request for the dates each

co-conspirator joined the conspiracy). Similarly, the government does not need to

furnish the end date of the conspiracy. *Antoine*, 2018 WL 858734, at *2-3 (denying

particulars related to a conspiracy count where the indictment specified the beginning

and end dates of the conspiracy).  Indeed, the government does not even need to prove

at trial whether the conspiracy ended at all.  Accordingly, defendant Penn's request for

dates should be denied.

### *Every Bid Rigged, Implicated Contract, Price, Timeframe, Product, and Supplier*

The defendants' request for a list of rigged bids and fixed prices should be

denied because a non-exhaustive list of eight conspiratorial episodes is already outlined

---

[7] The lists of individuals identified in the legend and "no contact order" are not exhaustive lists of all co-conspirators, but they do represent the lion's share of co-conspirators known to the government at this time.

in the indictment including include dates, affected products, key individuals, direct quotes, and specific prices. Coupling that with the identified highly relevant documents and the ongoing provision of witness interview reports gives the defendants ample information to understand the charges, navigate the annotated discovery to prepare a defense, and protect against double jeopardy. *Antoine*, 2018 WL 858734, at *2. Moreover, if the government's case at trial encompasses additional episodes, the defendants will likely gain insight and specificity as to those episodes through the witness interview reports the government will continue to disclose in discovery. In the end, the defendants' request here is simply a request for evidentiary materials that is not proper in a demand for a bill of particulars. *See Welch*, 198 F.R.D. at 550 ("It is not required to mention all overt acts known to the Government, nor is a bill of particulars proper for such purpose.").

### Exact Terms of the Agreement Between Co-Conspirators

Defendant Austin's request for the exact contours of the illegal price-fixing agreement should be denied.  The general nature of the scope and objective of the conspiracy is apparent from the indictment, and that is all that is required. *Antoine*, 2018 WL 858734, at *2-3 (citing *United States v. Eads*, 191 F.3d 1206, 1210 (10th Cir. 1999)) ("[I]t is not necessary…to know 'the full extent of the conspiracy [as long as he has] a general awareness of both the scope and the objective of the enterprise.'"). *See* Indictment ¶¶ 28-31 (describing various aspects of the agreement).

### Outline of Legal Theories Against Defendant Penn

Defendant Penn's final request is that the government outline its legal theory against him, Penn Mot. 4 ("what is the government's theory of how Mr. Penn

participated in fixing or rigging these bids or prices") and 12 ("Mr. Penn is entitled to know the government's theory as to how he joined and contributed to the charged conspiracy."), and it should be denied. Such a request runs counter to well-established Tenth Circuit case law that "[a] bill of particulars may not be used to compel the Government . . . to explain the legal theories upon which it intends to rely at trial." *Gabriel*, 715 F.2d at 1449 (citation omitted). If for no other reason, this final request should be denied because the means and methods of the conspiracy in the indictment mention Penn thirty-two times in fifty paragraphs. Indictment ¶¶ 28-77.

## IV.   CONCLUSION

For the reasons discussed above, defendants' motions should be denied in full.

Respectfully submitted this 3rd day of July, 2020.

By: _____

Michael T. Koenig
Heather D. Call
Carolyn M. Sweeney
Paul J. Torzilli
Trial Attorneys
Antitrust Division
U.S. Department of Justice
Washington Criminal II Office
450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2165
Email: michael.koenig@usdoj.gov

Attorneys for the United States