IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY, and
4.     ROGER BORN AUSTIN

       Defendants.

**DEFENDANT JAYSON PENN'S REPLY IN SUPPORT OF MOTION FOR
BILL OF PARTICULARS**

The government's opposition confirms that a bill of particulars is necessary to ensure that Mr. Penn can meaningfully prepare his defense. The government relies on its "speaking indictment" and the details it contains about eight specific episodes, but admits that the episodes described in the indictment are "non-exhaustive." Opp. at 11. The government points to the 2,840 "highly relevant" documents it culled from its massive document production, but they compound, rather than solve, the problem—most have nothing to do with Mr. Penn and many are ordinary business documents unrelated to the indictment episodes. The government points to the witness-interview memoranda produced in discovery, but carefully avoids describing those interviews as the metes and bounds of its case. It says only that if the government seeks to prove

1

uncharged episodes at trial, Mr. Penn is "likely" to be able to learn about them by poring over those interviews.  Opp. at 12.

In the end, Mr. Penn is still left in the dark about what other incidents the government will seek to prove at trial or how these disconnected events in which he had little direct involvement implicate him in the alleged conspiracy.  That is trial by ambush—exactly what a bill of particulars is designed to prevent.  Mr. Penn is not asking for evidentiary details or a roadmap to the government's case at trial.  He seeks only the most basic information about the charge brought against him: (1) the names of the alleged co-conspirators; (2) the bids and prices allegedly fixed; and (3) the government's theory of how Mr. Penn allegedly participated in the conspiracy.  Having investigated this matter for many months and secured an indictment from a grand jury, the government should have this information at its fingertips.  It should be required to disclose the information now so that Mr. Penn can prepare his defense.

I.    **ARGUMENT**

The parties agree that "whether a bill of particulars is appropriate is highly dependent on the circumstances."  Opp. at 9; Mot. at 7.  *United States v. Rogers*, 617 F. Supp. 1024, 1026 (D. Colo. 1985), identifies three factors for a court to consider when determining whether to grant a bill of particulars: the complexity of the offense charged, the clarity of the indictment, and the degree of discovery provided.  The government errs in its analysis of each factor.

A.    **The Complexity of the Case**

In an email to this Court on June 4, 2020, the government stated, "The government advises that this is a complex, document-intensive case, and therefore the government suggests that the court set a status conference rather than a date for trial and motions."  *See* 6/4/2020

2

Email from Heather Call to Brimmer_Chambers@cod.uscourts.gov, attached as Exhibit A. In opposing Mr. Penn's motion for a bill of particulars, the government now does an about-face: "the single charge at issue here is not complex." Opp. at 7.[1] To support its new-found view—which defies common sense in a case involving 12.5 million documents—the government suggests that the broiler chicken business is uncomplicated and argues that because the agreement itself is the crime, proof of that agreement must be straightforward. Both claims are inaccurate. The chicken suppliers named in the indictment sold tens of billions of dollars of a wide variety of chicken products to myriad customers in different channels such as fast-food restaurants, supermarkets, and foodservice companies (such as Sysco and US Foods), to name just a few. Pricing involves dozens of variables and nuances. Chicken in the supermarket may be common and inexpensive, but it does not follow that tracing business practices over many years across multiple customers, sales channels, and transactions is uncomplicated.

Second, proof of a price-fixing agreement is rarely straightforward. Unlike the famous lysine case where co-conspirators held secret meetings in proverbial smoke-filled rooms and took explicit notes of their price-fixing agreements, most price-fixing cases are built on circumstantial evidence. This indictment's allegations conform to that model; the government does not allege any explicit agreements between competitors. With respect to Mr. Penn, it does not allege that he had any contact at all with competitors. What's more, as Mr. Penn explained in his original brief, in an antitrust case, the government can seek to transform lawful business

---

[1] The government goes to some lengths to distinguish "complexity" under the Speedy Trial Act from "complexity" in the case law relating to motions for bills of particulars. The effort is unsuccessful. The commonsense meaning of the word applies in both contexts. In any event, the effort does not undermine the government's representation to the Court that the case is "complex," which also acknowledged that it is "document intensive."

practices into circumstantial evidence of an anti-competitive agreement.  Mot. at 3-4; *see also United States v. Bestway Disposal Corp.*, 681 F. Supp. 1027, 1030 (W.D.N.Y. 1988) ("Greater specificity is warranted in antitrust cases where the facts generally are not so much in issue as is how the law should be applied to the facts.") (internal citation omitted).[2]  Over the five-year charge period in the indictment, Mr. Penn participated in an untold number of transactions and negotiations, and others at Pilgrim's Pride engaged in countless more.  He cannot know which ones the government alleges were illegal unless the government tells him.

