IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN,
5.    TIMOTHY R. MULRENIN,
6.    WILLIAM VINCENT KANTOLA,
7.    JIMMIE LEE LITTLE,
8.    WILLIAM WADE LOVETTE,
9.    GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

       Defendants.

**DEFENDANT JAYSON PENN'S MOTION FOR BILL OF PARTICULARS**

Defendant Jayson Penn, by and through undersigned counsel, and pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, respectfully requests that the Court order the government to file a bill of particulars.

**I.    INTRODUCTION**

The government must give an individual notice of the nature of a charge, *Hamling v. United States*, 418 U.S. 87, 117 (1974), "the first and most universally recognized requirement of due process," *Bousley v. United States*, 523 U.S. 614, 618 (1998). To ensure that a defendant

1

can actually prepare a defense and to avoid the prejudice flowing from surprise at trial, district courts are authorized to require the government to provide a bill of particulars.  *See* Fed. R. Crim. P. 7(f).  The rule was amended in 1966 "to encourage a more liberal attitude by the courts toward bills of particulars" while preserving judicial discretion.  Fed. R. Crim. P. 7 advisory committee's note (1966).  This case exemplifies the wisdom of that rule.

As it stands, Mr. Penn awaits trial with only a vague understanding of what the government contends he has done wrong.  The grand jury has now returned a second indictment, but it is even more perplexing than the first.  Like the original indictment, the superseding indictment alleges a sprawling conspiracy based on a "continuing network" of suppliers of broiler chicken in the United States—a huge industry involving large-scale, nationwide producers, customers, distributors, and other players.  Yet, like the original indictment, the superseding indictment points to only a handful of sporadic incidents over a seven-year period with different suppliers, customers, products, and price-related terms involving a tiny fraction of the overall market.  For example, the only incident alleged to have occurred in 2016—a year in which broiler chicken sales in the United States exceeded $25 billion—consists of a single email exchange between two people about credit terms to a single customer.  (Dkt. No. 101 ("Super. Ind.") ¶¶ 127-28.)  And like the original indictment, the superseding indictment does not say whether these incidents constitute the entirety of the alleged bid-rigging activity or are simply illustrative of what the government alleges is a broader pattern.  Adding to the uncertainty, the superseding indictment expands various episodes alleged in the original indictment to include more products, but based on evidence the government had identified before the original indictment was returned.

This is not a case, like bank robbery or drug trafficking, in which it is self-evident what the government will assert is criminal behavior. Here, the government's case is built on mundane, everyday, internal corporate emails that appear lawful on their face. For example, the government alleges that Mr. Penn participated in a conspiracy by (1) agreeing to give a customer a discount for a promotion the customer wanted to run (Super. Ind. ¶¶ 124-26), (2) refusing to sell chicken to a competitor (*id.* ¶¶ 117-18), and (3) signing a contract with a customer (*id.* ¶ 75). On their face, these acts are unremarkable—indeed, pro-competitive. Mr. Penn has been involved in countless similar decisions during the period charged in the indictment. But the government alleges that these sporadic, unconnected activities are part of a "continuing network" of criminality. Mr. Penn is left to guess what the government means by a "continuing network"—a vague and perplexing term—and to divine which of his thousands of ordinary business emails the government contends is illegal.

Discovery will not solve this problem. In its opposition to Mr. Penn's original motion for a bill of particulars, the government pointed to 2,840 "highly relevant" documents it had culled from its massive production of 12.8 million documents. Counsel has carefully reviewed those documents, and they compound, rather than solve, the problem. The vast majority of these documents have nothing to do with Mr. Penn, and most (more than 80%, by counsel's estimate) are ordinary business documents that do not even relate to the fourteen indictment episodes. Worse, the 2,840 documents contain references to more than a dozen customers and literally *hundreds* of business transactions and events throughout the seven-year alleged conspiracy— such as pricing negotiations and contracts to sell various chicken products and issues with customers—none of which are mentioned in the indictment. The fact that the superseding

3

indictment includes fourteen disjointed episodes that appear lawful on their face, while saying nothing about these hundreds of other events mentioned just in the "highly relevant" documents, shows why a bill of particulars is necessary: without more information, Mr. Penn is left to guess which of the hundreds of unremarkable business events the government will use to try to prove its alleged conspiracy.

