**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN,
5.    TIMOTHY R. MULRENIN,
6.    **WILLIAM VINCENT KANTOLA**,
7.    JIMMIE LEE LITTLE,
8.    WILLIAM WADE LOVETTE,
9.    GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

      Defendants.

---

**DEFENDANT WILLIAM KANTOLA'S MOTION FOR A BILL OF PARTICULARS**

---

COMES NOW, Defendant William Kantola, by and through his undersigned counsel, and pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, respectfully requests that the Court order the government to file a bill of particulars with respect to the Superseding Indictment returned on October 6, 2020.[1]

---

[1] Dkt. 101.

## I. INTRODUCTION

With nine co-defendants, Mr. Kantola was named in one count of a Superseding Indictment for violating Section One of the Sherman Act, 15 U.S.C. § 1.[2] The Superseding Indictment alleges a conspiracy, the purpose of which was "to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States" between 2012 and at least 2019.[3] The balance of Count One is a juggernaut that fails adequately to inform Mr. Kantola of the charge against him or to permit him to plead double jeopardy. The complexity of the offense charged, the lack of clarity of the Superseding Indictment, and the nature of discovery provided all support granting a bill of particulars in this case. *United States v. Rogers*, 617 F. Supp. 1024, 1026 (D. Colo. 1985).

## II. THE SUPERSEDING INDICTMENT

At length, the Superseding Indictment alleges the existence of "a continuing network of Suppliers and co-conspirators," and agreements to "submit aligned – though not necessarily identical" bids.[4] Two features of this unusual charge are worthy of note. First, it does not exclude customers as co-conspirators. Second, and relatedly, the intriguing term "aligned" is ambiguous and obscures the essential bid-rigging charge by allowing the interpretation that the alleged conspirators agreed with customers to align offers with customer expectations. Moreover, the specification that defendants and co-conspirators engaged in conversations and communications relating to non-public information and monitored bids does not even allege unlawful conduct.[5]

---

[2] He is not included in two other non-conspiracy counts against a co-defendant.
[3] Dkt. 101, ¶47.
[4] Dkt. 101, ¶¶47-48(a).
[5] Dkt. 101, ¶48(a)-(c).

Whatever the "continuing network" is, Mr. Kantola is named in but five of 14 incidents alleged to comprise the "Means and Methods of the Conspiracy" (hereinafter, "Means and Methods").[6] Particularly as to Mr. Kantola, these events make sense neither as a continuing nor a single conspiracy. In general, the Superseding Indictment recites that Mr. Kantola received calls from other defendants and occasionally called back, but nowhere is he quoted or actually paraphrased, except in a 2013 email with an individual at his own company reporting bid *results* that showed why a competitor found favor with a customer. (Dkt. 101, ¶81 (b)). The allegations in which he is mentioned sound more like reports of fact than pledges to do anything. In any event, even as evidence of communication, as to Mr. Kantola, it lapses in the spring of 2015, while the Superseding Indictment charges that others continued to conspire to rig bids to at least two of Mr. Kantola's customers entirely *without him or his company. See* Dkt. 101, ¶¶ 129-135 and ¶¶ 136-147.[7] Another alleged incident in the conspiracy, a 2014 plan to impose upcharges on antibiotic-free chicken meat neither involves Mr. Kantola nor concerns a customer of his or his company. *See* Dkt. 101, ¶¶ 84-86.

The *very last* act attributed to Mr. Kantola in the alleged conspiracy is on April 1, 2015[8], when he emailed a customer to agree to a *discount* the customer requested. There is no allegation that Mr. Kantola communicated with any competitor on this occasion. In any event, this incident occurred a full year before anything else in the conspiracy and *over five years before Mr. Kantola was charged*. Elsewhere, the Superseding Indictment repeatedly claims that acts alleged therein are but "part" of the conspiracy,"[9] but the broader conspiracy is not described, let alone Mr.

---

[6] Dkt. 101, ¶51-143.
[7] Nor is Mr. Kantola is mentioned at all in a section of the Superseding Indictment entitled "Protecting the Purpose and Effectiveness of the Conspiracy" at Dkt. 101, ¶¶ 117-119.
[8] Dkt. 101, ¶127(a).
[9] Dkt. 101, ¶¶ 48, 49, 50.

