IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS, and
10.    RICKIE PATTERSON BLAKE,

    Defendants.

**DEFENDANTS' JOINT REPLY IN SUPPORT OF
MOTIONS FOR BILL OF PARTICULARS**

## I.    <u>INTRODUCTION</u>

The government's opposition ignores the crux of defendants' motions—that defendants need to know what bids and prices they allegedly fixed, and with whom. Without knowing the metes and bounds of the government's case, defendants cannot properly and timely prepare for trial because they will not know which of the thousands of prices and bids during the alleged conspiracy period will be at issue at trial. To demonstrate the sheer volume of bids and prices potentially at issue, defendants have reviewed the set of several thousand "highly relevant" documents that the government culled from the 12.5 million documents it has produced to date. In that subset—which comprises less than one-tenth of 1% of the total document production—defendants conservatively identified more than 250 different bids. *See* Dkt. 184.

1

Rather than address this fundamental problem, the government ignores it. The government does not dispute that defendants have accurately counted the number of bids mentioned in the subset of documents, nor that this subset is representative of the entire production. Instead, the government pretends this list does not exist and does not mention it at all in its opposition. And the main point of defendants' motions—that they need to know the bids and prices they allegedly fixed and with whom—is relegated to a footnote. *See* Dkt. 217 at 14 n.9.

Instead, the government devotes much of its brief to describing the "speaking indictment," and to recounting the voluminous discovery it has produced to date and how diligent it has been about producing it. The government's argument seems to be that it does not need to tell defendants where the needles are because it has produced so many haystacks. But the more voluminous the discovery, the *greater* the need for clarity as to which of the events described in those documents is actually at issue. Likewise, the "speaking indictment" does not help. It provides sufficient information about the fourteen specific episodes mentioned, but the government emphasizes in the opposition that these episodes are not the full list of episodes at issue. *See* Dkt. 217 at 3 ("14 episodes serve as examples").

Finally, the government points to the interview summaries it has provided to date, but they are unhelpful in deciphering the government's case. The government has provided interview reports for only ███████████████████████ listed in the superseding indictment, and for only ███████████████████████ it put on its proposed "no contact" lists. ████████████████████████████████████

███████████████████████████████████████████████████████████████.[1]

Having rushed to file these high-profile charges, the government is now apparently searching for witnesses to support its case. But that is not a basis to avoid providing defendants the most basic information about the charges. As a matter of due process, defendants need to know all of the episodes they must defend against at trial, the implicated bids and pricing terms, and all of those with whom they are alleged to have conspired.

## II. ARGUMENT

This Court should direct the government to file a bill of particulars because neither the indictment nor the discovery "inform[s] the defendant[s] of the charge against [them] with sufficient precision to allow [them] to prepare [their] defense[s], to minimize surprise at trial." *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988). Although each of the ten defendants submitted separate motions, the government responded with a single consolidated opposition, largely ignoring the defendant-specific arguments advanced by each. For the convenience of the Court, defendants now submit this joint reply in response to the government's opposition, with the understanding that each defendant reiterates the individual grounds specific to them without waiver of any argument.

### A. The Government Ignores Defendants' Core Request for a Comprehensive Set of "Episodes" of Alleged Collusive Bidding.

Defendants request the government identify all additional incidents of alleged price-

---

[1] Based on the witness reports provided to date, the government's investigation prior to filing the initial charges was similarly incomplete. Apparently, the government had not interviewed ███████████████████████████████████████████████████████████████ and had never spoken to ███████

3

fixing and bid-rigging beyond the fourteen identified in the superseding indictment. In response, the government drops a terse footnote, dismissing this as "similar" to an earlier request for the identities of all known co-conspirators. *See* Dkt. 217 at 14 n.9. But this is an entirely different request; even with the identity of all known co-conspirators, defendants would still require a comprehensive list of implicated bids and prices for all the reasons stated in their separate briefs. This request for a list of implicated bids and prices is the core of defendants' motions; the government all but ignores it.[2]

