IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.   JAYSON JEFFREY PENN,
2.   MIKELL REEVE FRIES,
3.   SCOTT JAMES BRADY,
4.   ROGER BORN AUSTIN,
5.   TIMOTHY R. MULRENIN,
6.   WILLIAM VINCENT KANTOLA,
7.   JIMMIE LEE LITTLE,
8.   WILLIAM WADE LOVETTE,
9.   GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

       Defendants.

---

**DEFENDANTS' MOTION PURSUANT TO RULE 17(C) FOR COURT ORDER AUTHORIZING SUBPOENAS DUCES TECUM FOR SUPPLY MANAGEMENT SERVICES, INC. AND RESTAURANT SUPPLY CHAIN SOLUTIONS, LLC TO PRODUCE DOCUMENTARY EVIDENCE IN ADVANCE OF TRIAL**

---

Defendants, by and through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure ("Rule") 17(c), respectfully request that the Court issue an order authorizing the issuance of the attached subpoenas duces tecum to require the production of documentary evidence in advance of trial.

### I.     INTRODUCTION

In the superseding indictment, the government alleges a sprawling, seven-year bid-

rigging and price-fixing conspiracy involving the entire broiler chicken industry.  During this period, the chicken suppliers that the defendants worked for submitted hundreds, if not thousands, of bids in response to requests for proposals to the customers the superseding indictment alleges were the victims of the alleged price-fixing conspiracy.  However, the superseding indictment sets forth factual allegations in support of the alleged conspiracy that describe only fourteen pricing episodes, Dkt. 101 ("Super. Indict.") ¶¶ 51–145, half of which involve just two customers— Popeyes Louisiana Kitchen ("Popeyes") and Kentucky Fried Chicken ("KFC").  And while the government has produced more than 13 million documents in discovery to date, only a miniscule fraction of those documents come from the purchasing cooperatives used by Popeyes and KFC—Supply Management Services, Inc. ("SMS") and Restaurant Supply Chain Solutions, LLC ("RSCS"), respectively—to which the suppliers submitted bids and with which they negotiated the Popeyes and KFC purchasing contracts.

The requested subpoenas primarily seek documents directly relevant to the bidding episodes involving Popeyes and KFC described in the superseding indictment.  For the reasons set forth below and in an *ex parte* memorandum filed under seal, the defendants cannot properly prepare for trial without these documents.

The government has made clear, however, that the episodes alleged in the superseding indictment are only examples of the bid-rigging and price-fixing it will seek to prove at trial.  Yet, it has refused to provide a complete list of the bids that were allegedly rigged or the prices that were allegedly fixed.  As a result, the defendants also need to obtain documents related to all of the negotiations involving chicken sales to Popeyes and KFC to prepare their defenses to the government's case.  Accordingly, the subpoenas additionally seek documents related to SMS's

and RSCS's business during the period of the conspiracy alleged in the superseding indictment.

The defendants apply for the issuance of pretrial subpoenas now to allow sufficient time for production and review of the materials in advance of trial.

## II.   BACKGROUND

On June 2, 2020, the grand jury returned a one-count indictment against four defendants for a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Dkt 1 ("Indict.") ¶ 1. In this indictment, the government alleged a conspiracy between 2012 and 2017 consisting of a "continuing network" whose purpose was "to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States." *Id*. ¶¶ 28–29. The indictment described eight specific pricing incidents involving five customers (*id.* ¶¶ 32–77), but suggested that these incidents were only "part" of the alleged conspiracy. *Id*. ¶ 28 ("It was part of the conspiracy . . . ."); *id*. ¶ 29 ("It was further part of the conspiracy . . . ."); *id*. ¶¶ 30, 31 (same).

On October 6, 2020, the grand jury returned a superseding indictment against ten defendants for one count of a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and two other counts against only defendant Jimmie Lee Little. Super. Indict. ¶¶ 1, 147, 151. The superseding indictment again alleges a conspiracy whose purpose was "to suppress and eliminate competition through rigging bids and fixing prices and price-related terms for broiler chicken products sold in the United States" (*id*. ¶ 47), but alleges a broader price-fixing and bid-rigging conspiracy than the original indictment.

