IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     **JAYSON JEFFREY PENN**,
2.     **MIKELL REEVE FRIES,**
3.     **SCOTT JAMES BRADY**,
4.     **ROGER BORN AUSTIN**,
5.     **TIMOTHY R. MULRENIN**,
6.     **WILLIAM VINCENT KANTOLA**,
7.     **JIMMIE LEE LITTLE,**
8.     **WILLIAM WADE LOVETTE**,
9.     **GARY BRIAN ROBERTS**, and
10.   RICKIE PATTERSON BLAKE,

    Defendants.

**DEFENDANTS' JOINT SUPPLEMENTAL MOTION FOR THE SETTING OF DISCOVERY DEADLINES**

Defendants Jayson Penn, Mikell Fries, Scott Brady, Roger Austin, Timothy Mulrenin, William Kantola, Jimmie Little, William Lovette, and Gary Roberts (collectively "Defendants"), through their undersigned counsel, file this motion to supplement their June 29, 2021 Joint Motion for the Setting of Discovery Deadlines. (Doc. 274.)[1] Defendants are left with no choice but to ask for the Court's intervention to address the Antitrust Division's unprecedented slow pace of discovery productions, including the ongoing document dumps that include Rule 16 and *Brady* material not previously identified to Defendants. Defendants want to try this case in

---

[1] Defendants incorporate by reference the arguments made therein.

October. As explained below, however, it is clear that, for whatever reason, the government is unable or unwilling meet its discovery burden in a timely fashion, impinging on Defendants' ability to absorb the materials produced in time for trial less than 90 days from now.

The government indicted Defendants Penn, Fries, Brady, and Austin over a year ago, in early June 2020. (Doc. 1.) Last October, the government added the remaining six defendants when it filed the Superseding Indictment. (Doc. 101.) Yet it is evident the government is continuing to conduct an investigation it should have carried out before the grand jury returned the original indictment. Based on Defendants' review of witness interviews and documents secured post-indictment, it appears the government is scrambling to collect evidence needed for its case-in-chief at trial. The flurry of post-indictment investigative activity to shore up its indicted case is understandable: the discovery to-date shows that there is not a single government witness who will testify to the existence of the charged price-fixing agreement; there have been no guilty pleas by any individual in connection with this investigation; and there is a trove of exculpatory material that the government must contend with.

Indeed, the government appears to be holding required discovery and Brady materials well beyond customary production periods. Defendants have reason to believe the government has been in possession of some of these materials for nearly a year. When the government has eventually produced these documents, the productions have been voluminous. Just this month, the government made five productions comprising more than 200,000 records.[2] These enormous

---

[2] While the government identified a set of "highly relevant" documents at the outset of this case—a practice typically followed by the Antitrust Division in complex cases like this— Defendants no longer have confidence the designation is accurate, especially given the ongoing nature of the government's investigation. Defendants are therefore left with no choice but to comb through these voluminous and ongoing productions for both inculpatory and exculpatory material.

productions not only include reports of witness interviews with key individuals referenced in the indictment that, for some reason, are *just now* being interviewed by the government for the first time, but also contain Rule 16 and *Brady* material. The government does not have the right to continue to withhold needed information from Defendants so close to the beginning of trial. *See Williams v. Florida*, 399 U.S. 78, 82 (1970) (the adversary system is not "a poker game in which players enjoy an absolute right always to conceal their cards until played."). This pattern must end if trial is to proceed as scheduled on October 25, 2021, as Defendants are entitled under the Speedy Trial Act.

**Delayed Production of Key Witness Interview Reports.** The government conducted remarkably few interviews pre-indictment. Of the six alleged victim witnesses named in the original June 2020 Indictment, the government failed to interview five pre-indictment. Of the seven alleged victim witnesses named in the October 6, 2020 Superseding Indictment, the government had not interviewed three pre-indictment. To Defendants' knowledge, the government still has not interviewed one individual alleged to be a victim witness in both the original and Superseding Indictment. Further, of the potential victims and witnesses on Defendants' various no-contact lists submitted in connection with pre-trial arraignment, the government did not interview half of them pre-indictment. In an investigation that has been ongoing since at least the spring of 2019, this is baffling.

