**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **JAYSON JEFFREY PENN,**
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. **TIMOTHY R. MULRENIN,**
6. **WILLIAM VINCENT KANTOLA,**
7. **JIMMIE LEE LITTLE,**
8. **WILLIAM WADE LOVETTE,**
9. **GARY BRIAN ROBERTS,**
10. **RICKIE PATTERSON BLAKE,**

    Defendants.

---

**UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS'
MOTIONS FOR THE SETTING OF DISCOVERY DEADLINES**

---

The government respectfully submits this consolidated opposition to Defendants' Joint Motions for the Setting of Discovery Deadlines, ECF Nos. 274, 291, pursuant to the Court's order of July 27, 2021, ECF No. 312. The defendants' renewed requests for a final discovery deadline—which the Court previously denied, ECF No. 256 at 3—if granted, would put the government at risk of violating its statutory and constitutional discovery obligations with respect to new documents and other evidence it continues to receive in its ongoing investigation, and would be inconsistent with the government's

duty to detect and prosecute illegal conduct. Therefore, the Court should again deny the defendants' motions.

## BACKGROUND

The Court set two initial discovery deadlines in this case—August 11, 2020,[1] and December 1, 2020[2]—both of which the government met by producing in excess of 12.5 million documents the government had received and processed at the time the indictments were returned. However, the government's investigation into the broiler chicken industry did not halt upon the return of the Superseding indictment in this case. To the contrary, the investigation continued uninterrupted and led to additional Sherman Act charges against three corporations and four individuals.[3] Those later charges—as recently as July 28, 2021—also did not halt the government's investigation. Indeed, the government revealed in the Conspiracy Guide attached to the *James* log brief, ECF No. 358 Attach. A, that there are many individuals and corporations who remain subjects of the investigation.

Consequently, as the government develops leads and pursues new avenues of inquiry as to uncharged participants in the conspiracy and other uncharged conduct, the government continues to uncover documents and other evidence, which—to the extent such materials fall within the government's discovery and other obligations and

---

[1] ECF No. 94, *modifying* ECF Nos. 28-30, 45.
[2] ECF No. 201, *modifying* ECF Nos. 138, 141, 144, 147, 150, 153.
[3] *See United States v. Pilgrim's Pride Corp*., No: 20-cr-330-RM (D. Colo.) (resolved by guilty plea February 23, 2021); *United States v. Claxton, et al.*, No. 21-cr-168-RM (D. Colo.) (indictment returned May 20, 2021; superseding indictment returned July 28, 2021); *United States v. McGuire et al.*, No. 21-cr-246-DDD (D. Colo.) (indictment returned July 28, 2021).

practices—have been, and will continue to be, produced to the defendants, as required by Federal Rule of Criminal Procedure 16(c) and the Court's orders, ECF Nos. 28–30, 45, 138, 141, 144, 147, 150, 153 ("If additional material subject to the disclosure obligations of Rule 16 come into the possession of the attorney for the government, the attorney for the government shall promptly disclose the material to the defendant.").

Presently pending before the Court are the defendants' second and third motions to set a final discovery deadline. The defendants' first motion requesting a discovery deadline was filed on February 5, 2021. ECF No. 235. The Court denied that motion on April 28, 2021. ECF No. 256 at 3. The defendants filed the currently pending second motion on June 29, 2021, and requested "that the Court require the government to produce by July 6, 2021 all additional documents currently in its possession that should be produced pursuant to *Brady* or Rule 16, or the Discovery Memoranda and Orders, and that the government produce not later than August 13, 2021 all materials, including notes, memoranda, or Form 302s of interviews that come into the government's possession after July 6, 2021." ECF No. 274 at 7. The defendants filed the currently pending third motion on July 23, 2021, and requested "that the Court require the government to produce by August 2, 2021 all additional documents currently in its possession that should be produced pursuant to *Brady*, Rule 16, and the various Discovery Memoranda and Orders, and that the government produce not later than August 31, 2021 all materials, including notes, memoranda, or Form 302s of interviews that came into possession after August 2, 2021." ECF No. 291 at 7.

3

## ARGUMENT

The defendants' second and third motions for a discovery deadline should be denied. As the government explained in response to the defendants first motion for a discovery deadline:

> [A] final discovery deadline would be inconsistent with the government's disclosure obligations and practices, including the government's ongoing disclosure obligations and practices under *Brady/Giglio* and Jencks. A final discovery deadline would also impinge upon the government's ongoing duty to detect and prosecute criminal conduct because, after any such deadline passes, the government could not receive new evidence without risking a violation of either the Court-ordered deadline (if the government produces newly received evidence), or Rule 16(c) and the Court's prior orders requiring continuing production (if the government does not produce newly received evidence). Given the importance of continuing the investigation—which deals with anticompetitive conduct in the sale of a ubiquitous food staple—the Court should decline to impose a final discovery deadline.

ECF No. 242 at 3-4. In other words, the imposition of a discovery deadline would improperly hamstring the Department of Justice in executing its duty "to detect and prosecute crimes against the United States," 28 U.S.C. § 533(1).

