IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | |
| 1. JAYSON JEFFREY PENN, <br> 2. MIKELL REEVE FRIES, <br> 3. SCOTT JAMES BRADY, <br> 4. ROGER BORN AUSTIN, <br> 5. TIMOTHY R. MULRENIN, <br> 6. WILLIAM VINCENT KANTOLA, <br> 7. JIMMIE LEE LITTLE, <br> 8. WILLIAM WADE LOVETTE, <br> 9. GARY BRIAN ROBERTS, and <br> 10. RICKIE PATTERSON BLAKE, | No. 20-cr-00152-PAB |
| Defendants. | |

**DEFENDANT JAYSON JEFFREY PENN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE SUPERSEDING INDICTMENT**

Notwithstanding its contention that "[v]iewed practically and as a whole, the Superseding Indictment is more than adequate," Doc. 415 at 12 ("Opp."), the Department of Justice ("DOJ") cannot cure a deficient indictment with a tepid self-endorsement. As its consolidated opposition to Defendants' motions to dismiss confirms, the superseding indictment fails to allege (i) an unlawful agreement in anything but conclusory fashion or (ii) that Mr. Penn knowingly and intentionally entered into any conspiracy.

First, the DOJ does not identify the unlawful agreement with any specificity. Instead, the opposition distorts the applicable legal standard and wrongly contends that parroting the elements of the alleged crime is enough to charge Mr. Penn with an amorphous antitrust conspiracy. Second, the DOJ argues that it sufficiently charged a *per se* offense because an

1

agreement to fix prices is *per se* illegal. That circular argument misses the point. Setting aside its use of the *per se* label and conclusory terms like "price fixing," the superseding indictment's actual allegations relate to the purported exchange of information among suppliers, conduct that does not amount to a *per se* unlawful agreement to rig bids or fix prices. Third, the DOJ points to factual allegations that describe ordinary, lawful business conduct in lieu of any showing that Mr. Penn knowingly and intentionally agreed to fix prices. The DOJ acknowledges that the superseding indictment must contain the latter; it simply cannot identify them. For each of these reasons, and those articulated in Mr. Penn's motion to dismiss (Doc. 308), the Court should dismiss the superseding indictment.

## ARGUMENT

I. **The Superseding Indictment Fails to Identify the Agreement Underpinning the Charged Offense with the Required Specificity.**

The DOJ concedes that the superseding indictment must "identify[] the nature of the unlawful restraint of trade" and "provid[e] key particulars about it." Opp. 2. The superseding indictment, however, only alleges an agreement in the most general and conclusory terms, and it fails to identify with any specificity the particular agreement Mr. Penn reached or how he purportedly joined it.

To begin, the DOJ argues that the indictment's first two paragraphs "alone" state a charge. *Id*. at 12-15. It contends that "the law requires nothing more" than the identification of a universe of products (broiler chickens), a class of supposed participants (chicken suppliers), a general time period (2012-2019), and a geography (the United States) supposedly impacted by the purported conspiracy. *Id*. at 15. Not so. As Mr. Penn explained in his motion, the law requires that the DOJ set out, at minimum, the "time, place, manner, means and effect" of the

2

alleged agreement. Doc. 308 at 6-8 ("Mot.") (quoting *United States v. Mobile Materials, Inc.*, 871 F.2d 902, 907 (10th Cir. 1989), *opinion supplemented on reh'g*, 881 F.2d 866 (10th Cir. 1989), *and abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010)). The first two paragraphs, which simply parrot the Sherman Act and describe the charges in general and conclusory language, fail to do so. *See id*. at 5, 7.

That the subsequent "Means and Methods" section in the superseding indictment includes "an additional 93 paragraphs" and "multiple sub-parts" does not solve the problem. Opp. 13. The sufficiency of an indictment depends not on the quantity of paragraphs or sub-parts, but on the substance of the allegations advanced and the quality of the detail provided. Mot. 6-8. Those required details are wholly missing here. In their place, the superseding indictment advances vague and amorphous allegations found nowhere else in Sherman Act jurisprudence ("continuing network"), internal inconsistences, and a smattering of disjointed events involving different suppliers, customers, products, and price terms spread over disparate time periods. *See id*. at 7-10. And because those allegations do not describe how Defendants formed any specific agreement, fixed any particular price, or rigged any identified bid, the superseding indictment bears almost no resemblance to indictments the Tenth Circuit has previously affirmed. *Id*. at 7; *Mobile Materials, Inc.*, 871 F.2d at 907.

The allegations in the superseding indictment also bear no resemblance to those at issue in *United States v. Consolidated Packing Corp.*, 575 F.2d 117 (7th Cir. 1978). *See* Opp. 14. The "plug-in" conspiracy in that case included a centralized bidding and rewards system to hold the conspiracy together, an organizing mechanism through which firms took turns winning or submitting false bids, a focus on a narrow product, established "jargon" clearly signifying

3

collusion, and scores of pleas providing direct evidence of agreement. 575 F.2d at 120-21. As discussed, nothing of the sort is alleged here.

