IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

    Defendants.
_____

**ORDER**
_____

This matter is before the Court on Non-Party Pilgrim's Pride Corporation's Motion to Quash and/or Modify Subpoena [Docket No. 357].

On July 29, 2021, the Court granted defendants' request to issue certain Rule 17(c) subpoenas duces tecum to Pilgrim's Pride Corporation ("PPC"). Specifically, the Court granted Requests 1-3, 9, and 11-18. See Docket No. 315. PPC has filed a motion to quash or modify those subpoenas as improper under Federal Rule of

Criminal Procedure 17(c) and *United States v. Nixon*, 418 U.S. 683 (1974).[1]  *See* Docket No. 357 at 7-8.

Rule 17(c) provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates" and states that the court "may direct the witness to produce the designated items in court before trial."  Fed. R. Crim. P. 17(c)(1).  Rule 17(c) is "not intended to provide an additional means of discovery," but "to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials."  *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).  A party seeking a subpoena duces tecum under Rule 17(c) must establish:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974).  The party requesting the subpoena must satisfy each of these requirements.  *United States v. Boender*, 2010 WL 1912425, at *2 (N.D. Ill. May 12, 2010); *cf. United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006) (failure to show one of *Nixon* requirements precludes reversal of order denying Rule 17(c) motion).

---

[1] PPC also filed a motion to file a reply and to remove the restriction on defendants' response to the motion to quash.  *See* Docket No. 375.  Defendants inadvertently restricted the response as to PPC and provided PPC with a copy of their response.  Accordingly, the opposition to the restriction is moot.  However, the Court will grant PPC's request to file a reply.

"*Nixon* mandates that the party requesting the information identify the item sought and what the item contains, among other things." *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002). The defendant in *Morris* requested a Rule 17(c) subpoena for all documents collected by the FBI during the course of its investigation. *Id*. at 988. The Tenth Circuit noted that, "[n]ot only is Mr. Morris unable to specify what the items he requests contain, he is also unable to verify whether the requested material even exists." *Id*. at 991. In light of this lack of specificity, the court stated:

> Courts have held that requests for an entire file are evidence of an impermissible fishing expedition. *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984); *United States v. Hughes*, 931 F.2d 63, 1991 WL 59383, at *1 (10th Cir. 1991). It appears that defense counsel attempted to use the Rule 17(c) subpoena for impermissible discovery purposes. Mr. Morris' Rule 17(c) subpoena did not overcome the hurdle of specificity as required by *Nixon*.

*Id*.; *see also United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002) (Rule 17(c) allows only for the gathering of specifically identified documents which a defendant knows to contain relevant evidence).

**Requests 1 and 2**

Request 1 seeks all "contracts" and "bids" from 2012 through 2019, and Request 2 seeks all purchase orders between PPC and its competitors. PPC represents that, during this seven year period, PPC sold roughly 57 billion pounds of chicken to about 6,000 unique customers. Docket No. 357-1 at 2, ¶ 3. The Requests as written do not specify the customers, products, or time periods for the contracts or bids defendants seek. Defendants suggest narrowing the requests. Docket No. 374 at 4. They also argue that for "complex, multi-year schemes" requests for "all" documents is sometimes appropriate. *See* Docket No. 374 at 3-4 & n1. Putting aside whether, in certain

3

circumstances, "all" document requests are appropriate, PPC states that it "does not maintain a database of contracts and bids." See Docket No. 357 at 8. Even with defendants' narrowed request, PPC would still be required "to search through tens or even hundreds of thousands of emails for any contracts governing eight years of sales to two dozen customers." Docket No. 435 at 3. Nonetheless, PPC is "willing to re-produce *all* Bates-stamped documents that it produced in the *Broilers* litigation and to the [government] – including all the sales data." *Id.* at 4. Accordingly, the Court finds that, because PPC does not maintain a database and, as a result, conducting a search for responsive documents would involve an extensive review of information, compliance with the subpoena would be "unreasonable [and] oppressive." See Fed. R. Civ. P. 17(c)(2). Accordingly, the subpoena is quashed as to Requests 1 and 2, other than as to those documents to which PPC has agreed to produce.

