IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

    Defendants.

**PUBLIC VERSION**

## UNITED STATES' OMNIBUS MOTIONS *IN LIMINE*

The government respectfully submits the following motions *in limine* as prescribed by the Court's May 20, 2021 Order (ECF 264 at 6) and Practice Standards (Criminal Cases) at III.C.

1. *Procompetitive Justifications or Lack of Harm*

The Court should exclude evidence and argument irrelevant to this case, which charges the defendants with a *per se* illegal conspiracy. The prohibition should include evidence and argument that the conspiracy was either justified by procompetitive or other justifications, or did not result in harmful effects.

*Justifications*. The Court should prohibit the defendants from introducing evidence—including expert witness testimony—and arguments that there were procompetitive or other justifications for the conspiracy. "Whatever economic justification particular price-fixing agreements may be thought to have, the law does not permit an inquiry into their reasonableness. They are all banned because of their actual or potential threat to the central nervous system of the economy." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940); *see also United States v. Kemp*, 907 F.3d 1264, 1277 (10th Cir. 2018).

The government anticipates that the defendants may attempt to justify their conspiracy by introducing evidence and arguments that competitors discussed prices to benefit customers, or that the fixed prices were reasonable. Neither would be relevant under well-established case law, *Socony-Vacuum*, 310 U.S. at 224 n.59; *Kemp*, 907 F.3d at 1277.

*Lack of Harm*. The Court should prohibit the defendants from introducing evidence and argument that the conspiracy was not unlawful absent harmful effects. "Conspiracies under the Sherman Act are . . . not dependent on the 'doing of any act other than the act of conspiring' as a condition of liability." *Socony-Vacuum*, 310 U.S. at 252 (quoting *Nash v. United States*, 229 U.S. 373, 378 (1913)). It follows that evidence of a lack of harm does not absolve the defendants of liability, as they already conceded. ECF No. 243 at 2 ("[T]he crime is the agreement itself and . . . success or even overt acts are not elements of the offense[.]").

The government intends to introduce evidence of harm from the defendants' conspiracy. For example, customer witnesses will testify—and their contemporaneous documents will show—the harm they would experience if the defendants' price-increase demands were met. Perceived harm is also relevant to the defendants' motive. The government intends to introduce evidence of the amount of money that was at issue at the time bids were rigged and prices were fixed, as well as the amount of money transferred from customers to the defendants and their conspirators as a result of the rigged bids and fixed prices. But proof of actual harm is not required, and would only lead to a mini-trial that would needlessly waste the Court's and the jury's time.

*Expert Evidence*. Defendants' economic expert, Professor Snyder, should be prohibited from providing expert evidence on the procompetitive aspects of information exchanges. *See* ECF 299 at 7.[1] He should also be prohibited from providing testimony on the lack of anticompetitive harm whether from "observed price increases," lack of "supracompetitive pricing," or otherwise. *See id.* at 9.[2]

---

[1] The government moved to exclude certain expert testimony, and to require the defendants to submit expert disclosures that complied with Fed.R.Crim.P.16. *See* ECF 299. To the extent the Court permits the defendants to supplement their disclosures in lieu of exclusion, the government respectfully requests an opportunity to seek additional relief from the Court based on the supplemental disclosures.

[2] In its motion, the government sought to exclude certain of Professor Snyder's opinions for the additional reason that defendants failed to provide the required disclosures, and the disclosures provided to date do not provide the information needed for the government to assess whether such proffered opinions meet the requirements of Rules 702 and 703. Based on the (albeit inadequate) disclosures provided to date, some of the topics on which Professor Snyder has been noticed may be relevant to this case.

Similarly, the defendants' chicken expert, Paul Sinowitz, should be prohibited from testifying about procompetitive justifications for the challenged conduct including whether suppliers' collecting competitor information was procompetitive. ECF 299 at 5. Mr. Sinowitz should also be prohibited from opining that "Claxton was not a true competitor" of other chicken suppliers, ECF 299 at 12, because that is likewise irrelevant to this case. What matters is whether defendants Brady and Fries (both Claxton employees) knowingly joined the conspiracy. Whether Claxton was deemed a true competitor, even that was even true, is inconsequential. *See Socony-Vacuum*, 310 U.S. at 224 n.59 (A defendant "may be guilty of conspiring, although incapable of committing the objective offense.") And in any event, Claxton held itself out to customers as a competitor, and customers considered Claxton a competitor.[3]

2. <u>Additional Sinowitz Evidence</u>

The Court should also exclude testimony from Mr. Sinowitz based on his personal knowledge because it is irrelevant. For example, in the defendants' letter noticing Mr. Sinowitz as a chicken expert, they write that Mr. Sinowitz is expected to testify about contracts that he helped develop while employed at RSCS, KFC's purchasing cooperative. Exhibit A at 5-6. That is irrelevant. Mr. Sinowitz stopped working at RSCS eighteen years ago, in 2003, which is approximately nine years prior to the commencement of the charged conspiracy.

---

[3] In addition to inadequate disclosures, the government has also challenged Mr. Sinowitz on the grounds that his experience, which is the sole stated basis of his expertise, is mismatched with his proffered opinions, and therefore unreliable. ECF 299 at 10-12. Some of the topics noticed for Mr. Sinowitz could be unobjectionable, but he does not have the requisite experience to render reliable opinions on those topics.

4

*3. Good Intentions*

The Court should exclude argument or evidence that any of the defendants had procompetitive intentions, including intentions to benefit their customers, consumers of chickens, or chicken markets generally. Any "good intentions" defense is not relevant in a case charging a *per se* illegal conspiracy. *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972) ("The Court has consistently rejected the notion that naked restraints of trade are to be tolerated because they are well intended."); *see also Socony-Vacuum*, 310 U.S. at 221–22 (explaining that the Sherman Act does not allow as justifications "the good intentions of the members of the combination").

For example, the government anticipates the defendants to claim that they had good intentions by raising prices to ensure that broiler chicken suppliers would continue to produce the "small-bird" chickens required by fast-food restaurants. Even if true, that is not a valid defense to a *per se* charge of conspiracy to fix prices and rig bids and therefore evidence of good intentions should be excluded under Rule 402.

Moreover, in the event that the defendants are able to show the marginal relevance of evidence and argument regarding the actual state of the small-bird supply chain, the government may nevertheless seek to exclude under Rule 403 to avoid both juror confusion and a mini-trial on an issue that would needlessly waste the Court's and the jury's time. To be clear, the government intends to introduce evidence that the defendants *told* many fast-food customers that the supply of small birds—a supply vital to their businesses—was on the precipice of taking flight. But, regardless of the actual state of what was happening with the supply of small birds, the purpose of offering such

evidence will be limited to proving that the defendants coordinated their stories to convince their customers to succumb to massive price increases for their flagship products.

4. *Good Character*

The Court should prohibit the defendants from introducing reputation or opinion evidence that they are generous, charitable, patriotic, family-oriented, religious, or community participants. Evidence that a defendant possessed certain favorable character traits is admissible only when the trait is "pertinent" to the offense charged. *See* FED. R. EVID. 404(a)(2)(A); *see also, e.g.*, *United States v. Santana-Camacho*, 931 F.2d 966, 967 (1st Cir. 1991); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989). None of those characteristics are relevant to the charged offenses.

The defendants should also be prohibited from introducing evidence in the form of specific instances of good character, including caring for children, grandchildren, a spouse, or other family; attending religious services; performing charitable work or community service; or other forms of generosity. Federal Rule of Evidence 405(b) makes clear that unless a defendant's character or character trait is "an essential element of a charge, claim, or defense," he may not offer evidence of specific instances of good conduct. *See United States v. McMahan*, 394 F. App'x 453, 463 (10th Cir. 2010); *United States v. Talamante*, 981 F.2d 1153, 1156 (10th Cir.1992). Again, none of that is relevant to an essential element of a charge, claim, or defense in this case.

5. *Character Evidence Unrelated to Truthfulness*



Case No. 1:20-cr-00152-PAB   Document 567   filed 10/05/21   USDC Colorado   pg 7 of 14

### 6. *Motive Evidence*

The Court should admit evidence of defendants' compensation and pay structure because it is relevant to show that they have a profit motive to participate in a price-fixing and bid-rigging conspiracy, and it would not be unfairly prejudicial.

Evidence showing a defendant's motive for committing the crime charged is admissible, *United States v. King*, 560 F.2d 122, 133 (2d Cir. 1977), and compensation evidence, in particular, is relevant to a defendant's motive in antitrust cases. *See, e.g., United States v. Peake*, 143 F. Supp. 3d 1, 18 (D.P.R. 2013) ("Evidence of Peake's compensation is highly probative to show not only that he had a financial interest in the success of the corporation, but also to establish a motive for why Defendant allegedly participated in the conspiracy."). It is especially relevant in a bid-rigging and price-fixing conspiracy in which the objective of the conspiracy is to circumvent competition to boost revenues. *See United States v. Beachner Const. Co., Inc.*, 729 F.2d 1278, 1280 (10th Cir. 1984).

The government anticipates using documentary evidence to show that some of the defendants' compensation consisted of a base salary plus a bonus determined by revenue. For example, the government intends to introduce evidence from defendant Lovette's employment agreement while CEO at Pilgrim's Pride. *See* Exhibit B. The agreement enabled Lovette to reap bonuses for the company achieving certain EBITDA targets, with higher bonuses for higher EBITDA results. As another example, the government intends to introduce a Pilgrim's Pride Form 8-K dated May 3, 2019, showing then-CEO Jayson Penn was awarded a cash incentive bonus of 100% of his

salary for reaching the company's margin goals. *See* Exhibit C. These examples are not an exhaustive listing of the compensation information that the government would introduce at trial to show motive for the conspiracy.

The government anticipates proving the conspirators were motivated by the amount of increased revenue they would garner from submitting a rigged bid. For example, at the time that Pilgrim's was formulating its collusive bid to KFC, one conspirator computed for defendant Penn that the price increase resulting from the bid would boost the company's revenues by $400,000 per week, which amounts to more than $20 million in one year. *See* Exhibit D.

7. <u>Summary Evidence</u>

The Court should permit the government to introduce exhibits and testimony to summarize a large number of phone records and business documents such as chicken supply contracts, business-related correspondence, and emails and text messages over the span of several years maintained by the defendants' employers, their customers, and phone utility providers to facilitate the efficient presentation of trial evidence.

Federal Rule of Evidence 1006 permits a summary to prove the content of voluminous materials that cannot be conveniently examined in court. Such summary charts are appropriate where, as here, all the underlying documents are otherwise admissible, *State Office Sys., Inc. v. Olivetti Corp. of America*, 762 F.2d 843, 845 (10th Cir. 1985), and the documentation is sufficiently voluminous that it would be difficult for the jury to digest the evidence without summary exhibits, *United States v. Thompson*, 518 F.3d 832, 858 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 487 (2008).

For example, the government intends to introduce evidence of communications between defendant Little and individuals at competing suppliers, as reflected in the underlying toll records. Little, who stated words to the effect that he had no contact with individuals at competing suppliers outside of speaking to individuals at industry trade shows, told federal agents that he had not called or sent text messages to competitors. ECF No. 101 ¶ 148. Little's statements were false. He had hundreds or thousands of telephone and text communications with competitors. The government intends to elicit testimony from an FBI analyst who will prepare the summaries to demonstrate the analyst's method of loading and compiling information from the toll records into the summary exhibit. The underlying toll records are admissible as records of regularly conducted business, FED. R. EVID. 803(6), and are relevant to prove all counts of the Superseding Indictment. *See United States v. Hill*, 604 Fed. App'x 759, 784 (10th Cir. 2015); *United States v. Samaniego*, 187 F.3d 1222, 1224 (10th Cir. 1999).

As another example, the government intends to introduce summary exhibits that will provide basic information about the key events in the defendants' conspiracy. The summary exhibits will have content similar to the Conspiracy Guide that the government used as part of the *James* hearing, with the exception that any agent interpretation of those documents will be removed. *See* ECF 448.2. The government expects to use those summary exhibits during the direct examination of two law-enforcement case agents. One agent will testify about the conspiracy's actions directed toward increasing prices to KFC and other customers. The other agent will testify about other

10

conspiratorial events. The information appearing in the summaries will be drawn from voluminous, admissible evidence.

8. *Pilgrim's Pride Plea Agreement*

The Court should admit Pilgrim's Pride's plea agreement into evidence if the defendants on cross-examination call into question the credibility of Robbie Bryant, a government witness covered by the agreement. In a related case, Pilgrim's Pride pleaded guilty and executed a plea agreement. *See* Exhibit E. Pursuant to paragraph 16(a) of the agreement, the government will not bring criminal charges against Pilgrim's Pride's current employees (except employees carved out of the agreement, none of whom are Mr. Bryant) in exchange for their cooperation and testimony.

On Mr. Bryant's direct examination, the government plans to introduce that there is a plea agreement with Pilgrim's that provides Mr. Bryant will not be prosecuted for his role in the charged conspiracy. However, if the defendants use the agreement to impeach Mr. Bryant, the government intends to offer the agreement into evidence on re-direct examination for the limited purpose of demonstrating that he has an obligation to tell truth and that his protection under the plea agreement does not depend on the outcome of the trial. *See United States v. Woods*, 764 F.3d 1242, 1246 (10th Cir. 2014) ("[P]lea evidence must be used for the proper purpose of aiding the jury in its assessment of" witness credibility.).

9. *Penalties*

The Court should exclude evidence and argument of the potential penalties or consequences the defendants face if they are convicted, including: (a) the maximum

penalties; (b) that the defendants could be incarcerated; and (c) that the defendants would become felons and could be prohibited from obtaining some types of jobs or lose certain rights.

"[A] jury has no sentencing function" and "should be admonished to reach its verdict without regard to what sentence might be imposed." *Shannon v. United States*, 512 U.S. 573, 579 (1994) (internal quotations omitted). "[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Id.*

Therefore, the only purpose of that evidence is jury nullification and as such it should be excluded under Rules 402 and 403.

10. <u>Customer Complicity</u>

The Court should exclude all argument and evidence suggesting that complicity by customers or their representatives excused the defendants' conspiracy. The defendants' conspiracy trained their bid rigging and price fixing on customers that negotiated either directly with chicken suppliers or indirectly through the use of purchasing cooperatives. The defendants may attempt to argue and introduce evidence that customers or their representatives were complicit in the defendants' bid rigging and price fixing, and their complicity excuses the defendants for their actions.

First, such evidence and argument should be excluded because it is irrelevant. Customer complicity, if it existed, would be grounds for prosecution, rather than a defense to defendants' conspiracy. *Cf. United States v. Rutigliano*, 790 F.3d 389, 402

12

(2d Cir. 2015) ("If the RRB members were stupefied, then they were defrauded; if they were complicit (or coconspirators), that would have been a ground for prosecution, not a defense."). Second, even if somehow relevant, proving a customer's complicity would create a mini-trial that would needlessly waste the Court's and the jury's time. Therefore, customer complicity should be excluded under Rule 402 and 403.

11. *The Government's Deliberative Processes and Charging Decisions*

The Court should exclude evidence and argument of the government's deliberative processes of this and related cases, including evidence and argument related to the Antitrust Division's Leniency Program. Such matters are irrelevant to this case and would create a substantial danger of jury nullification.

"The Antitrust Division's Leniency Program allows corporations and individuals involved in antitrust crimes to self-report and avoid criminal convictions and resulting fines and incarceration."[4] The government does not expect to call any witness at trial who have benefitted from the Division's Leniency Program, and therefore, the credibility of any government witness receiving leniency in this or a related case is not an issue.

Selective prosecution evidence and argument is irrelevant, too. A "selective prosecution claim is not a defense on the merits to the criminal charge." *United States v. Armstrong*, 517 U.S. 456, 463 (1996).

---

[4] Antitrust Division, FREQUENTLY ASKED QUESTIONS ABOUT THE ANTITRUST DIVISION'S LENIENCY PROGRAM AND MODEL LENIENCY LETTERS, https://www.justice.gov/atr/page/file/926521/download (Jan. 26, 2017) at 2.

12. *Memory Expert: Mark Chambers*

According to defendants' disclosure, Dr. Chambers is expected to testify about "memory errors or false memory," "cognitive dissonance," and "false confessions." Ex. A at 3. Those opinions are unsupported as they are accompanied by no facts or data, and irrelevant. The Court should exclude the entirety of his testimony.[5]

Dated: October 1, 2021

Respectfully submitted,

/s/ Michael Koenig
MICHAEL KOENIG
HEATHER CALL
CAROLYN SWEENEY
PAUL TORZILLI
Antitrust Division
U.S. Department of Justice
450 Fifth Street NW, Suite 11048
Washington D.C. 20530
Tel: (202) 616-2165
michael.koenig@usdoj.gov
Attorneys for the United States

---

[5] The government also moved to exclude defendants' proffered experts Joseph Pochron and Dr. Siyu Qing. *See* ECF 299 at 12-14.