IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

    Defendants.

---

# ORDER

---

This matter comes before the Court on the United States' Motion to Exclude Certain Expert Testimony and to Order the Defendants to File a New Expert Disclosure for Non-Excluded Testimony [Docket No. 299].

The superseding indictment charges each of the defendants in Count One with restraining trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and charges defendant Jimmie Lee Little in counts two and three with making false statements in violation of 18 U.S.C. § 1001 and obstructing justice in violation of 18 U.S.C. § 1512(c)(2).  See Docket No. 101.  On May 14, 2021, defendants identified eight expert witnesses and provided a disclosure of those witnesses' potential opinions.

*See* Docket No. 299 at 1.  On July 19, 2021, defendants submitted an updated disclosure, identifying five potential expert witnesses.  *See id.*  On July 26, 2021, the government filed a motion to exclude the opinions of some of the experts on the basis that the July 19 disclosure "substantially fall[s] short of [] Rule 16 and Rule 702 requirements."  *Id.* at 2.

## I. LEGAL STANDARD

Federal Rule of Criminal Procedure 16(a)(1)(G) states that:

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial . . . .  The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G).  If the government makes such a disclosure, a defendant must make a reciprocal disclosure of its intended expert witnesses.  "Rule 16 is designed to give opposing counsel notice that expert testimony will be presented, permitting more complete pretrial preparation by the opposing side, such as lining up an opposing expert, preparing for cross-examination, or challenging admissibility on Daubert or other grounds."  *United States v. Nacchio*, 519 F.3d 1140, 1151 (10th Cir. 2008) (*Nacchio I*), *vacated on other grounds by United States v. Nacchio*, 555 F.3d 1234 (10th Cir. 2009) (*Nacchio II*).  "In particular, Rule 16 does not require experts in criminal cases to provide written reports explaining their opinions or to make a written proffer containing the information required under the civil rules."  *Id.*  Nonetheless, a disclosure must still contain what Rule 16 says it must: the opinions, reasons for those opinions, and qualifications.  *Nacchio I*, 519 F.3d at 1151.

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

In ruling on a Rule 702 motion, the district court has a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). Where an expert witness relies on experience, the expert

Rule 702 of the Federal Rules of Evidence provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the rule makes clear, while required, it is not sufficient that an expert be qualified based upon knowledge, skill, experience, training, or education to give opinions in a particular subject area. Rather, the Court must "perform[] a two-step analysis." *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). After determining whether the expert is qualified, the proffered opinions must be assessed for reliability. *See id.*; Fed. R. Evid. 702 (requiring that the testimony be "based on sufficient facts or data," be the "product of reliable principles and methods," and reflect a reliable application of "the principles and methods to the facts of the case").

In ruling on a Rule 702 motion, the district court has a "gatekeeper function to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *United States v. Gabaldon*, 389 F.3d 1090, 1098 (10th Cir. 2004) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). To perform that function, a court must "assess the reasoning and methodology underlying the expert's opinion, and determine whether it is both scientifically valid and applicable to a particular set of facts." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (citing *Daubert*, 509 U.S. at 592-93). Where an expert witness relies on experience, the expert

"'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702, advisory committee notes).  When examining an expert's method, however, the inquiry should not be aimed at the "exhaustive search for cosmic understanding but for the particularized resolution of legal disputes." *Daubert*, 509 U.S. at 597.  It is the specific relationship between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant.

## II. ANALYSIS

### A.  Edward A. Snyder

The government seeks to exclude four opinions of Professor Edward A. Snyder, an expert in industrial organization economics.  *See* Docket No. 299 at 5-10.  The United States does not challenge Professor Snyder's qualifications.  Rather, the government's objections fall into two categories: (1) opinions that do not supply sufficient bases and reasons under Rule 16 and (2) opinions that would not assist the trier of fact pursuant to Rule 702.  *See id.*  The Court addresses each in turn.

> 1.  *"Professor Snyder is also expected to testify that the DOJ and antitrust economists have developed various indicia of price fixing and bid rigging, and to* [sic] *apply those indicia to alleged 'episodes' of collusion. Professor Snyder is expected to testify that those economic indicia do not point to the existence of the conspiracy that the superseding indictment alleges."*

The government seeks to exclude Mr. Snyder's opinion that "economic indicia do not point to the existence of the conspiracy" because it is "unsupported by adequate

bases and reasons" under Rule 16. *See id.* at 6. Specifically, the government argues that the only bases and reasons provided are a "citation to a 6-page Antitrust Primer" issued by the Department of Justice ("DOJ"). *Id.* As a result, the government contends that the disclosure does not explain (1) the indicia relied on, (2) how those indicia are measured, (3) how the indicia relate to evidence of price fixing, and (4) any other additional sources. *Id.* The Court believes the disclosure is sufficient.

The summary of Professor Snyder's opinions states that he will be relying on indicia developed by the DOJ and antitrust economists. *Id.* The disclosure cites to a DOJ report that provides further context. *Id.* That report discusses bid rigging and price fixing and various indicators that DOJ uses to detect those actions. *See* Dep't of Justice, *Price Fixing, Bid Rigging, and Market Allocation Schemes* 2-5 (2021). Thus, Mr. Snyder has disclosed that, based on the various indicia found in the report, his opinion is that there is no conspiracy. This is sufficient under Rule 16. Moreover, the government's contention that Professor Snyder needs to provide information regarding how the indicia are measured and what other sources he relied on is unavailing. "Rule 16 disclosures are not required to include [] extensive and exhaustive level of detail and information." *See United States v. Shannon*, No. 18-cr-00353-CMA, 2019 WL 458911, at *2 (D. Colo. Feb. 6, 2019) (citations omitted). Accordingly, the Court finds the disclosure as to this opinion sufficient under Rule 16. Because Professor Snyder is also relying on DOJ criteria for detecting price fixing, whose reliability and methodology the government does not challenge, the Court also finds that this opinion does not violate Rule 702.

> *2. "Professor Snyder is expected to testify about the economic role that information exchanges – between and among buyers and suppliers – play in the broiler chicken industry, both generally and in the specific context of the alleged 'episodes' of collusion in the superseding indictment. Professor Snyder is expected to testify that such information exchanges can help buyers negotiate lower prices with some suppliers; improve suppliers' planning and investment; enable suppliers to mitigate risks and help ensure the availability of steady supply to end consumers; facilitate cross-supplier transactions; and promote more informed decision-making by suppliers and buyers.  Professor Snyder is expected to testify that for these reasons and others, such information exchanges would likely occur in the absence of any price-fixing or bid-rigging agreement."*

The government seeks to exclude Mr. Snyder's opinion regarding information exchanges on the basis that they are irrelevant.  See Docket No. 299 at 7.  Specifically, the government argues that, because price fixing and bid rigging are per se illegal restraints, expert testimony regarding whether information exchanges are pro-competitive is irrelevant.  *Id.*

The government is correct that bid rigging and price fixing are per se illegal restraints and, as a result, a defendant cannot avoid liability under the Sherman Act by discussing such a "restraint's salutary effect on competition and commerce."  See *United States v. Kemp & Assocs.*, 907 F.3d 1264, 1272 (10th Cir. 2018); *United States v. Guillory*, 740 F. App'x 554, 556 (9th Cir. 2018) (unpublished) ("The district court did not preclude any relevant evidence by granting the government's motion *in limine* to prohibit Guillory from introducing evidence or argument that the bid-rigging agreements were reasonable."); *United States v. Aiyer*, 470 F. Supp. 3d 383, 413 (S.D.N.Y. 2020) ("[I]n *per se* Sherman Act cases in which the question for the jury is whether the conduct at issue amounted to a conspiracy to fix prices and rig bids, evidence of the lack of anticompetitive effects or the presence of procompetitive justifications is inadmissible for

6

the purpose of proving that the price fixing or bid rigging conspiracy was reasonable or beneficial."). It is not clear to the Court what Professor Snyder means by "information exchanges -- between and among buyers and suppliers" and how an information exchange among suppliers may differ from an illegal agreement to fix prices under the Sherman Act. However, any opinion of Professor Snyder that agreements among suppliers to fix prices for chicken products are rational, beneficial, or promote competition will be excluded as irrelevant given that the government has charged a per se violation of the Sherman Act based on horizontal price fixing among competitors.

However, the defendants' theory of the case is not that there was a justifiable agreement among the suppliers to fix prices. Rather, the defendants seek to introduce Professor Snyder's opinion as part of their theory that there was no agreement among them to fix prices in the first place. Docket No. 362 at 7. The Court finds that Professor Snyder's opinion is admissible for that purpose. *See Aiyer*, 470 F. Supp. 3d at 414 (allowing evidence by defendants that the trading at issue had "procompetitive effects or lacked anticompetitive effects for the limited and permissible purpose of showing that the defendant or one of his alleged coconspirators lacked the specific intent to engage in the conduct that comprised the object of the conspiracy, namely fixing prices and rigging bids."). Thus, the Court grants the government's motion in part and denies it in part.[1]

---

[1] The government also argues that this opinion violates Rules 401, 402, and 403, but does not explain how. *See* Docket No. 299 at 7. In any event, the Court finds that this opinion is relevant to a fact in consequence – whether there was an agreement – and is not confusing to the jury because Mr. Snyder is not attempting to opine that actual bid rigging is pro-competitive.

> *3. "Professor Snyder is expected to testify about the product sales at issue in the 'episodes' of alleged collusion and the economic implications of those data, including as applied to the conspiracy allegations in the superseding indictment and in comparison to sales of other products during the relevant period. Professor Snyder is also expected to analyze the observed outcomes and data and test for indications of supracompetitive pricing. Professor Snyder is expected to use standard economic benchmarking techniques, among others, in support of his testimony on that topic. Professor Snyder is expected to testify that the outcomes related to the 'episodes' are not consistent with those that economics would expect to find in the presence of [] price-fixing or bid-rigging agreements."*

The government seeks to exclude Professor Snyder's opinion that the "observed outcomes are 'not consistent with those that economists would expect to find in the presence of a price-fixing or bid-rigging agreement.'" *See* Docket No. 299 at 8. The government argues that this opinion fails to disclose Professor Snyder's bases and reasons except a reference to "standard economic benchmarking techniques." *Id.*

Although Rule 16 does not require an expert in a criminal case to explain his or her opinions in advance of trial, *Nacchio II*, 555 F.3d at 1262, the rule nevertheless requires that the written summary regarding the expert "describe the witness's opinions" and "the bases and reasons for those opinions." The challenged portion of Professor Snyder's summary fails to do that. Instead, the summary mostly identifies the topics of his testimony, which disclosure does not comply with Rule 16. *United States v. Peel*, 2014 WL 5473141, at *2 (E.D. Cal. Oct. 23, 2014) (holding inadequate a summary that "provide[s] a list of the general subject matters to be covered, but d[oes] not identify what opinion[s] the expert[s] w[ill] offer on those subjects."); *United States v. Duval*, 272 F.3d 825, 828 (7th Cir. 2001) (holding in a drug case that the expert notice was insufficient under Rule 16(a)(1)(G)); *United States v. Galloway*, 2018 WL 2303106, at *3

(D.N.M. May 21, 2018). The first three sentences do not identify any opinions. The fourth sentence simply states that the outcomes of Professor Snyder's comparisons "are not consistent with those economists would expect to find in the presence of a price-fixing or bid-rigging agreements [sic]." Docket No. 299-2 at 9. That very general statement does not identify what the "outcomes" were of his analysis and what opinions he drew from the inconsistency.

"If a party fails to comply with Rule 16, the court may order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; grant a continuance; prohibit that party from introducing the undisclosed evidence; or enter any other order that is just under the circumstances. Fed. R. Crim. P. 16(d)(2)(A)-(D)." *United States v. Sarracino*, 340 F.3d 1148, 1170 (10th Cir. 2003). The Court finds that exclusion of this opinion is not appropriate. Instead, the Court will order defendants to supplement this opinion within seven days of this order.

> *4. "Professor Snyder is expected to testify about competitive dynamics in the broiler chicken industry, including but not limited to supply, demand, production cycles, industry structure, product differentiation and mix, supply and distribution chains, and the need for careful coordinate across suppliers, growers, and buyers. Professor Snyder is also expected to testify about the characteristics of, and differences in, purchasing processes for broiler chicken products, including ongoing negotiations, contracting, matching, and information exchange between buyers and suppliers. Professor Snyder is also expected to testify about suppliers' optimizing behavior predicted by economic theory – profit-maximizing suppliers have an objective to optimize bid prices and volumes (a) across multiple buyers, (b) across different business segments, and (c) over time."*

The government seeks to exclude Professor Snyder's opinion on competitive dynamics because (1) the disclosure contains no opinions or bases and reasons for the

opinions and (2) it is irrelevant because price-fixing is per se illegal. *See* Docket No. 299 at 9. The Court disagrees.

In the context of the entire disclosure, the summary indicates that Professor Snyder will use the competitive dynamics in the broiler chicken industry to explain why, in his opinion, those dynamics and various information exchanges do not demonstrate an illegal conspiracy to fix prices or rig bids. *See* Docket No. 299-2 at 7-8; *Shannon*, 2019 WL 458911, at *2 (finding that general background on the drug trade was designed to "lay a foundation" for the expert's opinions). This is sufficient under Rule 16. As to the government's contention that this information is irrelevant and confusing under Rules 702, 401, and 403, the government fails to provide any explanation for its argument, which argument is rejected.

### B.  Paul Sinowitz

The government seeks to preclude Paul Sinowitz, an expert supply chain management, from testifying at trial. *See* Docket No. 299 at 10. The government has three objections: (1) the disclosure fails to provide the bases and reasons pursuant to Rule 16; (2) Mr. Sinowitz is not qualified as an expert; and (3) Mr. Sinowitz improperly opines on defendants' mental states. The Court rejects each of the government's arguments.

First, the Court finds that the disclosure offers sufficient bases and reasons to pass muster under Rule 16. The disclosure states that Mr. Sinowitz will offer his opinion that, for the industry, "the most important consideration was ensuring consistency and adequacy of supply" and the "second most important consideration was quality, both of product and of service." *See* Docket No. 299-2 at 5. Mr. Sinowitz is also expected to

offer a number of other opinions.  *See id.* at 5-7 (disclosing opinions regarding competition, business relationships, and profitability, among others).  As the bases and reasons for these opinions, Mr. Sinowitz will discuss market conditions, negotiations, supply, availability of birds, and pricing models.  *See id.*  This disclosure is sufficient under Rule 16.

Second, the Court finds that Mr. Sinowitz is qualified to opine on industry practices and the considerations of the broiler chicken industry.  Under Rule 702, an expert's qualifications may derive from knowledge, skill, experience, training, or education.  "[A]s long as an expert stays within the reasonable confines of his subject area, our case law establishes a lack of specialization does not affect the admissibility of the expert opinion, but only its weight."  *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quoting *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996)) (quotations and alterations omitted).

Furthermore, "Rule 702 does not impose an 'overly rigorous' requirement of expertise, recognizing that specialized knowledge may be acquired through a broad range of experience, skills or training."  *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011).  A court "should not exclude expert testimony simply because the court feels that the proffered witness is not the most qualified or does not have the specialization considered most appropriate by the court."  *Id.*

The Court finds that Mr. Sinowitz is qualified to opine on industry practices, such as those disclosed.  He is a current supply chain vice president for Qdoba Mexican Eats, a large national food chain, which involves purchasing chicken.  *See* Docket No. 299-2 at 17.  He previously served as a vice president for sourcing at MGM Resorts

International, where he was responsible for negotiating and implementing all food and beverage contracts. *Id.* at 17-18. In the years prior to these appointments, he served in food sourcing roles at various companies, including Caesar's Entertainment, Sonic Industries, and Yum! Group. *Id.* at 18-20. As a result, Mr. Sinowitz has "technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a).

As to the government's argument that Mr. Sinowitz is improperly commenting on broiler chicken suppliers' mental states, the government does not direct the Court to any opinion of Mr. Sinowitz that discusses the suppliers' mental states. And the Court's own reading of the disclosure finds no such opinions.

The government seeks to exclude Mr. Sinowitz's testimony that "Claxton was not a true competitor" of the other suppliers because it only had one plant and "could not have taken business away from the larger suppliers." *See* Docket No. 299-2 at 7. While the government is correct that a defendant "may be guilty of conspiring, although incapable of committing the objective offense," Docket No. 299 at 12 (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940)), the defendants claim that the opinion is directed at whether a conspiracy involving Claxton ever existed. Docket No. 362 at 18. Assuming that the testimony is offered for that purpose, the opinion is proper.

As a result, the government's motion regarding Mr. Sinowitz will be denied.

### C. Joseph Pochron and Siyu Qing

The government seeks to exclude the testimony of both Joseph Pochron and Siyu Qing, an expert in statistics, for failure to disclose their opinions pursuant to Rule

16.  *See* Docket No. 299 at 12-13.  Although Rule 16 does not require detailed disclosures, a summary of the expert's testimony still must contain the opinions, reasons for those opinions, and qualifications of the potential witness.  *See* Fed. R. Crim. P. 16(b)(1)(C).  The disclosure, however, only discusses various topics that Mr. Pochron and Dr. Qing might opine on.  *See* Docket No. 299-1 at 14-16.  For example, defendants disclose that Mr. Pochron "may testify about the methods of collection and analysis that the government . . . used to capture and assess those records," and he may "testify to his and Defendants' efforts to identify digital device and telephone records in the government's production."  *See id.* at 13.  But, the disclosure says nothing of what Mr. Pochron's opinion is, other than to say he will discuss these topics.  The summary regarding Dr. Qing has the same problem.  It indicates that he might "testify about statistical analyses related to the digital device and telephone records" and about his "efforts to capture those records within a collective database," but the disclosure does not say what opinion Dr. Qing will express.  *Id.* at 15-16.

The Court finds that the exclusion of Mr. Pochron's and Dr. Qing's opinions is not necessary.  However, defendants must provide a detailed, written summary expressing all of Mr. Pochron's and Dr. Qing's opinions, the methods for reaching those opinions, and the sources relied on within 14 days of this order.  Failure to do so will result in the Court excluding Dr. Pochron and Dr. Qing from testifying.

### D.  Mark Chambers

The government seeks to exclude Mark Chambers, an expert in clinical and forensic psychology, from testifying regarding memory and false memories.  *See* Docket No. 299 at 14-16.  The government makes two arguments: (1) the disclosure does not

comply with Rule 16; and (2) Dr. Chambers improperly opines about witness credibility. *Id.*

First, the Court finds that the disclosure satisfies Rule 16. The government argues that the disclosure only identifies topics and not opinions. *See id.* at 15. Read in context, however, Dr. Chambers will offer his opinion that certain memories decay, that people engage in cognitive dissonance, and that certain "situational or dispositional factors" can lead to false confessions. *See* Docket No. 299-2 at 3-4. As bases and reasons, the disclosure states that he will discuss tenants of social influence, the different types of errors present for memory errors, and why individuals engage in cognitive dissonance. *See id.* That is sufficient under Rule 16.

Second, the Court finds that general testimony about the factors that influence the reliability of human memory are admissible under Rule 702. The United States does not suggest otherwise. However, Dr. Chambers is apparently also planning to testify on the circumstances of various witnesses' interviews with the government in this case and to "identify whether certain identified risk factors with respect to false memory, cognitive dissonance, and false confessions were present in the interviews." Docket No. 299-2 at 3-4. While defendants claim that "Dr. Chambers will *not* offer any opinion on the credibility of any witnesses or whether statements themselves appear to be true, false, or 'fabricated,'" Docket No. 362 at 21, the line they want Dr. Chambers to toe is too precarious. *See United States v. Benally*, 541 F.3d 990, 995 (10th Cir. 2008) ("While Mr. Benally emphasizes that Dr. Davis would not have opined as to whether she believed Mr. Benally confessed falsely, with or without the opinion, the import of her expert testimony would be the same: disregard the confession and credit the

defendant's testimony that his confession was a lie."); *see also United States v. Perrault*, 2019 WL 1318341, at *2-3 (D.N.M. Mar. 22, 2019) (permitting Dr. Chambers to testify on "the fundamental tenets of human memory and factors that influence the reliability of memory, as well as the motives and circumstances typically associated with false sexual abuse allegations," but noting that an expert may not comment on the credibility of a witness). Here the import of Dr. Chambers' testimony regarding the specifics of a given witness's testimony would be that, in his opinion, the risk factors suggest the statements are not credible. Such testimony would encroach on "the jury's vital and exclusive function to make credibility determinations," *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001), and therefore would not assist the trier of fact under Rule 702. *Id*. Moreover, defendants have provided no indication of who the witnesses are that Dr. Chambers intends to discuss and whether Dr. Chambers has tested them, reviewed their medical records, or has any information other than reading reports of their interviews to determine whether "individual characteristics" may have interacted with the risk factors that his general research has identified to cause false memories, cognitive dissonance, or false confessions. In the alternative, the Court finds that, even if testimony specific to various witnesses was admissible, its probative value would be substantially outweighed by the danger of misleading the jury under Rule 403. Therefore, the Court will grant the government's motion in part and deny it in part as to Dr. Chambers.

## III. CONCLUSION

It is therefore

**ORDERED** that the United States' Motion to Exclude Certain Expert Testimony and to Order the Defendants to File a New Expert Disclosure for Non-Excluded Testimony [Docket No. 299] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that defendants shall supplement Professor Snyder's opinion, identified as his third opinion in the government's motion, within seven days of the entry of this order.  It is further

**ORDERED** that defendants shall supplement Mr. Pochron's and Dr. Qing's opinions within fourteen days of the entry of this order.

DATED October 15, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge