IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     JAYSON JEFFREY PENN,
2.     MIKELL REEVE FRIES,
3.     SCOTT JAMES BRADY,
4.     ROGER BORN AUSTIN,
5.     TIMOTHY R. MULRENIN,
6.     WILLIAM VINCENT KANTOLA,
7.     JIMMIE LEE LITTLE,
8.     WILLIAM WADE LOVETTE,
9.     GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

      Defendants.

No. 20-cr-00152-PAB

**DEFENDANT JAYSON JEFFREY PENN'S TRIAL BRIEF**

Defendant Jayson Penn, by and through undersigned counsel, respectfully submits this trial brief to address issues specific to him. Defendants' contemporaneously-filed joint trial brief addresses issues common to all Defendants, and Mr. Penn incorporates those arguments by reference.

**ARGUMENT**

**I.**    **The Government Will Not Be Able to Prove Mr. Penn Knowingly and Intentionally Joined the Charged Conspiracy**

To prove a criminal violation of Sherman Act Section 1, the government must prove an agreement (i) between two or more individuals at different companies, (ii) that unreasonably restrained trade, (iii) affecting interstate commerce, and (iv) that Mr. Penn entered into knowingly and intentionally. 15 U.S.C. § 1; *see also Shaw v. United States*, 371 F. Supp. 2d 265,

1

272 (E.D.N.Y. 2005); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 435–43 & n.20 (1978). With respect to the intent element, the Sherman Act imposes criminal sanctions only against "conscious and calculated wrongdoing at odds with statutory proscriptions." *Gypsum*, 438 U.S. at 442. This element requires evidence that a defendant had both intent to agree and "knowledge of the anticipated consequences" of the conspiracy. *Id*. at 443 n.20, 446.

These requirements are critical when, as here, the government charges a conspiracy largely based on the purported exchange of price information among competitors. As the Court has acknowledged, "mere exchange[s] of price information" are neither illegal nor alone indicative of conspiracy, much less indicative of the overarching agreement charged. *See* Doc. 559 at 5–6 (citing *Gypsum*, 438 U.S. at 435–43 & n.20); Doc. 553 at 9 (citing *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 475 (10th Cir. 1990)). And the "imposition of criminal liability on a corporate official . . . for engaging in such conduct which only after the fact is determined to violate the statute," "without inquiring into the intent with which it was undertaken, holds out the distinct possibility of overdeterrence; salutary and procompetitive conduct lying close to the borderline of impermissible conduct might be shunned by businessmen who chose to be excessively cautious in the face of uncertainty regarding possible exposure to criminal punishment for even a good-faith error of judgment." *Gypsum*, 438 U.S. at 441; *see also id*. at 441 n.16.

There is no direct evidence showing that Mr. Penn knowingly and intentionally joined the charged conspiracy. Rather, it appears the government's case relies exclusively on circumstantial evidence, most of which relates to Mr. Penn's alleged contacts with rival suppliers and his consideration of competitor information when making business decisions. At the *James* hearing,

for instance, the government pointed to a sprawling mishmash of cherry-picked statements and activities, including negotiations directly with customers, conversations with colleagues about how to best compete with rivals, the gathering of unattributed market intelligence, and unexplained phone calls with employees of other suppliers. This disjointed compilation of evidence is equally consistent with legitimate, procompetitive business activity. It does not and cannot demonstrate beyond a reasonable doubt that Mr. Penn knowingly and intentionally joined the charged conspiracy.[1]

To conclude otherwise requires a series of inferential leaps that are staggering in scope. One would have to infer that any information about competitor prices or performance in Mr. Penn's possession reflects non-public information, that the information came from competitors rather than customers or other sources, that Mr. Penn knew the source of the information, that Mr. Penn was aware of his co-workers' actions when gathering this information, that Mr. Penn knew that the information gathering was part of a long-standing conspiracy to rig bids and fix prices instead of any lawful purpose, and that Mr. Penn knowingly joined that conspiracy. And this would all need to be inferred even though Mr. Penn's conduct was consistent with independent pricing decisions—based on legitimate business factors, market influences, and mathematical pricing models—in Pilgrim's Pride's independent best interest. This is impermissible inference stacking. *See Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943) ("[C]harges of conspiracy are not to be made out by piling inference upon inference.");

---

[1] While the Court determined for purposes of Rule 801(d)(2)(E) that some statements are admissible, Doc. 559 at 20–48, that is a separate question from whether the government can prove beyond a reasonable doubt that Mr. Penn knowingly and intentionally joined the charged conspiracy.

*United States v. Summers*, 414 F.3d 1287, 1295–96 (10th Cir. 2005) (piling "inference upon inference" "insufficient to permit a reasonable inference of [defendant's] willful participation in the conspiracy").

## II.     Mr. Penn Cannot Be Convicted for the Actions of Subordinates

The government proposed an instruction that would allow the jury to convict Mr. Penn of price fixing without finding that he personally conspired or that he personally and intentionally joined a conspiratorial agreement. Specifically, the government suggests that a "person who is a manager or supervisor of a corporation is also responsible for the acts of his subordinates if he authorizes, encourages, directs, orders, or consents to the participation in the conspiracy of someone he manages or supervises." Doc. 585 at 43. Mr. Penn expects the government to offer evidence and make argument at trial consistent with this proposal. The government's position is inconsistent with the Constitution and the most basic Sherman Act principles.

*First*, the government's proposed approach would permit a conviction without any evidence of Mr. Penn's personal agreement. This is wrong as a matter of law. Because "the gist of the offense remains the agreement," "it is [] essential to determine what kind of agreement or understanding existed as to each defendant," and "the scope of his agreement must be determined individually from what was proved as to him." *United States v. Borelli*, 336 F.2d 376, 384–85 (2d Cir. 1964) (Friendly, J.); *accord United States v. Record*, 873 F.2d 1363, 1368 (10th Cir. 1989) ("We agree with the statement in *Borelli* that "it is . . . essential to determine what kind of agreement or understanding existed as to each defendant." (quotation omitted)). A defendant must also "make [the conspiracy] his own," which means it is "essential to determine just what he is promoting and making his own." *Borelli*, 336 F.2d at 385 (quotation omitted). Put

differently, the government must advance "clear and unequivocal" evidence of a defendant's "personal and individual" agreement in the single charged conspiracy. *United States v. Morehead*, 959 F.2d 1489, 1500 (10th Cir. 1992) (quotation omitted), *reh'g on unrelated issues*, *United States v. Hill*, 971 F.2d 1461 (10th Cir. 1992). These principles require "particular[] vigilan[ce] when the government seeks to bring many individuals under the umbrella of a single conspiracy" since "[t]he tactic of charging many defendants with a single massive conspiracy is fraught with the potential for abuse," a proposition apparent in this case. *United States v. Evans*, 970 F.2d 663, 674 (10th Cir. 1992); *see also United States v. Dickey*, 736 F.2d 571, 583 (10th Cir. 1984) ("[G]uilt is still individual and personal in conspiracy cases—it is not a matter of mass application.").

*Second*, the government's proposed approach jettisons the knowledge element of a Sherman Act offense. It allows the jury to convict Mr. Penn if he "consent[ed]" or "encourage[d]" another person to take actions that could be construed as participation in an alleged conspiracy, although it does not require that Mr. Penn had knowledge of any agreement or knowledge of the objectives of the alleged conspiracy. This is also incompatible with the law. *See United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991) ("Those having no knowledge of the conspiracy are not conspirators[.]") (internal quotation omitted). And even if a knowledge element could somehow be read into the government's proposal, neither knowledge of a conspiracy nor association with individuals who are participants in a conspiracy is sufficient to support a conviction. *See United States v. Kendall*, 766 F.2d 1426, 1432 (10th Cir. 1985) ("Neither [a defendant's] knowledge alone nor his mere association with conspirators, however, is enough to convict him of conspiracy."). A defendant must have personally participated in the

5

conspiracy in some way. *United States v. McMahon*, 562 F.2d 1192, 1196 (10th Cir. 1977) ("Defendants may not be convicted of a conspiracy charge without proof of their knowledge of a conspiracy and their participation in it.").

The government has repeatedly pointed to the purported gathering and exchange of unattributed competitor information as the central acts of the charged conspiracy. But these are facially normal, procompetitive business activities. Indeed, information sharing is not unlawful precisely because the "exchange of price data and other information" can "increase economic efficiency and render markets more, rather than less, competitive." *Gypsum*, 438 U.S. at 441 n.16. And the Court should, "without suspecting illegal collusion, expect competing firms to keep close track of each other's pricing and other market behavior and often to find it in their self-interest to imitate that behavior rather than try to undermine it." *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 879 (7th Cir. 2015). Nonetheless, the government's proposed instruction would permit a jury to convict an executive for encouraging or directing an employee on these bases. The government's proposal cannot be squared with these established principles.

*Third*, the government's proposed approach ignores the intent element of antitrust offenses. *Gypsum*, 438 U.S. at 440–43 ("[I]ntent is a necessary element of a criminal antitrust violation."); *United States v. Metro. Enters., Inc.*, 728 F.2d 444, 453 (10th Cir. 1984) ("[I]ntent must be pled and proved in any criminal prosecution arising out of the Sherman Act."). The relevant intent in a Sherman Act case is the intent to join and effectuate an agreement, not merely to raise prices, increase profits, or understand competitor positions. *Gypsum*, 438 U.S. at 443 n.20; *United States v. Parker*, 839 F.2d 1473, 1478 (11th Cir. 1988) ("The appellants certainly directed their efforts toward the common goal of making money for themselves and their

employer. But to support a conspiracy conviction, the evidence must establish a common

agreement to violate the law."). The danger of the government's proposed approach is clear; as

previously discussed, there are numerous procompetitive and lawful reasons for Mr. Penn's

alleged interactions with subordinates.

      At bottom, the government's proposal would take several elements away from the jury

and allow them to convict supervisors whenever those supervisors merely encourage or consent

to conduct that could be construed as participation in a conspiracy. This is a blatant violation of

the Fifth and Sixth Amendments and should be rejected. *United States v. Gaudin*, 515 U.S. 506,

522–23 (1995) ("The Constitution gives a criminal defendant the right to have a jury determine,

beyond a reasonable doubt, his guilt of every element of the crime with which he is charged.");

*see also* Jury Instructions at 10, *United States v. B&H Maint. & Constr., Inc.*, 07-cr-90 (D. Colo.

June 19, 2008), Doc. 319-10 (approving instruction stating "the evidence in the case must show

beyond a reasonable doubt that the conspiracy was knowingly formed, and that the defendant

knowingly participated in the unlawful plan, with the intent to advance or further some object or

purpose of the conspiracy").[2]

## CONCLUSION

      Mr. Penn respectfully submits this trial brief based on the issues described above. The

government will not be able to prove that Mr. Penn knowingly and intentionally joined the

---

[2] Unsurprisingly, the authority the government cites does not support its position, and some of the cited authority directly rebuts it. *See* Doc. 585 at 43 (citing Kevin F. O'Malley, Jay E. Grenig & William C. Lee, 1A *Federal Jury Practice and Instructions* § 18:04 (6th ed.) (noting that a corporate officer is not criminally responsible for the acts of another performed on behalf of a corporation simply because of his status as an officer); *United States v. Wise*, 370 U.S. 405, 416 (1962) (noting that a corporate officer is subject to prosecution only where he personally "knowingly participates in [the conspiracy]")).

charged conspiracy, and the jury cannot convict Mr. Penn based exclusively on the purported

actions of his subordinates.

Dated: October 18, 2021    Respectfully submitted,

           *s/ Michael F. Tubach*
          Michael F. Tubach
          O'MELVENY & MYERS LLP
          Attorney for Jayson Jeffrey Penn
          Two Embarcadero Center, 28th Floor
          San Francisco, California 94111-3823
          (415) 984-8700
          mtubach@omm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated: October 18, 2021

*s/ Michael F. Tubach*

Michael F. Tubach