IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **JAYSON JEFFREY PENN,**
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. **TIMOTHY R. MULRENIN,**
6. **WILLIAM VINCENT KANTOLA,**
7. **JIMMIE LEE LITTLE,**
8. **WILLIAM WADE LOVETTE,**
9. **GARY BRIAN ROBERTS,**
10. **RICKIE PATTERSON BLAKE,**

    Defendants.

---

## UNITED STATES' TRIAL BRIEF

The government respectfully submits this trial brief, in accordance with Section III.D of the Court's Criminal Practice Standards, to identify ahead of trial specific issues regarding witness examination and the receipt of evidence.

1. <u>Summary Exhibits and Photographs of Defendants</u>

The government intends to introduce summary exhibits containing excerpts from voluminous records, and also containing photographs of the defendants, to assist the

jury and to streamline trial. Exhibits A1-A10, attached to this brief and described below, are drafts of the summary exhibits the government expects to use at trial:[1]

> *Exhibit A1* is a table associating the defendants, as well as various co-conspirators and customers, with phone numbers based on information contained in toll records, phone provider subscriber records, organizational charts, chicken supply contracts and bids, and corporate email signature lines.
>
> *Exhibit A2* is a table demonstrating the process for converting times between UTC and Eastern Time.
>
> *Exhibit A3* is a table demonstrating records for which time zones have been converted from other time zones to Eastern Time.
>
> *Exhibit A4* is a table excerpting emails, hard copy documents, and phone calls, and associating phone calls and employers with senders and recipients of the documents.
>
> *Exhibit A5* contains excerpts of text message conversations from voluminous records, and includes photographs of individuals associated with the names and phone numbers identified in the messages.
>
> *Exhibit A6* contains charts identifying phone calls, documentary evidence, text messages, employer logos, and photographs of individuals associated with phone numbers and names in sequential order.
>
> *Exhibit A7* contains excerpts of contract terms from voluminous contract files between broiler chicken suppliers and their customers.
>
> *Exhibit A8* contains excerpts of voluminous emails and meeting invitations from different stages of a contract negotiation.
>
> *Exhibit A9* contains graphs summarizing and counting interactions contained in voluminous phone records.
>
> *Exhibit A10* is a demonstrative of revealing or hiding cells in Microsoft Excel.

---

[1] Exhibits A1-A10 are in near-final form. Should it become necessary to amend the summary exhibits, the government will notify the Court and the defendants as soon as possible.

The summary exhibits reflect information provided to the defendants in discovery long ago. The "Conspiracy Guide" from the *James* hearing—which is a precursor to Ex. A4—was provided to the defendants on August 13, 2021, along with the government's *James* submission. ECF No. 358 Ex. 1 ("Conspiracy Guide"). The government provided Exhibits A1, A4, A6, A7, and A9 in draft form on October 6, 2021. The remaining are provided with this brief.[2] Each summary identifies the exhibit numbers of the underlying source exhibits.

    a. *The Source Information Underlying the Summary Exhibits is Admissible*

All of the information underlying the summary exhibits is drawn from source exhibits, including phone bills, subscriber information, organizational charts, chicken supplier bid submissions, period pricing charts, contract files, and email signatures. All of those exhibits are admissible, and the government intends to introduce the source exhibits into evidence as well. The Court has already ruled many of them conditionally admissible in its *James* ruling. ECF No. 559. The vast majority, if not all, of the remaining source exhibits are either non-hearsay or constitute business records under Rule 803(6).

The business records consist of toll records[3] and subscriber information from phone service providers and the following categories of records kept in the usual course

---

[2] The government has not received any summary or demonstrative exhibits from defendants, although they have indicated that they plan to use them. The government needs adequate time to review any defense summary exhibits and plans to object if they are not provided in a timely fashion.

[3] The defendants acknowledge that toll records are documents of regularly conducted activity under Rule 803(6). ECF No. 665 at 10 n.2.

of business from broiler chicken suppliers and restaurants: Board Meeting Minutes, Organizational Charts, confidentiality agreements, invoices, records memorializing pricing, contact lists, meeting invitations, Human Resources Files, SEC filings, PowerPoint presentations, contracts, offers, requests for proposals, bids tendered, drafts and drafts thereof, as well as correspondence between suppliers and customers during negotiations.

Any user-identifying information in those records was either (1) automated (for example, email metadata), (2) input by conspirators in the usual course of business at their respective employers, or (3) in the instances where the user-identifying information was input by a third party (for example, a cellular service customer), the information is accompanied by sufficient assurances of accuracy such as conspirators home addresses and billing information under the same names—as verified by the fact that the accounts remained active for numerous years. *United States v. Cestnik*, 36 F.3d 904, 908 (10th Cir. 1994) (finding proof of verification policies or "a sufficient self-interest in the accuracy of the [record]" sufficient guaranties of trustworthiness); *United States v. McIntyre*, 997 F.2d 687, 700 (10th Cir.1993).

In addition to the applicable hearsay exceptions for each of the underlying sources, identifying information of co-conspirators in the sources is relevant simply to show the conspirators' association and knowledge of the means of contacting each other—regardless of the truth or falsity of the notations. Such "notations of names, addresses, phone numbers and the like . . . are not hearsay when offered to connect the bearer or owner to the person indicated." *United States v. Anello*, 765 F.2d 253, 261

4

(1st Cir. 1985) (collecting cases); *United States v. Ruiz*, 477 F.2d 918, 919 (2d Cir. 1973) (admitting slip of paper with defendant's name and a telephone number, where slip was introduced to show that co-conspirator bearer of slip knew the defendant "and anticipated calling him on the telephone").

    b.  *The Summary exhibits are Admissible*

Each of the summary exhibits is admissible under Rule 1006, as well as Rule 611(a), because they excerpt voluminous records, will expedite the presentation of evidence at trial, and will assist the jury in understanding the records in context and associating faces with names—a necessary foundation in a case where there are 10 defendants in a multi-year conspiracy. See ECF No. 559.

The defendants notified the government that they object to the summary exhibits as "characteriz[ing] non-voluminous material," and argue that a summary would only be proper to summarize the phone records alone and would need to provide complete information from the underlying sources—including time zones, phone numbers, and duration. Defendants also previously objected to such summaries on confrontation clause and "cherry picking" grounds in their multiple responses to the governments motion *in limine*. ECF Nos. 563, 564.

The defendants' objections lack merit. First, there is no doubt that the government's evidence is voluminous. The attached summarize excerpts from well over 300 documents, some of which are many thousands of pages each. Furthermore, summary exhibits can source from different kinds of records to allow the government to illustrate its theory and aid the jury in ascertaining the truth. *United States v. Yeley-*

5

*Davis*, 632 F.3d 673, 677 (10th Cir. 2011) (allowing summary chart connecting co-conspirators via photo arrays); *United States v. Milkiewicz*, 470 F.3d 390, 400 (1st Cir. 2006) (explaining "a pedagogical aid that is allowed under Rule 611(a) to illustrate or clarify a party's position . . . may be less neutral in its presentation" and "such pedagogical devices may be sufficiently accurate and reliable that they, too, are admissible in evidence, even though they do not meet the specific requirements of Rule 1006"); *United States v. Nivica*, 887 F.2d 1110, 1125 (1st Cir. 1989) (summary sourced from "various business records"); *United States v. Pinto*, 850 F.2d 927, 935–36 (2d Cir. 1988), *cert. denied*, 488 U.S. 867 (1988) (allowing summary charts reflecting calls, participants, and locations in 10-defendant conspiracy case). In light of the "length of the trial, the complexity of the case, and the accompanying confusion that a large number of witnesses and exhibits may generate for the jury." *United States v. Ray*, 370 F.3d 1039, 1047 (10th Cir. 2004), vacated on other grounds, 543 U.S. 1109 (2005) (citing *United States v. Johnson*, 54 F.3d 1150, 1159 (4th Cir. 1995)).

Second, summaries of voluminous non-testimonial evidence do not create a Confrontation Clause issue. If the documents underlying the summary are not testimonial, the summaries are not either. *United States v. Naranjo*, 634 F.3d 1198, 1213-14 (11th Cir. 2011); *United States v. Hemphill*, 514 F.3d 1350, 1359 n.2 (D.C. Cir. 2008) (no Confrontation Issue in a summary of business records). Here, the documentary evidence underlying the government's summary exhibits are not testimonial in nature, so they do not raise constitutional concerns.

Third, a summary exhibit may contain evidence favoring only one party as long as the proponent does not mislead the jury. *United States v. Whitefield*, 590 F.3d. 325, 364-65 (5th Cir. 2009). The government's summary exhibits, while certainly incriminating, are based on objective evidence and will not mislead the jury, especially considering the fact that the defendants will have an opportunity to make their points on cross-examination. *See, e.g., United States v. White*, 737 F.3d 1121, 1135 (7th Cir. 2013) (rejecting omission of not incriminating entries where opposing party is free to make the point on cross-examination); *United States v. Scales*, 594 F.2d 558, 563 (6th Cir. 1979) (rejecting challenge to a summary that "appears to present merely an organization of some of the undisputed objective evidence in terms of the relevant counts of the indictment").

Simply put, the governments' ability to use summary exhibits to prove a multi-year and multi-defendant conspiracy will significantly streamline trial and conserve scarce judicial resources and time. *See United States v. Janati*, 374 F.3d 263, 274 (4th Cir. 2004) (recognizing the difficulties created by large fraud cases and the utility of summary charts in conserving resources).

2. Response to defendants' Rule 404(b) notice.

On October 4, 2021, the government gave Defendants written notice of its intent to introduce 11 exhibits as evidence of other crimes, wrongs, or acts pursuant to Rule 404(b). As described in the notice, the evidence is more appropriately viewed as intrinsic to the charged conspiracy, but the government nonetheless provided notice out of an abundance of caution. *See* ECF No. 621.1.

The defendants' joint objection to the notice, ECF No. 621, agrees with the government that Rule 404(b) applies only to extrinsic evidence, *i.e.*, "'extraneous' evidence that is not closely related to the factual circumstances of the charged offense." ECF No. 621 (quotation omitted). The government maintains that the evidence listed in its notice is intrinsic to the charged conspiracy and, as defendants point out, the Court has ruled that at least four of the documents were made in furtherance of the conspiracy. ECF No. 621 at 4.

The remaining seven statements are likewise intrinsic, because they "provide[] direct proof of the defendant's involvement with the charged crimes" or are "entirely germane background information . . . directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015) (internal quotations omitted). The statements and documents listed in the government's notice were made or occurred generally within the time frame of the conspiracy,[4] and they should be admitted to give the jury a complete picture of Defendant Penn's, Lovette's, Blake's, Little's, and Kantola's involvement in the charged crime. The evidence is "part and parcel of the proof of the offense [ ] charged in the indictment," *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995) (internal quotations omitted), because they prove to a jury how the

---

[4] The government's Superseding Indictment alleged the conspiracy began from "*at least as early* as 2012." ECF No. 101 ¶1 (emphasis added). Even if the Court finds the evidence pre-dates the start date in the indictment, this is no bar to admitting intrinsic evidence.  See *United States v. Collins*, 97 F. App'x 818, 824 (10th Cir. 2004); *United States v. Komolafe*, 503 F. App'x 235, 236 (4th Cir. 2013).

conspiracy developed and "complete[s] the story of the crime on trial by proving its immediate context." *Id*. at 272 (internal quotations omitted).

In the alternative, even if the statements in the government's notice are considered extrinsic to the Sherman Act offense charged, the statements could be admitted for a proper purpose under Federal Rule of Evidence 404(b) to show knowledge of competitor pricing and of the price-fixing and bid-rigging scheme; preparation or plan to commit the conspiracy, as well as knowledge of how to do so; opportunity to commit the conspiracy; and motive and intent when contacting competitors during the conspiracy period.

   3. Motive

The government plans to introduce evidence and argument that the defendants were motivated to fix prices and rig bids by money. *See, e.g., Untied States v. Peake*, 143 F. Supp. 3d 1, 18 (D.P.R. 2013) (finding that evidence of the defendant's compensation was probative to establish a motive for why the defendant participated in the conspiracy). One exhibit shows defendant Penn performing a calculation of additional anticipated weekly revenue to Pilgrim's Pride from KFC in 2015 with a price increase $0.16/lb. and 2.5 million lbs./week: "2.5 M lbs x .16 =$400k per week is the math?" GX 1058. Having established a foundation for how the defendants performed such calculations—whether through that exhibit or other evidence—the government plans to use the same basic arithmetic to quantify the amount of money the defendants *believed* they stood to gain or lose for a given price increase or decrease. So, for example, if KFC entered into contracts to buy 9 million pounds of chicken per week, an

additional $0.15 per pound provided the defendants and their conspirators $1.35 million per week of motivation to fix prices.

To be clear, however, the government does not plan to undertake an elaborate inquiry to prove that the defendants actually obtained the sums of money that motivated them. Success is not an element of the crime and any elaborate inquiry would lead to a wasteful mini-trial on an issue of little-to-no consequence to guilt or innocence, *see* Rule 403. Therefore, for another government exhibit—which shows defendant Penn congratulating one of his direct reports: "I called you out in our board meeting today for leading the industry to higher '15 prices in [Fresh Food Service] and $75M higher YoY pricing," GX 940—the government does not intend to calculate whether the $75 million figure was accurate because the exhibit amply demonstrates a motive to fix prices going forward.

   4. Additional Fed. R. Evid 801(d)(2)(E) Statements in Government Exhibits

The government has identified a limited set of additional co-conspirator statements appearing in its trial exhibits not included on its *James* log that it intends to offer for admission under Rule 801(d)(2)(E). The government's *James* Log was submitted on August 13, 2021, 73 days before trial. As part of the government's trial preparation, including preparation of its exhibit list, the government identified certain documents containing additional coconspirator statements that are relevant to the proof in this case. For those statements, the government plans to offer them under Rule 801(d)(2)(E) based on evidence already received at trial or subject to connection, if the Court permits.

In addition, the government plans to prove certain statements, which the Court found not to satisfy Rule 801(d)(2)(E) at the time of the *James* hearing, will meet the Rule's requirements at trial. As an example, anticipated trial testimony (including testimony from witnesses connecting the evidence) will show that statements made by Mr. Cooper (Claxton Poultry) in his e-mail with a customer were made during the course and in furtherance of the charged conspiracy. *See James* Log entry 163 (GX-500).[5] Likewise, testimony elicited at trial will likely establish that statements in *James* Log entries 121 (GX-1023, GX-1026) and 122 (GX-1027)—involving Koch's and Mar-Jac Poultry's bid submissions to KFC on August 19, 2014—were made in furtherance of the conspiracy and are admissible against all defendants pursuant to Rule 801(d)(2)(E).[6]

Finally, the government plans to prove that defendant Blake joined the conspiracy before October 24, 2016, as the Court found based on the *James* hearing evidence, ECF No. 559 at 20. For instance, during negotiations for KFC in 2013, summary exhibit A4 shows that defendant Blake gave George's negotiating position for dark meat to defendant Brady. *See* Ex. A4 at 23.

---

[5] As part of the James rulings, the Court found that Mr. Cooper joined the conspiracy in 2012 because he colluded with Pilgrim's Pride employees in negotiations with Pollo Tropical in November 2012. ECF No. 559 at 15 and 22 (James Log entry 26). The Court also ruled that statements made by Pilgrim's employees in 2014 with regard to bidding for Pollo Tropical were made in furtherance of the conspiracy. ECF No. 559 at 30 (James log entry 114) and 33 (James log entry 150 and 154). In combination with these rulings, testimony at trial can show the statements in *James* Log entry 163 (GX-500) were made in furtherance of the conspiracy and hence satisfy Rule 801(d)(2)(E).

[6] This is consistent with the Court's determination that the relevant declarants—that is, Messrs. McGuire, Defendant Penn, and Defendant Kantola—joined the conspiracy as of August 2012, August 2011, and December 2011, respectively.

11

5. <u>All 801(d)(2)(E) evidence is admissible against all defendants</u>.

The Court found that the charged conspiracy commenced at least as early as August 2011, ECF No. 559 at 7, and the Court found that some defendants joined the conspiracy after August 2011, *e.g., id.* at 16 (finding defendants Roberts and Mulrenin joined on or before May 31, 2013). The government has reason to believe that the defendants intend to object to the admissibility of 801(d)(2)(E) statement that were made prior to their joining their conspiracy. The Court should overrule all such objections. The Court has stated that "previous statements made by co-conspirators are admissible against a defendant who subsequently joins the conspiracy." *Id.* at 4 (quoting *United States v. Brown*, 943 F.2d 1246, 1255 (10th Cir. 1991)). As such, all statements made during the course and in furtherance of the conspiracy are admissible against *all* defendants, even statements that were made prior to that defendant joining the conspiracy.

6. <u>Customer price-sharing or collusion is not relevant</u>

The defendants should not be permitted to introduce irrelevant evidence or argument that their customers, including customers the government will call as witnesses, were sharing prices or colluding among themselves for their chicken purchases. Even if true, such facts neither tend to prove that the defendants are guilty or innocent of the crime charged, nor excuse the defendants' conduct. *See American Medical Ass'n v. United States*, 130 F.2d 233, 250 (D.C. Cir. 1942), *aff'd. American Medical Ass'n v. United States*, 317 U.S. 519 (1943) (combatting "unlawful practices" is not "sufficient to avoid the penalties of the Sherman Act"); *United States v. Apple, Inc.*,

12

791 F.3d 290, 298 (2d Cir. 2015) (noting that "marketplace vigilantism" "is wholly foreign to the antitrust laws"). And "it is no defense to participation in an illegal price fixing conspiracy to suggest that others did it too." *United States v. Apple Inc.*, 952 F. Supp. 2d 638, 699 (S.D.N.Y. 2013).

7. State of Mind *at the Time*

The Court ruled that, "given the superseding indictment charges a *per se* price fixing case, defendants cannot introduce evidence that, if the defendants did have an agreement to fix prices, such an agreement is justifiable because it either did not cause economic harm or increased competition." ECF No. 642 at 2. "However, that does not preclude the defendants from introducing evidence that the prices were not fixed as a result of an agreement or from introducing evidence that a lack of harm suggests that defendants did not have an agreement to fix prices. Whether or not evidence of this nature is admissible may depend on the purpose for which the evidence is offered." *Id.* ECF No. 642 at 2.

Whether the defendants agreed to fix prices is a question of their knowledge and intent. *See* ECF No. 553 (order denying motions to dismiss) at 7 ("The act of entering into an agreement to fix prices demonstrates a knowing intent to join the conspiracy."). As such, to be admissible, the evidence must tend to establish a defendant's state of mind at the time of the charged conspiracy. To establish a defendant's state of mind at the time requires the proper foundation, which may take the form of actions a defendant took, things they knew or were actually aware of. Post-hoc rationalizations for conduct that occurred or generalized analyses of market forces or trends do not establish

foundation, and therefore do not help establish any defendant's state of mind at the time. As such, the evidence cannot be offered to establish whether any defendant agreed to fix prices, and is therefore inadmissible. To the extent the defendants' expert evidence will rely on an overall, objective, and generalized view of the broiler-chickens market, rather than rooted in what the defendants knew at the time, the government will object on foundation and relevance grounds.

8. Civil Proceedings

Although the Court's ruling *in limine* excludes references to related civil proceedings, ECF No. 603 at 10, the government anticipates that the defendants may open the door to the topic and, if they do, aspects of the proceedings should be admissible—accompanied by a limiting instruction—for the purpose of exploring witness credibility. Specifically, if the defendants attempt to demonstrate bias by cross-examining government witnesses from companies—such as Chick-fil-A, Sysco, and Pollo Tropical—that filed antitrust lawsuits relating to their purchases of broiler chickens, the government should be permitted on re-direct to show that the testimony from those witnesses is consistent with the lawsuits. Similarly, if the defendants call witnesses from such companies who testify in a manner inconsistent the lawsuits and settlements, the government should be permitted to impeach the witnesses on those inconsistencies.[7]

---

[7] For example, Kent Kronauge, who is on the defendants' witness list, is the President of Supply Management Services (SMS), a purchasing cooperative for Popeye's that filed a civil suit on March 1, 2021. The SMS complaint explicitly incorporates the Superseding Indictment in this case by reference and identifies SMS as the victim referenced anonymously as "Cooperative-2." If Mr. Kronauge testifies as a defense witness in a manner inconsistent with the allegations in the SMS complaint, the government should be permitted to use the complaint to impeach him.

Respectfully submitted this 18th day of October, 2021.

By: /s/ Michael T. Koenig
Michael T. Koenig
Heather D. Call
Carolyn M. Sweeney
Paul J. Torzilli
Trial Attorneys
Antitrust Division
U.S. Department of Justice
Washington Criminal II Office
450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2165
Email: michael.koenig@usdoj.gov