IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. JAYSON JEFFREY PENN,
2. MIKELL REEVE FRIES,
3. SCOTT JAMES BRADY,
4. ROGER BORN AUSTIN,
5. TIMOTHY R. MULRENIN,
6. WILLIAM VINCENT KANTOLA,
7. JIMMIE LEE LITTLE,
8. WILLIAM WADE LOVETTE,
9. GARY BRIAN ROBERTS,
10. RICKIE PATTERSON BLAKE,

      Defendants.

## UNITED STATES' BRIEF REGARDING THE RELEVANCE AND ADMISSIBILITY OF GX-9057

GX-9057 is a relevant and highly probative email that should be admitted for the jury to consider. In the email, defendant Penn explained to defendant Lovette one of the primary means and methods of the conspiracy: "pick[ing] up the phone any time and call[ing] multiple friends to flush out current and forward pricing from friendly competitors." That is the essence of a plug-in conspiracy and the email as a whole is unquestionably relevant.

"[E]vidence is relevant 'if it has *any* tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable

than it would be without the evidence.'" *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998) (*citing* Fed. R. Evid. 401) (emphasis added). Thus, the relevance standard under Rule 401 is "liberal" and sets a very low bar to admissibility. *Id.*[1]

GX-9057 easily clears that hurdle by its tendency to show the existence of the conspiracy. Defendant Penn explicitly laid out how the conspiracy operates: he had relationships with "friendly competitors" and he used those relationships on an as-needed basis to fix prices.[2] The evidence adduced at trial confirms that understanding of defendant Penn's statement. Robbie Bryant, for example, testified that the purpose of such interactions with competitors was not merely to exchange prices but rather was to reach agreements and understandings to raise and maintain prices. And evidence in the record demonstrates the operation of the conspiracy in exactly that way. The summary exhibits, which are not yet admitted but are nevertheless supported by admitted evidence, show a consistent pattern—in 2012, in 2013, in 2014, and so on—of conspirators at competing suppliers calling each other on an as-needed basis to raise and maintain prices.

Moreover, GX-9057 is relevant because of its tendency to show defendant Penn's and defendant Lovette's knowing participation in the conspiracy. In the email, defendant Penn admitted that he himself picked up the phone to call "friendly

---

[1] The Court's prior ruling that the email "was made during the conspiracy, although before the charged dates, and in furtherance of the conspiracy," ECF No. 559 at 21 (Log Entry 7), was exactly correct. The issue being briefed by the parties here is only relevance, but that ruling goes well beyond that and show the relevance hurdle is easily cleared by GX-9057.

[2] The "friendly competitors" language has a very specific meaning: competitors who were part of the conspiracy. *See, e.g.*, GX-3037 and GX-6198.

competitors" to fix prices. His direct participation is further supported by admitted evidence in the 2014 KFC negotiations. Toll records show he had calls with defendant Roberts of Tyson (GX-1231) and a call with Mar-Jac (GX-9672) at critical times in the negotiations, which resulted in a massive price increase that Mr. Bryant testified was pursuant to an agreement among competitors.

Similarly, defendant Lovette's response in GX-9057 ("I appreciate your candid feedback") confirms his own complicity in the conspiracy. Just like defendant Penn's statement in the course of the 2014 Golden Corral negotiations ("if they is illegal don't tell me" in GX-441), defendant Lovette's statement in GX-9057 amounts to an endorsement of the conspiratorial activity. And again, the evidence in the record backs that up. Not only did defendant Lovette agree with co-conspirator Joe Grendys of Koch to fix Sysco's payment terms in 2016 (GX-803), he also received future bid information in 2012 (the "Good Guys" spreadsheet in GX-1522 and GX-1523) and 2014 ("Will review with Bill in am" in GX-1074) at critical times in the negotiations, thus establishing his direct participation and complicity in the conspiracy.

The defendants' argument that GX-9057 is irrelevant because it occurred before the charged conspiracy dates is incorrect. The Superseding Indictment charges a conspiracy that began "*at least as early as 2012*", ECF No. 101 ¶ 1. Moreover, the Court ruled after the *James* hearing that the government showed by a preponderance of the evidence that the conspiracy started at least as early as August 2011, ECF No. 559 at 7, and that defendants Penn and Lovette knowingly joined the conspiracy as early as August 2011, *id.* at 11.

3

The defendants' argument that in GX-9057 defendant Penn was only discussing obtaining future pricing from traders—who may also be members of the trade organization—rather than competitors, is unsupported by any evidence in the record. There are no admitted exhibits or testimony that traders were privy to competing suppliers' future pricing, such as bids to customers.

The defendants' argument that defendant Penn was describing his activities at USAPEEC prior to 2010 is also unavailing. The relationships he developed with "friendly competitors" certainly did not end just because he ceased his involvement in the organization, and the evidence in the record supports that. Likewise, the defendants' argument that the top email in GX-9057 shows that defendant Penn stopped any price fixing activity he described when he moved from Case to Pilgrim's is unsupported by the evidence. Indeed, as described above, the evidence demonstrates that he continued and accelerated price fixing activity at Pilgrim's.

At most, the defendants' arguments go to weight, not relevance, and weighing the evidence is the job of the jury.

For the foregoing reasons, GX-9057 contains relevant, non-hearsay co-conspirator statements and should be admitted in its entirety.

Dated: November 19, 2021

Respectfully,

By: /s/ Michael T. Koenig
Michael T. Koenig
Heather D. Call
Carolyn M. Sweeney
Paul J. Torzilli
Trial Attorneys

Antitrust Division
U.S. Department of Justice
Washington Criminal II Office
450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2165
michael.koenig@usdoj.gov
Attorneys for the United States

5