IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN,
5.    TIMOTHY R. MULRENIN,
6.    WILLIAM VINCENT KANTOLA,
7.    JIMMIE LEE LITTLE,
8.    WILLIAM WADE LOVETTE,
9.    GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

      Defendants.

Criminal Case No. 20-cr-00152-PAB

**JAYSON PENN'S MOTION TO ADMIT EXHIBITS WITHOUT A SPONSORING WITNESS**

Mr. Penn respectfully requests that the Court admit exhibits C-998, F-380, F-381, C-781, B-912, E-898, A-187, E-117, E-003, F-459, and D-240, *see* Appendices A-J, without a sponsoring witness pursuant to Federal Rules of Evidence 803(3) and 803(6), and for non-hearsay purposes under Rule 801.

As discussed below, certain of the exhibits explain the declarants' states of mind regarding the conduct charged in the indictment. Among other things, the exhibits show that the declarants intended and made plans to vigorously compete with their competitors and, in some cases, harbored feelings of dislike toward their competitors. This state of mind directly negates the intent requirement under the Sherman Act. The exhibits also illustrate certain Defendants'

motives for seeking price increases, namely that they were motivated by their concern about the significant gap in profitability between small birds and larger birds.

Finally, one exhibit, McKinsey & Co.'s presentation to the RSCS Board of Directors and RSCS's chief negotiator, Peter Suerken, is admissible not for the truth of the matter asserted, but to show the effect on the listeners (RSCS and its chief negotiator, Mr. Suerken). Shortly after hearing the McKinsey presentation, RSCS embarked on negotiations for 2015 pricing with the chicken suppliers and adopted a number of the recommendations that McKinsey made in the presentation. Mr. Olson, a member of the RSCS Board who heard the presentation and testified at trial, confirmed that RSCS relied on this presentation in deciding its negotiating strategy.

## ARGUMENT

Federal Rule of Evidence 803(3) provides an exception to the hearsay rule for statements of a declarant's "then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)," "regardless of whether the declarant is available as a witness." Federal Rule of Evidence 803(6) permits the introduction of a record created by a person with knowledge of the information recorded if the testimony of a qualified witness shows that the record was "kept in the course of a regularly conducted business activity, and [that] it was the regular practice of that business activity to make the" record. Because these rules provide *exceptions* to the hearsay rule, documents admitted thereunder may be considered for their truth. *See United States v. Knox*, 124 F.3d 1360, 1363 n.1 (10th Cir. 1997).

In addition, out-of-court statements offered for a purpose other than to prove their truth are not barred by the hearsay rule. *See* Fed. R. Evid. 801. Therefore, statements offered for their

effect on the listener, or to explain the listener's actions, are not hearsay. *See, e.g.*, *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1423 (10th Cir. 1991) (report not hearsay when offered "to show [defendant's] motivation" in conduct at issue); *United States v. Murphy*, 193 F.3d 1, 5 n.2 (1st Cir. 1999) (statements offered to show that a person "had certain information" or to explain motivations for the listener's actions are not hearsay).

## I.    EXHIBIT C-998

Exhibit C-998 is an August 2014 email chain in which Bill Lovette and Chad Baker of Pilgrim's Pride discuss an email from David Blackmon (also Pilgrim's) to David Hall and other employees of Wal-Mart regarding Pilgrim's "cost changes" for the "back half of the year." Mr. Blackmon forwards the email to Mr. Baker, who forwards it to Mr. Lovette, stating "I just hung up with David B.," and "[w]e are holding our position." Mr. Lovette responds, "[t]here's no backing up here and is [*sic*] not negotiable." He continues, "Based on needs in the market, we are analyzing converting a small bird op (most likely Natchitoches) to either Case Ready or large bird debone. In the past 10 years, only one (2011) has occurred where small birds have been competitive. We can no longer serve the industry with charity and hide behind the breadth of our portfolio while giving up $1-2 per head in profits." Mr. Lovette then forwards the chain to Mr. Penn without additional comment. *See* Appendix A.

The initial email from Mr. Blackmon to Mr. Hall is not offered for its truth, but rather for its effect on Mr. Baker and Mr. Lovette. As such, it is not hearsay. *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993) (statements offered for their effect on the listener "are generally not hearsay"). Similarly, Mr. Lovette's email forwarding the exchange to Mr. Penn is not hearsay because it is offered only to show that the exchange was shared with Mr.

Penn, not for the truth of any matter asserted. *See Mealey v. Gautreaux*, 2020 WL 7043329, at *5 (M.D. La. Dec. 1, 2020) (document not hearsay when offered only to establish notice). Indeed, the Court has recognized in connection with other exhibits that a forwarded email has evidentiary value separate from the truth of any matter asserted in the email. *See* Trial. Tr. at 77:19-78:6 (Nov. 18, 2021) (ruling on GX9704).[1]

Messrs. Baker's and Lovette's statements are admissible for their truth under Rule 803(3). Out-of-court statements regarding a declarant's then-existing state of mind are admissible under Rule 803(3) where the statement reflects "the declarant's intent to perform a certain act" or describes the declarant's motive or plan. *Allen v. Sybase, Inc.*, 468 F.3d 642, 656 (10th Cir. 2006). Here, Mr. Baker expressly states his intent to "hold[] our position" on the price increase. Mr. Lovette reiterates this same intent and describes a plan potentially to convert a small bird operation to a large bird plant. Mr. Lovette's statements also reveal his motive for seeking price increases and switching to larger birds: below-market prices for chicken in the small-bird segment. As such, the statements are admissible for their truth under Rule 803(3). *See United States v. DeLeon*, 418 F. Supp. 3d 682, 768-69 (D.N.M. 2019) (statements revealing defendant's plan and motive admissible for their truth under Rule 803(3)).

## II.   EXHIBITS F-380 & F-381

Exhibit F-380 is an email from Roger Austin to Mary Hester at RSCS attaching a PowerPoint presentation without additional comment. Exhibit F-381 is a PowerPoint entitled

---

[1] Citations to "Bryant Tr.," "Olson Tr.," and "Lewis Tr." refer to the official, certified excerpts of trial covering these witnesses' testimony. Because Mr. Penn does not have a complete set of the official, certified transcripts, all other transcript citations—referred to as "Trial Tr."—are to unofficial draft transcripts. Given their draft status, Mr. Penn defers to the Court's recollection if it differs from the drafts in any way.

"KFC Presentation" dated June 2014 reporting on Pilgrim's sales to KFC between 2000 and 2013 and changes to the "industry bottom line" in 2014. *See* Appendix B.

Exhibit F-380 contains no assertive statements and will be offered only to show that the attachment was sent to Ms. Hester. Offered for this purpose, the exhibit is not hearsay. *See Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay[.]" (quoting Fed. R. Evid. 801(c) advisory committee's note)).

Exhibit F-381 is admissible as a business record under Rule 803(6) and also for the effect on the listener (Ms. Hester and her colleagues at RSCS). First, courts regularly admit similar reports and presentations as business records. *See, e.g.*, *United States v. Frazier*, 53 F.3d 1105, 1110 (10th Cir. 1995) (audit report admissible as business record); *BoDeans Cone Co. v. Norse Dairy Sys., L.L.C.*, 678 F. Supp. 2d 883, 905-06 (N.D. Iowa 2009) (presentations on customer feedback admissible as business record). Mr. Bryant's testimony has already established that Pilgrim's employees prepared these presentations on the basis of personal knowledge and information recorded in the course of Pilgrim's regularly conducted business activities, and that the creation of such presentations was a regular practice of that activity. *See* Bryant Tr. 167:2-9, 251:11-252:6. In addition, the circumstances surrounding the creation and dissemination of the presentation further demonstrate its reliability as a business record. Pilgrim's prepared the presentation for its long-time customer KFC. The presentation summarizes the business relationship between Pilgrim's and KFC, a subject about which Pilgrim's could expect its audience at KFC to be extremely knowledgeable, and presents information from reliable third-

party sources. Accordingly, Pilgrim's had compelling business reasons to ensure that the content of the presentation was accurate, thereby providing additional guarantees of the trustworthiness of its contents. *See Frazier*, 53 F.3d at 1110 (report's independent "business significance" demonstrated preparer's interest "in insuring the report was accurate"); *see also United States v. McIntyre*, 997 F.2d 687, 700 (10th Cir. 1993) ("In some cases, the interests of the business may be such that there exists a sufficient self-interest in the accuracy of the [record] that we can find its contents to be trustworthy.").

F-381 is also admissible for the effect on Ms. Hester and RSCS more broadly. *See Murphy*, 193 F.3d at 5 n.2 (statements offered to show that a person "had certain information" or to explain motivations for the listener's actions are not hearsay). F-381 underscored the trendline of declining production in the small-bird segment relative to other segments, the growing gap in profitability between the small- and big-bird segments, increases in average bird weights that skewed away from KFC's ideal range, and the rising cost of other types of proteins, among other topics. F-381 at 5–11, 13–18, 41–44, 78–79. Shortly after Mr. Austin sent F-381 to Ms. Hester, Robert Lewis (RSCS) emailed Mr. Austin to set up negotiations over the 2015 contract and asked Mr. Austin, among other things, to specify the "profit margin needed and how that compares to big bird profitability," identify the "top five things that could cause price variability," and offer "[t]houghts concerning a three year deal." F-384. F-381 informed RSCS's strategy in negotiations with Pilgrim's, and for that reason, it is admissible for its effect on the listener. *See Faulkner*, 3 F.3d at 1434.

## III.   EXHIBIT C-781

Exhibit C-781 is a July 21, 2014, PowerPoint presentation prepared by the management

consultancy McKinsey & Company. The PowerPoint is titled "A Chicken in Every Pot: Project Summary." *See* Appendix C. Mr. Olson laid a foundation for the admission of this document during his testimony at trial. Mr. Olson testified that (1) he had seen the document before, (2) recognized it as a McKinsey report created for and shown to RSCS's Board of Directors during a meeting which he and Peter Suerken, the chief negotiator for RSCS, attended, and (3) this presentation affected RSCS's strategy regarding its 2015 pricing negotiations, which began shortly after McKinsey gave this presentation to the Board and Mr. Suerken. Olson Tr. 108:15-20; 109:16-110:8.

Exhibit C-781 is not hearsay because it is not offered to prove the truth of any matter asserted in the presentation. Fed. R. Evid. 801(c)(2). Rather, it is offered to show the effect on the listeners, specifically Mr. Olson, the rest of RSCS's Board of Directors, and Mr. Suerken. C-781 shows RSCS was informed of supply deficiencies for small bird chicken and the large disparity in the profitability between big birds and small birds. RSCS took certain actions as a direct result of receiving this information, notably (1) negotiating for the first time ever a three-year contract with the chicken suppliers rather than a one-year contract, C-781, at 24 ("Establish multi-year supply contracts with guarantees"), 32 ("COB Strategy Roadmap . . . Long term contract"); and (2) addressing the disparity between big bird and small bird profitability, *id.* ("COB Strategy Roadmap . . . Address big bird margin versus small bird margin"). Offered for these purposes, the document is not hearsay. *Faulkner*, 3 F.3d at 1434; *Murphy*, 193 F.3d at 5 n.2; *Flanagan v. Allstate Ins. Co.*, 2008 WL 4561543, at *1 (N.D. Ill. May 21, 2008) (documents not hearsay when offered to show listener "was affected by [] specific information, and considered it (accurate or not) when determining" what action to take). The resulting actions

need not be taken immediately after the listener heard the statement at issue for those statements to qualify as non-hearsay under Rule 801(c)(2), and, in any event, RSCS began its negotiations with chicken suppliers within weeks of receiving the McKinsey presentation. *See Smith v. Wilson*, 705 F.3d 674, 677, 679 (7th Cir. 2013) (statements made in 2003 not hearsay when offered to explain listener's "subsequent actions" as late as 2010).

## IV.   EXHIBIT B-912

Exhibit B-912 is an email exchange from May 2014 between Ms. Hester at RSCS and Greg Nelson at George's, on which Mr. Blake, Charles George, Darrel Keck, and Stephen Campisano (RSCS) are copied. Ms. Hester originally emailed Mr. Keck and Mr. Blake regarding George's "weekly production on COB through July," asking for an "[i]ndustry update on COB supply," including what RSCS could "do to get more supply" and what the "[o]utlook for supply for 2015 and beyond" looked like. Mr. Keck forwarded the email to Mr. Nelson. Mr. Nelson responded to Ms. Hester, explaining that there were "limited" opportunities to expand supply and that "long term contract options on COB would not help without an additional margin increase." B-912 at 1. He continued, "In all transparency, as we continue to evaluate return per bird on your bone-in products based on current pricing structures we can't justify committing additional supply to you. George's outlook for COB supply into 2015 and beyond is in question as we continue to evaluate converting our Springdale, AR plant from 50% small bird to a 100% big bird operation." *See* Appendix D.

The statements in this email exchange are relevant for their effect on the listener and therefore are not hearsay. *Faulkner*, 3 F.3d at 1434. Mr. Nelson's statements are offered only to show their effect on the recipients of the email – the negotiators at RSCS – and to explain

RSCS's subsequent actions in negotiating a three-year contract with Pilgrim's, trying to lock down its supply earlier than it would ordinarily negotiate contracts, and aligning small bird and large bird margins in the summer of 2014. *See* Lewis Tr. 71:15-72:7; 126:9-22; 254:10-255:9. Ms. Hester's statements likewise are not offered for their truth, but rather to provide context for Mr. Nelson's statements in the email.

## V.   EXHIBIT E-898

Exhibit E-898 is an August 19, 2014, email exchange between Mr. Penn, Mr. Austin, and Jason McGuire. Mr. McGuire sends Mr. Penn and Mr. Austin a spreadsheet titled "KFC Price Increase 14-08-15" and states that it shows an increase of "about .09/lb increase per Wog lb." Mr. Penn responds by asking, "what is your c/b analysis from the data?" Mr. McGuire states, "Profit per wog/lb is just shy of .09/lb." *See* Appendix E.

This exhibit is not hearsay because the relevant statements are not offered for their truth. Mr. Penn's only comment in the chain—the question, "what is your c/b analysis from the data?"—is a nonassertive question and is therefore not hearsay. *United States v. Jackson*, 88 F.3d 845, 848 (10th Cir. 1996) (questions not intended as assertions are not hearsay); *see also United States v. Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005) (same). It is offered only to show that Mr. Penn continued to ask questions after receiving Mr. McGuire's earlier emails containing a recommended bid proposal. Mr. McGuire's statements are likewise not offered for their truth, but to explain the context of Mr. Penn's question and to show the motive behind Pilgrim's pricing decisions. *Denison*, 941 F.2d at 1423; *Miller v. Jefferson Cnty. Bd. of Cnty. Comm'rs*, 2018 WL 1116673, at *2 n.2 (D. Kan. Mar. 1, 2018) (statement offered to show the basis for a conclusion not hearsay).

## VI.    EXHIBIT A-187

Exhibit A-187 is a January 22, 2014, email from Justin Gay at Pilgrim's to David Rothmeier at Chick-fil-A providing a cost estimate for Chick-fil-A's antibiotic-free program. Mr. Gay explains that Pilgrim's "estimate[s] the increase in cost to be $.3124 per lb based on 80mm lbs per year." *See* Appendix F. Exhibit A-187 is admissible for the non-hearsay purpose of showing the timing of when Pilgrim's responded to Chick-fil-A's request for an estimate of the increased cost of switching chicken production to NAE (no antibiotics ever). In other words, Exhibit A-187 is not being introduced to show that it would actually cost $.3124 per pound to switch to NAE, but that Pilgrim's sent that response to Chick-fil-A on January 22, 2014. The date of this email is important because it shows that Pilgrim's had provided its information to Chick-fil-A months before the government alleges there were any competitor communications regarding Chick-fil-A's request for an estimate.

In the alternative, Exhibit A-187 is admissible as a business record under Rule 803(6). Mr. Sangalis, Pilgrim's in-house counsel, testified that he was familiar with Pilgrim's process for forming sales contracts with customers and that the process regularly involved sending customers e-mails with bids. Trial Tr. at 171:9-172:15 (Oct. 28, 2021). This testimony demonstrates that emails like Exhibit A-187 were created in the course of Pilgrim's regularly conducted business activities and part of the regular practice of Pilgrim's sales employees to send such emails while negotiating contracts. *See, e.g.*, *In re Motor Fuel Temperature Sales Pracs. Litig.*, 2012 WL 12548410, at *2 n.14 (D. Kan. May 4, 2012) (email "made by an employee about a business matter" admissible under Rule 803(6) if foundation shows "the employer imposed a business duty to make and maintain such a record").

10

## VII.   EXHIBIT E-117

Exhibit E-117 is a November 24, 2014, email exchange in which a Tyson employee asks Pilgrim's to cover Tyson's supply obligation for a King Soopers order. Tim Stiller at Pilgrim's forwards the exchange to Mr. Penn, commenting "[h]opefully WM resurfacing," later explaining that he was referring to Tyson "picking up the business we lost and not being able to cover any orders above light levels." Mr. Penn responds, "Got it. Looks like this is happening. Wait until fast food comes back and bird weights are not optimized – weight range spreads and then…self destruction." *See* Appendix G.

The initial emails in the chain coordinating Pilgrim's covering a Tyson shortage are not hearsay because they are offered only to show their effect on Mr. Penn and Mr. Stiller, to whom the chain was later forwarded. *See Murphy*, 193 F.3d at 5 n.2; *Miller*, 2018 WL 1116673, at *2 n.2. Messrs. Penn and Stiller's statements are admissible under Rule 803(3) as statements of then-existing states of mind. Out-of-court statements relating "the impressions with which [declarants] were left" following a discussion involve "classic states of mind" under Rule 803(3). *Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 228 (2d Cir. 1999) (Sotomayor, J.). Mr. Stiller states "[h]opefully WM resurfacing," which he later clarifies to mean Tyson has not been "able to cover any orders above light levels" on the Wal-Mart business Tyson "pick[ed] up" from Pilgrim's. E-117. This clearly reflects Mr. Stiller's mental impressions. Similarly, Mr. Penn's response describes his impressions of Tyson's business based on the information he received. These are "classic states of mind" admissible under Rule 803(3). *See Schering*, 189 F.3d at 228.

## VIII.   EXHIBIT E-003

Exhibit E-003 is a February 20, 2015, email chain between Chad Cliburn, Mr. Penn, and

Mr. Stiller. Mr. Cliburn writes: "Tim – we are droping [*sic*] Otis off at AA class on March 9th.
Celeste just called me and we got the price increases and all of the business from Keystone. We
are 100% supplier. They are going to notify Keystone on Monday. Call you later with additional
info." Mr. Stiller forwards this to Matthew Herman at Pilgrim's, stating "[g]ood win." *See*
Appendix H.

Exhibit E-003 is admissible under Rule 803(3) as a statement of the declarants' then-
existing state of mind. Specifically, the statements reveal Pilgrim's attitude toward its
competitors. At trial, Robert Bryant testified that the "Otis" strategy referred to Pilgrim's
practice of declining to assist competitors by refusing to cover their shorts to customers and
instead "tak[ing] all of [the competitor's] business" with that customer. *See* Bryant Tr. 360:2-
361:8. Mr. Bryant agreed that the term "Otis" was a derogatory way of referring to competitors
who could not meet their customers' supply requirements, as it reflected Pilgrim's view that the
competitors behaved like "the town drunk." *Id*. at 360:22-25. With this context, Mr. Cliburn's
statement clearly reflects not only Pilgrim's attitude of dislike toward its competitors, but also its
intent to vigorously compete with other suppliers for business. *See Baker v. Benton Area Sch.
Dist.*, 418 F. Supp. 3d 17, 27 & n. 41 (M.D. Pa. 2019) (plaintiff's statements referring to the
defendant with derogatory epithets are admissible under 803(3)); *Allen*, 468 F.3d at 656
(statements reflecting "intent to perform a certain act" admissible under Rule 803(3)). In the
alternative, the relevant statements are admissible as non-hearsay for the purpose of showing
Pilgrim's employees' attitudes toward competitors. *See Powell v. Laborers Union No. 1271*, 426
F. App'x 615, 621 (10th Cir. 2011) (statements offered only for the "attitudes they revealed" are
"not hearsay"); *see also Roberts v. Henderson*, 1999 WL 35808245, at *4 (D.N.M. Dec. 15,

1999) (statements offered as evidence of animus not hearsay).

## IX.   EXHIBIT F-459

Exhibit F-459 is a January 30, 2015, email chain between Mr. Penn, Mr. Lovette, and Fabio Sandri. The email begins with Mr. Lovette forwarding information that Tyson Foods experienced a 12.6% increase in "EBIT" (earnings before interest and tax). Mr. Lovette then compares Tyson's increase to Pilgrim's performance and comments "Beat they [*sic*] . . . again!" In a follow up email, he adds, "And one more thing. It's been enough time passed now, I can honestly admit…..I HATE that company and everything about it!!!!" Mr. Sandri replies to this email, responding, "Welcome to the club," to which Mr. Penn replies, "I hate Tyson but I hate Sanderson [Farms] more!!" Mr. Sandri then finishes the conversation, writing, "And I hate Wayne [Farms] even more!" *See* Appendix I.

Exhibit F-459 expressly shows Messrs. Penn's, Lovette's, and Sandri's then-existing dislike of their competitors and are relevant to show that Messrs. Penn and Lovette did not form the required mental state under the Sherman Act. Statements of hatred or dislike are clearly statements of a "mental feeling" that fall within the state of mind exception to the hearsay rule. *See Smith v. Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005) (Rule 803(3) properly invoked when "the statement is offered for the truth of the matter asserted and shows the declarant's state of mind (e.g., 'I hate X.')"); *United States v. Brown*, 490 F.2d 758, 763 (D.C. Cir. 1973) (same); *Baker*, 418 F. Supp. 3d at 27 & n. 41 (same).

## X.   EXHIBIT D-240

Exhibit D-240 is a February 24, 2014, email from Mr. Penn to Mr. Lovette. In the email, Mr. Penn writes:

Best week as a company we have ever had. AND we have much, much more to get. Personal mission is to send [Sanderson Farms] into a tailspin. No need to mess with [Tyson Foods] because they have taken their own poison pill with their new structure. Foot on the throat. Both of these hese [*sic*] boys will be going down. Our team is far from being good. Teams need to commit to being the best in our industry or hit the door.

*See* Appendix J.

Mr. Penn describes his "personal mission" to outcompete Sanderson Farms and Tyson by having the best team in the industry, a statement about intent and plans admissible pursuant to Rule 803(3). *Allen*, 468 F.3d at 656 (statement of intent to perform an act admissible); *United States v. Peak*, 856 F.2d 825, 833 (7th Cir. 1988) (collecting cases); *United States v. Alfonso*, 66 F. Supp. 2d 261, 267 (D.P.R. 1999) (defendant's statement about his "sole mission in life" admissible Rule 803(3)). Moreover, "[s]tatements admitted under Fed. R. Evid. 803(3) to show the declarant's intent or plan may be used to show that the declarant acted in accord with that plan." *United States v. Donley*, 878 F.2d 735, 738 (3d Cir. 1989). As with Exhibit F-459, Exhibit D-240 is admissible because Mr. Penn's statements—made in the middle of the alleged conspiracy period—are relevant to whether Mr. Penn had formed the state of mind required under the Sherman Act.

## CONCLUSION

For the reasons discussed above, Mr. Penn respectfully requests that the Court admit exhibits C-998, F-380, F-381, C-781, B-912, E-898, A-187, E-117, E-003, F-459, and D-240 without a sponsoring witness.

Dated: December 6, 2021                        Respectfully submitted,

                                               _s/ Michael F. Tubach_
                                               Michael F. Tubach
                                               O'Melveny & Myers LLP
                                               Attorney for Jayson Jeffrey Penn
                                               Two Embarcadero Center, 28th Floor
                                               San Francisco, California 94111-3823
                                               (415) 984-8700
                                               mtubach@omm.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ Michael F. Tubach*
Michael F. Tubach