IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.    JAYSON JEFFREY PENN,
2.    MIKELL REEVE FRIES,
3.    SCOTT JAMES BRADY,
4.    ROGER BORN AUSTIN,
5.    TIMOTHY R. MULRENIN,
6.    WILLIAM VINCENT KANTOLA,
7.    JIMMIE LEE LITTLE,
8.    WILLIAM WADE LOVETTE,
9.    GARY BRIAN ROBERTS, and
10.   RICKIE PATTERSON BLAKE,

       Defendants.

No. 20-cr-00152-PAB

## DEFENDANTS' JOINT OPPOSITION TO THE GOVERNMENT'S FOURTH MOTION TO EXCLUDE EXPERT TESTIMONY

The government's fourth motion to exclude expert testimony is a barely veiled motion for reconsideration. It is mostly a direct copy of the government's third motion to exclude expert testimony, which advanced arguments that the Court already rejected in prior rulings or that the government easily could have raised in prior motions but did not. The government's fourth motion offers no reason to revisit any of the Court's prior rulings declining to exclude any of Professor Edward Snyder's or Dr. Aparna Sengupta's testimony. The government seeks blanket preclusion based upon suspicion and objections. Even if these were valid—which they are not—they are best addressed by specific objections and rulings by the Court at trial. The Court should deny the government's fourth attempt to exclude this testimony.

## BACKGROUND

The government previously filed two motions to exclude Professor Snyder's testimony. *See* Docs. 299, 725. The first motion argued that Defendants' Rule 16 disclosures from May 14 and July 19, 2021 (*see* Docs. 299-1 and 299-2) were inadequate and contained irrelevant or prejudicial opinions. Doc. 299. The Court denied that motion, but ordered Defendants to provide a supplemental disclosure on a single topic. Doc. 649. Defendants provided the government with a supplemental disclosure on October 22, 2021. *See* Doc. 734-1. The government then moved to exclude any testimony based on the supplemental disclosure, again arguing that it was inadequate and the opinions were irrelevant or prejudicial. Doc. 725. The Court denied that motion on November 9, 2021. Doc. 809. Only two weeks later, the government filed a third motion to exclude on November 26, 2021, which sought to relitigate the same issues from its prior two motions, that Professor Snyder's testimony was irrelevant and prejudicial. Doc. 872. Ultimately, the Court denied the motion as moot because the defendants declined to call economic experts during the first trial. *See* Doc. 904. But now, in preparation for the retrial, the government has filed a ***fourth*** motion to exclude. Doc. 1002. The fourth motion is virtually identical to the third motion, with only stylistic changes.

## ARGUMENT

### I.   The Court Has Already Ruled that Professor Snyder's Benchmark Analysis Is Relevant.

The government's fourth motion to exclude—like its second and third motions—repeats the argument that Professor Snyder should not be permitted to testify about any benchmarking analysis. It claims that benchmarking analyses are irrelevant in criminal actions and have probative

value only to assess civil damages. Doc. 1002 at 2. The government also argues that "to assess whether any defendants knowingly joined the conspiracy, the defendants must show at a minimum that the data used in the analysis was something known to and used by the defendants during the conspiracy period." *Id*. at 4. Absent such a showing, the government claims that "these data are not relevant to [defendants'] participation in the conspiracy." *Id*. at 5.

The government previously raised, and the Court already rejected, all of these arguments. In denying the government's second motion to exclude the economic experts, the Court held:

> The government also objects that the supplemental disclosure fails to show that the dataset that Professor Snyder used to compare to the "prices at issue," namely, a dataset of prices that were "not alleged to have been affected by the alleged conspiracy," is relevant since defendants' supplemental disclosure does not indicate that "defendants knew about those prices." Docket No. 725 at 3-5. However, defendants say that Professor Snyder's comparison is not relevant to damages or to an economic justification for price fixing, but rather to the issue of whether a price fixing agreement existed. Docket No. 734 at 4. The Court has already indicated that defendants cannot elicit expert testimony that the alleged conspiracy was justified by procompetitive outcomes, *see* Docket No. 649 at 7, but that does not preclude Professor Snyder from testifying about whether or not his analyses show the existence of a conspiracy. *See id*. (discussing permissible use of Professor Snyder's opinion in support of defendants' theory that there was no agreement to fix prices). The Court accordingly rejects the government's argument that Professor Snyder's benchmarking analysis is irrelevant.

Doc. 809 at 3-4.

 The Court has already made clear that it "will not reconsider its earlier rulings, absent a change in circumstances warranting reconsideration." Doc. 925 at 3; *see also* Order, Nov. 1, 2021, Doc. 770, at 2 (a "motion for reconsideration is not an appropriate means to revisit issues already addressed or to advance arguments or evidence that could have been raised in prior briefing" unless there is "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice."). Defendants have not made

any new disclosures since this ruling. Professor Snyder's opinions (and the bases for them) remain the same. Nor does the government's fourth motion provide *any* argument that the Court erred when it previously rejected these same arguments. While the government attempts to raise a new argument that any dataset that Professor Snyder uses cannot be reliable as a benchmarking tool, this argument fails because the government does not know but only speculates that Professor Snyder will base his analysis on "the false premise that there are sales that occurred under effectively competitive conditions." Doc. 1002 at 4.  The question of whether this premise is in fact "false" is an issue for trial that should be a subject for cross-examination, not exclusion. The Court should reject these latest attempts to circumvent prior orders and rehash old arguments. Professor Snyder's benchmarking analysis remains relevant evidence tending to show that the charged conspiracy did not exist. *See* Doc. 809 at 3-4.[1]

The government further speculates that Mr. Blake's expert witness, Dr. Sengupta "may similarly testify about a benchmarking analysis." *See* Doc. 1002 at 2 n.2. The Court has previously ruled that Mr. Blake is not required to make any expert disclosure with regard to Dr. Sengupta, because he did not request reciprocal discovery, but that Dr. Sengupta's testimony would be admissible under the same parameters established by the Court's rulings with respect to Professor

---

[1] The government also spends a significant amount of space challenging a footnote in Professor Snyder's October 22 supplemental disclosure. Doc. 1002 at 3. This footnote was included in the disclosure that the government first challenged in its second motion to exclude. The footnote does not change any substantive aspect of Professor Snyder's analysis. It merely cites two articles that provide background on benchmarking analyses, in support of the unremarkable proposition that "Benchmarking is a standard approach used by economists by which one set of data is compared to another." Doc. 734-1 at 1. The citation to these two articles does not alter the fact that Professor Snyder only intends to rely on benchmark data as evidence of whether or not a conspiracy existed. Nor does he intend to testify about them.

Snyder. *See* Doc. 674. Since, as set forth above, such testimony would have a permissible purpose, the government's speculation is irrelevant.

## II.     The Defense Experts Will Not Testify About Privileged Documents.

The government also argues that because defendants in the *In re Broiler Chicken* civil litigation claimed privilege over certain documents on Defendants' exhibit list, including documents related to a set of pricing data from Edgeworth Economics, any such data underlying Professor Snyder's testimony is irrelevant, unreliable, prejudicial, and "not of the type reasonably relied upon by other economists in the field." *Id.* at 5-6. This is a non-issue. Defendants do not intend to elicit any testimony from Professor Snyder or Dr. Sengupta about any privileged documents.  *See* Doc. 888 at 4.[2] This should resolve the government's purported privilege concern entirely. Notwithstanding, a claim of privilege by different parties in a different proceeding does not make data ineligible under Rule 703, *Daubert*, or its progeny.

## III.     The Defense Experts Will Not Violate the Hearsay Rule.

The government also moves to exclude Professor Snyder's testimony on the purely speculative grounds that it "suspects" Defendants may use him as a conduit to circumvent the hearsay rule. Doc. 1002 at 7. It goes without saying that there is no support in the caselaw for a blanket bar of a witness's testimony on speculation about hearsay. The proper procedure is an objection when specific evidence in violation of the hearsay rule is offered.

---

[2] It should be noted that the civil defendants have only claimed privilege, but have not shown that the documents are in fact privileged. The government's claim that Defendants "do not dispute the privilege claims" because they removed certain documents from their exhibit list is wrong. Doc. 1002 at 5. Defendants removed the documents from their exhibit list during the first trial only because they did not intend to offer those documents into evidence and thus there was no need to engage in a moot argument about whether the documents were actually privileged.

In any event, the government seems to assume Defendants' counsel intend to knowingly violate the Federal Rules of Evidence under "the veil of expert testimony." Doc. 1002 at 8. There is no basis for this claim. Defendants are well aware of the hearsay rule and all of the exceptions to it. They do not intend to elicit testimony from Professor Snyder or Dr. Sengupta that is inadmissible under the Federal Rules of Evidence. Defendants have never suggested that either expert has expertise in interpreting so-called "co-conspirator" or "victim/customer" communications. *Cf. id*. By the same token, the government should not be permitted to ask a defense economic expert to "interpret or opine" on so-called "co-conspirator or victim/customer communications" either, because, as the government acknowledges, this is not part of an economist's expertise. *See id*.

## IV.    A *Daubert* Hearing Is Wasteful and Unnecessary

Finally, the government requests a *Daubert* hearing as an alternative to exclusion. This is the first time that the government ever made this request, in all four of its motions to exclude. This means the request is waived. *See* Doc. 770 at 2. Such a hearing is also unnecessary. The Court already expressly ruled that the economic expert testimony is admissible. Doc. 809. It would be wasteful, inefficient, and unnecessary to hold a separate hearing in advance of the retrial, when the Court already resolved the issues relevant to the hearing months ago during the first trial.

## CONCLUSION

For the reasons discussed above, the Court should deny the government's fourth motion to exclude expert witnesses.

Dated: February 7, 2022

Respectfully submitted,

s/ John A. Fagg, Jr.
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

s/ Michael F. Tubach
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

s/ Richard K. Kornfeld
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

s/ Michael S. Feldberg
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

s/ Bryan Lavine
Bryan Lavine
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
Bryan.lavine@troutman.com

s/ Elizabeth Prewitt
Elizabeth B. Prewitt
LATHAM & WATKINS LLP
Attorney for Timothy R. Mulrenin
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200
elizabeth.prewitt@lw.com

s/ James A. Backstrom
James A. Backstrom, Counsellor at Law
Attorney for William Vincent Kantola
1515 Market Street, Suite 1200
Philadelphia, PA 19102-1932
(215) 864-7797
jabber@backstromlaw.com

s/ Mark A. Byrne
Mark A. Byrne
BYRNE & NIXON LLP
Attorney for Jimmie Lee Little
888 West Sixth St, Suite 1100
Los Angeles, CA 90017
(213) 620-8003
markbyrne@byrnenixon.com

s/ Craig Allen Gillen
Craig Allen Gillen
GILLEN, WITHERS & LAKE, LLC
Attorney for Gary Brian Roberts
400 Galleria Parkway, Ste. 1920
Atlanta, GA 30339
(404) 842-9700
cgillen@gwllawfirm.com

s/ Barry J. Pollack
Barry J. Pollack
Attorney for Rickie Patterson Blake
ROBBINS, RUSSELL, ENGLERT,
ORSECK, & UNTEREINER LLP
2000 K Street N.W., 4th Floor
Washington, DC 20006
(202) 775-4514
bpollack@robbinsrussell.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of this filing to all listed parties.

Dated: February 7, 2022

_s/ Michael F. Tubach_

Michael F. Tubach