**Attachment A**

**Proposed Revised Instruction No. 15**

The indictment charges that the crime was committed beginning at least as early as 2012 and ~~continuing~~ through at least early 2019. The government must prove beyond a reasonable doubt that a defendant committed the crime reasonably near <u>or within</u> those dates. <u>The conspiracy does not need to exist during the entire time period, as long as it is</u> <u>fully contained within the time period charged—that is, at least as early as 2012 and through at least early 2019.</u>[1]

---

[1] <u>United States v. Ailsworth, 138 F.3d 843, 848–50 (10th Cir. 1998); United States v. Portela, 167 F.3d 687 (1st Cir. 1999); United States v. Coughlin, 610 F.3d 89, 105-107 (D.C. Cir. 2010); United States v. Heimann, 705 F.2d 662, 666-67 (2d Cir. 1983); In re Urethane Antitrust Litig., No. 04-1616-JWL, 2013 WL 2097346, at *9 (D. Kan. May 15, 2013), amended, No. 04-1616-JWL, 2013 WL 3879264 (D. Kan. July 26, 2013), and aff'd, 768 F.3d 1245 (10th Cir. 2014).</u>

**Proposed Revised Instruction No. 17**

The type of relationship condemned by the Sherman Act is a conspiracy. A conspiracy is often described as a "partnership in crime," in which each person found to be a member of the conspiracy is liable for all reasonably foreseeable acts of the other members during the existence of and in furtherance of the conspiracy. To create such a relationship, two or more persons must enter into an agreement or mutual understanding that they will act together for some unlawful purpose or to achieve a lawful purpose by unlawful means. It is the agreement to act together that constitutes the crime. Whether the agreement is actually carried out or whether it succeeds or fails does not matter.

In order to establish the existence of a conspiracy, the evidence need not show that the members of the conspiracy entered into any express, formal, or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which the object was to be accomplished. The agreement itself may have been entirely unspoken. What the evidence must show in order to prove that a conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement or mutual understanding to accomplish a common purpose.

Direct proof of a conspiracy may not be available. A conspiracy may, however, be disclosed by the circumstances or by the acts of the members. Therefore, you may infer the existence of a conspiracy from what you find the parties actually did, ~~as well as~~

from the words they used, as well as from their course of dealing.[2] However, mere similarity of conduct among various persons, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not necessarily establish the existence of a conspiracy. If actions were taken independently by them, without any agreement or mutual understanding among them, then there would be no conspiracy.

Where circumstantial evidence is just as consistent with unilateral action as with concerted action, it does not, standing alone, support an inference of antitrust conspiracy.

However, in determining whether a conspiracy has been proved, you must view the evidence as a whole and not piecemeal. You should consider the actions and statements of all the alleged conspirators. Acts that are by themselves wholly innocent acts may be part of the sum of the acts that make up a conspiracy to fix prices in violation of the Sherman Act.

---

[2] United States v. Suntar Roofing, Inc., 897 F.2d 469, 474 (10th Cir. 1990) (upholding jury instruction as "adequately set[ting] forth the law of this circuit," where instruction said: "Direct proof of a conspiracy may not be available, and the common purpose and plan may be disclosed only by the circumstances and acts of the members, such as their course of dealings."); United States v. Beachner Const. Co., 729 F.2d 1278, 1283 (10th Cir. 1984) ("It is enough that the participating parties have a tacit understanding based upon a long course of conduct."). *See also* Am. Tobacco Co. v. United States, 328 U.S. 781, 800 (1946) (evidence "showing that although there was no written or express agreement discovered among [the conspirators] their practices included a clear course of dealing" which properly "convinced the jury of the existence of a combination or conspiracy to fix and control prices and practices"); United States v. A. Schrader's Son, 252 U.S. 85, 99 (1920) (agreement is "implied from a course of dealing or other circumstances" unlawful under the Sherman Act).

A conspiracy may vary in its membership from time to time. It may be formed without all parties coming to an agreement at the same time, knowing all the details of the agreement, or knowing who all the other members are. The unlawful agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common purpose. However, a corporation's employees cannot be found guilty of conspiring among themselves only.

~~In determining whether a conspiracy has been proved, you must view the evidence as a whole and not piecemeal. You should consider the actions and statements of all the alleged conspirators. Acts that are by themselves wholly innocent acts may be part of the sum of the acts that make up a conspiracy to fix prices in violation of the Sherman Act.~~

A conspiracy ends only when its purpose and objective have been accomplished or all the parties to the conspiracy abandon or terminate it.

4

**Proposed Revised Instruction No. 18**

A conspiracy to fix prices is an agreement or mutual understanding between two or more competitors to fix, control, raise, lower, maintain, or stabilize the prices charged, or to be charged, for goods or services. A price-fixing conspiracy is commonly thought of as an agreement to establish the same price; however, prices may be fixed in other ways. Prices are fixed if the range or level of prices or pricing strategy is agreed upon. They are fixed because they are agreed on. Thus, an agreement among competitors to raise or lower a price, to set or avoid certain price promotions, to set or avoid certain credit terms,[3] to set a maximum price, to stabilize prices, to set a price or price range, or to maintain a price is illegal. The aim and result of every price-fixing agreement, if successful, is the elimination of one form of competition.

A conspiracy to rig bids is an agreement between two or more competitors to eliminate, reduce, or interfere with competition for something that is to be awarded on the basis of bids. A conspiracy to rig bids may be an agreement among competitors about the prices to be bid, who should be the successful bidder, who should bid high, who should bid low, or who should refrain from bidding; or any other agreement with respect to bidding that affects, limits, or avoids competition among them. The aim and result of every bid-rigging agreement, if successful, is the elimination of one form of competition.

If you find that one or more of the defendants entered into an agreement to fix prices and rig bids, the fact that a defendant did not abide by it, or that one or more of them may not have lived up to some aspect of the agreement, or that they may not have

---

[3] *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 648 (1980).

been successful in achieving their objective is no defense. The agreement is the crime, even if it is never carried out.

If the conspiracy charged in the indictment is proved, it is no defense that some or all of the defendants actually competed with each other in some manner or that they did not conspire to eliminate all competition. Nor is it a defense that some or all of the defendants did not attempt to collude with all of their competitors. Similarly, a conspiracy may be unlawful even if it did not extend to all goods sold by conspirators or did not affect all of their customers.

Evidence of the bids submitted and prices actually charged has been admitted to assist you in deciding whether a defendant entered into an agreement to fix prices and rig bids. Such evidence may lead you to conclude that some or all of the defendants never entered into the agreement charged in the indictment or that some or all of the defendants did enter into the agreement.

The mere fact that some or all of the defendants may have engaged in similar or parallel pricing does not by itself establish the existence of a conspiracy among them. Evidence of similarity of business practices of defendants, or the fact that they may have charged identical prices for the same goods, does not alone establish an agreement to fix prices and rig bids, since such activities may be consistent with ordinary and proper competitive behavior in a free and open market. A business may lawfully copy its competitors' price lists, follow and conform exactly to its competitors' price policies and price changes, and adopt the same prices, conditions of sale, or other practices as long as it does so independently and not as part of an agreement or understanding with one or more of its competitors.

Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct resulted from, or was a part of, the information exchange. It is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or discuss common aims or objectives or exchange information on independently derived prices. There may be legitimate reasons that would lead competitors to exchange price information other than fixing prices or rigging bids. It is not illegal for a competitor to obtain, rely upon, and act on pricing and other information received from competitors, customers, media, internet sources, industry analysts, brokers, and others involved in the production and sale of broiler chicken products so long as there is no agreement to fix prices or to rig bids.

Nevertheless, you may consider such facts and circumstances, along with all other evidence, in determining whether the alleged price fixing and bid rigging resulted from the independent acts of the defendants freely competing in the open market, or whether it resulted from an agreement among or between two or more of them.

**Proposed Revised Instruction No. 19**

The indictment charges that the defendants were all members of one single conspiracy to commit the crime of price fixing and bid rigging.

You must determine whether the single conspiracy, as charged in the indictment, existed, and if it did, whether the defendant was a member of it.

Proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the indictment, unless one of the several conspiracies which is proved is the single conspiracy charged in the indictment or is fully contained within it as a narrower conspiracy.

In deciding whether there was a single, overall conspiracy, you can consider whether there was a single, common, and continuing objective among defendants, including to suppress or eliminate competition.[4]  A common objective can be shown by common jargon; whether participants had no fear of initiating price fixing or bid rigging; the perpetual nature of the scheme, which could be "plugged into" at any time; the existence of a tacit mutual understanding among competitors of a single, continuing conspiracy, among other factors.[5]

---

[4] United States v. Beachner Const. Co., 729 F.2d 1278, 1281, 1283 (10th Cir. 1984) (upholding finding of a single conspiracy based on whether the conspirators "had a *single, common and continuing objective*," where the continuing objective was "to eliminate price competition and ensure higher individual profits."); United States v. Mobile Materials, Inc., 881 F.2d 866, 872 (10th Cir. 1989) (holding there was "ample evidence of a single conspiracy to submit collusive, noncompetitive and rigged bids, or to withhold bids," where the shared purpose was "to circumvent price competition and enhance profitability").

[5] Beachner Const. Co., 729 F.2d at 1282 (holding there was a single conspiracy because the evidence "revealed (1) the existence of common bid-rigging jargon prevalent industry-wide, (2) the participants had no fear of initiating the setup of a bid, (3) the perpetual nature of the bid-rigging scheme, and (4) the existence of a tacit mutual understanding among competitors of a single, continuing conspiracy."); *see also*

If you find that a defendant was not a member of the conspiracy charged, then you must find the defendant not guilty, even though the defendant may have been a member of some other conspiracy. This is because proof that a defendant was a member of some other conspiracy, unless it is a narrower conspiracy fully contained within the charged conspiracy, is not enough to convict. To convict a defendant, you must unanimously agree on the conspiracy of which he is found guilty. That is, to find a defendant guilty, you must unanimously agree that a defendant joined the conspiracy as charged or you must unanimously agree that a defendant joined a narrower conspiracy that is fully contained within the charged conspiracy.

Proof that a defendant was a member of some other conspiracy would not prevent you from returning a guilty verdict if the government proved that he was also a member of the conspiracy charged in the indictment.

---

id. (describing with approval factors used by the district court, including that "the bid-rigging scheme was self-perpetuating in nature and could be 'plugged into' at any time).

**Proposed Revised Instruction No. 22**

Before you can find a defendant guilty of committing the crime charged in the indictment, you must find by a preponderance of the evidence that, beginning at least as early as 2012 and ~~continuing~~ through at least early 2019, the conspiratorial agreement or some act in furtherance of the conspiracy occurred in the District of Colorado. The District of Colorado has the same boundaries as the State of Colorado. <u>The conspiracy does not need to have continued for the entire time period, as long as some act in furtherance occurred in the District of Colorado during the relevant time frame.</u>

To prove something by a preponderance of the evidence is to prove it is more likely true than not true. This is a lower standard than "beyond a reasonable doubt."