IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **JAYSON JEFFREY PENN,**
2. **MIKELL REEVE FRIES,**
3. **SCOTT JAMES BRADY,**
4. **ROGER BORN AUSTIN,**
5. **TIMOTHY R. MULRENIN,**
6. **WILLIAM VINCENT KANTOLA,**
7. **JIMMIE LEE LITTLE,**
8. **WILLIAM WADE LOVETTE,**
9. **GARY BRIAN ROBERTS,**
10. **RICKIE PATTERSON BLAKE,**

    Defendants.

## UNITED STATES' TRIAL BRIEF

The government respectfully submits its trial brief,[1] in accordance with Section III.D of the Court's Criminal Practice Standards, to identify ahead of trial issues regarding witness examination and receipt of evidence.

### 1. Agent Text Messages

The Court should not permit the defendants to cross examine government agent witnesses regarding certain text messages, ECF No. 818-3, to impugn their characters or otherwise. The Court already concluded the messages are irrelevant and have no

---

[1] The government re-asserts the points and arguments made in the trial brief submitted ahead of the first trial in this case. ECF No. 670.

impeachment value. ECF No. 842 at 2-3.[2] In any event, any minuscule amount of relevance and impeachment value is substantially outweighed by unfair prejudice to the government. Fed.R.Evid. 403.[3]

### 2. Authenticating Handwriting

The government anticipates authenticating handwriting of defendants Blake, Penn, and Lovette, and their co-conspirator, Pete Martin, through some combination of lay, expert, and trier-of-fact comparisons. Specifically, for that purpose, the government plans to call lay witnesses Florence Becker, Sheri Garland, Gary Weeks, and Julie Lawrence, as well as an expert witness from the FBI, document examiner Gabriel Watts. Fed.R.Evid. 901(b)(2)-(3). The government also plans to present sufficient foundation to enable a jury-conducted comparison. Fed.R.Evid. 901(b)(3).

To authenticate handwriting, Rule 901 sets a low bar, requiring only evidence—whether direct or circumstantial—that provides "a rational basis from which the jury could infer that the document did, in fact, belong to" the purported author. *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990); *see also United States v. Lamm*, 5 F.4th 942, 946–47 (8th Cir. 2021); *United States v. McDaniel*, 433 Fed. Appx. 701, 704 (10th Cir. 2011); *United States v. Safavian*, 435 F. Supp. 2d 36, 38 (D.D.C. 2006).

<u>Lay Testimony</u>. A combination of Rules 701 and 901(b)(2) provides one avenue for lay testimony to authenticate handwriting. *United States v. Harris*, 786 F.3d 443, 446

---

[2] The government moved to exclude the messages from the first trial, ECF No. 853, but did not call the agents so the Court denied the motion as moot, ECF No. 904.
[3] To the extent the Court permits cross-examination on the text messages or the thoroughness of the investigation generally, the defendants may open the door to government inquiry on re-direct into investigation specifics.

(6th Cir. 2015). Rule 701 requires only that the testimony be "helpful" to determining a disputed fact, and Rule 901(b)(2) is satisfied when a witness has adequate familiarity with the person's handwriting that was "not acquired for the current litigation," *see Harris*, 786 F.3d at 448. Importantly, a lay witness does not need to identify the source of handwriting with "absolute certainty;" the witness must simply testify that the handwriting in question bears "similarity to" the source's writing. *United States v. Tipton*, 964 F.2d 650, 655 (7th Cir. 1992); *United States v. Barker*, 735 F.2d 1280 (11th Cir. 1984). Moreover, a "single exposure to an uncontested signature" or handwriting exemplar can be adequate to establish familiarity. *United States v. Ali*, 616 F.3d 745, 754 (8th Cir. 2010).

A witness may also gain familiarity by viewing "writings purporting to be those of the person in question under circumstances indicating their genuineness." *United States v. Standing Soldier*, 538 F.2d 196, 202 (8th Cir. 1976); *Harris*, 786 F.3d at 448 (affirming authenticity of letters hand-delivered by the purported author).

Here, the government's witnesses' anticipated testimony is adequate to meet the low bar for handwriting authentication.[4]

- Ms. Garland served as administrative assistant for defendants Penn and Lovette for many years, and is expected to testify that she became familiar with their handwriting as a result.[5]

---

[4] █████████████████████████████████████████████████████████████████████████████████████████████████████

[5] The government will provide a fulsome explanation of the relevance of the Penn/Lovette notes if the Court so desires.

- Mr. Weeks, and attorney for George's, is expected to testify—as he did in the first trial, *see* T. Tr. at 3083:8-9, 8086:1-3—that defendant Blake physically delivered GX-6086 and 6087 to Mr. Weeks.[6]
- Ms. Lawrence, who is employed in George's HR department, is expected to testify that handwriting in defendant Blake's personnel files are known to be his because individual employees fill out portions of such files.

*Expert Testimony*. The government intends to call Mr. Watts to testify about a comparison he performed between known samples of defendant Blake's handwriting (authenticated by the testimony of Ms. Lawrence) and the handwriting contained in GX-6086, 6087, and 9685. Mr. Watts has extensive training and experience in forensic examination of documents, including specifically handwriting analysis.[7] He is more than qualified to render an expert opinion on defendant Blake's handwriting. *See United States v. Hernandez*, 42 Fed.Appx. 173, 176 (10th Cir. 2002); *United States v. Proctor*, 166 F.3d 349 (10th Cir. 1998).

---

[6] The government plans to elicit non-privileged testimony from Mr. Weeks. First, Mr. Weeks is expected to testify that he was not representing defendant Blake; he was representing George's. Second, the government plans to ask Mr. Weeks whether he directed defendant Blake to turn over his hardcopy files. A simple "yes" or "no" answer would not reveal any communication between an attorney and client; would not reveal any mental impressions giving rise to a work product claim; and would not "relate to legal advice or strategy sought by the client [*i.e.*, George's]" as required for the privilege to attach. *See In re Grand Jury Proceedings*, 616 F.3d 1172 (10th Cir. 2010). Third, the government intends to inquire whether defendant said anything, and if so what, when handed over his files. Nothing in any statement of Blake attributing files to himself would pertain to legal advice or strategy. Furthermore, George's cannot claim work product privilege or attorney-client privilege as to any of these statements. *See id.* at 1185; *In re Sealed Case*, 737 F. 2d 94, 99 (D.C. Cir. 1984). If George's counsel objects again on privilege grounds, Tr. 3094:6-1 (Nov. 16, 2021), the Court should reconsider any previous rulings to the contrary and overrule the objection or, require counsel to establish the privilege claim *ex parte*.

[7] Mr. Watts' *curriculum vitae* is attached as Exhibit 1. Defendant Blake made a tactical decision not to request reciprocal expert discovery from the government. *See* ECF No. 634. Nevertheless, the government expects to receive Mr. Watts' report soon and will turn it over to defendant Blake (and the other defendants) promptly.

4

*Comparison by Trier of Fact*. Rule 901(b)(3) permits the trier of fact to authenticate handwriting through "comparison with an authenticated specimen," even if a document's author is actively disputed. *See, e.g., United States v. Clark*, 377 F. App'x 818, 820 (10th Cir. 2010) (affirming that "[t]he jury could compare signatures itself"). The Rule reflects the notion that "the jury require[s] no definitive identification or expert analysis to apply its own common sense" authenticate handwriting. *United States v. Bikundi*, 926 F.3d 761, 318-319 (D.C. Cir. 2019); *United States v. Bell*, 833 F.2d 272, 276 (11th Cir.1987). As such, the government plans to admit the contested handwriting samples and known exemplars for comparison by the jury.

## PRIOR WITNESS STATEMENTS

Several types of prior statements may arise at trial. Anticipating those eventualities, the government sets forth the applicable law below.

### 3.  Out-of-Court Statements by a Testifying Witness

The statements of a testifying witness in an email are out-of-court statements like any other. Unless an exclusion, Fed.R.Evid. 801(d), or an exception, Fed.R.Evid. 803, 804, 807, applies, the rule against hearsay renders the statement inadmissible if offered for its truth. Those basic rules are no different whether or not the declarant testifies.

Therefore, even when a witness testifies and is subject to cross examination, his or her out-of-court statement offered for the truth "cannot be admitted unless it falls under an exception." *United States v. Jefferson*, 925 F.2d 1242, 1252 (10th Cir. 1991); *see also* Fed.R.Evid 801(c), 802. But a testifying witness's out-of-court statement can become non-hearsay if he or she admits to making a specific statement and that the

statement was true. Then the witness has adopted the statement in court initially made out of court, rendering the statement admissible. See Fed.R.Evid. 801 Adv. Comm. Notes (1973).

At trial, for example, if a witness is confronted with a statement from an e-mail that he or she wrote but does not remember the statement, it is inadmissible hearsay and should be excluded. *McInnis*, 458 F.3d at 1141-45. But if the witness admits to making the statement and affirms its truth, then the statement is not hearsay and it should be admitted. See Fed. R. Evid. 801 Adv. Comm. Notes (1973).

### 4. Prior Inconsistent Statements

At trial, there may be occasions where a witness testifies to a statement that is inconsistent with a statement made, for example, at the earlier trial. Rule 801(d)(1)(A) provides that the rule against hearsay does not apply to prior inconsistent statements by a witness where the declarant testified under oath, and was subject to cross-examination. Under those circumstances, the earlier statement is admissible non-hearsay. If, however, the prior inconsistent statement was not made under oath subject to cross examination, it may be used "only to impeach or discredit the witness and [is] not competent substantive evidence of the facts[.]" *United States v. Moreno*, 271 Fed. App'x 767, at *2-3 (10th Cir. 2008) (citing *United States v. Carter*, 973 F.2d 1509, 1512 (10th Cir. 1992)). If the latter occurs, a limiting may be warranted.

### 5. Prior Consistent Statements

Evidence of a witness's prior consistent statements is non-hearsay if offered either to rebut a charge of recent fabrication or improper influence, or to rehabilitate the

6

declarant's credibility after it is attacked. Rule 801(B)(1)(d)(i)-(ii); s*ee also United States v. Magnan*, 756 Fed. App'x 807, 818 (10th Cir. 2018) (describing 2014 creation of subsections (i) and (ii)).

Therefore, at trial, if a witness is shown an agent's interview report reflecting a statement inconsistent with the witness's testimony, the witness can be cross-examined with that statement, but on re-direct the witness can be rehabilitated by being shown statements consistent with his or her testimony. *Magnan*, 756 Fed. App'x at 818.

### 6.  Refreshing Recollection

Properly refreshing a witness's recollection follows a five-step process. First, the witness must indicate that he or she does not remember the information called for by the question. Second, the witness may then review a document to determine if it refreshes his or her recollection. Third, after reviewing the document, the document should be removed from the witness's view. Fourth, foundation must then be laid to determine whether the document did in fact refresh recollection. Fifth, if foundation is laid, the witness may testify to the information recollected.

At the upcoming re-trial, the defendants' strict adherence to those five steps will minimize the risk that during cross examination, government witnesses will put to inadmissible hearsay before the jury. *See Rush v. Illinois Cent. RR Co.*, 399 F.3d 705, 718-719 (6th Cir.2005); *Vialpando v. Johanns*, 619 F. Supp. 2d 1107, 1123 (D. Colo. 2008) (citing *United States v. Rinke*, 778 F.2d 581, 588 (10th Cir.1985)).

## OTHER EVIDENTIARY ISSUES

**7.  Leading Questions of a Co-Defendant's Witness**

To the extent any defendant chooses to call witnesses, his co-defendants should be prohibited from asking leading questions absent a showing of hostility to that co-defendant. "*Ordinarily*, the court should allow leading questions on cross-examination." Fed. R. Evid. 611(c) (emphasis added). By using the qualifier "[o]rdinarily," the rule deliberately affords a "basis for denying the use of leading questions when the cross-examination is cross-examination in form only and not in fact." Adv. Comm. Notes on Rule 611(c) (1972).

To permit leading questions of one defendant's witness by a co-defendant creates the perverse dynamic where if the calling defendant is unable to elicit desired testimony, a co-defendant with aligned interests has a second chance with leading questions. *See, e.g.*, T. Tr. 4261:17-4262:4 (testimony of Darrel Bowlin). At the second trial, the defendants should not be permitted to use cross examination in that manner.

██████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████



Respectfully submitted this 15th day of February 2022.

By: /s/ Michael T. Koenig
Michael T. Koenig
Heather D. Call
Carolyn M. Sweeney
Paul J. Torzilli
Trial Attorneys
Antitrust Division
U.S. Department of Justice

Washington Criminal II Office
450 Fifth Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-2165
Email: michael.koenig@usdoj.gov

10