1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2
   Criminal Action No. 20-CR-00152-PAB
3
   UNITED STATES OF AMERICA,
4
        Plaintiff,
5
   vs.
6
   JAYSON JEFFREY PENN,
7  MIKELL REEVE FRIES,
   SCOTT JAMES BRADY,
8  ROGER BORN AUSTIN,
   TIMOTHY R. MULRENIN,
9  WILLIAM VINCENT KANTOLA,
   JIMMIE LEE LITTLE,
10 WILLIAM WADE LOVETTE,
   GAR BRIAN ROBERTS,
11 RICKIE PATTERSON BLAKE,

12      Defendants

13 _____

                     REPORTER'S TRANSCRIPT
14                    Trial to Jury, Vol. 28

15 _____

16         Proceedings before the HONORABLE PHILIP A. BRIMMER,

17 Chief Judge, United States District Court for the District of

18 Colorado, commencing at 11:15 a.m., on the 15th day of

19 December, 2021, in Courtroom A201, United States Courthouse,

20 Denver, Colorado.

21

22

23

24  Proceeding Recorded by Mechanical Stenography, Transcription
      Produced via Computer by Janet M. Coppock, 901 19th Street,
25        Room A257, Denver, Colorado, 80294, (303) 335-2106

```
 1                          APPEARANCES
 2          Michael Koenig, Carolyn Sweeney, Heather Call and Paul
 3   Torzilli, Laura Butte, Jillian Rogowski  and Cecilia Cheng,
 4   U.S. Department of Justice, 450 Fifth Street N.W., Washington,
 5   DC 20530, appearing for Plaintiff.
 6          Anna Tryon Pletcher and Michael Tubach of
 7   O'Melveny & Myers, LLP, Two Embarcadero Center, 28th Floor,
 8   San Francisco, CA 94111-3823;
 9          Brian Quinn of O'Melveny & Myers, LLP, 1625 I Street
10   N.W., Washington, DC 20006, appearing for Defendant Penn.
11          David Beller, Richard Kornfeld and Kelly Page of
12   Recht & Kornfeld, P.C., 1600 Stout Street, Suite 1400, Denver,
13   CO 80202, appearing for Defendant Fries.
14          Bryan B. Lavine of Troutman Pepper Hamilton Sanders,
15   LLP, 600 Peachtree Street NE,  Suite 3000, Atlanta, GA 30308;
16           Laura Kuykendall and Megan Rahman of Troutman Pepper
17   Hamilton Sanders, LLP,  1001 Haxall Point, Richmond VA 23219,
18   appearing for Defendant Brady.
19          Michael Felberg of Reichman, Jorgensen, Lehman,
20   Feldberg, LLP, 750 Third Avenue, 24th Floor, New York, NY
21   10017;
22
23
24
25
```

1          APPEARANCES (Continued)

2              Laura F. Carwile of Reichman, Jorgensen, Lehman,

3     Feldberg, LLP, 100 Marine Parkway, Suite 300, Redwood Shores,

4     CA 94065; appearing for Defendant Austin.

5              Elizabeth B. Prewitt of Latham & Watkins, LLP,

6     555 11th Street, N.W., Suite 1000, Washington, DC 20004;

7              Marci Gilligan LaBranche of Stimson, Stancil,

8     LaBranche, Hubbard, LLC, 1652 North Downing Street, Denver, CO

9     80218, appearing for Defendant Mulrenin.

10             James A. Backstrom, Counselor at Law, 1515 Market

11    Street, Suite 1200, Philadelphia, PA 19102-1932;

12             Roxann E. Henry, Attorney at Law, 5410 Wilson Lane,

13    Bethesda, MD 20814, appearing for Defendant Kantola.

14             Mark A. Byrne of Byrne & Nixon, LLP, 888 West Sixth

15    Street, Suite 1100, Los Angeles, CA 90017;

16             Dennis J. Canty, Canty Law Corporation,

17    1990 North California Blvd., 8th Floor, Walnut Creek, CA 94596,

18    appearing for Defendant Little.

19             John Anderson Fagg, Jr. and James McLoughlin of

20    Moore & Van Allen, PLLC, 100 North Tryon Street, Suite 4700,

21    Charlotte, NC 28202-4003, appearing for Defendant Lovette.

22

23

24

25

1       APPEARANCES (Continued)

2           Craig Allen Gillen and Anthony Charles Lake of

3  Gillen, Withers & Lake, LLC, 400 Galleria Parkway, Suite 1920,

4  Atlanta, GA 30339;

5           Richard L. Tegtmeier of Sherman & Howard, LLC,

6  633 17th Street, Suite 3000, Denver, CO 80202-3622, appearing

7  for Defendant Roberts.

8           Barry J. Pollack of Robbins, Russell, Englert, Orseck

9  & Untereiner, LLP, 2000 K Street N.W., 4th Floor, Washington,

10 DC 20006;

11          Wendy Johnson and Christopher Plumlee of  RMP, LLP,

12 5519 Hackett Road, Suite 300, Springdale, AR 72762, appearing

13 for the Defendant Blake.

14

15                       PROCEEDINGS

16          THE COURT:  We are here outside the presence of the

17 jury in 20-CR-152.  The jury has sent out a note that indicates

18 that they cannot reach consensus, and then, in fact, there is

19 no consensus as to any single defendant.

20          Proposals by the United States on how to respond?

21          MR. KOENIG:  Yes, Your Honor.  I guess I think we

22 would propose at this time giving the modified Allen

23 instruction from the 10th Circuit pattern instructions.

24          THE COURT:  All right.  Thank you.

25          Defendants?  Mr. Beller?

1          MR. BELLER:  Your Honor, I want to start by saying

2     that because we've just received this, I do not know that my

3     position is the consensus amongst all defendants.

4          THE COURT:  Sure.

5          MR. BELLER:  But, Your Honor, given the note that was

6     provided to the Court regarding some struggles getting through

7     differences on Monday, I would also note that this particular

8     instruction was originally dated and timed for yesterday

9     evening at 4:00 o'clock.  That was scratched out and today's

10    time was written in.  I do not believe that it would be

11    fruitful to give a modified Allen instruction at this time.

12         I believe that the Court should, in fact, accept this

13    as a dead-locked trial and declare a mistrial.  On that note,

14    that not only can they not reach consensus on individuals,

15    although the jury does indicate also groups of individuals or

16    groups of people, meaning the jury may not necessarily be

17    giving our clients the individual considerations that they are

18    entitled to under the Constitution, but I would also note the

19    jury is not able to reach consensus on whether there was an

20    overarching conspiracy in the first place.

21         Based upon that, I would ask the Court to consider

22    this particular instruction in ruling on the Rule 29 motions

23    that are made by the individual defendants to consider granting

24    the Rule 29s.  But even short of that, I would ask the Court to

25    declare a mistrial at this time.  Your Honor, if the Court is

 1  going to be providing some kind of a modified Allen

 2  instruction, I do believe that defendants do have consensus on

 3  what that instruction should state, but I think that that's

 4  premature at this point and I would ask the Court to simply

 5  issue a mistrial.  Again, that's as to my client.  It may be

 6  different for others.  Thank you.

 7        THE COURT:  Additional comments on behalf of

 8  defendants?

 9        MR. FAGG:  Can I have a moment, Your Honor?

10        THE COURT:  Yes, go ahead, and if people want to

11  huddle up.

12        MR. TUBACH:  Can we just step outside?

13        THE COURT:  Yeah, go ahead.  I'll give Ms. Johnson

14  just a minute.  Are you ready, Ms. Johnson?  If you need to

15  communicate something to your client, go ahead.

16        MS. JOHNSON:  No.  We are ready, Your Honor.

17        THE COURT:  Mr. Gillen?

18        MR. GILLEN:  I think probably it would be better for

19  every defendant's counsel to state their position because there

20  is not a uniform position to put on the record.  We can start

21  with Mr. Penn and work our way around so everybody states their

22  position.

23        THE COURT:  All right.  Mr. Tubach?

24        MR. TUBACH:  Yes, Your Honor.

25        We think it's premature to give an Allen instruction

 1    as this point.  We think the jury should be told to continue

 2    deliberating.  We object to an Allen charge.  We think it's

 3    premature at this point to grant a mistrial.  So we would ask

 4    the jury to simply continue deliberating.  And then if the

 5    Court does not agree with our position on that, we will then

 6    come back later and discuss potential language modifications to

 7    an Allen instruction.  Thank you.

 8            THE COURT:  Thank you.

 9            And Mr. Beller, has your position changed on behalf of

10    Mr. Fries at all?

11            MR. BELLER:  Thank you, Your Honor.  It has not.

12            THE COURT:  How about on behalf of Mr. Brady,

13    Mr. Lavine?

14            MR. LAVINE:  Yes, Your Honor.

15            I agree with Mr. Beller's position.

16            THE COURT:  Okay.  And on behalf of Mr. Austin,

17    Mr. Feldberg?

18            MR. FELDBERG:  Your Honor, we agree with Mr. Tubach's

19    position that it's premature to give an Allen charge at this

20    time and we would request that the jury be sent back to

21    continue deliberations.

22            THE COURT:  Okay.  Thank you.

23            And on behalf of Mr. Mulrenin?

24            MS. PREWITT:  Your Honor, we believe at this time the

25    instruction is -- we object to the instruction -- sorry, we

1  object to the Allen instruction, Your Honor, and further we

2  think a mistrial is premature.

3          THE COURT:  All right.  Thank you.

4          And on behalf of Mr. Kantola?

5          MS. HENRY:  Your Honor, we agree with Mr. Beller's

6  position.

7          THE COURT:  All right.  Thank you.

8          On behalf of Mr. Little?

9          MR. BYRNE:  Yes, Your Honor.  Thank you.  We would

10 agree with Mr. Penn's position, Mr. Austin's position and

11 Mr. Mulrenin's position, Your Honor.

12         THE COURT:  All right.  Thank you.

13         And on behalf of Mr. Lovette?

14         MR. FAGG:  Thank you, Your Honor.

15         We join in the position of Mr. Fries as articulated by

16 Mr. Beller.  We do think it's appropriate for the Court to rule

17 on the Rule 29 motions at this time and would request that the

18 Court rule on Mr. Lovette's Rule 29 motion.  If the Court

19 declines to do so, we would request a mistrial at this time.

20 If the Court denies both of those requests and is inclined to

21 give an Allen charge, we do have some proposed language that we

22 would like to address.

23         THE COURT:  Thank you, Mr. Fagg.

24         And on behalf of Mr. Roberts?

25         MR. GILLEN:  Your Honor, we would agree with and join

1    the position articulated by Mr. Tubach.

2        *THE COURT:*  All right.  And on behalf of Mr. Blake?

3        *MR. POLLACK:*  Thank you, Your Honor.

4        On behalf of Mr. Blake, we would join Mr. Beller's

5    request that a mistrial should be declared at this point and

6    would ask the Court to rule on Mr. Blake's pending Rule 29

7    motion.  If the Court is not prepared to declare a mistrial,

8    then we believe that deliberations should be continued without

9    an Allen charge at this point.

10       Due to the reference in the note to groups of

11   defendants, we also believe that if the jury is going to

12   continue to deliberate, the Court should reiterate the

13   instruction about each defendant receiving individualized

14   consideration.  There are no groups of defendants for this

15   purpose.

16       And lastly, Your Honor, if the Court is inclined to

17   give an Allen charge, I think the defendants do have some

18   thoughts as to what that charge should look like and would

19   still want the individualized consideration instruction given

20   along with it.

21       *THE COURT:*  Thank you.

22       Here is what I am going to do.  First of all, I am

23   going to -- I will not declare a mistrial at this point.  I

24   don't believe that the nature of the note indicates that the

25   jury is inappropriately considering groups.  It's just natural

1   that a jury is going to, for instance, depending on what

2   incident they may be focusing on, they may be focusing on

3   particular groups of people that were involved in that

4   incident.  There is nothing inappropriate about that.

5          I am going to give a modified Allen instruction, so we

6   can talk about that language.  I think that it's appropriate at

7   this point reading this note.  And we will, of course, mark it

8   as a court exhibit, as with all the other notes.  The jury I

9   think has reached a point, and you can tell from the note that

10  they've been trying to work it different ways.  The fact that

11  they crossed out 4:00 p.m. yesterday is actually an indication

12  that they are trying.  They were thinking about coming back

13  with this note yesterday at 4:00, but they kept working and

14  eventually had the note come back when they did, so they worked

15  an additional half day.  But I do believe that it's appropriate

16  at this point to give a modified Allen.

17         As I said, I can't remember when, a couple days ago I

18  guess, I do think that the 10th Circuit pattern instruction has

19  some additional information that could be helpful to the jury.

20  Ms. Butler, my law clerk, is going to pass out a draft of what

21  I propose.  That draft as you will see has a paragraph about

22  the possibility of the jury reaching a verdict as to some

23  defendants, but not all.

24         So Ms. Butler, why don't you pass that out now, then

25  we can wordsmith.

1           And I will take a look at what the defendants have

2    prepared, of course, too, but I will give you an opportunity to

3    review this language.  I do believe that the nature of this

4    particular case, the length of it, the complexity of it, this

5    jury, as that language says, there is no reason to believe that

6    another jury would do any better on it, and therefore I think

7    it's appropriate that they at least receive a modified Allen

8    instruction.  And if that might help them think about things,

9    then I think that that could potentially at least be

10   productive.

11           MR. TUBACH:  Your Honor, could we perhaps have a few

12   minutes outside to discuss this?

13           THE COURT:  I don't know where it would be more

14   convenient for you to meet, but why don't we do this.  Why

15   don't we take a recess, and at the point in time that people

16   are ready to discuss -- and if you have -- I don't know if you

17   have copies of the language that you propose too.  If you want

18   to tender that to me now during that recess, I could take a

19   look at it.  Once again, completely up to the defendants,

20   whatever they want to do.

21           MR. BELLER:  If I may have just a brief moment of the

22   Court's time.  I have a single copy.  I am going to ask my

23   fellow co-defendant counsel if they have copies of what we are

24   tendering as well.

25           For the government's understanding, the difference

1    between the defense proposed Allen instruction and the pattern

2    instruction is simply the deletion of that second paragraph,

3    Your Honor, so it is the deletion of that second paragraph

4    completely, and that's what I am going to be tendering to the

5    Court in typed format.  And then we'll see if we have a second

6    copy.  If not, I can e-mail a copy to the government.

7          THE COURT:  We can make copies real quick too.

8          MR. BELLER:  That would be helpful.  If I can provide

9    this to Ms. Grimm, please.

10         THE COURT:  Yes.

11         MR. BELLER:  We will take the Court's offer of a brief

12   recess noting that your copy does modify the Allen just

13   slightly, so we can talk about that too.

14         THE COURT:  So Ms. Grimm will make copies of that.

15         So Mr. Koenig, she will come back with a copy for you,

16   assuming you don't have one.

17         Go ahead, Mr. Koenig.

18         MR. KOENIG:  Sure.  A couple quick things.  One, if

19   Your Honor wants to do the partial verdict instruction, we

20   would recommend going with something a little more

21   comprehensive that's in the model, so maybe people could use

22   time at the break to discuss that.

23         THE COURT:  Yeah, let me comment on that.  The 10th

24   Circuit has a pattern instruction, but it presumes the jury

25   coming back at a different time, you know, in other words,

1    returning a verdict as to some defendants but then continuing

2    deliberations on others.  I am not so inclined to give that one

3    because I don't necessarily think that -- I think that they are

4    thinking about it every one, but may not necessarily know about

5    the possibility of a partial verdict.  So that's why I modified

6    it -- or simplified it as I did, but perhaps that's not what

7    you are thinking about.

8          MR. KOENIG:  The only thing is if there is some case

9    law, and I am happy to find it over the break, but there is

10   some case law where that was, you know, without a more fulsome

11   explanation it was deemed coercive or whatever the term they

12   used because they don't fully understand all the options.  So I

13   think even if it wasn't the pattern one exactly, some more

14   fulsome explanation would be helpful.

15         THE COURT:  Sure.

16         MR. KOENIG:  A couple of other things.

17         As far as the pattern Allen instruction goes, I think

18   the government would be fine with the -- as far as I could

19   tell, it looks like it's pretty much it except for the addition

20   of the partial verdict.  I didn't do a word-for-word

21   comparison, but it looks pretty darn close, and we would be

22   fine with that.  And I think there was one other thing.

23         As long as we are going into recess, I raised with

24   Ms. Grimm before that one of our team had a rapid positive this

25   morning and the people who were in contact with -- you may have

 1   noticed -- the people who were in contact subsequent didn't

 2   come out of an abundance of caution.  They have taken a rapid

 3   and it subsequently has been a negative, so I don't know if

 4   Your Honor would allow some of the table attorneys back who

 5   were in close contact.

 6       THE COURT:  Well, here is my comfort zone on it, and

 7   that is if certain members of your team had close contact

 8   within the CDC's definition, and especially if some of them had

 9   more than 15 minutes and it was more sustained, I am not sure

10   that -- of course, if they are fully vaccinated, they wouldn't

11   necessarily have to isolate themselves.

12       MR. KOENIG:  To be clear, they have all been boosted

13   as well.

14       THE COURT:  That's of great comfort.  But because of

15   what we're doing now, which is not really anything in front of

16   the jury, and because of the fact that it can probably be

17   substituted, we can hook up a VTC connection if we need to.

18   That's not hard to do.  Because we don't know how many more

19   times we are going to be in the courtroom today, it might be

20   best that they not be present at least until -- I don't know,

21   that's just my thinking.  And it somewhat depends on what type

22   of contact they had with whoever is positive, so...

23           But if they can still do their job, mainly through

24   some type of communication or VTC, but not necessarily be here

25   for a dismissal at 5:00 or something like that, which would --

1   those things are typically quite brief, that might be better.

2   That's my thinking.

3            MR. KOENIG:  Okay.

4            THE COURT:  All right.

5            MR. KOENIG:  Okay.  And just for purposes of the

6   record, the government obviously opposes granting the Rule 29

7   based on a note or a deadlocked jury.  The fact that -- I am

8   not saying they are deadlocked, but the fact that some jurors

9   appear to be, you know, on both sides I think lends itself to

10  the conclusion that a rational person could --

11           THE COURT:  Right.  In the event that there is a hung

12  jury as to some or all of the defendants, then the Rule 29

13  motions are ripe for ruling.  The Court will rule on them.  The

14  Court is not going to rule on them now.  The Court is going to

15  give the modified Allen.  We will just talk about the language.

16  So we will be in recess right now.  And then once people are

17  ready, let me know, and we will with reconvene.

18           Mr. Fagg?

19           MR. FAGG:  Your Honor, is there any possibility to use

20  the overflow courtroom or any other location other than the

21  hall?

22           THE COURT:  Yes.  I think Ms. Grimm had mentioned to

23  you, you can use my courtroom, if you would like, on seven.

24  That would be a much larger area that people could spread out

25  more, so feel free to do that.  It's open.

1          Mr. Koenig?

2          *MR. KOENIG:*  Speaking of logistics, I wonder if the

3   Court could inquire approximately how much time we're talking

4   about here because we would go.

5          *THE COURT:*  Across the street or something?

6          *MR. KOENIG:*  We would go to our office and work.

7          *THE COURT:*  Well, I don't know.  They are going to

8   talk about it.  It would probably be minimum 15, 20 minutes.

9          *MR. KOENIG:*  Is it okay if we sit here and work?

10          *THE COURT:*  Yeah, absolutely.  And Mr. Koenig, if you

11   wanted a room, a bigger space too, it sounds like the rooms

12   here will be available.  You can sit in the courtroom or I

13   could try to find another spot for you too, but ...

14          *MR. KOENIG:*  Okay.  I think this is okay.

15          *THE COURT:*  Sure.  We will be in recess, then.  Thank

16   you.

17      (Recess at 11:42 a.m.)

18      (Reconvened at 12:22 p.m.)

19          *THE COURT:*  All right.  Have the defendants had a

20   chance to talk; and if so, whoever wants to lead off, that's

21   fine.  Then after that I will -- let's hear from the defendants

22   and then we will hear from the government.

23          *MR. BELLER:*  Thank you, Your Honor.  Your Honor, if

24   the Court will allow me to address these in two different

25   parts.  And first is paragraph No. 2, which starts, "This is an

1    important case."

2          THE COURT:  Okay.  And just for the report, you are

3    looking at the Court's proposed modified Allen instruction?

4          MR. BELLER:  Thank you, Your Honor.  I am.

5          Your Honor, it is the position of the defense that

6    that particular paragraph in particular is coercive.  In

7    looking at case law across all the different circuits,

8    including the D.C. Circuit, Your Honor, that type of language,

9    although not necessarily always in those words, have been found

10   time and time again to be coercive.  While courts have not

11   always necessarily reversed on that alone, they have found it,

12   however, to be, I guess, coercive enough to dissuade district

13   courts from giving such an instruction.

14         Specifically, Your Honor, I would note that the

15   sentence that starts "obviously" runs completely counter to the

16   theories that were provided by many of the different defendants

17   in this particular case noting that the government did not

18   produce witnesses despite many of those witnesses being

19   available or ready, willing and able to testify, certainly

20   witnesses who had particular knowledge that would have been

21   better than the witnesses that the jury did, in fact, hear

22   from.

23         And so for many different reasons we believe that that

24   should not be included, but specifically this particular

25   instruction does seem to run counter to what many of the

1    witnesses were told by counsel during closing arguments.

2         THE COURT:  And specifically what do you mean by that,

3    Mr. Beller?

4         MR. BELLER:  Specifically, it says there is no reason

5    to think -- to believe that the case can be tried again by

6    either side either better or more exhaustively, and yet the

7    defendants argued repeatedly that the case could be presented

8    better and more exhaustively, and that is one of the many

9    reasons that the government did not prove the case beyond a

10   reasonable doubt.

11        And, Your Honor, not knowing the position of the

12   government, I won't take a lot of time arguing, but I would

13   draw the Court's attention to the *United States v. McElhiney*,

14   M-c-E-L-H-I-N-E-Y.  That is 275 F.3d 928.  That's a 10th

15   Circuit case, Your Honor, from 2001.  The reason I am citing

16   that one is there is a relatively exhaustive analysis of the

17   giving of an Allen instruction.  And in that case the Court

18   did, in fact, reference a similar paragraph noting -- and I am

19   paraphrasing -- that it is not necessarily appropriate to be

20   giving such instruction to the jury as is stated in that second

21   paragraph.

22        I am very aware that that remains in the pattern

23   instruction, but for all the reasons cited by the different

24   courts, including the *McElhiney* court, I believe and we

25   believe, I should say, that that is, in fact, coercive and

1    should not be included.

2         I would note for the Court that removing that

3    particular paragraph does not otherwise take away from the

4    giving of the Allen instruction.  I don't think that that

5    really adds anything, Your Honor, other than coercion.

6         THE COURT:  Thank you, Mr. Beller.  Yes, go ahead for

7    the second part.

8         MR. BELLER:  Thank you.

9         Your Honor, the portion that the Court included in

10   this is the -- what I am going to call a unanimity sentence,

11   this is the one that starts, "If you can reach a unanimous

12   verdict."  Your Honor, we did have the opportunity to look at

13   pattern Instruction 1.43.  I would respectfully call the

14   Court's attention to the use notes that's at the bottom of that

15   particular instruction.  Your Honor, the use notes speak quite

16   a bit regarding the jury needing to be able to -- or being

17   required to state an ability to be able to reach a verdict as

18   to certain defendants.

19        I would note for the Court that the question that was

20   presented by the Court -- or excuse me, by the jury

21   specifically states that it has not been able to reach

22   unanimity as to any individual or whether or not there was even

23   an overarching conspiracy, which really I think framing the

24   discussion begs the question of how -- if the jury cannot even

25   find an overarching conspiracy, that means, in fact, not

1    guilty.

2          But that discussion aside, the jury has not stated an

3    ability to reach a partial verdict.  They have not requested

4    any instruction from the Court on the legal possibility or

5    ability to reach a partial verdict, and therefore the giving of

6    a unanimity instruction at least at this point as to certain

7    defendants we believe is also unnecessarily coercive because

8    the steps as set forth in the notes are -- or the use notes of

9    1.43 have not been satisfied by the jury.  So for that reason,

10   we would be asking that particular sentence in total be

11   removed.

12         Your Honor, I will note for the Court that there are

13   defendants who take a slightly different version and are not

14   moving for that to be removed completely, so I will let those

15   counsel articulate their positions to that particular sentence.

16   Excuse me, Your Honor.  As clarified by Mr. Fagg thankfully, he

17   said or he pointed out that I said that that sentence should be

18   removed.  And I want to clarify, I mean both sentences, that

19   entire paragraph.

20              *THE COURT:*  I assumed as much, Mr. Beller.

21              *MR. BELLER:*  Thank you, Judge.  I appreciate it.

22              *THE COURT:*  All right.  Mr. Pollack?

23              *MR. POLLACK:*  Thank you, Your Honor.

24         On behalf of Mr. Blake, I join what Mr. Beller had to

25   say about that second paragraph in the Court's proposed

1    instruction.  I part company, though, with respect to what is

2    currently the fourth paragraph, "If you can reach a unanimous

3    verdict" paragraph.  On behalf of Mr. Blake, I am not asking

4    that that be deleted in its entirety.  As I indicated before, I

5    do think given the note's specific reference to groups of

6    defendants, that it is important to remind the jury of their

7    responsibility to give individualized consideration of each

8    defendant.  So what I would propose is to keep that paragraph,

9    but to add a sentence at the beginning of it that says

10   something to the effect of:  As stated in Instruction 12, each

11   defendant is entitled to separate consideration of the evidence

12   or the lack of evidence against that defendant.

13          I would then continue with the two sentences as the

14   Court has drafted them with the only exception being, Your

15   Honor, at the end of the second sentence where it says, "but

16   you can if you wish," I would change "if you wish" to "if you

17   are able to do so."

18          THE COURT:  Okay.  Understood.  Thank you,

19   Mr. Pollack.

20          Anything else?

21          MR. POLLACK:  No, Your Honor.  Thank you.

22          THE COURT:  Additional views, Mr. Tubach?

23          MR. TUBACH:  Just for the record, we should probably

24   be putting our views as to each defendant on the record, so I

25   just want to join in Mr. Beller's position.

1          THE COURT:  Yes, that's fine.

2          Anyone else want to weigh in or state a position?

3          MR. FAGG:  Thank you, Your Honor.  We also on behalf

4     of Mr. Lovette join in Mr. Beller's position.

5          MR. FELDBERG:  As we do for Mr. Austin, Your Honor.

6          MR. LAVINE:  Your Honor, as we do for Mr. Brady.

7          MS. PREWITT:  As we do for Mr. Mulrenin, Your Honor.

8          MS. HENRY:  As we do for Mr. Kantola.

9          MR. GILLEN:  As we do for Mr. Roberts.

10         MR. BYRNE:  And as we do for Mr. Little, Your Honor.

11         THE COURT:  If it was a majority, the Bellers would

12    have it.

13         Mr. Koenig.

14         MR. KOENIG:  Sure.

15         First of all, the government -- I have maybe three

16    points, the first being that we do think that the second

17    paragraph is important to keep.  The jury may be -- and maybe

18    there is some language in there that could be modified, but the

19    jury should know that one of the consequences, and it's

20    important to both the government and the defendants and the

21    10th Circuit, you know, not to have a retrial.  And they may

22    not understand -- they may think that if they don't come to a

23    unanimous verdict, it's basically the same thing as an

24    acquittal.  So I do think the jury should know that. and that's

25    one reason it's in the pattern instruction.

5193

1            As to the partial verdict instruction, we -- well, let

2    me actually skip down.  I think part of the bigger picture here

3    that, you know, in light of the previous note and the Court's

4    response to the typographic copy of Mr. Bryant's testimony

5    would not be provided, I think what could really help sort of

6    grease the wheels here is they may not know that the read-back

7    is a possibility and that has been accepted by the 10th

8    Circuit.  And so if, you know, you could inquire of them

9    whether that would help, because, you know, there is the

10   statement in there about the overarching conspiracy in their

11   note.

12            And then you could also give -- we would renew our

13   request for our instruction that says, you know, we don't like

14   to do this, but -- or we don't generally do this, but if you

15   tell me that it is absolutely essential to have that portion of

16   the testimony read back, then we will do so.

17            The other point, the third point I would add regarding

18   the partial verdict instruction, I think there is three parts

19   to that partial jury instruction -- or partial verdict

20   instruction.  And the first part says, you know, you can reach

21   it as to one defendant and then continue deliberating, which I

22   think is a concept which is not included in Your Honor's

23   version.  And I think that would be appropriate that they don't

24   think, okay, that's the end of the road, that we're just hung

25   on certain jurors.  The second instruction, second paragraph

1    that says if you go the partial verdict route, that's final,

2    you can't revisit that, and then so that they understand that

3    that is the consequence of going that route.

4         And then the third piece is the part that says, you

5    know, you can wait until the end.  And the reason I think

6    that's really important is because in the -- what was it, the

7    *LaVallee* case that is actually cited in the pattern

8    instructions, there was actually -- the Court did find -- the

9    Court of Appeals found error with the district court telling

10   them that they had to put their partial verdicts in sealed

11   envelopes and it unduly infringed on their deliberations.  It

12   wasn't reversible error, but why invite error if we don't need

13   to.

14        As to Mr. Pollack's "able to do so," I don't think

15   that that's -- I didn't have time to fully think about that,

16   but I think "if you wish" is sufficient.

17        And yeah, so anyway, so I think the big picture thing,

18   though, is I really think that revisiting the issue of

19   Mr. Bryant's testimony is ripe to consider at this time because

20   I think it really could grease the wheels and get them going

21   because that might be very well what's hanging them up.  They

22   have different recollections and it was six weeks ago.

23        THE COURT:  Okay.

24        MR. FELDBERG:  May I just respond to that point, Your

25   Honor?

1          *THE COURT:*  The Bryant point?

2          *MR. FELDBERG:*  The Bryant point.

3          *THE COURT:*  No need.

4          On the Bryant point, No. 1, I have already answered

5     the question, and to now raise it on my own would be without

6     question I think unduly suggestive.  Moreover, as was pointed

7     out when we were considering the initial jury question

8     regarding Mr. Bryant's testimony, the jury didn't indicate any

9     specific topic.  For instance, if you had a case and you got a

10    question back and it said, can we see the testimony of officer

11    so and so about whether the light was red or green or something

12    specific, some issue that could be cleared up simply by reading

13    testimony back to them, then I think that you would lay a

14    fairly good factual predicate for doing what the 10th Circuit

15    has done in the past, which is to approve instances of

16    read-back, but that wasn't the case here.

17         The jury just indicated -- was curious about whether

18    there was a transcript of Mr. Bryant's testimony with no

19    indication whatsoever as to what aspect of it they were curious

20    about or any specific issue that might be cleared up by getting

21    a transcript.  You know, we can't agree on something that was

22    said.

23         Obviously, he's an important witness in the case.  And

24    if I were to pose a question to the jury as Mr. Koenig

25    suggests, the jury would say yes.  I guarantee you they would

1    say yes, but that wouldn't mean that it would be appropriate to

2    do so.  And so for that reason I am not going to raise the

3    Bryant issue again.

4         *MR. KOENIG:*  May I just clarify one point?

5         *THE COURT:*  Yes, sure.

6         *MR. KOENIG:*  Maybe I didn't say this clearly.  Maybe I

7    did.  But I think the problem is we're not going to get a

8    question with the specific "Can we see or hear Bryant's

9    testimony," because I think they are probably not focused on

10   the typographical part.  They don't know that read-back is an

11   option.  So if we are going to say wait and see if they give us

12   something more specific, then we are never going to get that

13   because they already think there is just no other option

14   available.

15        *THE COURT:*  Well, once again, I don't think it turns

16   on read-back versus type written.  To me it turns on whether

17   the jury has indicated some issue or aspect or something more

18   specific regarding Mr. Bryant's testimony that would be

19   clarified by a transcript or read-back.

20        *MR. KOENIG:*  Would the Court be willing to just

21   inquire of the jury?

22        *THE COURT:*  No, because they will say yes.  I know

23   they will say yes.

24        *MR. KOENIG:*  Like is there --

25        *THE COURT:*  No, because once again, it would almost be

1    like a court fishing expedition and I am not going to do that.

2    I just don't think that's appropriate.  I don't think there is

3    any case law to support in the 10th Circuit or elsewhere for

4    that.

5         So here is what I think we should do.  First of all,

6    looking at the second paragraph, I think we can take out the

7    first sentence.  The jury knows it's an important case.  Why?

8    Because they look out into the courtroom and they can see that

9    at any given time during the course of the trial.  And I've

10   done some rough counts, there is a hundred people in the

11   courtroom.  They know it's an important case, so we probably

12   don't need to mention that to them.

13        I think that the second sentence is an appropriate one

14   to leave in.  I also think that the third sentence we may be

15   able to do some slight modifications.  I think on the whole,

16   the first half of that sentence is appropriate.  It's true, as

17   Mr. Beller indicates, that there were suggestions during the

18   course of the trial that the case could be tried better, not

19   again, but it could have been tried better or at least

20   differently, so let me think about how we might modify the

21   second part of the sentence.  It does say by either side

22   better.  It's not saying by the government.  It does say by

23   either side, so that's not necessarily contrary to some

24   argument that was made by the defendants or by some of the

25   defendants.

1          So one idea, we could take out the words "or more

2     exhaustively," although I think the jurors would probably think

3     it has been exhaustive, so that's why maybe other than taking

4     out, "This is an important case," which could have overtones of

5     you don't know it, but it's important, I think we could strike

6     that first sentence, but I probably am not so inclined to

7     modify the rest of it.

8          Mr. Beller, thoughts?

9          MR. BELLER:  Your Honor, regarding -- so if we delete

10    the first sentence, the next sentence is, "If you should fail

11    to agree upon a verdict."  Your Honor, I am asking the word

12    "must" be modified to "may."  Of course, there is no law that

13    requires the case to, in fact, be retried.  "May" is a more

14    accurate statement of the law.  Consistent with that is the

15    intent of an Allen instruction regarding the coercive effect of

16    an Allen instruction is to try to minimize the coercive effect

17    and avoid language which may heighten it.  And so I am asking

18    the Court to consider --

19         THE COURT:  But if you ask me that, Mr. Beller, then I

20    have got to ask Mr. Koenig what the answer is, and he is going

21    to then tell you something that you may not want to hear.  No,

22    I understand your point.  You're right, the word "may" is

23    perhaps a bit more accurate.

24         Mr. Koenig, any thoughts on that?

25         MR. KOENIG:  I think that that's okay, Your Honor.

1              THE COURT:  What's that?

2              MR. KOENIG:  I think that's okay.

3              THE COURT:  Okay.  So that's at least Mr. Beller's

4    thought.

5              Mr. Tubach?

6              MR. BELLER:  Your Honor, then with that said, I think

7    the word "obviously" is unnecessary to start the next sentence.

8    I think simply starting the next sentence with the word

9    "Another trial."

10             THE COURT:  Sure.

11             MR. BELLER:  Your Honor, I think perhaps a compromise

12   would be putting a period after the word "effort."  I believe

13   that the Court's intent and what the Court wants to convey to

14   the jury is satisfied with a period after the word "effort,"

15   and the rest of the language, removing that piece would I think

16   address the defendants' concerns regarding the coercive nature.

17   And so none of this is intended to waive, of course, our

18   initial objection, but rather to offer additional suggestions

19   to the Court that may not be in our mind nearly as coercive as

20   otherwise.

21             THE COURT:  Thank you.

22             Ms. Henry?

23             MS. HENRY:  I would agree with the suggestion of the

24   alternative that Mr. Beller tendered.

25             THE COURT:  Which one is that, just to be clear,

1    because he made two different suggestions.

2         MS. HENRY:  Well, "may" I think we are all agreed on.

3    And with regard to the period after "effort," that makes a lot

4    of sense.  But if you feel the need to go further, I think it

5    should say, "There is no reason to believe that another jury

6    would find its job any easier," which is really I think the

7    intent of that sentence which would also avoid getting into

8    burdens and who's got what and everything.  That might be

9    another potential alternative, again not to take away from our

10   first objection.

11        THE COURT:  Right.  Thank you, Ms. Henry.

12        Mr. Tubach?

13        MR. TUBACH:  Your Honor, I would join in entirely what

14   Ms. Henry said.

15        THE COURT:  That's an interesting suggestion because

16   it would focus it more on the jury because that is, I think,

17   what we're trying to suggest to them is that you're here.

18   You've heard the case.  No reason to think another jury would

19   do it better than you can.

20        Mr. Koenig, thoughts?

21        MR. KOENIG:  Again, I think that the pattern

22   instructions -- you know, it's really they have been considered

23   by people who don't have interest in this case, and I do

24   think --

25        THE COURT:  I am on the committee.  Actually, I didn't

 1  work on that one, though, so you're correct.

 2      MR. KOENIG:  And I just don't think that this is

 3  prejudicial in any way.  And I think saying that another jury

 4  would find its job any easier, you know, I don't know.  It kind

 5  of suggests that the jury is not living up to its -- that

 6  somehow it's their fault that, oh, another jury, they will find

 7  it hard, but they will stick to it and work their way through

 8  it unlike you guys, which I don't think is the message that

 9  would be intended or wanted.  And so I would stick with what's

10  there.

11      The other thing, if we can just circle back to the

12  word "must" again, I think it's true that it's not the case

13  that it must be tried again, but we would try it again.  So

14  would we be able to switch it to "would be tried again"?

15      THE COURT:  No, because that would -- I think may --

16  we would not.  And I don't think it would be appropriate to

17  tell the jury what the government's position is or something

18  like that.  We wouldn't do that as a matter of course.  But it

19  is accurate to say that it may be tried again.  It's not --

20  zooming out from this particular case, it wouldn't necessarily

21  be tried again.  And I think that that was the intent behind

22  the language, not to suggest something that is actually

23  factually not true, but rather just substituting language that

24  would be more accurate.

25      MR. KOENIG:  Okay.  If I may just have a minute to

1    just absorb what you just said.

2            THE COURT:  Sure.

3            MR. KOENIG:  Yeah.  I mean, I guess, then, the

4    government's position is that the pattern instruction should

5    stand and it really should be "must" because "may" is just too

6    loosy-goosy for us.  And, you know, it drives home the import

7    of them coming to an actual decision.  "May" I guess leaves it

8    a little too up in the air, and I think this really drives it

9    home in an appropriate way.

10           THE COURT:  Here is what I am going to do, then.  I

11   will -- in the second paragraph, I will take out the first

12   sentence.  I will in the second sentence change the "must" to

13   "may."  I think that that's more factually accurate.  I will

14   strike the word "obviously," beginning the sentence with

15   "another trial," and I will adopt Ms. Henry's suggestion and

16   say for the second part of it, "and there is no reason to

17   believe that another jury would find the job any easier."

18           Was that your language, Ms. Henry?

19           MS. HENRY:  Yes.

20           THE COURT:  Okay.  Now let's focus in terms of the

21   partial verdict paragraph which is the fourth paragraph.  I

22   think that Mr. Beller is right that I had not refocused on that

23   one use note sentence that says, this instruction should only

24   be given when appropriate, e.g., should the jury ask if it may

25   return a partial verdict.  The jury hasn't asked that yet.  It

1    may.  We'll see.  Who knows?  But I think at this point in time

2    it's probably appropriate to wait until such time as it does,

3    and if it does, then we can talk about what language may be

4    appropriate to provide to the jury.

5          It's somewhat logical that as a result of the Court

6    giving the modified Allen instruction there is a breakthrough

7    and they can reach a verdict as to some defendants but not

8    others, but they can't make further progress, that they are

9    going to send out another note and that will give us an

10   opportunity if presented with the question to then provide

11   information about a partial verdict.

12         Mr. Koenig?

13         *MR. KOENIG:*  One thing, I do think it's important to,

14   when the jury comes in, that the table members who tested

15   negative would be allowed to be here.  I think it's just

16   optically, it gives the impression that, you know, we are not

17   taking their questions as seriously as we should have when, you

18   know, we've got only three people.  And they haven't really

19   seen much of Ms. Cheng if at all, so that would be my request

20   for them to come in.

21         *THE COURT:*  I will allow that to happen because as

22   long as everyone is following CDC advice, it won't be long and

23   we are not going to be there that long.  What I would ask --

24   how soon can they come over?

25         *MR. KOENIG:*  Immediately.

1          THE COURT:  Why don't you have them come over.  And

2     once they are kind of positioned and can come into the

3     courtroom, we will bring them in quickly, have them sit down,

4     bring the jury in.  I will read this to the jury -- I am not

5     going to provide a written form to the jury -- read it to them,

6     excuse them, that will only take a short time, and then we will

7     go into recess.

8          Anyone have any objection to that?  I think that the

9     optics would look -- I think it would be strange.  The jury

10    might have some -- wonder what's going on.

11         Mr. Fagg?

12         MR. FAGG:  Nothing further on that point, but on the

13    instruction, just one additional suggestion that we would join

14    in the objection to Paragraph 2 being included.  But if Your

15    Honor is going to include the second paragraph as revised, we

16    would suggest that it go -- we move it down by one paragraph.

17    The first paragraph is talking about the jurors working out

18    their differences in an effort to agree, and then we think that

19    what's currently the second paragraph would go better to go

20    right before the paragraph that begins, "It is your duty as

21    jurors." We don't want to give the jury right out of the gate

22    the suggestion that they are going to fail to reach a verdict,

23    and I think that the instruction flows better if that was moved

24    down.

25         THE COURT:  Okay.  I am going to reject that proposal.

1    I have thought about how the different paragraphs should work

2    with one another.  I think that the second paragraph works

3    better as a second paragraph.

4            MR. FAGG:  Thank you, Your Honor.

5            THE COURT:  And, you know, as an issue of primacy, I

6    think you could argue it different ways.  Maybe it's better to

7    have it first.  Maybe it's the last thing that they hear.  I am

8    not sure.

9            Mr. Canty, did you have anything?

10           Mr. Beller?

11           MR. BELLER:  Only for purposes of preservation, I

12   simply want to note the objection to the giving of the

13   instruction even in its final form.

14           THE COURT:  That's fine.  Anyone not join in that?

15   Okay.  I am going to assume that each of the defendants then

16   preserve their objections.

17           Okay.  So was the word put out to the absent team

18   members, Mr. Koenig?

19           MR. KOENIG:  Yes, it was.  And if I could ask for the

20   one member who did get the positive, could she be on VTC?

21           THE COURT:  I think that's a somewhat unusual request.

22   I think if anything, that would call attention to the fact that

23   something is up as opposed to just one absent person which

24   probably people may not notice.  The other thing is I don't

25   know if you'd would want to do that because then it may trigger

1   speculation about why she is on VTC.

2          MR. KOENIG:  Well, she did spend a good two hours with

3   them a couple days ago summarizing --

4          THE COURT:  I know, but I think it may trigger

5   speculation about the fact that maybe she is infectious or

6   something, so that's why it would seem to me that it might be

7   better just to have her be absent than to be present in a

8   different format.

9          MR. KOENIG:  I just wonder if there is some sort of

10  explanation we could give them.

11         THE COURT:  I really don't think -- you know, now,

12  you're right, something, you know, that would look strange.

13  But with everyone else but one?  When especially the people

14  sitting at government's table has varied over the course of the

15  trial, it's just -- I would find it hard to believe that that

16  would be noteworthy.

17         MR. KOENIG:  We can't just say she is under the

18  weather or something?

19         THE COURT:  I don't think there is any explanation

20  needed.  It's just one time.

21         MR. KOENIG:  All right.  Very well.

22         THE COURT:  And fairly brief.  How long do you think

23  it will be, Mr. Koenig?  I know it's not like an Uber where you

24  can track them.

25         MR. KOENIG:  I am sure they are following the

 1   transcript and, you know, but it usually takes us five to seven

 2   minutes to walk over here, so maybe 10 minutes.

 3           THE COURT:  Ms. Grimm just handed me a note.  I think

 4   the jury may be on lunch break now anyway, so it may be much to

 5   do about nothing.  Why don't we do this.  We will go into

 6   recess.  And when we know that the -- because even though we're

 7   providing lunch, some jurors may not be either eating it or

 8   necessarily they may finish it early and go out.  So we'll be

 9   in recess, then, until such time as we know that the jury is

10   reassembled and are ready to be brought into the courtroom,

11   okay?

12           The Court will be in recess.  Thank you.

13       (Recess at 12:58 p.m.)

14       (Reconvened at 1:18 p.m.)

15           MR. KOENIG:  Just one thing.  We were looking at the

16   CDC quarantine guidelines, and it does say that people who have

17   been fully vaccinated and exposed do not need to quarantine.

18   So I think it probably would be -- under their guidelines I

19   think it would be okay for our other team members to be here in

20   general, not just --

21           THE COURT:  Yeah, I agree with that.  I do think that

22   just for the comfort of so many people in the courtroom, that

23   maybe the person who tested positive -- that's who I think we

24   are talking about, right?

25           MR. KOENIG:  I am talking -- I am sorry, the people

1    who were just in close contact.

2          THE COURT:  Yeah, right, and they are going to.

3    That's what I understood you to say.

4          MR. KOENIG:  They are negative.

5          THE COURT:  Yes, right.  And they are coming.  Are

6    they here?

7          MR. KOENIG:  But I thought in general going forward, I

8    don't know if we have to go through this exercise if the CDC

9    guidelines don't require it.

10         THE COURT:  Yeah, that's true.  What I was suggesting

11   to you is that it would be fine if they are here and that the

12   person who tested positive, obviously, not be physically

13   present.

14         MR. KOENIG:  So they can come in, then.

15         THE COURT:  Yeah.  We are going to have them come in

16   in just one second.

17         Ms. Prewitt did you have something?  You are just

18   waiting for your client.  Yes, I should have been doing my head

19   counts.

20         Mr. Beller, go ahead.

21         MR. BELLER:  Thank you, Your Honor.  Very briefly, the

22   modified Allen instruction that was tendered by the defense, if

23   we could perhaps have that labeled and declined.

24         THE COURT:  Yeah.  What's our next tendered

25   instruction?

1          *COURT DEPUTY CLERK:*  I believe it's five.

2          *THE COURT:*  Whatever the next number is.  She thinks

3     it's five.  We will mark it, Mr. Beller.  Although do you have

4     an extra copy for Ms. Grimm?

5          *MR. BELLER:*  Yes, yes, I do.  So I will tender this to

6     Ms. Grimm.

7          *THE COURT:*  Yeah, I am not sure if she has that copy

8     independently, the one you gave to me, but if you don't mind

9     doing that.

10         The record should reflect that various members of the

11    prosecution team have joined us now in court.

12         Mr. Canty?

13         *MR. CANTY:*  I do apologize.  Something does occur to

14    me.  And I have not yet obtained any consensus whatsoever, so I

15    will mention that.  I do note that the Court had said that this

16    particular instruction would not be going back with the jury in

17    writing and that would be unique in terms of instructions or

18    answers to questions, so I was wondering whether we could think

19    about that.

20         *THE COURT:*  Well, not really.  It would not by any

21    sense be unique.  Instructions are often -- anything I tell the

22    jury after they begin deliberations is -- may be an

23    instruction.  I think that, in fact, if you are worried about

24    some coercive thing, sending back another written instruction

25    could even be a bit more so.  So that's why I think it's

5210

 1    appropriate for us -- for me to read this to them as opposed to

 2    sending it back.  We talked about the instructions, the written

 3    instructions that they have indicate, you know, consider the

 4    instructions as a whole, but I think it would be appropriate to

 5    read this to them.  But if anyone else wants to weigh in, they

 6    can.

 7            MR. CANTY:  Thank you, Your Honor.

 8            THE COURT:  Thank you, Mr. Canty.

 9            I will go ahead and read this to them.  I will not be

10    supplying them a written copy of it.  Anything else before we

11    bring the jury in?

12            Ms. Fagg?

13            MR. FAGG:  Your Honor, may I give this to Ms. Grimm,

14    Your Honor?

15            THE COURT:  Yes, you may.  That's the one we are going

16    to mark as refused; is that correct?

17            All right.  Ms. Grimm, let's bring the jury back in.

18            (Jury present.)

19            THE COURT:  Ladies and gentlemen, let me read to you

20    the following instruction:  Members of the jury, I am going to

21    ask that you return to the jury room and deliberate further.  I

22    realize that you are having some difficulty reaching a

23    unanimous agreement, but that is not unusual.  Sometimes, after

24    further discussion, jurors are able to work out their

25    differences and agree.

1          If you should fail to agree upon a verdict, the case

2     is left open and may be tried again.  Another trial would

3     require the parties to make another large investment of time

4     and effort, and there is no reason to believe that another jury

5     would find the job any easier.

6          You are reminded that each defendant is presumed

7     innocent, and that the government, not the defendants, has the

8     burden of proof, and it must prove each defendant guilty beyond

9     a reasonable doubt.  Those of you who believe that the

10    government has proved a defendant guilty beyond a reasonable

11    doubt should stop and ask yourselves if the evidence is really

12    convincing enough, given that other members of the jury are not

13    convinced.  And those of you who believe that the government

14    has not proved a defendant guilty beyond a reasonable doubt

15    should stop and ask yourselves if the doubt you have is a

16    reasonable one, given that other members of the jury do not

17    share your doubt.  In short, every individual juror should

18    reconsider his or her views.

19         It is your duty as jurors to consult with one another

20    and deliberate with a view towards reaching an agreement if you

21    can do so without violence to individual judgment.  Each of you

22    must decide the case for yourself, but do so only after an

23    impartial consideration of the evidence with your fellow

24    jurors.

25         In the course of your deliberations, do not hesitate

1    to re-examine your own views and change your opinion if you are

2    convinced it is erroneous, but do not surrender your honest

3    conviction as to the weight or effect of the evidence solely

4    because of the opinion of your fellow jurors or for the mere

5    purpose of returning a verdict.

6         What I have just said is not meant to rush or pressure

7    you into agreeing on a verdict.  Take as much time as you need

8    to discuss things.  There is no hurry.  I will ask now that you

9    retire once again and continue your deliberations with these

10   additional comments in mind to be applied, of course, in

11   conjunction with all of the instructions I have previous given

12   to you.

13        All right.  The jury is excused to commence -- or to

14   reconvene deliberations.  Thank you.

15        (Jury excused.)

16        Anything else before we recess?

17        All right.  The Court will be in recess.  Thank you.

18        (Recess at 1:29 p.m.)

19        (Reconvened at 3:20 p.m.)

20        THE COURT:  We are back on the record in 20-CR-152.

21   The jury has sent out two more questions.  The first one

22   requests a clarification regarding Instruction No. 22.  In

23   reference to the statement in that instruction, quote,

24   beginning at least as early as 2012 and continuing through at

25   least early 2019, the jury asks, does this mean the conspiracy

1   had to occur throughout this entire time frame?

2          Government proposed response?

3          *MR. KOENIG:*  I think it's a pretty simple answer is

4   the answer is no.  You know, I don't think there is too much

5   more to say about that other than, you know, you could point

6   them to the multiple conspiracies instruction where it's a

7   smaller internal conspiracy.

8          *THE COURT:*  Can everyone hear Mr. Koenig?  I don't

9   know if the microphone working.

10          Go ahead, Mr. Koenig.

11          *MR. KOENIG:*  Sure.  I think the simplest answer is no.

12   Of course, you could also by the nature of the question point

13   them to the Instruction 19 where it talks about the lesser

14   included conspiracies as well.  I guess that seems to be their

15   point of confusion.

16          The other thing I would point out is I don't know if

17   they are not appreciating the "or" in the Instruction No. 22,

18   or some act in furtherance occurred in the District of

19   Colorado, but the baseline answer is no.

20          *THE COURT:*  Why don't we talk about that one first,

21   then.

22          Mr. Beller, go ahead.

23          *MR. BELLER:*  Thank you, Your Honor.

24          First, I would note my concern that the jury is

25   looking at Instruction No. 22 which, of course, is the venue

1    instruction, and the venue instruction has a preponderance

2    standard.  For that reason I believe that the proper answer is

3    contained in Instruction No. 15.  Instruction No. 15 talks

4    about the dates of the charges, as well as the standard being

5    beyond a reasonable doubt.

6         And so understanding the statement of Mr. Koenig to

7    refer the jurors to instruction No. 19, there is no question

8    regarding multiplicity.  The question is regarding the dates

9    charged and the concern of the defense being that of the

10   standard.  So our respectful direction to the Court or request

11   of the Court is to say the answer is contained in instruction

12   No. 15.  Please re-read Instruction No. 15.

13        THE COURT:  Hold on one second.  Let me take a look at

14   15 again.  Yeah, I don't think that that would answer their

15   question.  My guess is that while it's true and it may seem a

16   little odd that the jury has inquired in reference to

17   Instruction No. 22, on the other hand, that's what they've

18   done.  So I think we probably need to answer it in regard to

19   Instruction No. 22.

20        I do think that what the jury seems to be focusing on

21   is the term or the word "throughout," and so I think that we

22   need to answer that.  I think Mr. Koenig's proposal was to

23   simply say no.  I think that that is the law, but I am open to

24   contrary views, of course.  That would be a straightforward way

25   to answer it.  But if people have different interpretations of

1   the question, for instance, I would be happy to hear from you

2   at this time.

3           Mr. Fagg?

4       *MR. FAGG:*  Thank you, Your Honor.

5           Given the questions that we received this morning

6   regarding an indication from the jury that they didn't -- they

7   couldn't conclude whether or not a conspiracy even existed, I

8   do think it is proper to point them to either Instruction

9   No. 14 or Instruction No. 15 which talks about the charged

10  conspiracy and describes it as beginning at least as early as

11  2012 and continuing through at least early 2019.  That language

12  is in both.

13          We would be very concerned if the jury was to -- if we

14  weren't to clarify for the jury that Instruction No. 22 is the

15  only instruction in there that deals with a preponderance of

16  the evidence as opposed to beyond a reasonable doubt, which

17  both Instruction 14 and Instruction 15 clearly set out for the

18  jury.

19      *THE COURT:*  Okay.

20      *MR. FAGG:*  The law, of course, is that the conspiracy

21  needed to, as it says in 14 and 15, begin as early as 2012 and

22  continuing through at least as early as 2019 in order to find

23  the defendants guilty beyond a reasonable doubt.

24      *THE COURT:*  Well, even then I am not sure if 14 and 15

25  require -- once again, if what the jury is asking, and even if

1    you assume the jury is asking about those two time periods and

2    asking in relationship to the conspiracy itself, which I am not

3    sure is an appropriate assumption anyway, I am not sure that

4    the answer -- you know, in other words, if the jury said in

5    regard to Instruction No. 14 and then asked the same question,

6    I'm not sure that the answer would be that -- you know, it

7    wouldn't be no, for instance.  There had to be some act that

8    took place during the charged time period.

9         MR. FAGG:  I believe that's exactly what 15 says, Your

10   Honor, that a defendant committed the crime reasonably near

11   those dates.  And these are the only operable dates.

12        THE COURT:  Yeah, but the second sentence of

13   Instruction No. 15 doesn't tell the jury that they -- that it

14   had to occur throughout the time period.

15        Mr. Tubach?

16        Sorry, Mr. Fagg.  Did you have anything else?

17        MR. FAGG:  No, I don't think so.

18        THE COURT:  I will give you another shot, of course.

19        MR. TUBACH:  I think we, lawyers and the Court, know

20   full well that Instruction 22 relates to venue.  I don't know

21   that the jury knows that.  As you read this instruction, they

22   may be thinking that all they need to do is find that the

23   conspiratorial agreement existed through these dates by a

24   preponderance of the evidence.  I am extremely concerned that

25   that's the only instruction that they referred to, recognizing

1   that that's what they asked about, that they may be confused

2   about whether or not they need to find the conspiracy itself

3   existed beyond a reasonable doubt.

4          I do think 15 is a good instruction.  I think 14 does

5   say that the Indictment charges the conspiracy from at least as

6   early as 2012 and continuing through at least early 2019.  To

7   find a defendant guilty of this crime, you must be convinced

8   that the government has proved each of the following elements

9   against him beyond a reasonable doubt:  That the charged

10  price-fixing and bid-rigging conspiracy existed at or about the

11  time alleged.  And that, I think, is a direct response to the

12  question they have asked.

13         Now, I understand the Court wants to answer the direct

14  question they have asked about 22, but I think in the absence

15  of some instruction to them that there has to be a beyond a

16  reasonable doubt finding of the conspiracy as charged in the

17  Indictment, I think the jury could think all they need to do is

18  find by a preponderance of the evidence that a conspiracy

19  existed.

20         *THE COURT:*  Okay.  Mr. Feldberg?

21         *MR. FELDBERG:*  Your Honor, I agree with Mr. Tubach's

22  point.  But in addition, responding to a comment Your Honor

23  made a moment ago about the second sentence in Instruction 15

24  not including the word "throughout," the fact that it doesn't

25  say throughout or doesn't say not throughout, it is silent on

1   the subject, is what makes it a balanced sentence.  And

2   Instruction 15 actually addresses the question the jury in

3   reality asked.  So I would urge that the Court refer to

4   Instruction 15 in responding to this inquiry from the jury.

5         *THE COURT:*  All right.

6         Mr. Pollack?

7         *MR. POLLAK:*  Yes, Your Honor.  I would agree with

8   that.  And I guess my reasoning for it is a little bit

9   differently.  The phrase, "Beginning at least as early as 2012

10  and continuing through at least 2019," that phrase appears

11  repeatedly throughout the instructions.  There is nothing

12  unique about how that phrase is defined with respect to

13  Instruction 22 from how it's defined elsewhere.  What they are

14  asking for is some clarification about what that phrase means.

15        And I do believe that Instruction 14 and 15, probably

16  more so 15 are the instructions that explain what that phrase

17  means.  That explanation is true for when that phrase is used

18  throughout the instructions.  So if that's the phrase they want

19  clarification on, that clarification doesn't come from

20  Instruction 22 or give a different answer because they asked

21  about it in Instruction 22 than it would if they had asked

22  about it anywhere else.  There is a single definition.

23        *THE COURT:*  You are right, it is the same phrase used,

24  although for some reason the jury picked Instruction No. 22.

25  You could argue that a couple of different ways.  One way would

1    be, well, because it's used in all these different

2    instructions, the fact that they picked Instruction No. 22

3    means they have a question about Instruction No. 22.  But if

4    the answer, as you point out, is the same, and that's one

5    question that we need to address, in regards to both, the

6    throughout question, assuming I am right about that, if the

7    answer to that question is the same regarding both, then that

8    will help us figure out how to answer the question.

9         Another option is regardless of the answer to that

10   sub-question, you could answer the question in regard to 22,

11   but then add something at the end -- or maybe flag that as, you

12   know, pertains to -- we couldn't use the term venue because we

13   haven't used that term, but somehow refer to 22 and then say

14   something, you know, keep in mind 14 and 15, and phrase that in

15   some way.

16        MR. POLLAK:  Your Honor, I think I would tell them

17   that you've asked about that phrase in conjunction with

18   Instruction No. 22, but that phrase is used in several places

19   in the instructions.  It doesn't have any different definition

20   in 22 than it does elsewhere.  And for guidance as to what that

21   phrase means, you might look at Instructions 14 and 15.

22        THE COURT:  Okay.  Thank you, Mr. Pollack.

23        Ms. Henry?

24        MS. HENRY:  Your Honor, I agree with what's been said

25   already here, and particularly what Mr. Pollack has said.  I do

 1    want to point out that the question is does this mean the

 2    conspiracy had to occur throughout this entire time frame.  And

 3    the conspiracy as charged in the Indictment is, in fact, a

 4    continuing conspiracy.  And we disagree with the government

 5    that that does not mean that they have to prove what was

 6    alleged in the Indictment.  They do have to prove what's

 7    alleged in the Indictment.

 8         The question perhaps that the government is responding

 9    to is one that is not asked in this, which is does this mean

10    the conspiratorial acts had to occur throughout this entire

11    time frame.  But that is not the question that the jury has

12    asked.  And we respectfully disagree with the government's

13    position that the answer to this question would be no.

14         THE COURT:  Well, as you will recall, Mr. Koenig, his

15    suggestion was that we refer back to what we might call a

16    lesser included conspiracy.  Were we to tell the jury that the

17    conspiracy had to exist the entire time, what about a

18    conspiracy that was less than but fully contained?  In other

19    words, maybe it involved all the same people and all the same

20    acts or maybe it couldn't really involve all the same acts, but

21    it just involved a shorter time period, but one that occurred

22    within the outer limits of those two dates.

23         MS. HENRY:  Your Honor, we would disagree that that is

24    actually legally appropriate.  That would not be.  They have

25    charged a continuing conspiracy throughout the entire time

1    frame.  The lesser included concept is one that relates more to

2    the concept of an individual who may have participated in

3    somehow a narrower conspiracy that was, in fact, part of a

4    broad conspiracy which was also shown to exist.  And that is

5    what the case law says.

6            THE COURT:  What case law?

7            MS. HENRY:  *Mobil Materials*.

8            THE COURT:  I don't think *Mobile Materials* says that,

9    but I will take a look at it again.

10           MS. HENRY:  In *Mobile Materials* the Court found that

11   there was significant evidence of the overall single

12   conspiracy, and then they also allowed that language that we've

13   discussed before about the narrower conspiracy.  But the Court

14   did explicitly find that the single conspiracy had been

15   adequately proven by the evidence or supported by the evidence.

16           THE COURT:  But it wasn't -- I can't remember right

17   now, but *Mobile Materials* in that part of it wasn't talking

18   about merely the same conspiratorial goals or objectives.  It

19   was talking about the time period?

20           MS. HENRY:  It actually was talking about that the

21   instruction that had been asked for in that case said that the

22   defendants had asked for an instruction that said every

23   transaction that had appeared on the bill of particulars had to

24   be proven in order to convict, and that was the instruction

25   that was rejected and that was the issue that was before the

1    Court in that case.

2          *THE COURT:*  Right.  I think that's true, but

3    inferentially, wouldn't that mean that the time period was not

4    the same?  Because I don't think that those different incidents

5    or whatever you want to call them were -- all occurred

6    simultaneously and all took up the same amount of time as the

7    charged conspiracy.

8          *MS. HENRY:*  So the overall charged conspiracy the

9    Court found was supported by the evidence.  Then the issue was

10   with regard to particular defendants, you know, if they had

11   participated in the narrower version.  And again, it was dicta,

12   actually, in the case because they had found the overall

13   conspiracy to be supported by the evidence.

14         *THE COURT:*  Okay.  Mr. Koenig?

15         *MR. KOENIG:*  Thanks.  I do have the quote from *Mobile*

16   *Materials*.  It says the defendant's substantial rights are not

17   prejudiced merely because a defendant is convicted upon

18   evidence which tends to show a narrow scheme than that

19   contained in the indictment provided the narrower scheme is

20   fully included within the indictment.

21         I think we litigated this when we were talking about

22   jury instructions.  And Your Honor did in the *James* hearing

23   find that evidence would -- to the extent that's even

24   necessary, which I don't think it is, that there was evidence

25   of the conspiracy through the time frame alleged as alleged in

 1   the Indictment.

 2        But I think the bigger point here is that we're

 3   starting to get into really reading tea leaves with the jury's

 4   question.  And as I have heard all the various suggestions, you

 5   know, that's -- how the defendants want to interpret this

 6   question is maybe one way to read it.  It also is maybe they

 7   are making progress and they are at 22.  And so I think we

 8   should just answer the question.  They are obviously highly

 9   intelligent people.  You look at the verbiage of the first

10   sentence.  This is not lost on them.  They asked about a

11   specific passage in a specific instruction and the simplest

12   answer is just no.

13        THE COURT:  Okay.  Thank you, Mr. Koenig.

14        We will go first to Ms. Henry again.

15        MS. HENRY:  With regard to the quote that was just

16   read, indeed it had to be within the scope of the entire

17   Indictment because the Court had earlier found that the entire

18   Indictment had, in fact, been supported by the evidence and

19   found by the jury.  I will say that the instruction here

20   reference to 22 clearly shows confusion in terms of that same

21   language occurs throughout the instructions and it needs to be

22   clarified that this verbiage has a very distinct meaning and 15

23   is the best reference point for that.

24        THE COURT:  All right.  Ms. LaBranche?

25        MS. LaBRANCHE:  Your Honor, if the Court is not

1    inclined to refer the jury back to some of the instructions

2    that we've been talking about, my position is I disagree with

3    the government.  The answer should be yes.  The reason the

4    answer should be yes is because this is not just a charging

5    position the government made, but this is also what the Grand

6    Jury indicted on.  And I believe if the Court said no, the

7    Court is basically -- it's a fatal variance from what the Grand

8    Jury indicted on.

9         THE COURT:  What about the principle that you charge

10   in the conjunctive and prove in the disjunctive?

11        MS. LaBRANCHE:  I understand that.  That doesn't

12   change the fact that --

13        THE COURT:  Why would you even have that principle if

14   what the Grand Jury returned an Indictment regarding is set in

15   stone?

16        MS. LaBRANCHE:  I think and/or is a different issue

17   than the time frame in a continuing conspiracy.

18        THE COURT:  Right.  Then what about the cases that we

19   have just been talking about with the variances?  Why would

20   that doctrine even exist?

21        MS. LaBRANCHE:  Well, I think that's to Ms. Henry's

22   point.  It goes to where there has been a continuing conspiracy

23   shown and defendants may be in part of that conspiracy that's

24   consumed within the larger conspiracy.  I don't think it gives

25   the government free reign to not charge the larger -- or to not

5225

1   prove the larger continuing conspiracy that they had brought to

2   the Grand Jury and that was indicted on.

3        THE COURT:  And what do you mean by a larger

4   continuing conspiracy?

5        MS. LaBRANCHE:  The time frame from 2012 to 2019.

6        THE COURT:  In other words, that if -- let's assume so

7   if the jury found that it started on or about the time that it

8   is charged, but let's say it ended December 31st of 2018, then

9   the jury would be required to acquit everyone?

10       MS. LaBRANCHE:  No, I think that goes back to 15 which

11  says around that time frame.

12       THE COURT:  But if they didn't find that 15 -- that it

13  was on or about, it would have the same effect.  The jury would

14  have to find people not guilty?

15       MS. LaBRANCHE:  I think that's right, Your Honor,

16  yeah.  That's what they brought to the Grand Jury and that's

17  the trial.

18       THE COURT:  I don't think there is any case law

19  support, but I am open to that.  If people want to look real

20  quick, I am not sure, you may not have had time to do that, but

21  I don't think that that is the law and I have never seen a case

22  to that effect.  If the conspiracy doesn't have to include all

23  of the charged defendants, if it doesn't have to include all of

24  the same -- all of the charged incidents, why would it have to

25  occur throughout the charged period?

1          MS. LaBRANCHE:  What if this jury were to be back

2     there thinking that maybe there was a conspiracy from 2012 to

3     2015?  And my concern with that is then we have statute of

4     limitations issues, right?  There is a reason that the jury is

5     instructed that they have to find from '12 to '19.  And that's

6     why I think perhaps either the answer is yes or you go back to

7     15 because we don't know -- if we tell them no, it doesn't have

8     to go throughout 2019, we don't know when they are stopping.

9          THE COURT:  Well, the statute of limitations

10    instructions would then cause them to find that there wasn't an

11    act within the statute, so that would be corrected by the

12    instructions.

13          Mr. Feldberg?

14          MR. FELDBERG:  Your Honor, I had a thought that I have

15    not discussed with co-counsel, so I may be out over my skis

16    here.

17          THE COURT:  People risk that, so go ahead.

18          MR. FELDBERG:  I would still urge the Court to go to

19    Instruction 15.  But if for some reason that is not agreeable

20    to the Court, how about the first sentence of the Superseding

21    Indictment?

22          THE COURT:  The Indictment that we haven't provided to

23    them?

24          MR. FELDBERG:  Not provided to them, simply read the

25    first sentence of the Superseding Indictment.

1          THE COURT:  Well, that would -- we could, but we

2     wouldn't -- I chose not to do that for a reason, but also, of

3     course, they have also been instructed that the Indictment is

4     merely a charge.

5          MR. FELDBERG:  But the question they are asking really

6     is what's the charge.

7          THE COURT:  I don't think so.  They are asking as a

8     legal matter does it have to -- does this mean -- I think they

9     are asking for the law -- does this mean the conspiracy had to

10    occur throughout this entire -- they use "throughout" and

11    "entire" -- time frame, which I think then begs the question

12    does it have to occur throughout that time frame, so...

13         MR. FELDBERG:  My suggestion is that the actual charge

14    is what answers that question.

15         THE COURT:  Understood.

16         Mr. Pollack?

17         MR. POLLACK:  Your Honor, my concern with the Court's

18    comments if the Court does not refer the jury back to

19    Instruction 15, it essentially reads Instruction 15 out of the

20    jury instructions.  Because if any subset of the conspiracy

21    were good enough, the jury thinks that the conspiracy happened

22    for six months from the end of '14 to the beginning of '15,

23    then essentially you're saying I didn't really mean what I said

24    in Instruction 15.  It doesn't have to be at or near these

25    dates.  And that can't possibly be correct.  There is a reason

1    that Instruction 15 is in there.

2         THE COURT:  Well, but it still begs the question of

3    whether, then, there could be a narrower conspiracy.

4         MR. POLLACK:  I understand that there could be a

5    narrower conspiracy, but my point is Instruction 15 has

6    meaning.  And if you say that any conspiracy is good enough as

7    long as it is narrower than what was charged, you have

8    effectively read Instruction 15 out of the instructions.

9         THE COURT:  No, I don't think so.  For one thing, at

10   least the way you phrase it, and perhaps it was unintentional,

11   but you used the term a conspiracy.  The jury, of course, has

12   to find and the instructions would tell them that you have to

13   find that the conspiracy as defined in the elements instruction

14   is the one we are talking about.  And the jury says "the

15   conspiracy" in its question, so I don't think there is

16   confusion there.

17        They are just asking does the conspiracy, does it have

18   to occur throughout this entire time frame?  In other words,

19   if, you know, the jury came to the conclusion that it ended

20   sometime outside of on or about, it was past that leeway period

21   and on or about didn't apply to it, would that mean that the

22   government's proof failed?  I think that -- so we are trying to

23   figure out the answer to that question.

24        And then as I said before, if you can have a narrower

25   conspiracy that involved fewer than all defendants -- I think

 1    you can -- fewer than all incidents -- I think you can -- then

 2    why wouldn't you be able to have a narrower conspiracy that

 3    involved time within the charged period but not throughout the

 4    charged period?

 5         MR. POLLACK:  And that's why I think the answer --

 6    first of all, again I think they are asking in the context of

 7    we want a definition of the phrase that is in quotes.  But I

 8    think the answer to the specific question when they say does

 9    this mean X is not necessarily.  It's not yes or no.  But by

10    focusing solely and exclusively on the idea that it could be

11    narrower, there has got to be some limiting principle to that.

12    Let's say they thought the conspiracy was -- you know, lasted

13    three days in the year 2014.  My reading of Instruction 15

14    would be that they have to acquit.  The government has not

15    proven beyond a reasonable doubt that the conspiracy took place

16    near the dates referenced in the Indictment.  And if all you

17    did was say the answer is no or point them to the concept that

18    it can be narrower, to me that is not a balanced instruction.

19    In fact, it completely reads Instruction 15 out and tells them

20    that they can convict even if they don't find that it happened

21    near the dates of the Indictment.  And instruction 15 says

22    precisely the opposite.

23         THE COURT:  Ms. Henry?

24         MS. HENRY:  U.S. v. Evans, 970 F.2d 663, a 10th

25    Circuit case decided in 1992 subsequent to the Mobile Materials

1    case.  And to the extent that *Mobile Materials* can be read in

2    the way that the government would like it to be read, I would

3    suggest that this case overrules that decision.  In reversing

4    the conviction of a defendant, the Court said, "And more

5    importantly, the evidence does not establish that the defendant

6    agreed to participate in a conspiracy of such extensive scope

7    as the one charged."  It does go on further to talk about if

8    you charge a defendant with a single massive conspiracy, then

9    that's what the government is obligated -- has obligated itself

10   to prove.  This case has also been cited in 2021 for this exact

11   same proposition.  I don't have those case cites at my

12   fingertips, but I can find them.

13            THE COURT:  I think you mentioned that case, whatever

14   10th Circuit case it was in 2021.

15            MS. HENRY:  There is two 10th Circuit cases in 2021

16   which cite with approval this concept that if they have chosen

17   to allege a single -- and charge a single large conspiracy,

18   then that is what the government has obligated itself to prove.

19            So to the extent that the government is relying upon

20   the older cases of *Beachner* and *Mobile Materials*, I would

21   suggest that the 10th Circuit no longer follows that particular

22   approach if that is the theory that they have is they can

23   charge the broader conspiracy, but only prove something else,

24   because the 10th Circuit has very clearly adopted this standard

25   that they are obligated to prove what they have charged when

1    they charged this single more broad conspiracy.

2         And again, I really do go back to the question itself,

3    which is does this mean the conspiracy had to occur throughout

4    this entire time frame as opposed to conspiratorial acts which

5    is a very different concept.

6         *THE COURT:*  Why is it different?

7         *MS. HENRY:*  Because a continuing conspiracy does not,

8    in fact, require consistent acts throughout the entire time

9    frame of a continuing conspiracy, but it still requires a

10   finding that there is a continuing conspiracy throughout that

11   time frame, and that is the question that the jury has to

12   factually find.

13        *THE COURT:*  Yeah, I would doubt that.  If the

14   principle of the continuing conspiracy is a legal recognition

15   of how conspiracies work, that they, you know, can exist

16   throughout a time period, it would be odd, then, to flip that

17   around and then require that a continuing conspiracy be a

18   continuous conspiracy, and if you don't prove it's continuous,

19   the government loses.  That would seem like an odd proposition

20   to me.

21        *MS. HENRY:*  The government has an obligation to prove

22   the single conspiracy that it charged.  It chose to allege the

23   time frames of beginning as early as 2012 and continuing

24   through at least early 2019.  They say at least through 2019.

25   That is their language.  That is their charge.  That is what

1    they have charged each of these individual defendants with.

2    And that is what the jury, when they are looking at this, has

3    to determine.

4            THE COURT:  Okay.

5            Mr. Koenig?

6            MR. KOENIG:  I think one thing is clear -- well, two

7    things are clear.  First, the jury's question is clear.

8    Second, it's clear that we are way far afield here and

9    relitigating the language of jury instructions.  *Evans*, a drug

10   case, that was argued in the jury instruction briefing.  This

11   is all rehashing old ground that we've already gone through.  I

12   think the safest, most logical approach is not to read tea

13   leaves into a very, very specific question.  And that is what

14   does this -- you know, does that mean that it had to occur

15   throughout the entire time frame?  And the answer is just two

16   letters, N-O.  They gave a very specific --

17           THE COURT:  What case is the government relying upon

18   for that?

19           MR. KOENIG:  The cases?  I mean, well, we can go back

20   to the jury instruction briefing, but I mean, that's really --

21   we're talking about venue here and the language of -- and basic

22   conspiracy law.  I mean, this is I think a pretty

23   noncontroversial point that the conspiracy doesn't have to

24   occur throughout the entire period alleged.  I mean,

25   instruction --

1          THE COURT:  Well, then there must be a case that says

2     that.

3          MR. KOENIG:  Sure.  We'll find one.  But, I mean,

4     Instruction 19 says the smaller conspiracy can be included.

5          If I could have a moment.

6          THE COURT:  Sure.

7          MR. KOENIG:  Sure, the *In re: Urethane* antitrust

8     litigation, and this is just general conspiracy law.  And it

9     says -- that is at 2013 WL 2097346.  It's affirmed by the 10th

10     Circuit in 2014.  The jury was not required to find that a

11     conspiracy existed for the entire period alleged by plaintiffs.

12          So, I mean, I guess it just comes down to, you know,

13     if we refer to other instructions and so forth and 15 and 14

14     and even 19, we are risking injecting even more confusion to

15     the extent there is confusion into their minds in thinking,

16     well, maybe we read 15 wrong.  Maybe we read 19 wrong.  You

17     know, I think it's just -- especially, you know, we talked

18     about reading back Robbie Bryant's testimony.  And, you know,

19     Your Honor decided that, well, they didn't ask the specific

20     question about a specific part, and we accept that.  But I

21     think here for the sake of consistency we should stick with

22     answering the exact question asked and not try to figure out

23     what's going on in their minds.

24          THE COURT:  All right.  Thank you, Mr. Koenig.

25          Mr. Fagg, go ahead.

5234

1           MR. FAGG:  Thank you, Your Honor.

2           Referring back to the 10th Circuit case which

3   Ms. Henry cited, *U.S. v. Evans*, it talks in there about -- this

4   is a quote.  "The tactic of charging many defendants with a

5   single massive conspiracy is fraught with the potential for

6   abuse."  That is 970 F.2d 663 at Page 674.

7           And what this question goes to is the conspiracy and

8   when it occurred.  And the notion that this is a simple

9   question for -- a simple response for the jury when this is the

10  one instruction that talks about the lower standards under the

11  preponderance of the evidence as opposed to beyond a reasonable

12  doubt when Instructions 14 and 15 define -- use the same

13  language as Mr. Pollack pointed out that is quoted by the jury

14  and talks about what they actually have to find to find a

15  defendant guilty beyond a reasonable doubt.  And in this case

16  there has been basically no discussion about venue through the

17  evidence or really even through counsel's arguments, so we

18  think it's critically important to talk about this distinction

19  in response to this question.

20          THE COURT:  That's what I am been trying to drive at.

21  Let's assume that we do the government's proposed answer, no,

22  why isn't that the answer even if they asked about 14 and 15?

23          MR. FAGG:  Because in 14 and 15 it talks about the

24  standard that they have to apply.

25          THE COURT:  I know, but they are asking questions

1   about that standard.  They are asking whether or not it had to

2   occur throughout the entire time period.  And why isn't the

3   answer to that question no?

4        MR. FAGG:  Well, I agree with my colleagues that there

5   was a conspiracy charged here.

6        THE COURT:  But *Evans* doesn't -- that wasn't what

7   *Evans* was talking about.  I am going to recess so I can read

8   *Evans* again, but that's not what *Evans* was talking about.  It

9   is true, as Mr. Koenig said, that *In Re: Urethane*, District of

10  Kansas case, but it states the proposition as Mr. Koenig read

11  it.  And I think that that is really black letter law on

12  conspiracies, but I do want to give people an opportunity to

13  quickly research.  Hopefully people have their teams working on

14  this because I think that we should be able to answer this

15  question a little bit more definitively than we have been

16  talking about right now.

17        But I do think that the -- I mean, Mr. Koenig's

18  proposition has appeal because, No. 1, it answers the question

19  that they asked.  That's always a good idea.  And No. 2, I

20  think it's the same answer even if, so why would we try to

21  refer them back to things they didn't even ask about, cite

22  other instructions?

23        MR. FAGG:  I think because this is such a fundamental

24  issue, this exact same phrase applies elsewhere, and having

25  them understand the difference in the burden of proof as it

 1   relates to venue as compared to the essential elements of the

 2   crime.

 3          THE COURT:  Yeah, but why is the question a burden of

 4   proof question?

 5          MR. FAGG:  Because of the use of that phrase

 6   "throughout the instructions," and the fact that the question

 7   that they asked about here -- the instruction they asked about

 8   here, rather, is the sole instruction which deals with this --

 9          THE COURT:  The question doesn't ask about burden of

10   proof.  It just asks about that time period.  And if we answer

11   as to the time period, the answer wouldn't say anything about

12   the burden of proof.

13          MR. FAGG:  Well, I respectfully request, Your Honor,

14   that we do make reference to the other instructions as well.  I

15   am happy to provide case law during the short recess as well

16   and we are looking at it now.

17          THE COURT:  Okay, great.  Thank you, Mr. Fagg.

18          Mr. Tubach?

19          MR. TUBACH:  One brief follow-up on what I said

20   earlier.  I do believe it's appropriate in responding to

21   Instruction 22 to let the jury know that this instruction goes

22   to the issue of whether the charges were properly filed in this

23   state or in this district.  That is not something I think they

24   may know and focus them in on that point.  And by the way, I

25   want to say I agree with everything my colleagues have said,

1    but on this smaller point, they may not because we all think,

2    well, of course, this is a venue instruction because we have

3    all seen it many times.  They may not see it that way.

4         And I think to explain to them that the relevance of

5    Instruction 22 goes to whether or not the charge was properly

6    filed in this district is I think critically important to them

7    understanding why, in fact, this is a lower standard of proof

8    than is contained in all the other instructions.  That's just a

9    small point, but I do agree with everybody.

10        *THE COURT:*  I understand.  Thank you.

11        Mr. Pollack?

12        *MR. POLLACK:*  Yes, Your Honor.

13        So my problem with the simple answer "no" is that the

14   actual answer is "no, but," because if the answer is no, you

15   don't have to prove that it occurred continuously, if we read

16   that word, in throughout the entire time frame.  But the

17   government does have to prove beyond a reasonable doubt that

18   the charged price-fixing and bid-rigging conspiracy existed at

19   or about the times alleged.  And the government does have to

20   prove beyond a reasonable doubt that a defendant committed the

21   crime reasonably near those dates, and that's what 14 and 15

22   says.

23        So if one just answers "no," I think it is somewhat

24   misleading because the real answer is "no, but," the

25   information contained in 14 and 15.  If the answer were simply

1    "no," period, again we wouldn't have given that portion of

2    Instruction 14.  We wouldn't have given Instruction 15 at all.

3           THE COURT:  Okay.  Let's talk -- like I said, we are

4    going to -- we will recess just for purposes of my reading

5    *Evans* and looking over In *Re: Urethane,* although I don't think

6    that has too much of a discussion in it, but I do want to give

7    people a chance to look up cases real quick.

8           Mr. Koenig, has your research crew come up with

9    something?

10          MR. KOENIG:  We are still working on it as well.

11          I will say that Ms. Call in her summation did spend

12   time on venue.  And, you know, we are trying to read tea leaves

13   here again.  It could be that they've got past those

14   instructions already and now we are at 22 and we would be

15   injecting or confusing when to look back at the previous

16   instructions.  Maybe they didn't understand that.  So that's

17   just my last point about this idea that venue was hardly

18   mentioned.  I mean, it was covered.  By the way, the *Mobile*

19   *Materials* case that I read from, that was Page 874 of that

20   opinion.

21          THE COURT:  Ms. Henry?

22          MS. HENRY:  Could we just have again the cite for

23   *In Re: Urethane*?

24          THE COURT:  Here it is.  I have got the cite here.

25   It's 2013 WL 2097346, District of Kansas, 2013.  And Mr. Koenig

5239

1    referred to the fact I think it was affirmed by the 10th

2    Circuit.

3         Is that what you were quoting from, Mr. Koenig?

4         *MR. KOENIG:*  Yes.  I believe it said in there affirmed

5    by 10th Circuit, but I was looking at a phone screen, but just

6    in case I misspoke, but I think that's what I read.

7         *THE COURT:*  Okay.  Now, before we recess, let me read

8    my proposed answer to the second question, and this despite

9    what Mr. Canty was saying, and that is:  A copy of the

10   instruction that the Court read to you today is attached,

11   marked as Instruction No. 41.

12        Ms. Butler, my law clerk, will pass out a typewritten

13   copy of that so you can double-check it against what I read to

14   the jury.  So take a look at that, if you don't mind, during

15   our recess.  Like I said, I will read *Evans*.  I will take a

16   look at *In Re: Urethane* and let's reconvene.  If you have any

17   other cases that you found in the meantime, we can talk about

18   those too, all right?

19        The Court will be in recess.  Thank you.

20     (Recess at 4:07 p.m.)

21     (Reconvened at 4:30 p.m.)

22        *THE COURT:*  Let me, first of all, ask if anyone's

23   found a helpful case that they want to call to our attention.

24        Mr. Tubach.

25        *MR. TUBACH:*  Your Honor, I was just going to bring the

1    Court's attention to *Carnagie*.  I believe the Court probably

2    read that case already.

3            THE COURT:  I haven't read it recently.

4            MR. TUBACH:  I am on my phone here.  That's 533 F.3d

5    1231.  And I think the key point here is the Court found that

6    there was a difference between what was charged and what was

7    found, and then went on to say, well, is that error reversible

8    because --

9            THE COURT:  When you say found, what do you mean?

10           MR. TUBACH:  Than what the jury found.

11           THE COURT:  How did the court know what the jury

12    found?

13           MR. TUBACH:  That is a good question.  At the

14    beginning of the section on variance -- I don't know is the

15    short answer.

16           THE COURT:  Go ahead.  Sorry to interrupt.

17           MR. TUBACH:  The Court at the beginning of the section

18    where it's talking about the variance, it says a variance

19    between the indictment and the proof is only reversible error

20    if it is prejudicial, and then it goes on.  We are not at that

21    point.  The idea is to prevent the error in the first place.

22    And I think what we're struggling with here is that Instruction

23    15 is crystal clear on the temporal scope of the Indictment.

24    That's what it says.  That instruction has to have a purpose.

25            There are other parts of, for example, Instruction 19

1   and others that talk about the sub-conspiracy as the Court has

2   talked about.  That can come into play perhaps with respect to

3   whether a defendant, which is exactly the language in the

4   Instruction 19, whether a defendant is part of a sub-conspiracy

5   that's part of the larger conspiracy charge or, for example, if

6   they're not every product that's alleged is found to be part of

7   the conspiracy, but on the temporal aspect of this conspiracy,

8   Instruction 15 is crystal clear.  And in just telling the jury

9   "no" in response to that question, that is essentially saying,

10   well, just stop reading Instruction 15 because it doesn't

11   matter.

12           THE COURT:  Yeah, I don't think so.  Let's take a look

13   at Instruction No. 15.  And it says:  The indictment charges

14   that the crime was committed beginning at least as early as

15   2012 and continuing through at least early 2019.

16               That's what the charge is.

17           The government must prove beyond a reasonable doubt

18   that a defendant committed the crime reasonably near those

19   dates.  We have the On or About instruction, but I'm not sure

20   that -- and then as people pointed out, in Instruction No. 22

21   we have the same words being used for the date range charged.

22           The jury's question, of course, doesn't quote anything

23   but that same language, the date range, and then poses a

24   question.  Does this mean the conspiracy had to occur

25   throughout this entire time frame?  I don't see why 15 answers

1    that question.

2          MR. TUBACH:  I believe the second sentence of 15 does

3    answer that question or, perhaps even more clearer, 14 where it

4    says -- has that same language, the temporal language in the

5    third sentence of Instruction 14, as early as 2012 and

6    continuing through at least early 2019.  And then under first,

7    it says that the charged price-fixing and bid-rigging

8    conspiracy existed at or about the times alleged.  And the

9    times alleged are as early as 2012 and continuing through at

10   least early 2019.

11         I think on the temporal part of this conspiracy, the

12   instructions are clear.  In other words, if the government

13   proved to the jury's satisfaction beyond a reasonable doubt

14   that everything other than freezer charges was proved, could

15   they still convict?  I think the answer is yes.

16         THE COURT:  Because it's a narrower conspiracy.

17         MR. TUBACH:  It's a narrower conspiracy.  But on the

18   temporal aspect of it -- Instruction 14 is maybe more clear

19   than 15 -- it was the government's choice to charge this as one

20   conspiracy.

21         THE COURT:  But is there any case that says that?  I

22   haven't found one.  And In Re: Urethane, admittedly a district

23   court case, but affirmed --

24         MR. TUBACH:  And a civil case, of course.

25         THE COURT:  And a civil case, yeah.  I just think --

1    it states the proposition that a narrower conspiracy could also

2    be one that was temporally narrower.

3         MR. TUBACH:  In the civil context where we are not

4    dealing with the fact that it was a charged Indictment where

5    defendants are facing a felony conviction.  I think the Court

6    there may have had a different view if that were a criminal

7    case.  That's our whole point.  I think *Carnagie* speaks to the

8    issue.  *Evans* speaks to the issue.  And we cited two others I

9    believe in our jury instruction briefs that we sent to the

10   Court that also discuss, and I am happy to give those cites,

11   but I know the Court has everything already.

12        THE COURT:  Mr. Pollack?

13        MR. POLLACK:  Your Honor, I also would like to call

14   the Court's attention to *United States v. Ailsworth*,

15   A-I-L-S-W-O-R-T-H, which is a 10th Circuit case from 1998,

16   cited at 138 F.3d 843.  In that case, a year-long continuing

17   conspiracy was charged.  And the defendant was found to have

18   participated in the conspiracy for a day.  And the question was

19   whether or not that was a variance from the Indictment even

20   though it was a subset of what was charged.  It was a narrow

21   conspiracy that was charged.

22        And the 10th Circuit said that that was a variance.

23   It ultimately found it not reversible error because the

24   defendant's substantial rights weren't violated, but noted in

25   reaching that conclusion that that was a single defendant case,

1   so there was no danger that the jury might have convicted based

2   on acts of co-defendants.

3        I cite it only for the proposition that there has to

4   be some limiting principle to the idea that as long as it is

5   narrower, that that's good enough.  I agree that it can be

6   narrower, but I think at some point the conspiracy looks so

7   different from what was charged, that the government hasn't

8   proved what was charged.  So you need to balance those two

9   concepts.  And I think in terms of the temporal scope of the

10   conspiracy, the balancing instruction is what's found in 14 and

11   15.  Yes, it can be narrower, but it still has to look

12   something like what was charged.  It has to be at or near if

13   what we are talking about is temporal scope, which is

14   specifically what the question is asking about.

15        *THE COURT:*  I am wondering because it's 20 until 5:00,

16   maybe we should cut the jury loose, meet at 8:00 tomorrow.  And

17   that way people would have overnight, I would have overnight to

18   take a look.  I think it is an important issue.  I think we

19   need to figure out what the law is, not just necessarily

20   Instruction No. 15 or 14 or something, because we in fact have

21   an obligation to try to get the law correct, not to say that I

22   wouldn't hear everyone out still today, but I don't think as a

23   practical matter the jury would have really any time to do much

24   if we got through everyone's comments and I made a ruling.  So

25   that might be a suggestion.

1          Does that work for you, Mr. Gillen?  And once we

2    dismiss the jury, I will let you have a chance to address the

3    Court today.

4          MR. GILLEN:  Thank you, Your Honor.  I have just some

5    brief comments, but that can wait until after the jury had been

6    dismissed for the day.

7          THE COURT:  Okay.  Does that work for you, Ms. Henry?

8          MS. HENRY:  Yes, thank you, Your Honor.

9          THE COURT:  Mr. Beller?

10         MR. BELLER:  Thank you, Your Honor.

11         My suggestion would be if the Court is going to

12   provide them the Allen, the modified Allen, to go ahead and do

13   that this evening so they can review it this evening and think

14   about it overnight, and then we can answer question No. 1 when

15   they report back tomorrow morning.

16         THE COURT:  Well, that would suggest that we should do

17   a partial answer, but then I need to explain why I am not

18   answering the first question.  And maybe we should just let

19   them go for the day.  So I think I won't do that, but then

20   we'll have the answer for them tomorrow along with a copy of

21   that.

22         Did everyone, by the way, while I think of it have a

23   chance to look over the typewritten copy of what I have now

24   marked as Instruction No. 41?  Anyone have any problems with

25   the Court, A, providing -- answering the question yes and

1   providing them with a typewritten copy; and No. 2, any problems

2   with the transcription of what I read to them?

3            Okay.  Ms. Grimm, let's bring the jury back in.  I

4   will have them come back at 8:30 tomorrow.

5            (Jury present.)

6            THE COURT:  Ladies and gentlemen, we are working on

7   answers to the questions that you proposed, but aren't quite

8   done yet.  Rather than having you wait around and given the

9   fact it's almost quarter to 5:00, I will go ahead and excuse

10  you for the day, then.  I would ask that you return and be

11  ready to go at 8:30 tomorrow.  We will hopefully have a

12  response ready by that time for you, all right?

13           Keep in mind those admonitions that we had talked

14  about before, so don't let your guard down in terms of people

15  at home asking you what's going on, when are you going to be

16  done, that type of thing.  Don't get on what lawyers call the

17  slippery slope of that type of a discussion.  Don't look up any

18  information.  And I hope you have a good evening.  The jury is

19  excused for the day.

20           (Jury excused.)

21           Mr. Gillen, go ahead.  And then I will hear from

22  Ms. Henry.

23           MR. GILLEN:  Briefly, Your Honor, I do agree that 14

24  and 15 should be the direction here.  Let me tell you what I

25  think has happened here and what my worries are.  The note

1    specifically says clarification needed on Instruction 22.  Now,

2    we all can read the note.  22 has to do with venue and it has

3    to do with a different standard.

4            So we have got here -- my concern is the jury has read

5    Instruction 22 and has come to the erroneous conclusion that if

6    anything has been proven to have occurred within the District

7    of Colorado within this time period by a preponderance of the

8    evidence, then that could be the basis for a conviction.

9            I am very concerned about their focus on 22, which

10   frankly, Your Honor, is not anything that the government or the

11   defense spent any time on in terms of making legal argument.

12   They have focused us and let us know that they are focusing on

13   22, the only instruction in the entire instruction package

14   which has a different standard of proof, not beyond a

15   reasonable doubt.  So they could go back there, misread this,

16   say, well, preponderance of the evidence, yeah, I see it, so

17   anyway, if something happened in Colorado, we find that and

18   therefore that's the basis for a conviction.

19           So I am not going to reargue all the issues that have

20   been made by my colleagues.  I adopt them.  But I do want the

21   Court to focus on that very special specific concern that I

22   have about the possibility, maybe even the probability, that

23   they have misread 22.

24           THE COURT:  Thank you, Mr. Gillen.

25           Ms. Henry?

 1          MS. HENRY:  Your Honor, I wanted to point out some of

 2    the reasons why In Re: Urethane is really apposite to what

 3    we're trying to do here.  And first and foremost is because the

 4    critical issue that was decided and looked at on this issue was

 5    the harm that the plaintiffs were suffering from an illegal

 6    conspiracy.  And that implicates an entirely different statute

 7    than the Sherman Act.

 8          So the statute that really is at issue in this case is

 9    Section 4 of The Clayton Act.  That is the statute that

10    provides for civil remedies for Sherman Act violations.  That

11    statute goes directly to the issue of the requirement that a

12    plaintiff must suffer harm, injury to its property before it

13    can proceed and collect damages.

14          If you look at what was talked about in the case, in

15    this case the jury found that plaintiffs were harmed by an

16    illegal conspiracy and that's why this goes off on that

17    direction.

18          THE COURT:  And then the closest that the 10th Circuit

19    comes to any discussion about what I've identified as the black

20    letter law is in the context of damages.

21          MS. HENRY:  Correct.  And the 10th Circuit really

22    almost sort of jumps over the whole issue in their opinion,

23    which is 768 F.3d 1245, where they basically say that the

24    plaintiffs chose to do a constructive amendment to really get

25    at this shorter conspiracy time frame.  The conspiracy time

1  frame that was at issue was whether there had been damages

2  proven for 2004.

3           And so what the 10th Circuit found is plaintiffs chose

4  to pursue a shorter conspiracy and allege January 1,

5  '99 through December 31, '03, and that was less than they had

6  initially alleged.  And that's why that case really is frankly

7  inapposite to the issues here aside from the whole issue of an

8  indictment and the requirements that the government prove the

9  charges as alleged.

10          THE COURT:  All right.  Thank you, Ms. Henry.

11          Mr. Feldberg?

12          MR. FELDBERG:  Your Honor, I see one additional

13  problem.  We've talked before about how the statute of

14  limitations comes into play here.  But if the Court were to

15  simply answer this question no, the possibility exists that the

16  jury could without anyone knowing find that there was a

17  conspiracy in 2012.  And to try to sort that out in ruling on a

18  post-verdict motion or on -- in the appellate courts would be

19  nearly impossible.  And we couldn't know the answer to what

20  they actually found in terms of the temporal period which could

21  mean they found a conspiracy that's barred by the statute of

22  limitations.

23          THE COURT:  Okay.  Here is one suggestion for trying

24  to tie the answer back to Instruction No. 22, but not

25  necessarily have it suggest meanings as to 14 or 15.  So we

1    could say -- this would be a proposed answer:

2          Re: Instruction No. 22:  No.  But it does mean that

3    the conspiratorial agreement or some act in furtherance of the

4    conspiracy occurred reasonably near those dates.

5          So that would be language that would be tied back more

6    to Instruction No. 22, which they are asking about.

7          *MR. TUBACH:*  Could you just read that again?

8          *THE COURT:*  Yeah, no problem.  It would say something

9    to the effect of:

10          Re:  Instruction No. 22:  No.  But it does mean that

11    the conspiratorial agreement or some act in furtherance of the

12    conspiracy occurred reasonably near those dates.

13          So it would repeat language from Instruction No. 22.

14    It would in addition borrow the language from the On or About

15    instruction, namely, reasonably near those dates.  You don't

16    necessarily have to answer me right now because we are going to

17    think about it, but that would be a way to contextualize it in

18    regard to Instruction No. 22.

19          Any additional thoughts before we recess?  And then as

20    I said before, we will meet tomorrow at 8:00.  And if you have

21    suggested responses or cases, I would like for you -- it would

22    be very helpful, I think, to everybody if you could file those

23    as soon as you can tonight just so I'll have a chance to look

24    at them and everyone will have a chance to look at them.

25          *MR. TUBACH:*  I just have copies of *Carnagie*, *Ailsworth*

1   and *Evans* here, if I can hand those to Ms. Grimm.

2          THE COURT:  That's very helpful.  Thank you.  You may.

3          All right.  Anything else before we recess?

4          Mr. Koenig, you look like you might based on arm

5   position.

6          MR. KOENIG:  Yeah.  I mean, you did ask if we had any

7   initial thoughts on that.  And all I would say is that, you

8   know, the venue instruction gets at, you know, sometime in this

9   period something happened in the state of Colorado.  And so

10  putting an extra instruction in here that something had to

11  occur in 2012 or 2019 anchors the jury outside of what the

12  purpose of the question is that something smack in the middle

13  could have occurred in the state of Colorado or District of

14  Colorado.

15         So I think that's part of the reason that language

16  isn't in there in the first place because that's not the

17  purpose of the -- that's not the purpose of the instruction and

18  it is in the other instructions as defendants have pointed out.

19         THE COURT:  What's in there?

20         MR. KOENIG:  The language that you said ties them

21  back.  14 and 15, they have different purpose, those

22  instructions.  The purpose of this instruction is not to say

23  once again, you have to find once again that it's anchored

24  reasonably near one of these end dates.  It's to say during

25  this span of time an act occurred and it could be right smack

5252

1    in the middle.  So I think this would create confusion that,

2    you know, is unnecessary, especially because it's already

3    instructed in 15.

4                THE COURT:  Okay.  Mr. Beller?

5                MR. BELLER:  Thank you, Your Honor.

6                My initial thought regarding the currently drafted

7    language is that between the words "conspiracy" and "occurred"

8    the Court may consider including "if proven beyond a reasonable

9    doubt," occurred --

10               THE COURT:  Yeah, that could be tricky because this

11   is, of course, the venue instruction.

12               MR. BELLER:  Completely understood, which is why I

13   thought beyond a reasonable doubt went with the conspiratorial

14   agreement or furtherance as opposed to, you know, I guess

15   muddying the water with a preponderance issue, but I think that

16   that may, at least for my purposes, address some of the concern

17   regarding standards on that particular issue.

18               THE COURT:  Okay.  Thank you, Mr. Beller.

19               Ms. Henry?

20               MS. HENRY:  I think to just take Mr. Beller's and add

21   a little bit further to it to make it clear your point as well,

22   if you say, "No, but to convict it does mean that the

23   conspiratorial agreement or some acts in furtherance of the

24   conspiracy occurred."

25               THE COURT:  Okay.  And then maybe what you can take a

 1   shot at, too, is if the Court were to answer 22, and maybe use

 2   language making it pretty clear just an answer to jury

 3   Instruction 22, but then if we were to add an addendum -- or

 4   not addendum, but something after that, you know, like "and, of

 5   course, keep in mind that," what that language would look like

 6   were we to do that.  That might be helpful just to think that

 7   one through as well, all right?

 8          Anything else that we should talk about this evening?

 9          All right.  We will in recess, then, until 8:00 a.m.

10   tomorrow.  Thank you.

11      (Recess at 4:56 p.m.)

12                    REPORTER'S CERTIFICATE

13      I certify that the foregoing is a correct transcript from

14   the record of proceedings in the above-entitled matter.  Dated

15   at Denver, Colorado, this 26th day of February, 2022.

16

17                         S/Janet M. Coppock

18

19

20

21

22

23

24

25