**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  **JAYSON JEFFREY PENN,**
2.  **MIKELL REEVE FRIES,**
3.  **SCOTT JAMES BRADY,**
4.  **ROGER BORN AUSTIN,**
5.  **TIMOTHY R. MULRENIN,**
6.  **WILLIAM VINCENT KANTOLA,**
7.  **JIMMIE LEE LITTLE,**
8.  **WILLIAM WADE LOVETTE,**
9.  **GARY BRIAN ROBERTS,**
10. **RICKIE PATTERSON BLAKE,**

      Defendants.

---

**UNITED STATES' MOTION TO REBUT DEFENDANTS' ARGUMENTS AND
EVIDENCE ON INFORMATION-SHARING NORMS
WITH POLICY APPROVED BY THE DEFENDANTS**

---

The government respectfully moves the Court to permit Nicholas White to testify that defendants Lovette and Penn approved a policy forbidding the sharing of pricing information with Pilgrim's competitors in order to rebut the defendants' (including defendant Penn's) arguments and evidence that industry participants—including customers, distributors, and suppliers—engaged in price information sharing as part of an industry norm. The defendants opened the door with the testimony of Rich Eddington, Greg Finch, Professor Edward Snyder, and Kent Kronauge who testified that

industry participants (including suppliers) often shared price information about active bids.

**_Background_**. The government attempted to elicit testimony and introduce evidence of industry norms during its case-in-chief, including the confidentiality of pricing and bid information. However, the Court did not permit the government to offer such evidence because the Court found such evidence was not relevant to a Sherman Antitrust Act violation. *See, e.g.,* R. Tr. Mar. 1, 2022 at 207:3-16.[1]

Throughout the course of trial, the defendants introduced evidence (including testimony) that they received information about ongoing negotiations from various sources in the industry. The defendants elicited testimony about information sharing in an apparent attempt to show that information about pricing or ongoing negotiations was readily available from multiple sources—including buyers, distributors, and suppliers. During trial on March 7, 2022, the Court ruled that the defendants "may explore" a "line of questioning" with witnesses regarding whether "customers routinely shared pricing information among suppliers and that in some instances customers instructed suppliers to align their pricing." R. Tr. Mar. 7, 2022 at 88:19-22, 89:7-9. *See also id*. at 51:16-52:4. The defendants proceeded to elicit such testimony during their case-in-chief—in the examinations of Mr. Eddington, Mr. Finch, Mr. Kronauge, and Professor Snyder—but went further: The defendants elicited testimony that pricing information was shared not only among buyers, but also industry participants at large, including distributors and

---

[1] For the convenience of the Court, the government cites a real-time transcript of the proceedings because a certified transcript is not yet available. To the extent the Court's recollection differs, the government defers to the Court's view.

suppliers. In so doing, the defendants opened the door to rebuttal evidence against this alleged norm.

For example, in the direct examination of Mr. Eddington, the defendants elicited testimony that it would be "not unusual" for suppliers to share information among themselves about ongoing negotiations. As Mr. Eddington testified, "[i]n general terms, it's not unusual for competitors to talk about hey, wow, went to RSCS today. How did that go?" R. Tr. Mar. 15, 2022 at 132:4-12.[2] During the examination of Mr. Greg Finch, the defendants elicited testimony about a "joint supply network." R. Tr. Mar. 16, 2022 at 246:18-25. According to Mr. Finch, the participating suppliers "follow[ed] [the buyers'] directional guidance on price," *id*. at 249:19-22, 252:17, 256:18-257:4—and Claxton in particular received "directional guidance of where [Claxton] need[s] to be" from not only buyers, but also broadline distributors. *Id*. at 250:11-18, 252:4-24, 253:2-13, 254:13-255:20. Similarly, during the testimony of Professor Snyder, the defendants elicited testimony that information exchange was not only part of, but "*expected* in the broiler chicken industry and therefore it's not an indicator of bid-rigging or price-fixing." R. Tr. Mar. 16, 2022 at 199:15-18 (emphasis added). Finally, during the direct examination of Mr. Kent Kronauge, the defendants elicited testimony that during the RFP process, Mr. Kronauge did not care if the suppliers were taking to each other and encouraged them to talk more than not to make sure Popeyes was covered. R. Tr. Mar. 21, 2022 (afternoon) at 93:4-9.

---

[2] The defendants also elicited testimony that suppliers received "directional guidance" on pricing models from RSCS, the purchaser for KFC. R. Tr. Mar. 15, 2022 at 116:10-11; *id.* at 116:13-22, 117:19-118:3.

***Opening the Door***. A defendant opens the door for the government to introduce rebuttal evidence on a certain topic if the defense elicits testimony on that topic. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) ("When a party opens the door to a topic, the admission of rebuttal evidence on that topic becomes permissible."); *see also United States v. Brooks*, 736 F.3d 921, 933 (10th Cir. 2013) ("codefendant can open door to issue for defendant if defendant does not object to questioning on that issue") (citing *United States v. Sullivan*, 911 F.2d 2, 8 (7th Cir.1990)).

All of the above-cited testimony introduced by defendants was elicited for one purpose: To show that sharing of industry pricing—including directional guidance on pricing—was an industry norm, including among suppliers.[3] The defendants have therefore put front and center for the jury whether information sharing was a typical practice in the industry. The government therefore respectfully moves to rebut this testimony.[4]

***Anticipated Rebuttal Evidence***. The government intends to elicit limited testimony from Mr. Nicholas White, the general counsel of Pilgrim's, related to GX 9865. Specifically, the government seeks to elicit Mr White's knowledge that defendants

---

[3] For this reason, counsel for defendant Mulrenin argued during opening statement that customers, including buyers for KFC, Popeyes, and Church's, all frequently "talked to each other" as part of the industry. R. Tr. Mar. 15, 2022 at 56:16-23. Counsel further argued to the jury that customers often used "competitive intelligence" to respond to suppliers on pricing. *Id*. at 59:10-19.

[4] Based on ECF No. 560, the government understands the defendants do not intend to introduce evidence that the buyers colluded with suppliers as part of the same conspiracy. As the government laid out in its trial brief for the first trial, under clear Supreme Court precedent, such evidence is not probative in a per se case as it does not prove whether defendants are guilty of the crime, nor does it excuse the defendants' conduct. ECF No. 670 at 12-13 (Government's Trial Brief).

Lovette and Penn reviewed and approved this policy in early 2014 directing Pilgrim's employees *not* to share *any* price-related information with competitors. Because the defendants have opened the door to such evidence by eliciting testimony about the commonality of price sharing within the industry,[5] the probative value of GX 9865 is therefore especially high. GX 9865 directly refutes the defendants' evidence that information sharing among suppliers (and the broiler chicken industry at large) was typical: It simply cannot be true that price sharing was a norm prevalent in the industry in light of defendants Lovette's and Penn's directive, as high-level executives, to Pilgrim's employees *not* to share any such information in 2014. GX 9865. Specifically, the government intends to elicit testimony from Mr. White that defendants Lovette and Penn both reviewed and approved GX 9865, and that GX 9865 was a final policy of Pilgrim's.

In addition, any prejudice from Mr. White's anticipated testimony and GX 9865 can easily be limited by redacting portions of the exhibit. To address any concerns of juror confusion due to the references to antitrust risk in GX 9865, the proposes introducing a redacted copy of GX 9865, as shown in Attachment A (proposed redactions in redboxes), to limit any prejudicial effect on the jury. Fed. R. Evid. 403

---

[5] The Court has previously precluded the government from introducing evidence of antitrust training and policies to show the state of mind of the defendants—*i.e.*, by showing the defendants knew what they were doing was wrong or that the prices they were sharing were confidential. ECF No. 1087 at 2-4. This rebuttal evidence is offered for a different purpose: To refute the defendants' argument about industry norms. Moreover, to the extent the Court considers this motion to be one for reconsideration, the government believes reconsideration is warranted because the defendants have introduced no fewer than four witnesses opening the door and testifying about the relevant issue.

rulings, of course, are done on a statement by statement basis, and therefore, such redactions would be an appropriate way to address any prejudice. *See Gomez v. Rodriguez*, 344 F.3d 103, 115 (1st Cir. 2003).

****

For the foregoing reasons, the government moves the Court to permit the government to rebut the defendants' claims about norms of information sharing. The defendants have opened the door to Mr. White's testimony and the introduction of GX 9865 via the testimony of at least four defense witnesses. The defendants should therefore "not be surprised to see the prosecutor enter" the door left open. *United States v. Dorsey*, 677 F.3d 944, 953-54 (9th Cir. 2012).

Dated: March 21, 2022                    Respectfully submitted,

By: /s/Laura J. Butte
    Laura J. Butte
    Michael T. Koenig
    Heather D. Call
    Carolyn M. Sweeney
    Paul J. Torzilli
    Trial Attorneys
    Antitrust Division
    U.S. Department of Justice
    Washington Criminal II Office
    450 Fifth Street, N.W.
    Washington, D.C. 20530
    Tel: (202) 431-6619
    laura.butte@usdoj.gov
    Attorneys for the United States