IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  JAYSON JEFFREY PENN,
2.  MIKELL REEVE FRIES,
3.  SCOTT JAMES BRADY,
4.  ROGER BORN AUSTIN,
5.  TIMOTHY R. MULRENIN,
6.  WILLIAM VINCENT KANTOLA,
7.  JIMMIE LEE LITTLE,
8.  WILLIAM WADE LOVETTE,
9.  GARY BRIAN ROBERTS, and
10. RICKIE PATTERSON BLAKE,

      Defendants.

_____

**JURY INSTRUCTIONS**

_____

**Instruction No. 1**

Members of the Jury:

In any jury trial there are, in effect, two judges.  I am one of the judges, you are the other. I am the judge of the law.  You, as jurors, are the judges of the facts.  I presided over the trial and decided what evidence was proper for your consideration.  It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return.

Printed copies of my instructions will be given to you for use in the jury room, so you do not need to take notes.

**Instruction No. 2**

You, as jurors, are the judges of the facts.  But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you.  You must not substitute or follow your own opinion as to what the law is or ought to be.  It is your duty to apply the law as I explain it to you, regardless of the consequences.  However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be.  That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy.  That was the promise you made and the oath you took.

**Instruction No. 3**

The government has the burden of proving each defendant guilty beyond a reasonable doubt.  The law does not require a defendant to prove his innocence or produce any evidence at all.  The government has the burden of proving each defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of a defendant's guilt.

There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.  It is only required that the government's proof exclude any "reasonable doubt" concerning a defendant's guilt.  A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case.  If, based on your consideration of the evidence, you are firmly convinced that a defendant is guilty of the crime charged, you must find him guilty.

If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

**Instruction No. 4**

The indictment is simply the description of the charge made by the government against the defendants; it is not evidence of guilt or anything else.

**Instruction No. 5**

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  And my comments and questions are not evidence.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked.  I also ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record.  You must completely ignore all of those things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  Those things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Sometimes evidence was admitted only for a particular purpose and not generally for all purposes.  For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves.  You may not, however, use this evidence for any other purpose not specifically mentioned.

**Instruction No. 6**

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence, that is, proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence.  The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience.  An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

**Instruction No. 7**

I remind you that it is your job to decide whether the government has proved the guilt of each defendant beyond a reasonable doubt.  In doing so, you must consider all of the evidence.  This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony.  An important part of your job will be making judgments about the testimony of the witnesses who testified in this case.  You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was.  In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest?  Did the witness have any particular reason not to tell the truth?  Did the witness have a personal interest in the outcome in this case?  Did the witness have any relationship with either the government or the defense?  Did the witness seem to have a good memory?  Did the witness clearly see or hear the things about which he/she testified?  Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?  Did the witness's testimony differ from the testimony of other witnesses?  When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail.  And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

8

In reaching a conclusion on a particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

**Instruction No. 8**

None of the defendants testified and I remind you that you must not consider a defendant's decision not to testify as evidence of guilt.  You must understand that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify.  That is a constitutional right in this country, it is very carefully guarded, and you must not presume or infer guilt from the fact that a defendant does not take the witness stand and testify or call any witnesses or present any evidence.

**Instruction No. 9**

You have heard the testimony of witnesses who, in interviews before they testified, may have made statements that are different from their testimony here in court.

These earlier statements were brought to your attention only to help you decide on the credibility of those witnesses.  You cannot use the prior inconsistent statements as proof of anything else.  You can only use it as one way of evaluating the witnesses' testimony in this case.

**Instruction No. 10**

You heard testimony from Robert Bryant and Carl Pepper, both of whom are subject to immunity and cooperation agreements with the government.  The government has exclusive authority to grant immunity to a witness.  These agreements are not evidence of guilt of any of the defendants, and you may consider them only in determining Mr. Bryant's and Mr. Pepper's credibility.

You should consider the testimony of Mr. Bryant and Mr. Pepper with greater care and caution than the testimony of an ordinary witness.  You should consider whether the testimony of Mr. Bryant and Mr. Pepper has been affected by the witnesses' own interest, the promise not to prosecute them personally, the government's agreement, the witnesses' interest in the outcome of the case, or by any prejudice they may have against some or all of the defendants.  On the other hand, you should also consider that Mr. Bryant and Mr. Pepper can be prosecuted for perjury for making a false statement.  After considering these things, you may give their testimony such weight as you feel it deserves.

**Instruction No. 11**

You heard the testimony of Edward Snyder, who testified as an expert.

In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue.  A witness who has knowledge, skill, experience, training, or education may testify and state an opinion concerning such matters.

You are not required to accept such an opinion.  You should consider opinion testimony just as you consider other testimony in this trial.  Give opinion testimony as much weight as you think it deserves, considering the education, training, and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

**Instruction No. 12**

Mr. Austin offered evidence in the form of reputation for honesty and integrity. You should consider such evidence along with all the other evidence in the case.

Evidence in the form of reputation for honesty and integrity may be sufficient to raise a reasonable doubt whether a defendant is guilty because you may think it improbable that a person of honesty and integrity would commit such a crime. Evidence in the form of reputation of a defendant's honesty and integrity may be inconsistent with those traits of character ordinarily involved in the commission of the crime charged, and may give rise to a reasonable doubt.

You should also consider any evidence offered to rebut the evidence offered by the defendant.

You should always bear in mind, however, that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

**Instruction No. 13**

Some defendants offered evidence of their reputations for good character. You should consider such evidence along with all the other evidence in the case.

Evidence of good character may be sufficient to raise a reasonable doubt whether a defendant is guilty because you may think it improbable that a person of good character would commit such a crime.  Evidence of a defendant's character, inconsistent with those traits of character ordinarily involved in the commission of the crime charged, may give rise to a reasonable doubt.

You should also consider any evidence offered to rebut the evidence offered by the defendant.

You should always bear in mind, however, that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

**Instruction No. 14**

If any reference by the Court or by counsel to matters of testimony or exhibits does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of the Court or of counsel.

**Instruction No. 15**

The rights of each of the defendants in this case are separate and distinct.  You must separately consider the evidence against each defendant and return a separate verdict for each.

Your verdict as to one defendant, whether it is guilty or not guilty, should not affect your verdict as to any other defendant.

**Instruction No. 16**

To help in the administration of the trial, defense counsel have cooperated in order to promote efficiency.  They have joined together in examining witnesses and presenting their defenses.  Each defendant has been required to sit at a table with another defendant.

You must draw no inference from the fact that the defendants' attorneys have worked together or that certain defendants have sat together.  This does not constitute evidence that any defendant was previously associated with another in a conspiracy.

**Instruction No. 17**

Each defendant is charged in the indictment with a violation of 15 U.S.C. § 1 of the Sherman Act.  This law makes it a crime to unreasonably restrain trade.  The indictment charges the defendants with conspiring to fix prices and rig bids for broiler chicken products beginning at least as early as 2012 and continuing through at least early 2019.

To find a defendant guilty of this crime, you must be convinced that the government has proved each of the following elements against him beyond a reasonable doubt:

*First*: that the charged price-fixing and bid-rigging conspiracy existed at or about the times alleged;

*Second*: that the defendant knowingly—that is, voluntarily and intentionally—became a member of the conspiracy charged in the indictment, knowing of its goal and intending to help accomplish it; and,

*Third*: that the conspiracy affected interstate commerce.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you must find the defendant guilty.

If, on the other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you must find the defendant not guilty.

**Instruction No. 18**

The indictment charges that the crime was committed beginning at least as early as 2012 and continuing through at least early 2019.  The government must prove beyond a reasonable doubt that a defendant committed the crime reasonably near or within those dates.  The conspiracy does not need to exist during the entire time period, as long as it is fully contained within the time period charged – that is, at least as early as 2012 and through at least early 2019.

**Instruction No. 19**

Section 1 of the Sherman Act makes unlawful certain agreements that, because of their harmful effect on competition and lack of any redeeming virtue, are unreasonable restraints of trade.  Conspiracies to rig bids and fix prices are deemed to be unreasonable restraints of trade and therefore illegal, without consideration of the precise harm they have caused or any business justification for their use.

Therefore, if you find that the government has met its burden with respect to each of the elements of the charged offense, you need not be concerned with whether the agreement was reasonable or unreasonable, the justifications for the agreement, or the harm, if any, done by it.  It is not a defense that a defendant may have acted with good motives, or may have thought that what he was doing was legal, or that the conspiracy may have had some good results.  If there was, in fact, a conspiracy to rig bids and fix prices for broiler chicken products as alleged, it was illegal.

**Instruction No. 20**

The type of relationship condemned by the Sherman Act is a conspiracy. A conspiracy is often described as a "partnership in crime," in which each person found to be a member of the conspiracy is liable for all reasonably foreseeable acts of the other members during the existence of and in furtherance of the conspiracy. To create such a relationship, two or more persons must enter into an agreement or mutual understanding that they will act together for some unlawful purpose or to achieve a lawful purpose by unlawful means. It is the agreement to act together that constitutes the crime. Whether the agreement is actually carried out or whether it succeeds or fails does not matter.

In order to establish the existence of a conspiracy, the evidence need not show that the members of the conspiracy entered into any express, formal, or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which the object was to be accomplished. The agreement itself may have been entirely unspoken. What the evidence must show in order to prove that a conspiracy existed is that the alleged members of the conspiracy in some way came to an agreement or mutual understanding to accomplish a common purpose.

Direct proof of a conspiracy may not be available. A conspiracy may, however, be disclosed by the circumstances or by the acts of the members. Therefore, you may infer the existence of a conspiracy from what you find the parties actually did, as well as from the words they used. However, mere similarity of conduct among various persons, or the fact that they may have associated with one another and may have met

or assembled together and discussed common aims and interests, does not necessarily establish the existence of a conspiracy.  If actions were taken independently by them, without any agreement or mutual understanding among them, then there would be no conspiracy.

Where circumstantial evidence is just as consistent with unilateral action as with concerted action, it does not, standing alone, support an inference of antitrust conspiracy.

A conspiracy may vary in its membership from time to time.  It may be formed without all parties coming to an agreement at the same time, knowing all the details of the agreement, or knowing who all the other members are.   The unlawful agreement may be shown if the proof establishes that the parties knowingly worked together to accomplish a common purpose.  However, a corporation's employees cannot be found guilty of conspiring among themselves only.

In determining whether a conspiracy has been proved, you must view the evidence as a whole and not piecemeal.  You should consider the actions and statements of all the alleged conspirators.  Acts that are by themselves wholly innocent acts may be part of the sum of the acts that make up a conspiracy to fix prices in violation of the Sherman Act.

A conspiracy ends only when its purpose and objective have been accomplished or all the parties to the conspiracy abandon or terminate it.

**Instruction No. 21**

A conspiracy to fix prices is an agreement or mutual understanding between two or more competitors to fix, control, raise, lower, maintain, or stabilize the prices charged, or to be charged, for goods or services.  Prices do not have to be the same or identical to be fixed; prices may be fixed in other ways.  Prices are fixed if the range or level of prices or pricing strategy is agreed upon.  They are fixed because they are agreed on. Thus, an agreement among competitors to raise or lower a price, to set or avoid certain price promotions, to set a maximum price, to stabilize prices, to set a price or price range, or to maintain a price is illegal.   The aim and result of every price-fixing agreement, if successful, is the elimination of one form of competition.

A conspiracy to rig bids is an agreement between two or more competitors to eliminate, reduce, or interfere with competition for something that is to be awarded on the basis of bids.  A conspiracy to rig bids may be an agreement among competitors about the prices to be bid, who should be the successful bidder, who should bid high, who should bid low, or who should refrain from bidding; or any other agreement with respect to bidding that affects, limits, or avoids competition among them.  The aim and result of every bid-rigging agreement, if successful, is the elimination of one form of competition.

If you find that one or more of the defendants entered into an agreement to fix prices and rig bids, the fact that a defendant did not abide by it, or that one or more of them may not have lived up to some aspect of the agreement, or that they may not have been successful in achieving their objective is no defense.  The agreement is the crime, even if it is never carried out.

If the conspiracy charged in the indictment is proved, it is no defense that some or all of the defendants actually competed with each other in some manner or that they did not conspire to eliminate all competition.  Nor is it a defense that some or all of the defendants did not attempt to collude with all of their competitors.  Similarly, a conspiracy may be unlawful even if it did not extend to all goods sold by conspirators or did not affect all of their customers.

Evidence of the bids submitted and prices actually charged has been admitted to assist you in deciding whether a defendant entered into an agreement to fix prices and rig bids.  Such evidence may lead you to conclude that some or all of the defendants never entered into the agreement charged in the indictment or that some or all of the defendants did enter into the agreement.

The mere fact that some or all of the defendants may have engaged in similar or parallel pricing does not by itself establish the existence of a conspiracy among them.  Evidence of similarity of business practices of defendants, or the fact that they may have charged identical prices for the same goods, does not alone establish an agreement to fix prices and rig bids, since such activities may be consistent with ordinary and proper competitive behavior in a free and open market.  A business may lawfully copy its competitors' price lists, follow and conform exactly to its competitors' price policies and price changes, and adopt the same prices, conditions of sale, or other practices as long as it does so independently and not as part of an agreement or understanding with one or more of its competitors.

Mere exchanges of information, even regarding price, are not necessarily illegal, in the absence of additional evidence that an agreement to engage in unlawful conduct

resulted from, or was a part of, the information exchange.  It is not unlawful for competitors to meet and exchange information necessary to preparation of a bid or discuss common aims or objectives or exchange information on independently derived prices.  There may be legitimate reasons that would lead competitors to exchange price information other than fixing prices or rigging bids.  It is not illegal for a competitor to obtain, rely upon, and act on pricing and other information received from competitors, customers, media, internet sources, industry analysts, brokers, and others involved in the production and sale of broiler chicken products so long as there is no agreement to fix prices or to rig bids.

Nevertheless, you may consider such facts and circumstances, along with all other evidence, in determining whether the alleged price fixing and bid rigging resulted from the independent acts of the defendants freely competing in the open market, or whether it resulted from an agreement among or between two or more of them.

**Instruction No. 22**

The indictment charges that the defendants were all members of one single conspiracy to commit the crime of price fixing and bid rigging.

You must determine whether the single conspiracy, as charged in the indictment, existed, and if it did, whether the defendant was a member of it.

Proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the indictment, unless one of the several conspiracies which is proved is the single conspiracy charged in the indictment or is fully contained within it.

If you find that a defendant was not a member of the conspiracy charged, then you must find the defendant not guilty, even though the defendant may have been a member of some other conspiracy. This is because proof that a defendant was a member of some other conspiracy, unless it is a narrower conspiracy fully contained within the charged conspiracy, is not enough to convict. To convict a defendant, you must unanimously agree on the conspiracy of which he is found guilty. That is, to find a defendant guilty, you must unanimously agree that a defendant joined the conspiracy as charged or you must unanimously agree that a defendant joined a narrower conspiracy that is fully contained within the charged conspiracy.

Proof that a defendant was a member of some other conspiracy would not prevent you from returning a guilty verdict if the government proved that he was also a member of the conspiracy charged in the indictment.

**Instruction No. 23**

The second element the government must prove beyond a reasonable doubt is that a defendant knowingly joined the conspiracy charged in the indictment.  To act "knowingly" means to act voluntarily and intentionally, and not because of ignorance, mistake, or accident.  Therefore, before you may convict a defendant, the evidence must establish that the defendant knowingly joined the conspiracy with the intent to advance the objective of the conspiracy—here, price fixing and bid rigging for broiler chicken products.

Mere knowledge of a conspiracy is insufficient to make a person a member of the conspiracy.  But a person who knowingly joins an existing conspiracy, with knowledge of the overall conspiracy and with the intent to advance its objectives, is just as responsible for actions and statements of other members of the same conspiracy that were made while the person was a member of the conspiracy, as long as the actions and statements were made during the course and in furtherance of the conspiracy and fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

If you find that a defendant knowingly joined the conspiracy, then the defendant remains a member of the conspiracy and is responsible for all actions taken in furtherance of the conspiracy until the conspiracy has been completed or abandoned or until the defendant has withdrawn from the conspiracy.

**Instruction No. 24**

The third element is that the crime affected interstate commerce.  In order to satisfy this element, the government must prove beyond a reasonable doubt that the conspiracy charged in the indictment either occurred in the flow of interstate commerce or had a substantial effect on interstate commerce.

The term "interstate commerce" includes transactions of goods or services that are moving across state lines or that are in the continuous flow of commerce from the commencement of their journey until their final destination in a different state.  When such transactions are involved, the amount of commerce restrained by the conspiracy is of no significance.

The term "interstate commerce" may also include entirely intrastate transactions in which some or all the defendants are not engaged in interstate commerce and some or all of the acts are wholly within a state, if the activities substantially and directly affect interstate commerce.

It is a question of fact for the jury to determine whether the conspiracy involves such interstate commerce.

**Instruction No. 25**

You are here to decide whether the government has proved beyond a reasonable doubt that each defendant is guilty of the crime charged.  A defendant is not on trial for any act, conduct, or crime not charged.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged.  The fact that another person *also* may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether each defendant has been proved guilty of the crime charged.

**Instruction No. 26**

The grand jury returned an indictment against Mr. Penn, Mr. Fries, Mr. Brady, and Mr. Austin on June 2, 2020.  The grand jury returned an indictment against Mr. Mulrenin, Mr. Kantola, Mr. Little, Mr. Lovette, Mr. Roberts, and Mr. Blake on October 6, 2020.

There is a five-year statute of limitations that applies to the crime charged in the indictment.  This means that you cannot find Mr. Penn, Mr. Fries, Mr. Brady, or Mr. Austin guilty unless the government proves, beyond a reasonable doubt, that the alleged conspiracy existed at some point within the period of the statute of limitations, which for purposes of Mr. Penn, Mr. Fries, Mr. Brady, and Mr. Austin is the period beginning June 2, 2015 and continuing until June 2, 2020.  The statute of limitations period for Mr. Mulrenin, Mr. Kantola, Mr. Little, Mr. Lovette, Mr. Roberts, and Mr. Blake is the period beginning October 6, 2015 and continuing until October 6, 2020.

To prove that the conspiracy existed within the statute of limitations, the government must prove beyond a reasonable doubt that one or more members of the conspiracy performed some act after June 2015 as to Mr. Penn, Mr. Fries, Mr. Brady, or Mr. Austin or after October 2015 as to Mr. Mulrenin, Mr. Kantola, Mr. Little, Mr. Lovette, Mr. Roberts, and Mr. Blake in furtherance of the conspiracy.

**Instruction No. 27**

Some of the documents admitted in the trial may be marked as "confidential,"

"highly confidential," or with something similar, generally on the bottom of the page.

These markings were added as part of the litigation after the creation of the documents,

have no significance to the contents of the documents, and should be disregarded.

**Instruction No. 28**

During the trial, certain summaries prepared by the government and certain defendants were admitted in evidence because they may assist you in understanding the evidence that has been presented.  The summaries themselves are not evidence of the material they summarize and are only as valid and reliable as the underlying material they seek to summarize.

You may give a summary exhibit entire weight, some weight, or no weight at all depending on your assessment of the underlying material and the accuracy of the summary.

**Instruction No. 29**

A person is responsible under the criminal law for unlawful acts he performs or causes to be performed on behalf of a corporation just as though that act were performed on his own behalf.

A defendant who is an officer or employee of a corporation is not criminally responsible for the illegal acts of another officer or employee performed on behalf of that corporation merely because of his status as an officer or employee of the corporation.

**Instruction No. 30**

If you find one or more of the defendants guilty, it will be my duty to decide what the punishment will be.  You should not discuss or consider the possible punishment in any way while deciding your verdict.

**Instruction No. 31**

The fact that this prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that granted to defendants or any other party to a legal case.  All parties, whether the government or individuals, stand as equals at the bar of justice.

**Instruction No. 32**

The next ten instructions are each defendants' theories or statements of their

defense.  These instructions were submitted by each individual defendant.

**Instruction No. 33**

Mr. Penn's theory of the case is that there was no antitrust conspiracy and that he did not rig bids and fix prices or direct anyone else to do so.  He contends that not a single witness, not even the government's purported "insiders," testified that Mr. Penn (i) agreed to rig bids and fix prices, (ii) instructed anyone else to do so, or (iii) was even aware of others engaging in such conduct.  Mr. Penn further contends that price increases and decreases during the time period at issue were caused by the ordinary market forces of supply and demand, and that all of the documents in evidence that relate to Jayson Penn are consistent with lawful conduct.  It is Mr. Penn's theory that the evidence demonstrates he acted lawfully and competitively, and that he pursued an independent business strategy based on Pilgrim's own interests and considerations. He contends the government has not proved beyond a reasonable doubt that Mr. Penn knowingly and intentionally agreed to join a conspiracy to rig bids and fix prices, shared that goal, or did anything to accomplish it.

**Instruction No. 34**

It is Mikell Fries's theory of the case that he did not agree with anyone, nor did he direct anyone to agree to fix prices and rig bids.  Nor is he aware of any such agreement among any other persons.  Claxton Poultry's actions were the result of independent decision making in the best interests of Claxton Poultry, and not the result of an illegal agreement to fix prices and rig bids.  Mr. Fries was not the President of Claxton Poultry during the period the government alleges he participated in the alleged conspiracy.  Further, the government has not alleged, nor proven, that within the five year statute of limitations, Mr. Fries discussed pricing with anyone outside of his own coworkers, directed anyone else to share pricing information, or agreed with anyone to share pricing information.  To the extent Mr. Fries learned pricing information, the source of his knowledge was interactions with other customers, distribution centers, other suppliers, and the buyers themselves.  None of his knowledge was a part of any agreement to leverage Claxton's prices to influence any other supplier's pricing.

**Instruction No. 35**

Mr. Brady's theory of the defense is that he did not enter into any agreement to fix prices and rig bids of broiler chicken products with anyone, nor was he aware of any such agreement.  The evidence proves that Claxton Poultry made independent pricing decisions and Mr. Brady did not have authority to set pricing.  The evidence shows that Mr. Brady, at the direction of Claxton, competed against other suppliers on pricing to obtain additional volume.  As a salesman, Mr. Brady communicated with customers and chicken suppliers to buy and to sell chicken and to address a variety of other subjects, including pricing, quality assurance, and logistics.  The government failed to prove beyond a reasonable doubt that Mr. Brady's communications were in furtherance of any conspiracy or agreement to fix prices and rig bids, rather than ordinary and lawful exchanges of information incident to legitimate personal or business activities.  Mr. Brady did not knowingly become a member of any conspiracy to fix prices and rig bids, did not share any goal of such a conspiracy, and did not help accomplish it.

**Instruction No. 36**

Roger Austin's theory of the defense is that he did not agree with anyone to fix prices and rig bids, nor is he aware of any such agreement.  Mr. Austin had no motive to enter a conspiracy to agree to fix prices and rig bids.  The evidence has shown that Mr. Austin did not have authority to determine Pilgrim's prices and that he frequently advocated for lower prices for his customer, KFC.  KFC was Mr. Austin's main customer, and Pilgrim's lost a significant volume of sales to KFC every year from 2012 through 2018 due to competition and the lower prices charged by its competitors. Pilgrim's prices were the result of independent analytical decision-making by Pilgrim's and negotiations with RSCS.  Mr. Austin had many reasons to communicate with other suppliers, and to the extent he communicated with other suppliers about pricing it was because Pilgrim's wanted as much information as possible so it could compete, not collude.

**Instruction No. 37**

Timothy Mulrenin maintains that he never conspired to fix prices and rig bids for broiler chicken products.  Mr. Mulrenin worked at Tyson as a salesman for 14 years. During that time, his job was to service customer relationships and increase the volume of sales of Tyson broiler chicken products to those customers.  As a salesman, Mr. Mulrenin was responsible for communicating to customers the prices and costs that had been developed by the Pricing Unit and set by the Small Bird Business Unit at Tyson, and then communicating customers' responsive feedback and guidance to Tyson's Pricing Unit and Small Bird Business Unit.  At no time did Mr. Mulrenin, or anyone acting with his knowledge or at his direction, share pricing information with or receive pricing information from any broiler chicken supplier as part of any conspiratorial agreement to fix prices and rig bids.  At no time did Mr. Mulrenin have the authority to decide on prices or costs and, further, he never sought to influence anyone with such authority to raise or fix prices.

**Instruction No. 38**

William Kantola's theory of the defense is that he neither knew of nor voluntarily and intentionally entered into any agreement to fix prices and rig bids.  The evidence mostly did not pertain to him. Mr. Kantola did not decide his company's pricing, but he followed his company's directions and competed to obtain additional volume and undercut competitors.  Koch Foods had a unique, independent strategy to grow small bird sales.  The evidence shows that speculation of other suppliers about bid submissions and actions of Mr. Kantola's company was consistently wrong.  Mr. Kantola submits that the government did not prove that his calls with other suppliers were other than to facilitate customer service, cover shortages, execute intercompany sales, and assess contract performance.  He did not disclose his company's pricing intentions to competitors, nor did he receive their prospective pricing.  The government did not prove that he was part of any conspiracy before or after October 2015.

**Instruction No. 39**

Jimmie Little's theory of defense is that he did not know of an agreement to rig bids and fix prices regarding the sale of broiler chicken products, nor did he enter into such an agreement with any other person.  Until his retirement in September 2016, Mr. Little was a salesperson at Pilgrim's Pride, and the government failed to prove that he had authority to set prices.  Even if Mr. Little had telephone calls with other suppliers of broiler chicken products, or received or shared information with them, the government failed to prove that these actions were part of an agreement or a conspiracy to rig bids and fix prices, rather than ordinary and proper business activities.

**Instruction No. 40**

Mr. Lovette's theory of the defense is that he did not knowingly join any agreement among competitors to fix prices and rig bids for broiler chicken products, nor did he direct or authorize anyone to do so.  Mr. Lovette asserts that Robert Bryant, a Pilgrim's employee and one of only two government witnesses who claim to have knowledge about the charged agreement, testified that he had no basis to believe Mr. Lovette was aware of the alleged conspiracy much less any basis to believe Mr. Lovette ever agreed with any competitor to fix prices and rig bids or ever instructed anyone to do so.  Mr. Lovette maintains that Carl Pepper, the other witness who claims to have knowledge about the charged conspiracy, did not even mention Mr. Lovette's name. The evidence has shown that Mr. Lovette's actions as the CEO of Pilgrim's were the result of his independent decision-making regarding what was in the best interest and considerations of Pilgrim's.  Mr. Lovette contends his actions and decisions were to implement Pilgrim's independent strategy to seek a fair market price for its products. Mr. Lovette maintains his actions and decisions were never in furtherance of or the result of an agreement among competitors to rig bids and fix prices for broiler chicken products—a charged agreement he contends never existed and that the government did not prove.  The government failed to prove that Mr. Lovette's actions were part of an agreement among competitors rather than ordinary and proper business activities.

**Instruction No. 41**

Brian Roberts maintains that when he worked for Tyson Foods National Accounts Sales Unit (June 2012-February 2016) he didn't know of a conspiracy with competitors to rig bids and fix prices and he didn't agree with any competitors to rig bids and fix prices.  Neither did he provide Tyson pricing information to any competitors. Brian Roberts didn't have the authority to set Tyson's prices for boiler chicken products. Mr. Roberts only had authority to act as a messenger to the KFC representatives in price negotiations by communicating the prices and costs developed by the Pricing Unit and set by the Small Bird Business Unit at Tyson, and then communicating customers' responsive feedback and guidance to Tyson's Pricing Unit and Small Bird Business Unit.  The Tyson prices in the contracts at issue in this case were either set by Tyson's Pricing Unit and Small Bird Business Unit or provided by the customer representative. Tyson's charges to Church's Chicken for freezing charges or quality assurance were direct passthrough costs, and were not associated with any pending bids or requests for proposals.

**Instruction No. 42**

It is Mr. Blake's theory of the case that Mr. Blake did not knowingly join any conspiracy with competitors to fix prices and rig bids of broiler chicken products.  If such a conspiracy existed, he had no knowledge of it, no intent to join it, and no intent to accomplish its objectives.  He did not align George's bids with the bids of its competitors. Mr. Blake did not share information about what George's bid, or intended to bid, on future contracts and did not obtain, or attempt to obtain, information about what competitors bid, or intended to bid, for future contracts.  Mr. Blake did not negotiate prices with George's customers and did not have authority to set George's bids. He did not provide information about competitors' bids to his superiors who did set George's bids, or in any other way attempt to influence the amount George's bid on future contracts.  Mr. Blake did not knowingly join a conspiracy among competitors to rig bids and fix prices, did not share such a goal, and did not help accomplish it.

## Instruction No. 43

After closing arguments, the court security officer will escort you to the jury room. Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom. The second thing you should do is review the instructions. Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations. Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree. Your verdict must be unanimous as to each defendant. Your deliberations will be secret. You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong. But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges—judges of the facts. You must decide whether the government has proved each defendant's guilt beyond a reasonable doubt.

A form of verdict has been prepared for your convenience.

**[Explain the Verdict Form]**

48

The foreperson will write the unanimous answer of the jury in the space provided for each defendant, either guilty or not guilty.  At the conclusion of your deliberations, the foreperson should date and sign the verdict.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the court security officer.  I will either reply in writing or bring you back into the court to respond to your message.  Under no circumstances should you reveal to me the numerical division of the jury.