**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JAYSON JEFFREY PENN,<br>MIKELL REEVE FRIES,<br>SCOTT JAMES BRADY,<br>ROGER BORN AUSTIN,<br>WILLIAM WADE LOVETTE,<br><br>    Defendants. | Criminal Case No. 20-cr-00152-PAB |

**DEFENDANTS' JOINT RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO SUPPLEMENT THE *JAMES* LOG AND FOR RECONSIDERATION**

Seven months since the initial *James* hearing and after the completion of two trials and a supplemental *James* process, the government now seeks admission under Rule 801(d)(2)(E) of seven Pilgrim's Pride Corporation invoices, 38 statements made by three witnesses who testified at one or both of the prior trials, and requests the Court to reconsider its decision to refuse admission of two statements from the government's last *James* motion, a ruling that the government now claims the Court never made.

The Court should deny the government's motion. *First*, the government has not justified its failure to seek admission of the 38 testimonial statements and other evidence at the *James* hearing. The government knew of most, if not all, of the statements months or years before the *James* hearing and offers no excuse for its failure to timely submit them to the Court. *Second*, the new "statements" do not fall within the ambit of Rule 801(d)(2)(E) because the statements are

ascribed to a declarant who made no statement, or they are not ascribed to any specific declarant. *Third*, the government's request violates the Defendants' Sixth Amendment confrontation rights. *Finally*, the government does not identify any basis to support reconsideration of the Court's decision to refuse *James* log entry 245 (GX 1890-91).[1] Two *James* submissions is enough.[2]

I. **The Government's Submission of "New" Testimonial Statements Is Untimely and the Statements Do Not Meet the Requirements of Rule 801(d)(2)(E).**

The government seeks admission under Rule 801(d)(2)(E) of 38 statements that three witnesses made at the first and second trials, on the sole basis that the witnesses offered the statements in "large part without objection" during trial. ECF No. 1272 ("Gov't Mot.") at 3. Defendants' decisions to object or not is not a basis to admit any of the 38 statements in a new trial. The Court previously held that Defendants "did not waive any objections" to the admission of evidence "by not making them at the first trial." ECF No. 1050 at 2 n.3 (citing ECF No. 971 at 10). It is the government's burden to justify its failure to seek the admission of these statements at the *James* hearing and to prove their admissibility under Rule 801(d)(2)(E). It does neither.[3]

---

[1] The attached Exhibit A contains a complete list of the Defendants' objections to the entries in the government's supplemental log. Defendants do not oppose the admissibility of DX D-925, ECF. No. 1272-1 ("Gov't Mot. Ex. A") at 101-S.

[2] Although the Court has ruled that a conspiracy existed and that each of the Defendants joined it, ECF No. 559 at 7-8, Defendants incorporate and reassert all prior objections regarding the government's failure to prove that the charged conspiracy existed and that any Defendant or declarant was a member. (ECF Nos. 391, 394, 395, 395-1, 403, 408, 461, 463, 470, 475, and 478.)

[3] It is unclear from the government's motion whether it plans to introduce the statements via live testimony or by seeking their admission through some other avenue. Admitting the statements without the live testimony would only exacerbate the violation of the Defendants' Sixth Amendment confrontation rights and present double hearsay issues.

### A. Per the Court's prior rulings, the government is precluded from supplementing the *James* log with statements known to it before the *James* hearing, and the government never justifies why the "new" statements were not on its initial *James* log.

On its delinquency, the government has nothing to say. Prior to the *James* hearing on September 3 and 8, 2021, it knew about at least 30 of the 38 statements that it now offers through Messrs. Suerken, Bryant, and Pepper's trial testimony. The chart attached as Exhibit B identifies the supplemental *James* log entries and the corresponding interview summaries for Messrs. Suerken, Bryant, and Pepper that establish the government's prior knowledge. The government knew in advance of the *James* hearing about *all* of the statements from Messrs. Pepper and Suerken's trial testimony, as well as 15 of the 23 statements from Mr. Bryant's trial testimony. With that awareness, the government tactically decided not to call any of the three men at the *James* hearing. In Mr. Pepper's case, the government refused to immunize him until after the *James* hearing, preventing him from testifying at the *James* hearing. The government should be bound by its tactical decision to limit the Defendants' confrontation rights. (*See* ECF No. 418 at 2; *James* Hr'g Tr. 131:7-133:1, 151:9-25, 160:10-15.) [4] This Court has made clear that it will not consider *James* submissions that the government could have submitted at the *James* hearing. (*See* ECF No. 1050 at 7, 10) (denying government's motion to admit statements under Rule 801(d)(2)(E) where "[t]he government provide[d] no information on why these entries were not on the original *James* [log] besides that they were not on the government's exhibit list for the first trial") (barring statements not included in original *James* log when they were otherwise available or known to the government prior to the *James* hearing.).

---

[4] All citations to the second trial in 2022 are to the uncertified, rough transcript and all citations to the first trial in 2021 are to the certified transcript.

B. **The "new" testimonial statements fail to satisfy the Rule 801(d)(2)(E) test.**

The government fares no better on the substance than it does on the timing. It seeks the admission of testimonial statements that it never properly attributes to a declarant. Additionally, the government otherwise fails to establish the key predicates for a Rule 801(d)(2)(E) finding: "(1) that a conspiracy existed; (2) that the declarant and the defendant were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy." *United States v. Hall*, 473 F.3d 1295, 1302–03 (10th Cir. 2007) (internal quotations and citations omitted).

1. The government does not properly attribute statements to a co-conspirator declarant.

The government advances four statements that it does not properly attribute to a co-conspirator declarant, which fail to satisfy Rule 801(d)(2)(E). The government asserts without support that Roger Austin is the declarant in statement 102-S, but that entry establishes only that (i) Mr. Austin led a presentation, (ii) was one of eight or nine Pilgrim's executives to attend a meeting with RSCS, and (iii) "[t]he executives said that Suerken didn't have a choice – the prices were going to move higher." (Gov't Mot. Ex. A. at 102-S.) Mr. Suerken never testified that Mr. Austin made the statement. (Mar. 2, 2022 Tr. 34:23-34:24, Tr. 35:19-37:20.)

Similarly, in entries 130-S, 131-S, and 137-S, the declarant(s) identified (other than Mr. Pepper) said *nothing*. In entry 130-S, the government asserts that Jimmie Little, Ric Blake, and Scott Brady are the declarants; however, Mr. Pepper testified only about what *he himself* said and understood, nothing more. (Gov't Mot. Ex. A at 130-S, Mar. 3, 2022 Tr. 243:12-246:13.) In entry 131-S, Mr. Pepper testified that he did not recall the exact words of the conversations – "just the topics." (Mar. 2, 2022 Tr. 254:6-13.) What Mr. Pepper did recall was what *he said* to Mr. Little, not what Mr. Little may have said to him. (*Id.* at 255:5-8 ("I can't word the exact words the way *I*

4

*said it*, but an agreement ….") (emphasis added)). Similarly, in entry 137-S, Mr. Pepper does not testify as to anything Mr. Little said. (Mar. 3, 2022 Tr. 194:9-195:6.) The cited testimony recounts what **Mr. Pepper** allegedly told Mr. Little. (*Id.* ("I told him we had – we were going ….").)

Each of these entries fails to satisfy Rule 801(d)(2)(E), which requires the government to establish the identity of the declarant *before* asking the Court for a determination on whether the declarant is a co-conspirator whose statements furthered the conspiracy. *United States v. Mouzin*, 785 F.2d 682, 692-93 (9th Cir. 1986) ("Knowledge of the identity of the declarant is essential to a determination that the declarant is a conspirator whose statements are integral to the activities of the alleged conspiracy."). The government simply fails to fulfill that obligation in its motion.

2. <u>The testimonial statements are inaccurate, contradicted by trial evidence, and their admission would violate the Defendants' Confrontation Clause rights and the Court's rulings.</u>

The Tenth Circuit has made clear that Rule 801(d)(2)(E) has real limits that litigants must respect. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (en banc) ("Rule 801 (d)(2)(E) is a limitation on the admissibility of co-conspirators' statements that is meant to be taken seriously[.]" (quotation omitted)). This is especially so now, when the government would exploit the rule to circumvent the Defendants' Confrontation Clause rights.[5]

During the second trial, the Court struck Mr. Bryant's testimony regarding a purported agreement to raise prices in 2014, finding there was no basis for Mr. Bryant's understanding of an

---

[5] "One of the bedrock constitutional protections afforded to criminal defendants is the Confrontation Clause of the Sixth Amendment[.]" *Hemphill v. New York*, 142 S. Ct. 681, 690 (2022). The Sixth Amendment's right to confrontation "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 691 (quotation omitted).

5

agreement, and instructed the jury to disregard that testimony. (*See* Mar. 8, 2022 Tr. 237:17 – 238:14, 239:20-24.) In its motion, the government seeks to admit a statement by Mr. Bryant, 108-S, regarding his understanding that in 2014 alleged co-conspirators were communicating for the purpose of increasing prices or limiting price decreases. (Gov't Mot. Ex. A at 108-S). In addition to not attributing a statement to a specific declarant, the government is essentially asking the Court to admit a statement that contravenes the Court's prior ruling. The Court should exclude this statement from the 801(d)(2)(E) analysis.

> a. *The government seeks admission of testimony by Mr. Suerken that it knows to be incorrect in order to preclude cross-examination to prove its inaccuracy.*

Even after *Bourjaily v. United States*, 483 U.S. 171 (1987), "most courts require some reliable corroborating evidence apart from the coconspirator's statements before those statements may be used." *United States v. Rascon*, 8 F.3d 1537, 1540-41 (10th Cir. 1993)(listing cases).[6] Thus, when the very statements of the witness or independent evidence establishes the unreliability of the statement, the court has the discretion to exclude it. In regard to entry 106-S, at trial Mr. Suerken testified that he "had a face-to-face meeting with defendant Bill Lovette regarding the RSCS negotiation in 2014" that occurred "[l]ate in the process." (Mar. 2, 2022 Tr. 68:2-7.) On cross examination, Mr. Suerken testified that he was not sure whether the meeting took place in 2014 or September 2015. (*Id.* at Tr. 148:7-25.) When counsel for Mr. Lovette showed Mr. Suerken DXs I-839 and I-830 dating the meeting in 2015, he testified that the documents proved the date of the meeting. (*Id.* at Tr. 149:10-24.) The government objected, but Mr. Suerken agreed it was

---

[6] Corroborating evidence is not limited strictly to the three 801(d)(2)(E) factors. *See, United States v. Martinez*, 825 F. 2d 1451, 1452-53 (10th Cir. 1987)(independent testimony corroborated the factual veracity of the hearsay statement on tape).

possible that the meeting may have occurred in 2015. *Id.*

    b. *Mr. Bryant incorrectly testified that Mr. Austin shared "bid information" with Mr. Stiller in 2017.*

In regard to entries 109-S, 118-S[7], and 119-S, the government seeks to admit Mr. Bryant's misleading and false testimony that Pilgrim's received other suppliers' bids for KFC in 2017, as allegedly reflected in GX 1919. (*See* Mar. 8, 2022 Tr. 168:7-11; Mar. 9, 2022 Tr. 6:14-15, 9:2-11.) However, as established at trial, GX 1919 reflects *current* period 2 pricing for various suppliers, *not* bids. (*See* DX I-054; Mar. 9, 2022 Tr. 107:25-108:22.) Mr. Bryant testified under oath that the bids to KFC and the numbers listed in GX 1919 were different. (DXs C-464-65; GX 1825-26; Mar. 9, 2022 Tr. 117:13-20, 119:1-120:3.) Mr. Bryant's incorrect testimony should not be admitted under Rule 801(d)(2)(E). The government seeks to isolate this testimony from the contradicting evidence that establishes Mr. Bryant's testimony was inaccurate.[8] The Court should not permit the government to use Rule 801(d)(2)(E) to continue to sponsor materially inaccurate testimony.[9]

    c. *Mr. Bryant's conduct related to U.S. Foods has no connection to the charged conspiracy.*

In entries 122-S through 125-S and 128-S, the government seeks to admit Mr. Bryant's

---

[7] The government incorrectly cites the transcript to support the summary of the testimony included in its Motion. The citation omits 6:16-7:7 of the March 9, 2022 transcript.

[8] Several of the government's "descriptions" of Mr. Bryant's testimony are materially inaccurate. Mr. Bryant testified that he only *recalled* testifying that Mr. Austin told him that he and Carl Pepper shared information, *not* "price information" as the government claims. (*Cf.* Gov't Mot. Ex. A at 127-S, Mar. 9, 2022 Tr. 127:21-25.) Mr. Bryant testified only that recitation of his statements from the first trial "sound accurate." (Mar. 9, 2022 Tr. 154:7-17; *see also* Gov't Mot. Ex. A at 129-S.)

[9] While "firmly rooted" hearsay exceptions are "normally considered sufficiently reliable" *(United States v. Akins*, 1997 U.S. Dist. LEXIS 17446, at *9-10 (D. Kan. Sept. 3, 1997) (citing cases), when the evidence establishes the unreliability of the hearsay, it should not be relied upon. *See also*, *United States v. Beaulieu*, 893 F.2d 1177, 1181 (10th Cir. 1990) (citation omitted)).

testimony that he, Tim Stiller, and Scott Tucker allegedly coordinated with Mar-Jac on a price increase for boneless chicken breasts in 2017 related to US Foods. Critical for Rule 801(d)(2)(E), Mr. Bryant testified that *none* of the Defendants participated, and that he *never* told any of them about this effort. (*See* Mar. 9, 2022 Tr. 152:17-153:5; 94:6-20; Mar. 10, 2022 Tr. 5:9-19, 18:19-25, 19:5-20:17.) Mr. Bryant's own testimony about this episode contradicts his later testimony that the alleged conspiracy in which he alleged some Defendants took part affected and occurred only within the quick-service restaurant ("QSR") industry, which was "different than the other segments." (Mar. 8, 2022 Tr. 154:3-9, 170:4-12; Mar. 10, 2022 Tr. 75:11-17.) During the alleged conspiracy, US Foods was not a QSR and was not in the QSR industry segment; it was in the broadline industry, a different segment. (Mar. 8, 2022 Tr. 150:5-7; Mar. 10, 2022 Tr. 30:15-18.) By Mr. Bryant's own testimony, the alleged US Foods related statements could not have been "in furtherance" of the charged conspiracy because they are outside the alleged scope. *See United States v. Evans*, 970 F.2d 663, 673 (10th Cir. 1992); *see also Perez*, 989 F.2d at 1578.

> d. *The government proffers Mr. Bryant's testimony reflecting Pilgrim's independent strategy in response to market forces, not statements in furtherance of a conspiracy.*

Several of the statements attributed to Mr. Bryant (110-S through 113-S, 117-S, 120-S, and 129-S) are not connected to an alleged conspiracy at all but are descriptions of Pilgrim's independent business strategy. For example, the government seeks to admit Mr. Bryant's testimony on statements that Pilgrim's employees made during a presentation to RSCS at the outset of pricing negotiations in 2014. (*See* Gov't Mot. Ex. A at 110-S; Mar. 8, 2022 Tr. 190:18-191:11.) Those statements describe what every witness, including Mr. Bryant, acknowledged was Pilgrim's response to a tight supply of small birds relative to increased demand, exacerbated by the transition to more profitable big birds. (*See* Mar. 9, 2022 Tr. 162:3-13; *see also* GX 1055; DX J-027.) The

8

factual predicate for admission is therefore missing; such ordinary, legitimate business conduct falls outside the ambit of Rule 801(d)(2)(E).

> e. *DX D-925 and Mr. Bryant's own testimony contradict his claims regarding the Natchitoches plant.*

The government moves to admit Mr. Bryant's testimony from the first trial that Mr. McGuire told him that the Natchitoches plant conversion "was not a real thing we were going to do" and was instead "meant to apply pressure to Roger Austin." (Gov't Mot. Ex. A at 107-S; Nov. 2, 2021 Tr. 975:22-976:1; 976:18-20.) DX D-925 flatly contradicts that claim. Mr. Lovette informed Messrs. McGuire, Austin, Little and Baker that "another small bird plant (at least one), will get converted" and asked Mr. McGuire for his input on which plant to convert. (DX D-925.) Mr. McGuire advocated for Natchitoches in his response and then forwarded the exchange to Mr. Bryant, writing, "FYI getting really real." (*Id.*) Mr. Bryant replied, "I wish we would pull the trigger soon[.]" (*Id.*)

Moreover, the government's description of the import of and conclusions to be drawn from this testimony are baseless and illustrate yet again the government's overreach in this case. At no point did Mr. Bryant relay statements that "(1) revealed the existence of a conspiracy to increase prices; (2) identified [Messrs.] McGuire and Lovette's roles in pressuring [Mr.] Austin to deliver those increases; and (3) implicitly warned [Mr.] Bryant not to alert [Mr.] Austin of the ruse[.]" (Gov't Mot. at 5.) Those assertions are recklessly false, or worse. Mr. Bryant's only testimony about Mr. Lovette was that he did not know if Mr. Lovette was involved in pricing. (Mar. 8, 2022 Tr. 182:5-183:4.) And Mr. Bryant confirmed that there were internal discussions at Pilgrim's in 2014 about converting the Natchitoches plant, Mr. McGuire was part of those discussions, and the plant conversion would affect customers, like KFC, that relied upon Pilgrim's small bird supply.

9

(Nov. 2, 2021 Tr. 978:11-23, 1041:8-16.) The government also falsely characterizes Mr. Bryant's testimony about Mr. McGuire's statements as "form[ing] part of the basis for his knowledge that there was an agreement between Pilgrim's employees and its competitors to reduce price competition in order to increase price and mitigate price decreases." (Gov't Mot. at 5.) The Court sustained an objection to the government's questions about Mr. McGuire's phone call to Mr. Bryant on this topic and noted that any statement related to the alleged phone call "doesn't sound like it's part of the conspiracy either, so I don't hear a hearsay exception so far," and directed the government to better direct the witness "so he doesn't keep referring to that particular phone call." (Mar. 8, 2022 Tr. 222:24-223:6, 226:17-227:2, 230:2-8.)

### f. Mr. Pepper's statements proffered by the government are inaccurate, unreliable, and contradicted by the evidence presented at trial.

The government misleadingly omits Mr. Pepper's admissions during cross-examination that undermined his credibility and vitiated various statements that the government now seeks to admit. Mr. Pepper admitted that he had no recollection of any of the communications he was asked about, including the statements that the government now seeks to admit via Rule 801(d)(2)(E).[10] For instance, Mr. Pepper testified on direct that the only calls he could have had with Mr. Brady in August 2014 took place on August 15, 2014. (Mar. 3, 2022 Tr. 70:4-14; Mar. 7, 2022 Tr. 144:1-5, 153:8-11, 223:3-5, 223:9-15; *see also* Mar. 2, 2022 Tr. 256:5-9, 14-17.)  Mr. Pepper then admitted that he could not have had a telephone call with Mr. Brady regarding a "substantial price increase" on August 15, 2014, because the meeting precipitating the phone call took place on

---

[10] Mr. Pepper testified repeatedly that he had no recollection of telephone calls purportedly made to or received by him – not the time, date, duration of any alleged call, or the precise content of what was discussed. (*See, e.g.*, Mar. 2, 2022 Tr. 253:2-6, 256:4-17; Mar. 3, 2022 Tr. 42:14-24, 56:23-57:9, 58:12-15, 63:3-64:16, 66:22-24, 68:3-6, 70:4-14.)

August 19, 2014, and he had no other calls with Mr. Brady in August 2014. (Mar. 7, 2022 Tr. 206:15-207:11, 219:2-13, 221:20-22, 223:16-22, 225:8-22, 226:17-25.) In entries 130-S and 132-S, the government represents inaccurately that Mr. Pepper testified that he had such conversations "generally around August 2014".[11] It appears that the government seeks to sponsor testimony that it knows is wrong and utilize Rule 801(d)(2)(E) to circumvent Mr. Pepper's admissions that the call could not have occurred when the government argued at trial that it had occurred.

With respect to entries 130-S, 131-S, and 132-S—which concern some combination of Mr. Little, Mr. Blake, or Mr. Brady—the Court noted that the questions were so "vague that the witness -- I don't even think he knows exactly what's being asked…." (Mar. 2, 2022 Tr. 259:5-13.) The government kept asking Mr. Pepper about his "understanding." (*Id.* at 245:5-18 (130-S).) And as the Court later pointed out, "there was just absolutely no foundation or explanation laid for what Mr. Pepper was suggesting by an understanding, just what understanding, it wasn't clear what exactly what the understanding was, how it was derived, who it was between, any of those things so that's the real problem." (Mar. 3, 2022 Tr. 1:16-2:5, 4:11-21, 3:2-19.) This type of unreliable testimony is not an appropriate basis for a Rule 801(d)(2)(E) finding. Further, the testimony does not identify a specific declarant and does not evidence a statement "in furtherance of" a conspiracy.

Mr. Pepper's testimony regarding these alleged discussions with competitors about a "substantial price increase" in 2015 was just as unreliable—it amounted to vague rumors or comments that in no way manifested an agreement between Tyson's, Pilgrim's, or any other

---

[11] The log entries do not track to Mr. Pepper's direct testimony. Mr. Pepper testified that he had multiple conversations – "four or five" – with Mr. Brady in the "[b]eginning of August" 2014 and "towards the very end of them we were still talking about that specific contract and that Claxton was also going to agree to have a substantial pricing increase." (Mar. 2, 2022 Tr. 256:10-257:12). The documents expressly contradict Mr. Pepper's testimony on direct examination.

11

supplier's pricing to KFC. First, Mr. Pepper testified that he never shared Tyson's pricing, or even the range of pricing, with competitors. (Mar. 7, 2022 Tr. 132:10-21.) Second, he admitted that his discussions with competitors about the expected increase in price was "akin to shop talk or water cooler talk or rumors." (*Id.* at 140:14-24.) Third, he admitted that Tyson had determined its pricing *before* the RFP went out and testified that he was not involved in developing the pricing model. (Mar. 3, 2022 Tr. 205:6-207:19, 229:4-22, 242:25-243:21.) The government did not offer any evidence that Tyson's or any other supplier even considered these alleged conversations, much less used them as the basis for a price-fixing and bid-rigging conspiracy.

With respect to entry 135-S, Mr. Pepper's testimony cannot be admitted as evidence of Mr. Blake's alleged statement in furtherance of any conspiracy because other evidence establishes its inaccuracy. Mr. Pepper testified that he had asked Mr. Blake "what type of discount that they were looking for" and that Mr. Blake had said "it would be 2 cents a pound." (Mar. 3, 2022 Tr. 112:12-13, 20-21.) But the evidence overwhelmingly established that ***the customer***, Mr. Kronauge, raised the idea of a two-cent discount with the bidding suppliers. (*See* Mar. 7, 2022 Tr. 168:10-21; Mar. 21, 2022 Tr. 225:21-23; Mar. 22, 2022 Tr. 17:3-20; GX 609; DX E-471.)

In summary, the testimony of Messrs. Suerken, Bryant, and Pepper is inadmissible under Rule 801(d)(2)(E). The statements the government seeks to admit are inherently untrustworthy.

## II. The Government Cannot Recast Garden-Variety Invoices into Co-Conspirator Statements that Fall Within the Ambit of Rule 801(d)(2)(E).

The Court also should reject the government's attempt to admit seven Pilgrim's invoices pursuant to Rule 801(d)(2)(E). First, the government does not offer any explanation for its failure to include these documents on its initial *James* log or in its *James* motion prior to the second trial. (*Cf.* ECF No. 1050 at 6-7 (where the "government provides no information on why the[] entries

were not on the original *James* [log] besides that they were not on the government's exhibit list for the first trial," the entries cannot be added to the *James* log.)); (*see also* ECF No. 558 at 2 (order denying government motion for leave to add exhibits to *James* log).) The government's motion to admit these invoices should be denied on this basis alone.

Second, the government fails to establish that the invoices are a declarant's statements. The government identifies Pilgrim's as the declarant, but the Federal Rules define declarant as "the person who made the statement." Fed. R. Evid. 801(b). Courts routinely interpret this provision as requiring a human. *See, e.g., United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) ("Only a *person* may be a declarant and make a statement." (emphasis in original) (citing *United States v. Hamilton*, 413 F.3d 1138, 1142-43 (10th Cir. 2005)). The government cites no cases extending this provision to corporations, let alone a corporation with 58,000 employees. Moreover, the government fails to even address the likelihood that a computer generated these invoices. Computer-generated statements are not statements by a declarant under Rule 801. *Washington*, 498 F.3d at 231; *United States v. Little*, 2021 WL 4894626, at *2 n.3 (D. Colo. Oct. 20, 2021) (Brimmer, J.). Yet even if the government had identified a human author among Pilgrim's 58,000 employees, it has not explained how that author knowingly and intentionally joined the charged conspiracy or prepared the invoices in furtherance of the charged conspiracy.

Third, the invoices do not satisfy Rule 801(d)(2)(E)'s substantive requirements, in particular, that the proponent show by a preponderance of the evidence that the declarant is a co-conspirator[12] and that the declarant made the statement in furtherance of the charged conspiracy.

---

[12] The government relies on the Court's initial Rule 29 order, and not any finding from the *James* hearing or resulting motions, to argue that Pilgrim's is a co-conspirator.

13

*See Perez*, 989 F.2d at 1577. The government asserts that these invoices furthered the conspiracy because Pilgrim's issued them under GX 1126, its 2015 contract with KFC. (Gov't Mot. at 7-8.) The government points to no testimony, exhibits, or independent evidence corroborating that claim. Ipse dixit is not a substitute for independent evidence establishing a nexus between these invoices, GX 1126, and the charged conspiracy. In short, the government has not overcome the "significant obstacle" that the "in furtherance" requirement interposes between the proponent and the admission of hearsay statements under Rule 801(d)(2)(E). *See Rascon*, 8 F.3d at 1540.

Finally, the government cites no cases in which courts applied Rule 801(d)(2)(E) to admit invoices or other garden-variety business documents, and for good reason. District courts resist parties' efforts to turn Rule 801(d)(2)(E) into a catch-all exception to the rule against hearsay. *See, e.g., United States v. Avila*, 2017 WL 5989192, at *2 (D. Colo. Dec. 4, 2017).

### III. This Court Should Again Deny the Government's Request to Admit Entry 245, Which It Withdrew from the Initial *James* Log.

Ignoring that the Court denied the exact same request before the second trial, ECF No. 1050 at 10, the government moves to admit two exhibits that it withdrew from its initial *James* log. (Gov't Mot. at 5-7.) The Court previously determined that the two exhibits (GX 1890-91) from Entry 245 "were available to the government at the time of the *James* hearing" and that it would "not permit the government to add exhibits to the *James* log that were available to the government before the *James* hearing." (ECF No. 1050 at 10.) Nothing has changed, other than the government falsely suggesting that it "has not yet sought a ruling by the Court" on these exhibits. (Gov't Mot. at 6.)

## **CONCLUSION**

For the foregoing reasons, the Court should deny the government's motion to admit the purported "statements" and reconsider the Court's prior rulings.

Respectfully submitted this 3rd day of May 2022,

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.
MOORE & VAN ALLEN PLLC
Attorney for William Wade Lovette
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-3622
johnfagg@mvalaw.com

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, P.C.
Attorney for Mikell Reeve Fries
1600 Stout Street, Suite 1400
Denver, CO 80202
(303) 573-1900
rick@rklawpc.com

*s/ Bryan Lavine*
Bryan Lavine
TROUTMAN PEPPER HAMILTON SANDERS LLP
Attorney for Scott James Brady
600 Peachtree St. NE, Suite 3000
Atlanta, GA 30308
(404) 885-3170
bryan.lavine@troutman.com

*s/ Michael F. Tubach*
Michael F. Tubach
O'MELVENY & MYERS LLP
Attorney for Jayson Jeffrey Penn
Two Embarcadero Center, 28th Floor
San Francisco, California 94111-3823
(415) 984-8700
mtubach@omm.com

*s/ Michael S. Feldberg*
Michael S. Feldberg
REICHMAN JORGENSEN LEHMAN & FELDBERG LLP
Attorney for Roger Born Austin
750 Third Avenue, Suite 2400
New York, NY 10017
(212) 381-1965
mfeldberg@reichmanjorgensen.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all listed parties.

*s/ John A. Fagg, Jr.*
John A. Fagg, Jr.