### B.      The Clarity of the Indictment

The government points to the detail provided in the eight episodes identified in paragraphs 28 through 77 of the indictment to support its claim that the indictment is sufficiently clear.  Mr. Penn can certainly prepare a defense to the eight episodes identified in the indictment, but he cannot mount a defense to other alleged price-fixing buried somewhere in 12.5 million documents.  The problem is not just that it will be enormously time-consuming and expensive to review those documents, but that Mr. Penn does not know what to look for.  Episodes alleged to be in furtherance of the conspiracy include (1) a decision by Mr. Penn to give a customer a discount for a promotion the customer wanted to run, and (2) his refusal to sell chicken to a competitor.  On their face, these acts are unremarkable—indeed, pro-competitive.  Mr. Penn has been involved in countless similar decisions during the period alleged in the indictment.  He has no way to know which ones the government would single out as evidence of conspiratorial

---

[2] The government is correct that *United States v. Wong*, 2007 WL 404807, at *2 (N.D. Cal. Feb. 2, 2007), and *United States v. Feil*, 2010 WL 1525263, at *3 (N.D. Cal. Apr. 15, 2010), are not antitrust cases.  The error was introduced inadvertently during editing; the second references to these cases in the brief do not repeat the error.  *See* Mot. at 12-13.  Counsel apologizes to the Court for the error.

4

behavior. And the episodes that the indictment does allege are so spread out in time, disconnected in participants, and sparse on Mr. Penn's role that he is left to guess about the government's theory of his complicity in an overarching multi-year conspiracy.

The list of twenty-nine individuals filed in connection with Mr. Penn's conditions of release is unhelpful. It includes almost all sales personnel at the seven companies listed in the indictment who sold chicken to customers during the charged time period. And even here, the government makes clear that not everyone on the list is a co-conspirator, and that it intentionally omitted additional co-conspirators from the list. *See* Opp. at 2 (list contains "numerous potential witnesses"), *id*. at 11 n.7 (list contains "*the lion's share* of coconspirators known to the government at this time") (emphasis added).

### C.    The Degree of Discovery

The government's claim that discovery obviates the need for a bill of particulars is divorced from the reality of this case. Text-searchable electronic document production and an index cataloguing the format and custodians associated with the produced documents are only useful if a defendant knows what he is searching for. Crafting search terms requires an understanding of basic details: the transactions or contracts at issue, the products involved, and the individuals involved. The indictment provides such details and more for some of the eight identified episodes. But, again, the government's admission that those episodes are merely illustrative and non-exclusive leaves Mr. Penn casting about in the 12.5 million documents, with no idea as to what more he needs to search for.

The set of 2,840 "highly relevant" documents is of little help. The great majority of those documents do not mention Mr. Penn, and a number appear to have no relationship whatsoever to

5

the chicken business. These bizarrely unrelated documents include many hunting photographs and a video of what appears to be a hurricane battering an outdoor landscape. Even those documents that are related to the chicken business offer little insight into the scope of the government's case. A substantial percentage of the "highly relevant" documents do not on their face suggest any anti-competitive conduct and they relate to customers not mentioned in the indictment. Is Mr. Penn to assume that every sale or proposed sale of chicken mentioned in this set of documents is an alleged overt act in furtherance of the conspiracy?

The government makes much of the witness interview reports that it has produced, but here again the government admits that these reports do not delimit the scope of the allegations against him: "*If* the government's case at trial encompasses additional episodes, the defendant *will likely* gain insight and specificity as to those episodes through witness interview reports …." Opp. at 12 (emphasis added). To ensure a trial that is not marred by surprise, the Court should require the government to provide Mr. Penn with the information needed to prepare his defense.

### D. The Requested Particulars

The government contends that the law does not require it to provide the basic information Mr. Penn has requested about the charge against him. That analysis is incorrect.

First, in relation to the identity of known, unindicted co-conspirators, as Mr. Penn explained in his opening motion, decisions on this issue weigh multiple factors. Here, all factors favor disclosure. Mot. at 9-10. *See United States v. Welch*, 198 F.R.D. 545, 551 (D. Utah 2001), citing *United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000). The government ignores *United States v. Gomez*, 2011 WL 5828016 (D. Kan. Nov. 18, 2011), where the court granted the defendant's request for identification of "the known but unidentified coconspirators"

6

because "[t]he court [saw] no reason why [the defendant] should be denied this information in this case." *Id*. at *3.  The same is true here.[3]

Second, in relation to Mr. Penn's request for any additional incidents of alleged price-fixing or bid-rigging, the cases on which the government relies do not support its position.  In *United States v. Antoine*, the indictment *already* disclosed comparable information to what Mr. Penn seeks, and the defendant requested far more factual detail than what Mr. Penn requests.  2018 WL 858734, at *2-3 (D. Colo. Feb. 14, 2018) (requesting "all facts that demonstrate an agreement between he and others").[4]  *See also Welch*, 198 F.R.D. at 550 (rejecting a "general request" for disclosure of "overt acts" while recognizing that overt acts "may in proper cases clarify an indictment and be a proper object for a bill of particulars").

Finally, in relation to the government's theory of Mr. Penn's participation in the alleged conspiracy, the government's reliance on *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983), is misplaced.  That is a robbery case where the government disclosed its two alternative theories, and the Tenth Circuit upheld the court's denial of the motion on appeal because "nothing was left to disclose." *Id*.  Here, the government fails to disclose any theory, much less alternative theories.  The government also ignores subsequent on-point Tenth Circuit authority that requires the government to disclose the theory of its case.  *See United States v.*

---

[3] The government's "threshold" argument that "conspiracy law does not require the government to establish each member of the conspiracy to reach a conviction," Opp. at 10, is inapposite. Mr. Penn requests the identity of co-conspirators known at this time so that he can be prepared to respond regarding allegations about any of these co-conspirators if the government relies on their communications at trial to prove a conspiracy.

[4] Moreover, the court in *Antoine* expressly acknowledged that it was not "without discretion to order the disclosure of this information if necessary to avoid unfair prejudice or surprise." *Antoine*, 2018 WL 858734, at *3.

*Dunn*, 841 F.2d 1026, 1030 (10th Cir. 1988) ("the defendant is not entitled to know all the evidence the government intends to produce, but only the *theory* of the government's case") (internal quotation omitted).

## II. CONCLUSION

Trial preparation should be more focused than a game of hide and seek. The government derailed the career and tarnished the reputation of a successful and fiercely competitive executive—without even affording him the opportunity to explain why filing charges against him would be unjustified. Mr. Penn is at least entitled to the basic information he needs to defend himself at trial. The Court should order the government to provide Mr. Penn a bill of particulars.

Dated:  July 7, 2020

Respectfully submitted,

 *s/ Michael F. Tubach*
Michael F. Tubach (Cal. Bar No. 145955)
Anna T. Pletcher (Cal. Bar No. 239730)
Megan Havstad (Cal. Bar No. 287938)
Brian P. Quinn (D.C. Bar No. 1048323)
**O'MELVENY & MYERS LLP**
Two Embarcadero Center
28th Floor
San Francisco, California  94111-3823
Telephone: 415-984-8700
Facsimile: 415-984-8701
E-mail:  mtubach@omm.com
            apletcher@omm.com
            mhavstad@omm.com
            bquinn@omm.com

Attorneys for Defendant
Jayson Jeffrey Penn

8

## CERTIFICATE OF SERVICE

      I hereby certify that on this 7th day of July, 2020, I electronically filed the foregoing **DEFENDANT JAYSON PENN'S REPLY IN SUPPORT OF MOTION FOR BILL OF PARTICULARS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.


*s/ Michael F. Tubach*
Michael F. Tubach