To remedy this problem, Mr. Penn seeks only the most basic information about the charge brought against him: (1) the bids and prices allegedly fixed; (2) the names of all alleged co-conspirators; and (3) the government's theory of how Mr. Penn allegedly participated in the conspiracy. The government should have this information at its fingertips. It should be required to disclose the information now so Mr. Penn can prepare his defense.

## II.     FACTUAL BACKGROUND

On June 2, 2020, the grand jury returned a one-count indictment against Mr. Penn and three co-defendants for a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (Dkt No. 1 ("Ind.") ¶ 1.) In the original indictment, the government alleged a price-fixing and bid-rigging conspiracy between 2012 and 2017 relating to suppliers of broiler chicken products. (*Id.* ¶ 1.) The original indictment described eight separate incidents that allegedly constituted the "means and methods of the conspiracy" (*id.* ¶¶ 32-77), but the charging language suggested a broader scope. (*Id.* ¶¶ 28-31.) It alleged a conspiracy whose purpose was "to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States." (*Id.* ¶ 28.) It contended that the acts alleged in the indictment formed "part" of the conspiracy alleged. (*Id.* ("It was part of the conspiracy ...."); *id.* ¶ 29 ("It was further part of the conspiracy ...."); *id.* ¶¶ 30, 31 (same).) It alleged, with no factual

4

detail, that the co-conspirators utilized a "continuing network" to reach agreements and understandings to submit "aligned" bids, to participate in conversations and communications relating to non-public information, and to monitor bids. (*Id*. ¶ 29(a)-(c).) The original indictment identified five customers (*id*. ¶¶ 21-25), but did not specify whether the conspiracy was limited to them.

On June 18, 2020, Mr. Penn filed a motion for a bill of particulars directed to the original indictment. (Dkt. No. 60.) In opposing the motion, the government confirmed that the incidents described in the indictment were "non-exhaustive" but refused to provide further details about the conspiracy it would seek to prove at trial. (Dkt. No. 68 at 11.) Mr. Penn filed a reply brief. (Dkt. No. 75.) This motion was pending when the superseding indictment was returned.

Since the original indictment was returned, the government has produced approximately 12.8 million documents to the four original defendants, comprising 10 terabytes of data. The government has recently represented that it will produce even more documents in the near future.

On October 6, 2020, the grand jury returned a superseding indictment against Mr. Penn and nine co-defendants for one count of a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and two other counts against only co-defendant Jimmie Lee Little. (Super. Ind. ¶¶ 1, 147, 151.) The superseding indictment again alleges a conspiracy whose purpose was "to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States" (*id*. ¶ 47), but alleges a broader price-fixing and bid-rigging conspiracy over a longer time frame than the original indictment: the government now alleges a conspiracy between 2012 and at least 2019 relating to a larger number of suppliers of broiler chicken products, a larger number of customers, and a wider range of

5

products.  (*Id.* ¶¶ 1, 3, 47-50.)  The superseding indictment identifies eight customers and one distributor (*id.* ¶¶ 36-44), but does not specify whether the conspiracy is limited to them.  The superseding indictment describes fourteen separate incidents that allegedly constitute the "means and methods of the conspiracy" (*id.* ¶¶ 51-143), but maintains a broader conspiracy.  (*Id.* ¶¶ 47-50.)  It again contends that the acts alleged in the indictment formed "part" of the conspiracy alleged.  (*Id.* ("It was part of the conspiracy ...."); *id.* ¶ 48 ("It was further part of the conspiracy ...."); *id.* ¶¶ 49, 50 (same).)  It alleges that the co-conspirators utilized a "continuing network" to reach agreements and understandings to submit "aligned" bids, to participate in conversations and communications relating to non-public information, and to monitor bids.  (*Id.* ¶ 48(a)-(c).)

Because Mr. Penn's original motion for a bill of particulars was rendered moot by the filing of the superseding indictment, he now brings this motion for a bill of particulars directed at the superseding indictment.

### III. LEGAL STANDARD

A district court may direct the government to file a bill of particulars where the indictment fails to "inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense."  *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (internal citations omitted); Fed. R. Crim. P. 7(f).  The purpose of a bill of particulars is to "allow [the defendant] to prepare his defense, to minimize surprise at trial, and to enable [the defendant] to plead double jeopardy in the event of a later prosecution for the same offense."  *Dunn*, 841 F.2d at 1029.  A bill of particulars is appropriate where an indictment does not reveal the theory of the government's case sufficiently to enable the defendant to prepare for trial.  *United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992); *see also Cefalu v. United States*, 234 F.2d 522, 524-

6

25 (10th Cir. 1956) (abuse of discretion to deny bill of particulars where indictment lacked sufficient particulars of government's theory). The sufficiency of the indictment is "determined by practical rather than technical considerations." *Dunn*, 841 F.2d at 1029. *United States v. Rogers*, 617 F. Supp. 1024, 1026 (D. Colo. 1985), identifies three factors for a court to consider when determining whether to grant a bill of particulars: the complexity of the offense charged, the clarity of the indictment, and the degree of discovery provided.

A court has broad discretion in ruling on a motion for a bill of particulars. *Dunn*, 841 F.2d at 1029. However, if a court determines that the interests of the defense and the government are closely balanced, the interests of the defendant "must prevail." *Rogers*, 617 F. Supp. at 1027-28; *see also King v. United States*, 402 F.2d 289, 292 (10th Cir. 1968).

### IV.     ARGUMENT

The superseding indictment fails to "inform [Mr. Penn] of the charge against him with sufficient precision to allow him to prepare his defense." *Dunn*, 841 F.2d at 1029. Mr. Penn now faces allegations of a seven-year conspiracy in a multi-billion-dollar-per-year industry involving many players and products and innumerable transactions. Mr. Penn can certainly prepare a defense to the fourteen episodes identified in the indictment, but he cannot mount a defense to any and all other conduct that might be encompassed in the superseding indictment's sweeping allegations, the alleged evidence of which is buried somewhere in 12.8 million documents. He does not know which of the thousands of ordinary business communications in those documents the government contends show that he conspired or who he conspired with. Given the enormous volume of discovery, if 50 lawyers spent only one minute reviewing each document and did nothing else for eight hours a day, it would take more than 17 months just to

7

look at the 12.8 million documents. But even that Herculean undertaking would be unhelpful because they would be at a loss about what to look for beyond the fourteen enumerated episodes: without basic details about the alleged conspiracy, framing keyword searches intelligently would be impossible and guessing the government's case would be futile.

Each of the three factors identified by *Rogers*, 617 F. Supp. at 1026, for a court to consider when determining whether to grant a bill of particulars weighs in favor of granting the motion here: the clarity of the indictment, the degree of discovery provided, and the complexity of the offense charged. At a minimum, Mr. Penn needs to know: (1) the bids and prices allegedly fixed; (2) the names of any additional alleged co-conspirators; and (3) the government's theory of how Mr. Penn allegedly participated in the conspiracy.

### A. The Indictment Is Not A Clear Statement of Mr. Penn's Alleged Conspiratorial Conduct

The superseding indictment describes the alleged conspiracy in vague, expansive, and unusual language. Rather than a traditional, straightforward recitation of an alleged illegal agreement and concerted activity pursuant to that agreement, the indictment charges that Mr. Penn participated in a "continuing network," an "understood purpose of which" was to rig bids and fix prices and "price-related terms" for broiler chicken. (Sup. Ind. ¶ 47.) It goes on to allege that Mr. Penn and others "utilized that continuing network" to submit "aligned - though not necessarily identical bids," "participate in conversations and communications relating to non-public information," and to "monitor bids." (*Id*. ¶ 48(a)-(c).)

The fourteen enumerated episodes only add to the confusion. They involve different suppliers, employees, customers, products, and price-related terms, and are separated by large gaps in time. And the relevance of the events themselves is not clear: episodes alleged to be in

8

furtherance of the conspiracy include (1) a decision by Mr. Penn to give a customer a discount for a promotion the customer wanted to run (Super. Ind. ¶¶ 124-26), (2) his refusal to sell chicken to a competitor (*id.* ¶¶ 117-18), and (3) signing a contract with a customer (*id.* ¶ 75). Mr. Penn has been involved in countless similar, ordinary business decisions during the period alleged in the indictment.

Having completed the review of the government's set of "highly relevant" documents, counsel have identified at least 252 other transactions or events that are referenced in that small set of documents alone. (A list of those transactions and events is included as Exhibit A to this motion, filed with restricted access.) Mr. Penn cannot prepare a defense to all of them, and he cannot know whether the government did not include them in the indictment because it does not contend that they are part of the alleged conspiracy or because it plans to surprise him at trial. Mr. Penn is entitled to more clarity.

### B. The Voluminous Discovery Compounds the Problems Created by the Indictment

While discovery can obviate the need for a bill of particulars in some cases, it can highlight the need for one when the discovery is extraordinarily voluminous. *See, e.g.*, *United States v. Wong*, 2007 WL 404807, at *2 (N.D. Cal. Feb. 2, 2007) (bill of particulars required where government produced at least 150,000 pages of discovery, plus thousands of images and minutes of audio and video surveillance); *United States v. Feil*, 2010 WL 1525263, at *3 (N.D. Cal. Apr. 15, 2010) (despite significant discovery, government required to identify the defendants' overt acts in support of the alleged conspiracy); *see also United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987) (denial of motion for bill of particulars in RICO case was abuse of discretion). In *Bortnovsky*, for example, it was an abuse of discretion to deny the defendants'

9

motion for bill of particulars because, despite the discovery produced by the government, the defendants were forced to sort through 4,000 documents unrelated to the pending charges to determine what was relevant. *Bortnovsky*, 820 F.2d at 574-75.

Here, the government has produced more than 12.8 million documents in discovery so far and has promised more to come. These productions have not solved the problems created by the indictment's breadth; they have compounded them. Counsel has already begun to sift through the emails of more than a dozen corporations and hundreds of individuals—the vast majority of which are seemingly irrelevant—at exorbitant time and expense. These documents do not provide any further clarity. The government "[does] not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven [inculpatory]." *Id*. at 575.

The government also provided the original defendants an 87-page letter with information it claims to have obtained during the course of its investigation. The letter details the contents of proffers and witness interviews concerning many customers, distributors, suppliers, and individuals who are never mentioned in the superseding indictment. Here too, Mr. Penn is left to guess whether information about these customers and distributors are a mere distraction or are part of the government's case. If they are part of the government's case, the government should provide Mr. Penn notice so that he can prepare his defense.

### C. The Complexity of the Case Warrants a Bill of Particulars

This case is obviously complex, as this Court found even before the Superseding Indictment was returned. (Dkt. No. 76 at 4-5 (Order Granting Ends of Justice Continuance) (finding case after original indictment "complex" within the meaning of the Speedy Trial Act).)

The superseding indictment charges ten individuals with participating in a sprawling, seven-year conspiracy relating to an industry whose annual sales top $25 billion.  The government has produced 12.8 million documents in discovery, and it intends to produce more.

At the beginning of this case, the government agreed it was complex.  In an email to this Court on June 4, 2020, the government stated, "The government advises that this is a complex, document-intensive case, and therefore the government suggests that the court set a status conference rather than a date for trial and motions."  *See* 6/4/2020 Email from Heather Call to Brimmer_Chambers@cod.uscourts.gov, attached as Exhibit B.  But after Mr. Penn filed a motion for a bill of particulars, the government reversed course: "the single charge at issue here is not complex."  (Dkt. No. 68 at 7.)  To justify this 180-degree turn, the government suggested that the broiler chicken business is uncomplicated and argued that because the agreement itself is the crime, proof of that agreement must be straightforward.  Both claims are inaccurate.  The chicken suppliers named in the indictment sold tens of billions of dollars of a wide variety of chicken products to myriad customers in different channels such as fast-food restaurants, supermarkets, and foodservice companies, to name just a few.  Pricing involves dozens of variables and nuances.  Chicken in the supermarket may be common, but it does not follow that tracing business practices over many years across multiple customers, sales channels, and transactions is uncomplicated.

Second, the single antitrust charge in the superseding indictment is built entirely on circumstantial evidence; the government does not allege any explicit agreements between competitors.  What's more, in an antitrust case, the government can seek to transform lawful business practices into circumstantial evidence of an anti-competitive agreement.  *See United*

11

*States v. Bestway Disposal Corp.*, 681 F. Supp. 1027, 1030 (W.D.N.Y. 1988) ("Greater specificity is warranted in antitrust cases where the facts generally are not so much in issue as is how the law should be applied to the facts.") (internal citation omitted).  Over the seven-year charge period in the indictment, Mr. Penn participated in an untold number of transactions and negotiations, and others at Pilgrim's Pride engaged in countless more.  As explained above, the government's "highly relevant" 2,840 documents alone reveal at least 252 events on which the government may present evidence at trial.  There are no doubt hundreds more events mentioned in the 12.8 million documents the government has produced.  Mr. Penn cannot know which the government alleges were illegal unless the government tells him.

### D. The Requested Particulars

Trial by ambush is not due process, and the Court should remedy the problems created by the indictment's vague language, the voluminous discovery, and the complexity of the case by ordering the government to provide sufficient notice about the charge against Mr. Penn.  To avoid surprise at trial, Mr. Penn requests the following particulars.

#### 1. **Any and all additional incidents of alleged price fixing or bid rigging**

The government should be ordered to "provide enough information to apprise [Mr. Penn] of the nature of [his] own alleged overt acts as well as those of co-violators." *Rogers*, 617 F. Supp. at 1029.  To prepare for trial, Mr. Penn asks that the government provide a list of implicated contracts or bids and certain critical particulars: the time frame, the customers, the relevant products, the allegedly impacted contractual terms or prices, the suppliers involved, and the names of those with whom he allegedly conspired.  Case law in the antitrust context supports Mr. Penn's request for this information.  *United States v. Greater Syracuse Bd. of Realtors, Inc.*,

438 F. Supp. 376, 380-81 (N.D.N.Y. 1977) (ordering bill of particulars to sufficiently specify overt acts on which the government's theory rests in antitrust case); *United States v. Metro. Leather & Findings Ass'n*, 82 F. Supp. 449, 455 (S.D.N.Y. 1949) (in price-fixing case, defendants were entitled to "a statement identifying each separate occasion [of price fixing] relied on"); *United States v. Allied Chem. & Dye Corp.*, 42 F. Supp. 425, 428-29 (S.D.N.Y. 1941) (similar); *United States v. Tedesco*, 441 F. Supp. 1336, 1343 (M.D. Pa. 1977) (similar).[1]

### 2. Any and all additional alleged co-conspirators

Mr. Penn also needs to know the names of all individuals and companies who were allegedly members of the conspiracy, when they joined the alleged conspiracy, and when the conspiracy ended. *See, e.g.*, *Rogers*, 617 F. Supp. at 1028 (government required to identify undisclosed and unidentified co-conspirators, aiders and abettors, and other individuals involved in the criminal acts charged); *United States v. Gomez*, 2011 WL 5828016, at *3 (D. Kan. Nov. 18, 2011) ("government shall identify the known but undisclosed coconspirators"); *United States v. Welch*, 198 F.R.D. 545, 551 (D. Utah 2001) (citing *United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000) ("the disclosure of known unindicted coconspirators should turn on a consideration and weighing of multiple factors")); *United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009) (granting bill of particulars seeking information about unindicted co-conspirators).[2]

---

[1] Counsel was unable to locate precedent in this Circuit addressing this issue in an antitrust case specifically. The sole District Court case denied such a motion after the information was voluntarily provided by the government. *United States v. Deffenbaugh Indus., Inc.*, 1991 WL 75788, at *1 (D. Kan. Apr. 19, 1991), *aff'd*, 957 F.2d 749 (10th Cir. 1992).

[2] *See also United States v. Mobile Materials*, 881 F.2d 866, 870 n.2 (10th Cir. 1989) (on rehearing) (referring without discussion to a trial court's order on the government's disclosure of

One court has distilled six factors to assess the need for a bill of particulars listing unindicted co-conspirators. *See Kahale*, 789 F. Supp. 2d at 372 (citing *Nachamie*, 91 F. Supp. 2d at 572–73). Here, as in *Kahale*, at least four of these factors weigh in favor of disclosure: (1) the number of potential co-conspirators is potentially large; (2) the alleged duration of the conspiracy, seven years, is relatively lengthy and the geographic scope of the conspiracy—nationwide—is expansive; (3) the government has not otherwise provided the particulars requested; and (4) the government has overwhelmed the defendants with "mountains" of discovery. *See id.* at 372-73. The government has provided no reason to believe the remaining two factors weigh against disclosure. Finally, as in *Kahale* and similar cases, "the relative complexity of the [] charges facing defendants … also weighs in favor of requiring disclosure." *Id.* at 373. The government should be ordered to identify all co-conspirators and victims of the alleged conspiracy.

### 3. **How Mr. Penn is implicated**

Finally, the government should specify how the described incidents implicate Mr. Penn, including by identifying which acts of other employees at Pilgrim's Pride, if any, the government contends that Mr. Penn is responsible for and under what theory. *Dunn*, 841 F.2d at 1030 (defendant is entitled to "the theory of the government's case"). This information is critical because Mr. Penn is alleged to be involved in only six of the fourteen episodes and none of the new episodes included in the superseding indictment. And his alleged involvement even in the events in which he is mentioned is minimal and lawful on its face. Yet the loose language in the

---

unnamed co-conspirators); *United States v. Washita Constr. Co.*, 789 F.2d 809, 813 n.4 (10th Cir. 1986) (same).

indictment suggests that the government may seek to hold him responsible for this conduct through an undefined "continuing network," about which he has no knowledge. Mr. Penn is entitled to know the government's theory as to how he joined and contributed to the charged conspiracy so that he can prepare his defense. *Feil*, 2010 WL 1525263, at *3; *cf. United States v. Moore*, 556 F.2d 479, 483 (10th Cir. 1977) (affirming denial of motion for bill of particulars where indictment left no doubt about the government's theory of the case).

## V.   CONCLUSION

Mr. Penn is entitled to the basic information he seeks to defend himself at trial. The Court should order the government to provide Mr. Penn a bill of particulars.

Dated: October 27, 2020

Respectfully submitted,

*s/ Michael F. Tubach*

| | |
|---|---|
| Chad David Williams | Michael F. Tubach (Cal. Bar No. 145955) |
| Jacqueline Ventre Roeder | Anna T. Pletcher (Cal. Bar No. 239730) |
| Davis Graham & Stubbs LLP-Denver | Megan Havstad (Cal. Bar No. 287938) |
| 1550 17th Street | Brian P. Quinn (D.C. Bar No. 1048323) |
| Suite 500 | **O'MELVENY & MYERS LLP** |
| Denver, CO 80202 | Two Embarcadero Center |
| 303-892-9400 | 28th Floor |
| Fax: 303-893-1379 | San Francisco, California  94111-3823 |
| Email: chad.williams@dgslaw.com | Telephone: 415-984-8700 |
| Email: jackie.roeder@dgslaw.com | Facsimile: 415-984-8701 |
| | E-mail:  mtubach@omm.com |
| | apletcher@omm.com |
| | mhavstad@omm.com |
| | bquinn@omm.com |

*Attorneys for Defendant Jayson Jeffrey Penn*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of October, 2020, I electronically filed the foregoing **DEFENDANT JASON PENN'S MOTION FOR BILL OF PARTICULARS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Michael F. Tubach*
Michael F. Tubach