Kantola's role in it. In sum, on its face, as to Mr. Kantola, the Superseding Indictment is indefensible quicksilver.

### III. REQUESTED PARTICULARS

Mr. Kantola requests the following particulars to ascertain the charge against him:

1. When the alleged conspiracy began. The first of the Means and Methods in the Superseding Indictment dates from November 2012, but the government has produced information from years earlier.

2. When and by what action Mr. Kantola agreed to join the conspiracy. For example, did he join the conspiracy by taking a single phone call from a co-defendant in November 2012[10], or did he join by some other act at some other time?

3. The identities of all the alleged co-conspirators. For example, was the customer to whom Mr. Kantola acceded to a promotional discount in 2015[11] a co-conspirator?

4. The objective of the alleged conspiracy. Taken as true, the events in Means and Methods in the Superseding Indictment appear unrelated to each other rather than part of a single, continuing conspiracy.

5. What Mr. Kantola is alleged to have agreed to do or not do. Contrary to the introductory allegations that he participated in a conspiracy, the Superseding Indictment's specific Means and Methods lack any reference to a statement or act on his part indicating agreement, let alone commitment to a continuing scheme.

6. The bids, prices and terms that were alleged fixed or "aligned". Mr. Kantola is entitled to know each and every solicitation encompassed in the conspiracy, particularly since he is identified with only five of the incidents in Means and

---

[10] Dkt. 101, ¶58.
[11] Dkt. 101, ¶126(a).

Methods and absent from incidents in which bids to two of his major customers allegedly were rigged or "aligned".[12]

## IV. ARGUMENT

A criminal defendant is not obliged to guess what the offense is. The curious Superseding Indictment, like its predecessor in which Mr. Kantola was not named, fails to "inform the defendant of the charge against *him* with sufficient precision to allow him to prepare his defense [emphasis added]." *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988) (internal citations omitted);Fed. R. Crim. P. 7(f). A bill certainly is appropriate where, as here, the government obscures rather than reveals the theory of its case sufficiently to enable the defendant to prepare for trial. *United States v. Levine*, 983 F.2d. 165, 167 (10th Cir. 1992); *see also Cefalu v. United States*, 234 F.2d 522, 524-25 (10th Cir. 1956)(abuse of discretion to deny a bill of particulars where indictment lacked sufficient particulars of the government's theory).

As noted, the three factors this Court considers when determining whether to grant a bill of particulars are: the complexity of the offense charged, the clarity of the indictment, and the degree of discovery provided. *United States v. Rogers*, 617 F. Supp. 1024, 1026 (D. Colo. 1985). While this Court's discretion whether to grant a motion for a bill of particulars is broad, if it determines that the interest of the defense and the government are closely balanced, the interests of the defendant "must prevail." *Rogers*, 617 F.Supp. at 1027-28, *see also King v. United States,* 402 F.2d 289, 292 (10th Cir. 1968).Here, the question is not close.

### A. This Case is Complex

Even had the Court not found it so before the Superseding Indictment was returned,[13] this case would be viewed as complex by any measure. Sales in the broiler chicken industry exceed

---

[12] Dkt. 101, ¶¶ 129- 135, 136-143.
[13] Dkt.76 at 4-5.

5

$25 billion annually. The Superseding Indictment itself alleges a seven-year conspiracy in which the government claims at least 10 individuals are implicated. The government's disclosures identify numerous persons who may be witnesses and/or co-conspirators. In addition to yielding 12.8 million documents to date, the government's production refers tofar more persons and entities than are identified in the True Bill or its successor.  Mr. Kantola should not have to guess with whom he is alleged to have conspired or which of the numerous events described in discovery were part of the conspiracy although not included in the Superseding Indictment.

As an antitrust prosecution based on circumstantial evidence, including mere telephone contacts without elaboration, this case is, by nature, complex. In such prosecutions, where the government cites mundane business practices as acts in furtherance of illegal collusion, the necessity of particulars is apparent.  "Greater specificity is warranted in antitrust cases where the facts generally are not so much in issue as is how the law should be applied to the facts". *See United States v. Bestway Disposal Corp.,* 681 F. Supp. 1027, 1030 (W.D.N.Y. 1988).  If Mr. Kantola is included in the amorphous Superseding Indictment based on phone records and internal communications that do not reflect explicit agreements, he is entitled to know the theory from which he is to obliged to defend himself. After all, an illegal agreement is the Sherman Act crime. Surely, the government is in a position to describe that agreement, its objectives and all participants unless, of course, it develops that the prosecution consists of proof in search of a theory.Mr. Kantola is entitled to know that too.

    **B.   The Superseding Indictment Lacks Clarity**

While the Superseding Indictment and the original indictment, simply could have alleged a conspiracy with a common objective, the government chose to include Mr. Kantola and

6

countless others in a "continuing network"[14] that was utilized to submit "aligned, though not necessarily identical bids." At the very least, Mr. Kantola and his alleged confederatesare entitled to know what that means.  Likewise, he has a right to know how his alleged participation "in conversations and communications relating to non-public information, " or to "monitor bids"[15] is related to a common objective with his co-defendants.As noted, the incidents recited as "Means and Methods of the Conspiracy" consist of a collection of wholly unrelated events, only five of which involve Mr. Kantola in any way and, as a whole, are anything but per se illegal under the Sherman Act. As to Mr. Kantola, the specific contentions in the Superseding Indictment confuse and, in essential ways,nullify the charge of a single, continuing conspiracy.

### C. The Discovery Provided Obscures Rather than Explains the Charge

The government has produced approximately 19 terabytes of data, including immaterial duplicates from civil litigation[16], delivered an 87-page letter detailing information from interviews of customers, distributors, suppliers and other witnesses, and identified a subset of 5,387 so-called "highly relevant" documents to date. If anything, this production confounds discovery of the government's theory of the case, including, as it does, information unrelated toanyone or anything in the Superseding Indictment and doing nothing to describe the conspiracy Mr. Kantola must defend. These items fail utterly to explain any common object of the defendants in the seven-year conspiracy charged. Pointedly, nothing in discovery connects Mr. Kantola himself to events within the statute of limitations. The scant references to Mr. Kantola in these documents suggest that discovery is wholly inadequate to explain why he was charged at all.

---

[14]Dkt. 101, ¶ 47.
[15]Dkt. 101, ¶ 48 (a)-(c).
[16]*In re Broiler Chicken Antitrust Litigation,* Case No. 1:16-cv-0637 (N.D. Ill.)

How is Mr. Kantola to defend without surprise, or plead as a bar to future prosecution, a sprawling charge that includes customers that are not his, incidents with which he is not identified and events that have nothing to do with each other, let alone with him? The avalanche of data the government has delivered is no substitute for a simple statement of what the common object of the conspiracy was, when and how Mr. Kantola joined it and with whom he allegedly conspired. Mr. Kantola is entitled to the comprehensive particulars of the crime, not malleable bafflegab.

## V.  CONCLUSION

Like any defendant, Mr. Kantola is entitled to information to defend himself at trial. For the foregoing reasons, he asks this Court to order the government to deliver a bill of particulars setting forth:

1. When the alleged conspiracy began;

2. When and by what action Mr. Kantola agreed to join the conspiracy;

3. The identities of all the alleged co-conspirators;

4. The objective of the alleged conspiracy;

5. What Mr. Kantola is alleged to have agreed to do or not do; and

6. The bids, prices and terms that were alleged fixed or "aligned".

Dated:  November 30, 2020  
At:     Philadelphia, Pennsylvania

Respectfully submitted,

JAMES A. BACKSTROM, COUNSELLOR

*s/ James A. Backstrom*

1515 Market Street, Suite 1200  
Philadelphia, PA 19102-1932  
Tel: (215) 864-7797  
jabber@backstromlaw.com

*Counsel or Defendant William Kantola*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of November, 2020, I filed the foregoing **Defendant William Kantola's Motion for a Bill of Particulars** with the Clerk of Court using the CM/ECF system, which will serve notice of such filing on all counsel of record.

At:  Philadelphia, Pennsylvania                    *s/ James A. Backstrom*
                                                    James A. Backstrom