As it stands, defendants are unable to adequately prepare for a trial featuring episodes other than those listed in the "Means and Methods" section of the superseding indictment. Super. Indict. ¶¶ 47–143. The superseding indictment alleges a sweeping conspiracy involving a "continuing network of Suppliers and co-conspirators" across a seven-year time frame. *Id*. ¶¶ 1, 47. During that time period, suppliers entered hundreds of bids, each bid covering dozens of products and even more line item prices. As a result, there are thousands of bids or prices that could potentially fall within the government's expansive theory. And while the superseding indictment describes fourteen incidents, it makes clear that these incidents are non-exhaustive. *See, e.g.*, *id*. ¶ 47 ("It was *part* of the conspiracy . . . ."), ¶¶ 48–50 (each paragraph starting with "[i]t was further *part* of the conspiracy . . . .") (emphases added). In its opposition, the

---

[2] In its first opposition brief, the government agreed that the complexity of the case is relevant in determining whether a bill of particulars is warranted, but argued that this case is not complex. Dkt. 68 at 5 (citing *United States v. Rogers*, 617 F. Supp. 1024, 1026 (D. Colo. 1985)). As defendants pointed out in their first reply briefs, this argument is at odds with the government's prior representation to this Court that the case is complex and should be considered complex for all purposes. Dkt. 75 at 2–4; Dkt. 77 at 4. In its second opposition, the government ignores this factor entirely, failing to mention that the complexity of the case is a relevant factor in the analysis. Dkt. 217 at 5–6.

government doubles down, repeatedly characterizing the episodes in the superseding indictment as illustrative of the episodes on which it intends to rely at trial. *See* Dkt. 217 at 3 ("The 14 episodes serve as examples of the continuing network in action . . ."), *id*. (superseding indictment "details 14 episodes that exemplify the operation of the conspiracy with particularity").

In its first opposition, the government argued that defendants' request for a list of rigged bids and fixed prices should be denied "because a *non-exhaustive* list of eight conspiratorial episodes is already outlined in the indictment" and that, coupled with the "highly relevant documents" and the witness interview reports, provided defendants sufficient information. Dkt. 68 at 11–12 (emphasis added). The government also argued that "if the government's case at trial encompasses additional episodes, the defendants will *likely* gain insight and specificity as to those episodes through the witness interview reports the government will continue to disclose in discovery." *Id.* at 12 (emphasis added). Defendants disagree. Reviewing the myriad memoranda of interviews brings defendants no closer to understanding what the government alleges is illegal. These reports cover a wide range of subjects and potential episodes numbering in the hundreds and provide no further direction regarding the government's case. The flaw in the government's reasoning is made clear just by reviewing the government's own hand-picked set of a few thousand "highly relevant" documents. *See* Dkt. 184. This batch of documents alone implicates more than 250 different potential episodes. The government cannot possibly cover all of these events at trial, and defendants cannot prepare a defense to more than 250 transactions, let alone the thousands that are referenced in the 12.5 million documents that the government has produced. Unless the government makes clear which bids it alleges were the subject of price-fixing or other unlawful collusion, defendants cannot determine which witnesses

5

to interview, who should receive Rule 17(c) subpoenas and how to appropriately tailor them, or how to otherwise investigate the case, let alone prepare their defenses.

Having filed criminal charges against ten defendants, the government should have a list of episodes comprising the alleged conspiracy at its fingertips. If there are any episodes on its list beyond the fourteen in the superseding indictment, the government should disclose them to defendants. The government may still be searching for episodes that it believes were part of the charged conspiracy, but that has no bearing on what it should disclose now. This game of "hide and seek" the government is playing in the vast universe of produced documents should end.

> **B.** **Defendants Are Entitled to Know the Theory of the Government's Case Against Each of Them Sufficient to Allow Them to Investigate the Case, Prepare Their Defenses, and Avoid Prejudicial Surprise at Trial.**

Each defendant has also sought clarification of the government's theory of the case against them, including through particularization of the government's theory of the alleged agreement, its objective, and how defendants are alleged to have participated or joined in it—in other words, who agreed with whom to do what. The government responds that while it may be required to disclose its "general" theory of the case where that theory is *not* disclosed in the indictment, it is never required to disclose the "specific" legal theories on which it will rely at trial. *See* Dkt. 217 at 8–9. Based on this standard, the government contends that, because it has provided a "general description" of the conspiracy in the indictment, together with the fourteen example episodes, it has met its obligations and need not provide more. *Id*. This is wrong for several reasons.

First, as the government acknowledges, the legal standard leaves to the sound discretion of the district court the determinative question of whether the government has "inform[ed] the

6

defendant of the charge against him with sufficient precision to allow him to prepare his defense." *Dunn*, 841 F.2d at 1029. "Sufficiency is determined by practical rather than technical considerations." *Id.* Thus, the question here is whether the government's disclosure of its theory is sufficiently specific for the defendants to prepare their defense, taking into account the practicalities and complexities of this specific case. It is not. *See*, *e.g.*, *United States v. Gordon*, No. 17-cr-354-MHC-LTW, 2018 WL 4495526, at *1, *7–8 (N.D. Ga. May 15, 2018) (ordering a bill of particulars identifying the particular projects that were the "product of illegal activity," because it would be "overly burdensome for [defendants] to investigate the cause of every micro-purchase," where the illegal activity allegedly lasted more than five years).

This rule is illustrated by all of the cases on which the government relies, which endorse requiring the government to disclose its "specific theories" where warranted by the practicalities of a case. For example, *United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992), acknowledges that a defendant is entitled to "the *theory* of the government's case." On appeal, the defendant challenged the denial of the motion on the ground that the government had accused him of supplying "false" products, without defining what constitutes "real" products. *Id.* at 166. The appeal was denied only because "[t]he indictment described [the defendant's] scheme in detail, *setting forth all of the instances of mail fraud*," and thus, the defendant had been provided full disclosure of the government's theory. *Id.* at 167 (emphasis added). Here, by contrast, defendants seek particularization of the episodes they must defend against and the identities of their alleged co-conspirators, not the definition of a term in the indictment.

Similarly, *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983), states that "[a] bill of particulars may not be used to compel the Government . . . to explain the legal theories

upon which it intends to rely at trial." In that case, the indictment stated the name and location of the bank the defendant allegedly robbed and the amount allegedly taken. *Id.* at 1449 n.1. The government also disclosed that it was considering two alternative theories of the defendant's role in the charged robbery—either entering the bank or driving the getaway car. *Id.* at 1449. The Tenth Circuit held that, given the "alternative nature of the Government's case" and its discovery disclosures, the district court did not abuse its discretion in denying the motion for a bill of particulars. *Id*. Here, defendants are not asking the government to choose between two alternative theories. Defendants only ask the government to provide a level of detail regarding what it is alleging similar to what the government voluntarily provided in *Gabriel*.[3]

Second, the indictment here does not even disclose the "general" theory of the case against each defendant in a manner that is sufficiently specific for each defendant to prepare his defense. This is, in part, because the government uses a phrase to describe the conspiracy— "continuing network" (Super. Indict. ¶ 47)—that has no legal meaning. In response, the government contends that "[t]he law has long recognized conspiracies comprising an agreement or understanding based on an extended course of conduct … among a network of competitors." Dkt. 217 at 9. But the cases on which the government relies are not analogous. In *United States v. Consol. Packaging Corp.*, 575 F.2d 117, 120–25 (7th Cir. 1978), for example, there were allegations of an express price-fixing agreement and established rules of engagement, among other concrete and detailed evidence of an overarching conspiracy. Here, by contrast, there are

---

[3] The government attempts to reconcile these cases in footnote 12 of its opposition, but its response is legalistic argle-bargle. Dkt. 217 at n.12. There is no difference between the "theory of the government's case" and the "theories upon which [the government] intends to rely at trial." *Id*.

8

no comparable allegations. Instead, the fourteen identified episodes consist of seemingly unconnected and different combinations of players, products, conduct, and time periods—none of which individually or collectively suggest an industry-wide, seven-year conspiracy to fix bids and prices. *See also United States v. Beachner Constr. Co.*, 729 F.2d 1278, 1282 (10th Cir. 1984) (alleging a common method and common jargon). This leaves defendants unclear as to how they fit into any network, continuing or otherwise. Without more, defendants cannot understand the government's theory of a "continuing network" and cannot prepare their defenses.

The Tenth Circuit has explained in the context of a Sherman Act case that "[a] bill of particulars was the proper avenue for greater factual detail" to "identify[] . . . which projects were alleged to be a direct part of the conspiracy involving defendants." *United States v. Mobile Materials, Inc.*, 871 F.2d 902, 909 (10th Cir. 1989) (per curiam) (discussing with approval *United States v. Fischbach & Moore, Inc.*, 576 F. Supp. 1384, 1388–89 (W.D. Pa. 1983) (in a case alleging a conspiracy lasting seven years involving a "number of projects," ordering bill of particulars that identified "which contracts are alleged to be the subject of the conspiracy to allocate bids among defendants, having bid prices fixed, or for which noncompetitive, collusive and rigged bids were submitted, and/or on which defendants and co-conspirators refrained from bidding pursuant to the alleged conspiracy"), *opinion supplemented on reh'g*, 881 F.2d 866 (10th Cir. 1989), *abrogated on other grounds by Bloate v. United States*, 130 S. Ct. 1345 (2010).[4]

---

[4] In their motions for a bill of particulars, some of the defendants have spoken in terms of identifying the bidding episodes the government alleges were infected by unlawful conduct, others have asked that the alleged overt acts in furtherance of the conspiracy be identified. Either way, the fundamental point is the same. The defendants cannot investigate the case, prepare for trial, and avoid unfair surprise at trial if left to sift through 12.5 million documents

9

### C.     The Government Fails to Explain Why Defendants' Other Requests Should Be Denied.

In addition to the above-mentioned requests, various defendants request the identities of all co-conspirators, the start and end dates of the alleged conspiracy, and the date each defendant joined the conspiracy.[5]  The government's response to each request fails to address the arguments raised by defendants.

#### 1.     Identities of All Co-Conspirators

Defendants have explained that they need to know the identities of their alleged co-conspirators to prepare adequately for trial.  The government relies on its prior response, in which it contends that the "no contact order" contains "numerous potential witnesses," Dkt. 68 at 2, and "*the lion's share* of coconspirators known to the government at this time." *Id.* at 11 n.7 (emphasis added).  In other words, the no-contact order is neither limited to co-conspirators, nor is it a complete list of known co-conspirators.  Defendants cannot rely on these lists to determine the scope of the conspiracy the government is alleging.

At the same time, the government suggests in its second opposition that is has disclosed or will disclose all known conspirators.  Dkt. 217 at 14 (listing conspirators already disclosed and stating that "a few other co-conspirators may be identified but they will be disclosed to the

---

trying to guess what conduct the government alleges was part of the charged conspiracy.  The government needs to put defendants on notice of what conduct it is alleging was either unlawful or in furtherance of the alleged conspiracy.

[5] Mr. Little also sought clarification of the government's allegations against him in Count 3 (Obstruction of Justice).  In response, the government identified the alleged false statements he made on August 31, 2020, as described in Count 2, as the basis of the charge in Count 3.  *See* Dkt. 217 at 17–18.  However, the government has not provided any further explanation of how those statements, which were made almost three months after the filing of the original indictment, allegedly obstructed the investigation.

defendants through interview reports and pre-trial evidentiary disclosures"). Interview reports cannot tell the defendants whom the government believes to be a co-conspirator. Pre-trial disclosures made months from now come too late. The government should provide a complete list of known co-conspirators now so defendants can prepare their defenses. *See also United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 472 (10th Cir. 1990) (government voluntarily provided bill of particulars identifying unindicted co-conspirators in a Sherman Act § 1 case); *United States v. Washita Constr. Co.*, 789 F.2d 809, 813 n.4 (10th Cir. 1986) (same).

### 2. Start Date of the Conspiracy and When and How Each Defendant Joined the Conspiracy

Defendants have explained that they need to know the start date of the conspiracy and when and how the defendants joined the alleged conspiracy. In response, the government suggests each can simply construct a timeline using the discovery. *Id.* at 14–15. This response, again, misses the point. If the earliest documents implicating a particular defendant are seemingly benign or passive (*e.g.*, receiving an email from a co-worker), each defendant still has no idea when he is alleged to have joined the conspiracy. And defendants who are not mentioned in connection with the earliest episodes in the indictment cannot know whether the government alleges that they were members of the conspiracy at that point. In any event, the whole purpose of a bill of particulars is to require the government to give notice to the defendants of what it is alleging so that the defendants are not left to guess. The government's clarification of when and how it alleges each defendant joined the conspiracy is necessary to allow defendants to prepare for trial and avoid surprise.

### 3. End Date of the Conspiracy

Defendants have argued that they need to know the end date of the conspiracy and the

date of the last act taken by the defendants in furtherance of the conspiracy.[6] The government's response, again, is to play hide-the-ball. It claims that the allegations "[do] not put the end date at precisely early 2019, but it does mean the defendants need not guess whether the conspiracy continued after 2017." *Id.* at 13. But that is not the issue raised in defendants' motions. The issue is that the government refuses to identify the date of the last episode. That leaves defendants vulnerable to surprise at trial and unable to weed out irrelevant documents from the government's voluminous productions.

### D. The Government's Discovery Does Nothing to Allow Defendants to Prepare Their Defenses and Ensure Defendants Are Not Prejudicially Surprised at Trial.

The government devotes a substantial portion of its opposition to describing the superseding indictment and the discovery that it has provided to date. Dkt. 217 at 2–5. But the government fails to explain how the discovery or the superseding indictment actually solves the core problems identified by defendants in their motions. In fact, the *more* the government produces, the *less* the defendants actually understand about the government's case and the theory it plans to present at trial.

First, the government contends that it has produced at least forty interview reports, from which defendants may surmise its theory of the case. Dkt. 217 at 4. Many of these interviews appear irrelevant, but the government suggests otherwise without clarifying why or how. Next, the government relies on its two letters, which it claims "summariz[e] information received,

---

[6] Mr. Little retired from Pilgrim's Pride in October 2016, which can represent withdrawal from a conspiracy and an end to potential liability. If the government alleges that Mr. Little engaged in any act(s) in furtherance of the conspiracy, or received any benefit after he retired, Mr. Little requests that the government provide those specifics.

12

mostly through attorney proffers, in the course of the investigation." *Id.* But these letters summarize information provided to the government by lawyers for companies and witnesses, and they tell defendants nothing about the *government's* theory of the case. Moreover, these letters also cover hundreds of potential episodes not identified as unlawful by the government. The question is, *which* of these episodes does the government allege constitutes unlawful behavior that defendants need to prepare to defend at trial? Nor does the government's production of "white papers"—documents prepared by counsel for various companies and individuals, heavily redacted by the government, and largely consisting of evidence and argument as to why the authors were aware of no evidence of criminal conduct—provide any meaningful information about the government's case. *Id.* The government cannot reasonably contend that these heavily redacted white papers reflect its theory of the case against defendants. Finally, the government's "highly relevant documents" do not change the analysis. *Id.* at 5. The vast majority have nothing to do with the fourteen episodes described in the superseding indictment, so defendants are left to wonder why the government believes they are relevant, much less how these documents apprise defendants of the allegations against them.

The government contends that *United States v. Ivy*, 83 F.3d 1266, 1282 (10th Cir. 1996), supports its position, but it does not. In *Ivy*, the defendants sought a bill of particulars specifying the dates on which the events alleged in the indictment occurred. *Id.* at 1281. The indictment charged forty-five counts based on an alleged drug distribution conspiracy, but specified only approximate date ranges for the events underlying each count. *Id.* at 1278; *see also* Superseding Indictment, *United States v. Norwood, et al.*, Case No. 5:93-cr-00175-R (W.D. Okla. Jan 4, 1994), Dkt. 990. On appeal, the Tenth Circuit affirmed the district court's denial of the motion,

noting explicitly that the defendants did not "contend the discovery the government provided did not contain sufficient information to allow them to prepare an adequate defense." *Ivy*, 83 F.3d at 1282.

That is precisely what defendants contend here. Unlike in *Ivy*, where the indictment alleged the relevant events and the defendants only quibbled with the government's failure to specify the exact dates on which those events occurred, here the government fails to specify all of *the events* in the first place. Thus, unlike in *Ivy* where the defendants could presumably determine the exact dates by looking at the discovery, defendants here can do no such thing. *Ivy* is inapposite.

### III. CONCLUSION

Defendants are entitled to the basic information necessary to investigate the case, prepare their defenses, and avoid unfair surprise at trial. The Court should order the government to provide a bill of particulars to defendants that identifies, at a minimum, those bids and prices that the government alleges were fixed and the identities of all known co-conspirators, and when, at least approximately, and how, each defendant is alleged to have joined the conspiracy.

Defendants respectfully request a hearing on their motions.

Dated:  December 31, 2020                                  Respectfully submitted,

| /s/ *Michael F. Tubach* | /s/ *Richard K. Kornfeld* |
|---|---|
| Michael F. Tubach (Cal. Bar No. 145955) | Richard K. Kornfeld |
| O'MELVENY & MYERS LLP | Recht Kornfeld, P.C. |
| Two Embarcadero Center, 28th Floor | 1600 Stout Street, Suite 1400 |
| San Francisco, CA 94111-3823 | Denver, CO  80202 |
| Telephone: 415-984-8700 | 303-573-1900 |
| Facsimile: 415-984-8701 | Fax: 303-446-9400 |
| E-mail:  mtubach@omm.com | Email: rick@rklawpc.com |
| *Attorneys for Defendant Jayson Jeffrey Penn* | *Attorneys for Defendant Mikell Reeve Fries* |

/s/ *Bryan B. Lavine*
Bryan B. Lavine
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, N. E., Suite 3000
Atlanta, Georgia 30308
404-885-3170
Fax: 404-962-6613
Email: bryan.lavine@troutman.com
*Attorneys for Defendant Scott James Brady*

/s/ *Elizabeth B. Prewitt*
Elizabeth B. Prewitt
Latham & Watkins LLP
85 Third Avenue
New York, New York 10022
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: elizabeth.prewitt@lw.com
*Attorneys for Defendant Timothy R. Mulrenin*

/s/ *Mark A. Byrne*
Mark A. Byrne (Cal. Bar No. 116657)
BYRNE & NIXON LLP
888 West Sixth Street, Suite 1100
Los Angeles, CA 90017
Telephone: 213-620-8003
Facsimile: 213-620-8012
Email: markbyrne@byrnenixon.com
*Attorneys for Defendant Jimmie Lee Little*

/s/ *Craig A. Gillen*
Craig A. Gillen
Gillen Withers & Lake, LLC
400 Galleria Parkway, Ste 1920
Atlanta, GA 30339
Telephone: (404) 842-9700
Facsimile: 404-842-9750
E-mail: cgillen@gwllawfirm.com
*Attorneys for Defendant Gary Brian Roberts*

/s/ *Michael S. Feldberg*
Michael S. Feldberg
Reichman Jorgensen LLP-New York
750 Third Avenue, 24th Floor
New York, New York 10017
212-381-4970
Fax: 212-381-4971
Email: mfeldberg@reichmanjorgensen.com
*Attorneys for Defendant Roger Born Austin*

/s/ *James A. Backstrom*
James A. Backstrom
James A. Backstrom, Counsellor at Law
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
215-864-7797
Email: jabber@backstromlaw.com
*Attorney for Defendant William Vincent Kantola*

/s/ *John A. Fagg, Jr.*
John A. Fagg, Jr.
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
704-331-3622
Fax: 704-378-2092
Email: johnfagg@mvalaw.com
*Attorneys for Defendant William Wade Lovette*

/s/ *Barry J. Pollack*
Barry J. Pollack
Robbins Russell Englert Orseck Untereiner & Sauber LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
202-775-4514
Fax: 202-775-4510
Email: bpollack@robbinsrussell.com
*Attorneys for Defendant Rickie Patterson Blake*

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of December, 2020, I electronically filed the foregoing **DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION FOR BILL OF PARTICULARS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Michael F. Tubach*
Michael F. Tubach