The government now alleges a conspiracy between 2012 and at least 2019 relating to a larger number of suppliers of broiler chicken products, a larger number of customers, and a

3

wider range of expressly identified products. *Id.* ¶¶ 1, 3, 47–50. The superseding indictment describes fourteen separate pricing incidents (*id.* ¶¶ 51–143), with eight customers and one distributor that allegedly are part of the conspiracy (*id.* ¶¶ 36–44), but again alleges that the incidents described in the indictment only formed "part" of the alleged conspiracy. *Id.* ¶¶ 47–50 ("It was part of the conspiracy . . . ."); *id.* ¶ 48 ("It was further part of the conspiracy . . . ."); *id.* ¶¶ 49, 50 (same).

The government alleges that SMS and RSCS were victims of the alleged conspiracy. *See* Dkt. 195 at 3. Two of the episodes in the superseding indictment relate to SMS's negotiations with chicken suppliers on behalf of Popeyes (Super. Indict. ¶¶ 120–26, 136–43), and five of the episodes relate to RSCS's negotiations with chicken suppliers on behalf of KFC (*id.* ¶¶ 51–65, 71–76, 87–107, 129–35).

On October 27, 2020 and November 30, 2020, defendants filed motions for a bill of particulars directed at the superseding indictment. Dkts. 179–81, 183, 203–08. The government filed a consolidated opposition on December 14, 2020 (Dkt. 217), and the defendants filed a consolidated reply on December 31, 2020 (Dkt. 225). The motions are currently pending.

The government has produced more than 13 million documents to date, comprising 10 terabytes of data. The defendants have been diligently reviewing these documents since the government began its rolling production. Although the review is far from complete, the defendants have conducted electronic document searches that have identified substantial gaps in the production, particularly with respect to SMS and RSCS. The government has produced 25,071 documents from SMS and 9,338 documents from RSCS. By comparison, the government has produced 1,568,891 documents from Pilgrim's Pride and 4,471,975 documents

4

from Tyson Foods.  Most of the SMS and RSCS documents have nothing to do with the incidents described in the superseding indictment.  And, for RSCS, none of the documents come directly from the lead RSCS negotiator involved in multiple incidents described in the superseding indictment; only five of the documents from RSCS even include this individual as an identified correspondent.[1]

The defendants have drafted the requested subpoenas in a targeted way to obtain a limited set of relevant, admissible documents that they cannot otherwise procure, as they are solely in the possession of SMS and RSCS.  The defendants seek correspondence and other documents directly related to SMS's and RSCS's communication with chicken suppliers and other key individuals and companies involved in the incidents in the superseding indictment.  The defendants also seek documents related to communications both externally and internally at SMS and RSCS related to purchasing decisions throughout the alleged conspiracy period.  Evidence provided from these requests is necessary to counter the government's allegations that suppliers illegally fixed prices.  The defendants make these requests in good faith, knowing (i) that key documents have not been obtained by the government in its investigation, (ii) that the defendants can only obtain them directly from the cooperatives, and (iii) that these documents are essential to prepare their defenses in advance of trial and to avoid future delay.

## III.     LEGAL STANDARD

Rule 17(c) authorizes a court to issue a subpoena duces tecum directing a witness to produce any "books, papers, documents, data, or other objects the subpoena designates" in court before trial so that the parties and their attorneys may "inspect all or part of them."  The purpose

---

[1] Additional information regarding the identity of specific individuals involved in the requests is

of Rule 17(c) is to expedite trial, and such subpoenas are "encouraged in complex criminal cases."  *United States v. Nixon*, 418 U.S. 683, 699 n.11 (1974).

In *Nixon*, the Supreme Court set out a four-part test for the issuance of a Rule 17(c) subpoena: the moving party must show (1) that the documents are relevant and evidentiary; (2) that they are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (3) that the party cannot properly prepare for trial without the production and failure to do so may unreasonably delay trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."  *Id.* at 699; *see also United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006).  Put another way, the moving party "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  *Nixon*, 418 U.S. at 700.  A court may quash a Rule 17(c) subpoena if production of the documents would be "unreasonable or oppressive, but not otherwise."  *Id*. at 699.

## IV. ARGUMENT

### A. Defendants' Request Satisfies the *Nixon* Test

#### 1. Relevance

Although the government has produced more than 13 million documents, many are unrelated to the incidents in the superseding indictment.  To prepare for trial, defendants need communications from key individuals related to the incidents described in the superseding indictment.  Acquiring these documents is essential to the defendants' preparation of their defense, as they will refute the government's allegations of price-fixing and bid-rigging.  The defendants have filed herewith a supplemental *ex parte* memorandum in support of this motion

---

included in the accompanying supplemental *ex parte* memorandum filed under seal.

explaining in detail why the documents are essential to the defendants' preparation of their defense. The memorandum has been filed *ex parte* because it discloses the defendants' trial strategy and defenses, which the government should not receive. A list of requests for SMS are included in Attachment A to the SMS subpoena and a list of requests for RSCS are included in Attachment A to the RSCS subpoena; both accompany this motion as individual exhibits. These proposed subpoenas meet each element of the *Nixon* test.

### a. SMS Requests

**Requests 1–4**. These requests are narrowly tailored to seek communications and phone records from SMS related directly to the two incidents described in the superseding indictment involving Popeyes.

**Requests 5–10.** Requests 5 through 10 seek documents for the time period charged in the superseding indictment, but not limited to specific episodes. The government has made clear that the incidents described in the indictment are only examples of the incidents it intends to introduce at trial, but it has refused to provide a list of such incidents. Instead, the government has pointed the defendants to the millions of documents it has produced. The documents contain information about hundreds if not thousands of different bidding episodes that occurred during the period of the alleged conspiracy. The defendants have filed motions seeking a bill of particulars for the superseding indictment, which are pending. Without knowing which bidding episodes the government alleges were part of the charged scheme to fix prices, the defendants are required to prepare to defend each of the bids made during the alleged conspiracy period and need documents pertaining to these bids to do so.

### b. RSCS Requests

**Requests 1, 6.**  These requests are narrowly tailored to seek documents from RSCS related directly to the five incidents described in the superseding indictment involving KFC.

**Requests 2–5, 7.**  Requests 2 through 5 and 7 seek documents for the time period charged in the superseding indictment, but not limited to the specific incidents contained therein.  While the requests are not limited to specific allegations in the superseding indictment, they seek only specific, targeted information relevant to the government's allegations and the charged offense.  The defendants require this further information from RSCS in order to defend against the charges in the superseding indictment.

## 2. Admissibility

With respect to admissibility, many of these documents may constitute business records or may be sought to be admitted for a purpose other than proving the truth of the matter asserted (such as impeachment).  Fed. R. Evid. 803(6), 801(d)(1)(B).  Further questions of admissibility should be reserved for trial.

## 3. Not otherwise procurable in advance of trial

The documents are not otherwise procurable reasonably in advance of trial.  The subpoenas seek nonpublic communications and other documents possessed by SMS, RSCS, and their employees.  These documents are not in the defendants' possession, and the defendants have no reasonable means by which to access them absent issuing subpoenas directly to the cooperatives.

## 4. Document are needed to prepare for trial

Production of the documents will enable the defendants to prepare for trial.  The

defendants need access to the documents to counter the government's allegations that they entered into an agreement to fix prices and rig bids between 2012 and 2019 generally and with respect to the two incidents related to SMS and five incidents related to RSCS that are specifically referenced in the superseding indictment. The defendants also need this information to impeach the credibility of government witnesses.

### 5. Documents are sought in good faith

The defendants make this request in good faith, tailoring the subpoenas as narrowly as possible to target material evidence that the defendants have not found in the government's production. Although SMS and RSCS maintained an active business relationship with the chicken suppliers named in the indictment throughout the entire seven-year period described in the superseding indictment, the current government production only contains an incomplete set of documents from a handful of individuals at these companies. Important individuals who were involved directly in these incidents, such as the lead negotiator from RSCS, are essentially absent, as the production did not include any documents directly from this individual and only included five documents from other sources on which this individual was a recipient or sender. The defendants have good reason to believe that additional documents exist and seek to procure them for the sole purpose of trial preparation.

The *Nixon* elements uniformly weigh in favor of granting production prior to trial, and issuance of the defendants' proposed subpoenas would further the purposes of Rule 17(c) in minimizing any undue delay at trial itself.

## V. CONCLUSION

Pretrial production of additional documents is necessary in this complex case so that the

defendants can properly prepare for trial.  The defendants have constructed the requests narrowly to target documents solely in the possession of SMS and RSCS in the good-faith belief that these important documents are essential to preparation of their defense and cannot otherwise be obtained by the defendants.  Issuance of these subpoenas prior to trial is essential to ensure trial can proceed without delay once it begins.

Dated:  March 18, 2021

Respectfully submitted,

s/ *Michael F. Tubach*
Michael F. Tubach (Cal. Bar No. 145955)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: 415-984-8700
Facsimile: 415-984-8701
E-mail:  mtubach@omm.com
*Attorney for Defendant Jayson Jeffrey Penn*

s/ *Richard K. Kornfeld*
Richard K. Kornfeld
Recht Kornfeld, P.C.
1600 Stout Street, Suite 1400
Denver, CO  80202
303-573-1900
Fax: 303-446-9400
Email: rick@rklawpc.com
*Attorney for Defendant Mikell Reeve Fries*

s/ *Bryan B. Lavine*
Bryan B. Lavine
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, N. E., Suite 3000
Atlanta, Georgia 30308
404-885-3170
Fax: 404-962-6613
Email: bryan.lavine@troutman.com
*Attorney for Defendant Scott James Brady*

s/ *Michael S. Feldberg*
Michael S. Feldberg
Reichman Jorgensen LLP-New York
750 Third Avenue, 24th Floor
New York, New York 10017
212-381-4970
Fax: 212-381-4971
Email: mfeldberg@reichmanjorgensen.com
*Attorney for Defendant Roger Born Austin*

s/ *Elizabeth B. Prewitt*
Elizabeth B. Prewitt
Latham & Watkins LLP
85 Third Avenue
New York, New York 10022
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: elizabeth.prewitt@lw.com
*Attorney for Defendant Timothy R. Mulrenin*

s/ *James A. Backstrom*
James A. Backstrom
James A. Backstrom, Counsellor at Law
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
215-864-7797
Email: jabber@backstromlaw.com
*Attorney for Defendant William Vincent Kantola*

| | |
|---|---|
| s/ *Mark A. Byrne* | s/ *John A. Fagg, Jr.* |
| Mark A. Byrne (Cal. Bar No. 116657) | John A. Fagg, Jr. |
| BYRNE & NIXON LLP | Moore & Van Allen PLLC |
| 888 West Sixth Street, Suite 1100 | 100 North Tryon Street, Suite 4700 |
| Los Angeles, CA 90017 | Charlotte, NC 28202 |
| Telephone: 213-620-8003 | 704-331-3622 |
| Facsimile: 213-620-8012 | Fax: 704-378-2092 |
| Email: markbyrne@byrnenixon.com | Email: johnfagg@mvalaw.com |
| *Attorney for Defendant Jimmie Lee Little* | *Attorney for Defendant William Wade Lovette* |
| | |
| s/ *Craig A. Gillen* | s/ *Barry J. Pollack* |
| Craig A. Gillen | Barry J. Pollack |
| Gillen Withers & Lake, LLC | Robbins Russell Englert Orseck Untereiner & Sauber LLP |
| 400 Galleria Parkway, Ste 1920 | |
| Atlanta, GA 30339 | 2000 K Street N.W., 4th Floor |
| Telephone: (404) 842-9700 | Washington, DC 20006 |
| Facsimile: 404-842-9750 | 202-775-4514 |
| E-mail: cgillen@gwllawfirm.com | Fax: 202-775-4510 |
| *Attorney for Defendant Gary Brian Roberts* | Email: bpollack@robbinsrussell.com |
| | *Attorney for Defendant Rickie Patterson Blake* |

11

## CERTIFICATE OF SERVICE

      I hereby certify that on this 18th day of March, 2021, I electronically filed the foregoing **DEFENDANTS' MOTION PURSUANT TO RULE 17(C) FOR COURT ORDER AUTHORIZING SUBPOENAS DUCES TECUM FOR SUPPLY MANAGEMENT SERVICES, INC. AND RESTAURANT SUPPLY CHAIN SOLUTIONS, LLC TO PRODUCE DOCUMENTARY EVIDENCE IN ADVANCE OF TRIAL** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Michael F. Tubach*
Michael F. Tubach