In a scramble to play catch up, the government has been conducting interviews of key witnesses on a rolling basis, in some instances waiting months to produce corresponding FBI Form 302s ("302s"), Investigative Record Forms ("IRFs") and/or Reports of Interview ("ROIs"). It is standard practice for the Antitrust Division to turn over such reports on an expedited basis, because they often—as they do here—contain *Brady* material. Defendants have repeatedly asked

3

the government to cure this deficiency in its processes and to promptly produce witness interview reports after they occur. For example, on June 10, 2021, Defendants asked the government to confirm a date by which productions of its witness interview reports would be complete, and to promptly produce all reports of interviews that had already occurred. In response, on June 15, the government said that it would "not provide such a date," citing the Court's April 28, 2021 Order as grounds for not doing so. Further, the government only agreed to produce "reports that are ready to produce," whatever that means. Perhaps most notably, the government attached to its letter several copies of witness interview reports which were "in the production queue"—one of which concerned a key customer who is referenced 15 times in the Superseding Indictment and who had been interviewed *nearly eight months earlier*. Another key witness, whom the government interviewed for the first time in March 2021, appeared taken aback by the government's delay in contacting him, noting in his interview with the FBI that he had been "waiting for [the] day" the government would want to speak with him, but assuming the government did not involve him in its investigation because it knew something that "obviously [he didn't] know because [otherwise the government] would have had to have talked to [him]."

**Delayed Production of Rule 16 and *Brady* Material.** The aforementioned witness interviews are paramount to Defendants' defense, and in many instances contain vital Rule 16 and *Brady* materials that exculpate Defendants. In addition to the witness interviews, this month the government has produced an additional 60 pages of summary notes of counsel proffers. These summary notes do not provide Defendants with any information about the dates or lengths of the interviews, and as such, Defendants are unable to understand how long ago these proffers

4

happened.[3] Similar to the witness interview notes, these proffer notes are of paramount importance to Defendants: in addition to containing exculpatory evidence, they also many times provide information that may lead Defendants to uncover exculpatory information, through the issuance of third party subpoenas or otherwise. The consequences of delay in the production of these documents cannot be overstated. With trial fast approaching in October, the government must turn over these documents in a timely manner so that Defendants may not only digest them, but also pursue other evidence that they need to mount their defense.

**Other Delayed Productions**. Other aspects of the government's productions indicate that it has been slow to produce documents as a general matter. For example, Defendant Scott Brady's phone was seized by search warrant on June 30, 2020, after the grand jury returned the original indictment in early June 2020. Brady's counsel completed its review of Brady's data for privilege and other purposes on November 10, 2020, at which time the government took possession of Brady's phone data. The government delayed production of those materials for 246 days before finally producing them to the other Defendants on July 14, 2021. Similarly, on July 16, 2021, the government produced transaction-level sales data from an alleged victim identified in the original indictment, containing 25 million data observations and showing transactions from 2006 until 2012 for approximately 170 different products. It is unclear why the government is just producing these documents now—this entity has been a known alleged victim since at least June 2020, and this data has likely been in the government's possession since then.

---

[3] Defendants previously requested that the government provide the dates of any proffers, as well as the identities of the individuals who provided the government with the information. The government refused this request, hindering Defendants' efforts to contact individuals with relevant information or otherwise investigate the information.

While Defendants understand that it is often the case that there are supplemental witness interviews and discovery productions leading up to trial, the government's conduct in this case is beyond the pale and is completely out of line with Department of Justice standards, and contrary to basic principles of fairness. Multi-defendant criminal antitrust trials are invariably complex and involve substantial discovery productions, but this matter is remarkable in terms of the government's failure to timely provide discovery. The undersigned counsel—all of whom have substantial experience with multi-defendant white-collar conspiracy trials, and include three former Antitrust Division prosecutors—have struggled to identify a similar circumstance in which the government produced such high volumes of Rule 16 and *Brady* material so long after indictment and court-ordered deadlines. Understanding that the Court previously allowed the government some latitude to provide productions after its agreed-upon December 1, 2020 deadline, the government's continued delays are now particularly troubling with a fast-approaching, lengthy, and complex trial.

The government has had over a year to bolster its case against Defendants and to timely produce critical case materials. Yet it continues to drag its feet with trial looming in approximately 90 days. That the government may be unprepared for trial is not the Defendants' burden to bear. Nor should it be the Court's.[4] Without a firm discovery deadline, Defendants face the prospect of repeatedly confronting an unfair and prejudicial choice: either request a continuance to dig through the continual dump of documents leaked by the government on a

---

[4] Defendants recognize that it was a significant undertaking for the Court to set aside 32 courtroom days given the backlog of cases in the wake of the COVID-19 global pandemic, and understand that finding another suitable trial date will be difficult without compromising Defendants' right to a speedy trial.

delayed timeline until it is finally ready to go to trial, or push forward regardless, but with an incomplete understanding of the record. This cannot be the case.

## REQUEST FOR RELIEF

Accordingly, in order to preserve the October 25, 2021 trial date, Defendants respectfully request that the Court require the government to produce by August 2, 2021 all additional documents currently in its possession that should be produced pursuant to *Brady*, Rule 16, and the various Discovery Memoranda and Orders, and that the government produce not later than August 31, 2021 all materials, including notes, memoranda, or Form 302s of interviews that came into possession after August 2, 2021.

Dated: July 23, 2021

Respectfully submitted,

s/ *Michael F. Tubach*

Michael F. Tubach (Cal. Bar No. 145955)
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111-3823
Telephone: 415-984-8700
Facsimile: 415-984-8701
E-mail: mtubach@omm.com

*Attorney for Defendant Jayson Jeffrey Penn*

s/ *Bryan B. Lavine*

Bryan B. Lavine
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street, N. E., Suite 3000
Atlanta, Georgia 30308
404-885-3170
Fax: 404-962-6613
Email: bryan.lavine@troutman.com

*Attorney for Defendant Scott James Brady*

s/ *Richard K. Kornfeld*

Richard K. Kornfeld
Recht Kornfeld, P.C.
1600 Stout Street, Suite 1400
Denver, CO 80202
303-573-1900
Fax: 303-446-9400
Email: rick@rklawpc.com

*Attorney for Defendant Mikell Reeve Fries*

s/ *Michael S. Feldberg*

Michael S. Feldberg
Reichman Jorgensen Lehman & Feldberg LLP - New York
750 Third Avenue, 24th Floor
New York, New York 10017
212-381-4970
Fax: 212-381-4971
Email: mfeldberg@reichmanjorgensen.com

*Attorney for Defendant Roger Born Austin*

*s/ Elizabeth B. Prewitt*
Elizabeth B. Prewitt
Latham & Watkins LLP
1271 Avenue of the Americas
New York, New York 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: elizabeth.prewitt@lw.com

*Attorney for Defendant Timothy Mulrenin*

*s/ Mark A. Byrne*
Mark A. Byrne (Cal. Bar No. 116657)
BYRNE & NIXON LLP
888 West Sixth Street, Suite 1100
Los Angeles, CA 90017
Telephone: 213-620-8003
Facsimile: 213-620-8012
Email: markbyrne@byrnenixon.com

*Attorney for Defendant Jimmie Lee Little*

*s/ Craig A. Gillen*
Craig A. Gillen
Gillen Withers & Lake, LLC
400 Galleria Parkway, Ste 1920
Atlanta, GA 30339
Telephone: (404) 842-9700
Facsimile: 404-842-9750
E-mail: cgillen@gwllawfirm.com

*Attorney for Defendant Gary Brian Roberts*

*s/ James A. Backstrom*
James A. Backstrom
James A. Backstrom, Counsellor at Law
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
215-864-7797
Email: jabber@backstromlaw.com

*Attorney for Defendant William Vincent Kantola*

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
Moore & Van Allen PLLC
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
704-331-3622
Fax: 704-378-2092
Email: johnfagg@mvalaw.com

*Attorney for Defendant William Wade Lovette*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 23rd day of July, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

                                            *s/ Nancy Hickam*

9