The government has been unable to find a case with a request analogous to what defendants seek here (nor have the defendants cited one), but courts that have considered discovery issues related to ongoing investigations frequently give great weight to the public interest in protecting continuing criminal investigations. *See, e.g.*, *United States v. Edmonson*, 962 F.2d 1535, 1545-46 (10th Cir. 1992) ("There is *always* a possibility that new evidence will be discovered…This may be particularly so when the indictment charges a conspiracy") (quoting *United States v. Atisha*, 804 F.2d 920, 925 (6th Cir. 1986)); *Atisha*, 804 F.2d at 925–27 (6th Cir. 1986) (government's failure to

4

disclose newly discovered evidence before trial and introduction of that evidence during trial did not violate discovery policy nor did it constitute variance of the indictment); *United States v. Mannino*, 480 F. Supp. 1182, 1188 (S.D.N.Y. 1979) (delaying the prosecution's production of certain discovery materials to avoid disclosing an ongoing criminal investigation and noting that "[a]lthough the public ordinarily has a strong interest in prompt disposition of criminal charges, in this case the public has an even stronger stake in assuring that a comprehensive inquiry into serious criminal activity is completed...."); *United States v. Smith*, 985 F. Supp. 2d. 506, 532 (S.D.N.Y. 2013) (in a public corruption case noting that "while there may be great public interest in learning about the Government's investigation of public officials, there is a greater public interest in allowing those investigations to run their course").

On the other side of the ledger, the defendants are not unfairly prejudiced in their ability to prepare for trial by the additional productions attendant to the continuing investigation. Already in the defendants' possession are, among other things, over 14 million documents, extensive information letters, interview reports, a lengthy speaking indictment, and—most importantly—the government's recently produced Conspiracy Guide and *James* log, ECF No. 358 Attachs. A, B. To be sure, the Conspiracy Guide is not intended to be all-encompassing, but, taken together with the *James* log, it is a valuable tool to aid the defendants in preparing their defense.[4]

Nor, as the defendants suggest, does the production of newly received evidence

---

[4] The defendants' claim of prejudice arising from ongoing productions is difficult to reconcile with their recent motions for broad Rule 17(c) subpoenas.

5

amount to a *Brady* violation. Although the defendants broadly claim that *Brady* material exists in the productions to date, the government's view is that the overwhelming evidence produced thus far has been either inculpatory or neutral, and there is no reason to think that will change with productions going forward. *See Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000) (explaining that the *Brady* standard "does not require a prosecutor to turn over files reflecting leads and ongoing investigations where no exonerating or impeaching evidence has turned up"). Tellingly, in spite of their claim, the defendants have not provided any specific examples of *Brady* material in the productions to date. "Simply suggesting," *United States v. Rodriguez-Rivera*, 473 F.3d 21, 26 n.1 (1st Cir. 2007), and "[m]ere speculation," *United States v. Parks*, 100 F.3d 1300, 1307 (7th Cir. 1996), are not sufficient to cast doubt on the propriety of the government's discovery practices. *Cf. United States v. Ramos*, 27 F.3d 65, 71 (3d Cir.1994) ("Mere possibility that the destroyed notes might have included *Brady* material without more is insufficient.")

Also unavailing, and somewhat tangential to the imposition of a deadline, are the defendants' suggestions that the government has committed various discovery violations. The defendants attempt to assert a discovery violation due to production delays. The government went to great efforts to produce 14+ million documents in a prompt, organized, and complete fashion to each of the defendants. True, there have been hiccups that caused delay for a relatively small number of documents. But those were the result of technical difficulties and promptly addressed by the government.

Likewise, with respect to witness interview reports generated during the

government's investigation, they have generally been provided to the defendants continuously and promptly.[5] And while defendants make vague references to *Brady* material in the interview reports, once again they fail to articulate any actual *Brady* information or violation.

The defendants further cite allegedly delayed production of a phone seized by the government on June 30, 2020. The phone and other materials obtained post-indictment were promptly provided to counsel for both Mr. Brady and his employer, Claxton, for a filter review. The defendants were put on notice of the materials by letter on August 5, 2020, and were provided with both the filter team's instructions and five related search warrants. While defendants may wish the privilege filter of the related digital media and review pursuant to the warrants could have gone more quickly, they can claim no prejudice or surprise resulting from any delay in production of these materials, as Mr. Brady—who joined in the defendants' motion—had the materials since July of 2020. If it were true, as the defendants suggest, that the materials were ready to be provided to defendants as soon as Mr. Brady's counsel completed his own review for Brady's claims of privilege, ECF No. 291 at 5, he could have shared them with his co-defendants while the government completed the filter review and determined what was within the scope of the warrant. In any event, they have possessed the filtered and

---

[5] The government concedes that the production of some interview reports was delayed due to technical issues, but the defendants received those reports in ample time to use them to prepare their defense. In any event, the government subsequently altered its method of production of interview reports to ensure that they do not get delayed in processing queues amidst more voluminous groups of documents obtained in the investigation of other subjects.

scoped phone since July 14, 2021, so there is ample time for the defendants to review the contents before trial.

## CONCLUSION

Given the importance of continuing the government's investigation and the lack of unfair prejudice to the defendants, the equities balance in favor of denying the defendants second and third motions for a discovery deadline. If the Court is requires additional information on the government's investigation, the government would welcome the opportunity to provide the Court with an *ex parte* submission.

Respectfully submitted this 16th day of August, 2021.

>By: /s/ Michael Koenig_____
>    Heather D. Call
>    Michael T. Koenig
>    Carolyn M. Sweeney
>    Paul J. Torzilli
>    Trial Attorneys
>    Antitrust Division
>    U.S. Department of Justice
>    Washington Criminal II Office
>    450 Fifth Street, N.W.
>    Washington, D.C. 20530
>    Tel: (202) 616-2165
>    Email: michael.koenig@usdoj.gov
>
>    *Attorneys for the United States*