These deficiencies are particularly apparent with respect to Mr. Penn, against whom the DOJ advances only an attenuated set of allegations that describe facially lawful business activity. Mot. 9. Those allegations in no way detail how Mr. Penn made the charged overarching conspiracy his own. *Id.*; *see United States v. Borelli*, 336 F.2d 376, 384-85 (2d Cir. 1964) (Friendly, J.); *United States v. Record*, 873 F.2d 1363, 1368 (10th Cir. 1989) ("it is . . . essential to determine what kind of agreement or understanding existed as to each defendant").

In identifying these deficiencies, Mr. Penn does not ask Court to look beyond the allegations or weigh evidence. Opp. 17-18. The Court need only read the superseding indictment and apply the relevant pleading standard to see that the "surplusage set out in connection with [the] allegations" describes actions by Mr. Penn that are "innocuous in themselves," do "more to confuse than to clarify," and therefore do not provide "fair indication of the nature or character of the scheme or artifice" purportedly "relied upon." *United States v. Curtis*, 506 F.2d 985, 992 (10th Cir. 1974) (reversing for failure to comply with Rule 7); *see* Mot. 4-5, 7-10.

II.     **The Superseding Indictment Fails to Allege an Agreement that is *Per Se* Unlawful.**

The DOJ does not dispute that the conduct alleged in the superseding indictment relates to information exchanges and a few instances of parallel behavior. Mot. 11-13. Nor does it contest that both information exchanges and parallel conduct are lawful. *See* Opp. 19-20. The DOJ nevertheless argues that it has pleaded a *per se* offense because the superseding indictment states in conclusory fashion that Defendants "agree[ed] to suppress competition by fixing prices and rigging bids." *Id*. at 22. But the formulaic recitation of the terms "price fixing" and "*per se*

4

offense" does not imbue the superseding indictment with allegations actually supporting a price fixing agreement, or mechanically trigger the *per se* standard.

"[E]asy labels do not always supply ready answers," and the Court must "characterize the challenged conduct as falling within or without that category of behavior to which we apply the label '*per se* price fixing.'" *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 8 (1979). In other words, the Court must examine the actual conduct alleged. In *United States v. U.S. Gypsum Co.*, 438 U.S. 422 (1978), for example, a grand jury charged defendants with a "continuing agreement . . . among the defendants and co-conspirators to (a) raise, fix, maintain and stabilize the prices of gypsum board; [and] (b) fix, maintain and stabilize the terms and conditions of sale thereof." *Id*. at 427. Yet because the "focus of the Government's price-fixing case" was competitor price exchanges, the trial court applied the rule of reason and the Supreme Court made clear that "such exchanges of information do not constitute a *per se* violation of the Sherman Act." *Id*. at 429, 441 n.16; *see id*. at 476 (Stevens, J., concurring in part).

As discussed in Mr. Penn's motion, the superseding indictment focuses on information exchanges. It alleges generically that Defendants participated in conversations with competitors, possessed information about competitor pricing, and received information regarding supplier margins. Mot. 11-12. The DOJ's opposition similarly describes only a "course of conduct" involving "communications." Opp. 21-22; *see also id*. at 2 (alleging that defendants "disclosed to each other their non-public bids, prices, and negotiating positions"). That conduct does not charge a *per se* price fixing agreement and must instead be assessed under the rule of reason, a framework the superseding indictment does not even attempt to satisfy. *See* Mot. 12-13.

This conclusion does not "confuse the means with the ends." Opp. 19. When, as here, the

5

DOJ *only* advances allegations that the Defendants exchanged information, it cannot simply attach a conclusory label of "*per se* price fixing." *See* Mot. 10-13; *see Gypsum*, 438 U.S. at 441 n.16 (despite price-fixing charge, price exchanges subject to rule of reason analysis). The cases on which the DOJ relies underscore this point. *See* Opp. 21. In *Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001), for example, the court applied the rule of reason because the prosecuting party only advanced allegations of information exchanges, which could not on their own allege "an actual agreement among defendants to fix" prices. *Id*. at 198-99 (Sotomayor, J.). In the DOJ's other cases, competitor conduct extended far beyond mere information exchanges and left "no doubt" about the *per se* nature of the charged conspiracies, including unambiguous agreements, formalized processes by which firms took turns winning or submitting false bids, a focus on a narrow product or service, and established "jargon" that clearly identified collusion. *Consol. Packaging*, 575 F.2d at 120-21 (seventy defendants entered pleas, clear turn-taking "accommodation" among bidders, and conspiracy-specific jargon left "no doubt" about conspiracy); *United States v. Beachner Constr. Co.*, 729 F.2d 1278, 1280-81 (10th Cir. 1984) (one competitor allocated projects among firms and orchestrated who would submit false bids on rotating basis); *United States v. Foley*, 598 F.2d 1323, 1331-32 (4th Cir. 1979) (competitor meeting at which each pledged to fix prices, enforcement actions by conspirators, and economic data demonstrating conspiracy in action). The superseding indictment in this case contains nothing of the sort. *See* Mot. 11-13.

Finally, the DOJ's conclusory references to the concept of "tacit" understandings can neither excuse the superseding indictment's failings nor support the application of the *per se* standard. Opp. 17, 21. Tacit understandings—when competing firms knowingly coordinate

6

market activity without an agreement—are not violations of the antitrust laws. *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 871 (7th Cir. 2015). They are "common reaction[s]" in concentrated markets and reflect "shared economic interests and [firms'] interdependence with respect to price and output decisions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007) (quotation marks omitted); *see Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993) (noting that "tacit collusion" does not violate the Sherman Act).[1]

### III. The Superseding Indictment Does Not Allege that Mr. Penn Knowingly and Intentionally Entered into an Unlawful Agreement.

The DOJ acknowledges that it failed explicitly to allege Mr. Penn knowingly and intentionally joined an unlawful agreement. Opp. 15-16. It argues instead that the superseding indictment implicitly alleges *Defendants'* general knowledge and intent based on the generic allegation that "*defendants* entered into and engaged in a continuing combination and conspiracy to suppress and eliminate competition by rigging bids and fixing prices." *Id*. (emphasis added).

With respect to Mr. Penn, the DOJ argues only that his knowledge of and intent to join an overarching conspiracy can be inferred because Mr. Penn discussed one competitor's price with a colleague at his company. *Id*. at 16-17. And while the DOJ suggests that Mr. Penn used that information to hold firm on his employer's pricing, no such allegation appears in the superseding

---

[1] The DOJ fails to acknowledge Mr. Penn's argument that even if the DOJ alleged a *per se* antitrust offense (it does not), the Court must still dismiss the superseding indictment because (i) the superseding indictment simply presumes the existence of an unreasonable restraint of trade without any supporting allegations and (ii) the use of the *per se* theory to conclusively presume a restraint is unreasonable takes an element of the Sherman Act charge away from the jury in violation of the Fifth and Sixth Amendments. *See* Mot 13 n.3. Nevertheless, had the DOJ responded specifically to Mr. Penn, its arguments would fail for the reasons explained in Defendant Rickie Blake's Reply in Support of His Motion to Dismiss Count One for Failure to State an Offense Against Him, which Mr. Penn adopts and incorporates by reference. Doc. 457 at 3-8 (Sept. 10, 2021).

indictment. *Compare* Opp. 16-17, *with* Super. Ind. ¶¶ 109-112. In any event, the mere possession and consideration of competitor information is legal and cannot, on its own, support an inference that Mr. Penn knowingly and intentionally entered into the charged conspiracy. Mot. 14-15; *In re Text Messaging*, 782 F.3d at 879 (courts can "without suspecting illegal collusion, expect competing firms to keep close track of each other's pricing and other market behavior and often to find it in their self-interest to imitate that behavior rather than try to undermine it"); Final Jury Instructions, *United States v. Lischewski*, 18-cr-203 (N.D. Cal.), Doc. 621 at 22 (instructing the jury it "is not illegal for a competitor to obtain, rely upon, and act on pricing and other information received from" "others involved in the production and sale of [their product]"). The DOJ's assertion that the superseding indictment contains several other "episodes" in which "*defendants* [took] actions in reliance on information they learned from each other," Opp. 17, does not support an inference that Mr. Penn knowingly and intentionally conspired. And the balance of the allegations involving Mr. Penn describe only ordinary and facially lawful conduct. Mot. 14-15.

*United States v. Metropolitan Enterprises, Inc.*, 728 F.2d 444 (10th Cir. 1984), the only case on which the DOJ relies, highlights the glaring deficiencies in the superseding indictment. Opp. 15. In that case, the indictment charged defendants with bid rigging and alleged specifically that "conspirators discussed the submission of prospective bids; agreed among themselves upon a low bidder; agreed that [the losing bidders] would receive a specified subcontract to perform certain work on the projects in question; and submitted intentionally high, noncompetitive bids, or withheld bids." *Metro. Enters.*, 728 F.2d at 453. As discussed, the DOJ does not allege conduct of that sort in the superseding indictment.

8

## CONCLUSION

For all the reasons discussed above and in Mr. Penn's motion to dismiss, the Court should dismiss the superseding indictment.

Dated:  September 10, 2021

Respectfully submitted,

*s/ Michael F. Tubach*

Chad David Williams
Jacqueline Ventre Roeder
DAVIS GRAHAM & STUBBS LLP-DENVER
1550 17th Street
Suite 500
Denver, CO 80202
Tel.: 303-892-9400
Fax: 303-893-1379
chad.williams@dgslaw.com
jackie.roeder@dgslaw.com

Michael F. Tubach (Cal. Bar. No. 145955)
Anna Pletcher (Cal. Bar. No. 239730)
Brian P. Quinn (D.C. Bar. No. 1048323).
O'MELVENY & MYERS LLP
Attorneys for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
Tel:  (415) 984-8700
Fax:  (415) 984-8701
mtubach@omm.com
apletcher@omm.com
bquinn@omm.com

9

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated: September 10, 2021                    *s/ Michael F. Tubach*

                                                                  Michael F. Tubach