**Request 3**

Request 3 seeks "all" documents relating to a price increase for broiler chicken sold to Costco. PPC contends that pricing and sales to Costco is irrelevant as Costco is not mentioned in the superseding indictment. See Docket No. 357 at 9-10. Nonetheless, PPC has agreed to provide certain contracts with Costco to defendants. *See id.* at 10 n.9. Defendants have agreed to narrow their request to those contracts, but still request certain communications. See Docket No. 374 at 6. Specifically, defendants seek communications related to Costco pricing from August 1, 2012 to March 31, 2013 involving certain PPC employees. *Id.* Defendants argue that it is these individuals who "had a role in the price increase" and whether the price increase was part of the alleged conspiracy is relevant to their defense. *Id.* at 6-7. The Court agrees

4

that communications with those identified in defendants' narrowing is sufficiently narrow and relevant to satisfy Rule 17(c). Accordingly, PPC shall provide those contracts it has agreed to produce as well as communications from August 1, 2012 to March 31, 2013 involving the eleven PPC employees identified in defendants' response. The remainder of the subpoena is quashed.

### Request 4

Request 4 seeks all of PPC's organizational charts, which PPC argues is overbroad, particularly given that PPC believes that defendants already have these documents in their possession. *See* Docket No. 357 at 10. In response, defendants agree to narrow the request to only sales staff between 2012 and 2019. *See* Docket No. 374 at 8. Defendants also contend that the organizational charts they do have are not truly organizational charts and "only one" of those documents reflected sales staff. *Id.* The Court agrees that an organizational chart of sales staff during the conspiracy period is relevant and specific pursuant to Rule 17(c) and *Nixon*. Accordingly, PPC shall provide organizational charts of sales staff between 2012 and 2019. The remainder of the subpoena is quashed.

### Request 5

Request 5 seeks several categories of employment-related documents that PPC argues is overbroad. *See* Docket No. 357 at 10. PPC represents that it does not maintain a database of these documents, making it burdensome to locate them. *Id.* at 11. Nevertheless, PPC has offered to "undertake a good-faith effort to locate and produce" information regarding employment contracts, compensation and bonus information, stock grants, key performance indicators and performance evaluations as

to certain individuals. *Id.* In response, defendants state that they only request such documents regarding the following individuals: Jayson Penn, William Lovette, Roger Austin, Jimmie Little, Jason McGuire, Justin Gay, Tim Stiller, and Scott Tucker. Docket No. 374 at 8. However, after agreeing to PPC's proposal to limit the request to five categories of information, *see* Docket No. 357-9 at 4, defendants seek to increase the category of information from five to eight. *See id.* Given the lack of a database, the Court finds the request as to the remaining three categories unduly burdensome. PPC shall produce the information it has agreed to produce as to the five categories of information regarding the eight employees. The remainder of the subpoena is quashed.

### Request 6

Request 6 seeks expense reports, calendar entries, and performance reviews for Beto Esteves, a former PPC employee. PPC has agreed to produce Mr. Esteves's performance reviews and believes it has "already produced thousands of documents from Mr. Esteves's email files, including any responsive calendar 'invites.'" Docket No. 357 at 11. Defendants argue that the expense reports are necessary to impeach Mr. Esteves as untrustworthy and that the calendar entries are necessary to prove that Mr. Esteves was not at certain meetings which he says illegal conversations regarding big rigging took place. *See* Docket No. 374 at 9. Regarding the expense reports, the Court finds that they are not relevant to the inquiry. While defendants suggest that the expense reports will demonstrate impeachment evidence, they do not explain why, nor do they narrow their request to a certain time period or category of expenses. *See id.* Accordingly, the Court finds that the expense reports are overly burdensome and

irrelevant. As to the calendar, the Court agrees with defendants that Ms. Esteves's calendar is relevant. As the Ninth Circuit reasoned, "[t]he diary and calendar were sought to establish that he did indeed meet with competitors and engage in discussions that the Sherman Act prohibits." *See United States v. MacKey*, 647 F.2d 898, 901 (1981). Similarly, defendants here suggest that the calendar will show that purported meetings where bid rigging conversations took place in fact never happened. PPC does not suggest that complying with this request is burdensome. Accordingly, in addition to the performance reviews that PPC has agreed to produce, PPC shall also produce any calendar or diary entries for Mr. Esteves. The remainder of the subpoena is quashed.

**Requests 7, 8, 10, 11**

Requests 7, 8, 10, and 11,[2] in various formulations, seek PPC's documents relating to investigations and white papers either provided to the government or prepared for the government involving potential antitrust violations. Specifically, Request 7 seeks all communications between PPC and the Department of Justice ("DOJ") or the Federal Bureau of Investigation ("FBI") as to their investigation since 2016. Request 8 seeks all documents relating to communications between PPC and the DOJ. Request 10 seeks documents that PPC disclosed or provided the DOJ or FBI. Finally, Request 11 seeks internal documents relating to PPC's investigation of any potential antitrust violation. PPC argues that these requests are either barred through the Court's previous orders, are protected by attorney-client privilege and work

---

[2] Defendants have withdrawn Request 9. *See* Docket No. 374 at 11.

product, or are burdensome and oppressive.  The Court agrees and will quash Requests 7, 8, 10, and 11.

First, as to Requests 7, 8, and 10, the Court finds that the subpoena is an attempt to circumvent the Court's previous ruling that these white papers and documents are not discoverable pursuant to Rule 16.  Defendants previously requested that the Court order the government to produce unredacted copies of "white papers" prepared by PPC's outside counsel and produced to the DOJ.  See Docket No. 316 at 1.  On July 29, 2021, the Court denied defendants' request.  See id. at 4.  The Court reasoned that the underlying facts in the white papers were not material nor was any attorney argument.  See id. at 3.  Moreover, the Court noted that the government was not obligated to produce documents it had already produced.  Id.

To obtain a Rule 17(c) subpoena in compliance with the Nixon standards, the documents sought must be evidentiary and relevant.  See 418 U.S. at 699-700.  Even assuming the Court would narrow the subpoena to only non-privileged communications, the Court has already concluded that documents and conversations between PPC and various government agencies is not relevant to the dispute.  Moreover, if these documents are in possession of the government, defendants should request them from the government, not PPC.  See United States v. Maxwell, 2021 WL 1625392, at *2 (S.D.N.Y. Apr. 27, 2021).  In fact, it appears that the government has already produced much of this information.  See Docket No. 316 at 2.  To the extent that these documents might be relevant, the Court finds that complying with the request would be unreasonable and oppressive.  PPC represents that searching for the documents would

take months and costs millions of dollars.  See Docket No. 357-1 at 8, ¶¶ 20-22.

Accordingly, the subpoena as to Requests 7, 8, and 10 will be quashed.[3]

As to Request 11, which seeks internal investigative reports, the Court finds those materials both irrelevant and their production burdensome.  Request 11 seeks all internal documents relating to any antitrust investigation.  Docket No. 357-3 at 11.  But defendants fail to explain how documents related to any and all investigations are relevant to the current conspiracy.  Defendants do not narrow their request in response to the motion, simply arguing that such documents "bear directly on the government's case-in-chief and the defense to it."  See Docket No. 374 at 13.  It is unclear how unrelated antitrust investigations bear on the government's case-in-chief.  Additionally – and again assuming the Court would limit the production to non-privileged documents – determining which documents are not privileged would be burdensome and oppressive.  PPC represents that identifying and redacting relevant documents would take months and involve "many dozens of PPC's inside and outside counsel," see Docket No. 435 at 8, which constitutes an unreasonable and oppressive burden on PPC.  Accordingly, Request 11 will be quashed.

---

[3] Defendants argue that, even if the white papers themselves are not otherwise relevant or admissible, the facts contained within them are and, as a result, should be produced.  See Docket No. 374 at 11.  However, the mere presence of factual material does not make an otherwise inadmissible document admissible.  "The purpose of the fact exception is to prevent parties from claiming they are immune from interrogation about the relevant facts of the case merely because they have been disclosed to counsel."  See Iowa Pac. Holdings v. National R.R. Passenger Corp., 2011 WL 1527599, at *3 (D. Colo. Apr. 21, 2011).  That the documents may contain relevant facts does not mean that the documents are admissible.  See United States v. King, 164 F.R.D. 542, 545 (D. Kan. 1996) ("That the requested material is 'potentially' relevant or admissible is not enough, for both tests must be satisfied when the evidence is sought.").

Wherefore, it is

**ORDERED** that Non-Party Pilgrim's Pride Opposition to Motion to Restrict and Leave to File a Reply [Docket No. 375] is **GRANTED in part** and **DENIED in part**.  PPC may file a reply.  The opposition to the motion to restrict is denied as moot.  It is further

**ORDERED** that Non-Party Pilgrim's Pride Corporation's Motion to Quash and/or Modify Subpoena [Docket No. 357] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that Requests 1 and 2 are quashed except as to those documents PPC has agreed to produce.  It is further

**ORDERED** that Request 3 is quashed except as to those contracts PPC has agreed to produce as well as communications from August 1, 2012 to March 31, 2013 involving the eleven PPC employees identified in defendants' response.  It is further

**ORDERED** that Request 4 is quashed except as to PPC organizational charts of sales staff between 2012 and 2019.  It is further

**ORDERED** that Request 5 is quashed except as to the eight employees and five subjects PPC has agreed to produce.  It is further

**ORDERED** that Request 6 is quashed except as to Beto Esteves's performance reviews that PPC has agreed to produce as well as Mr. Esteves's calendars or diaries.  It is further

**ORDERED** that Requests 7, 8, 10, and 11 are quashed.  It is further

**ORDERED** that PPC shall produce the requested material by September 30, 2021.

DATED September 14, 2021.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge