## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**1. JAYSON JEFFREY PENN,**
**2. MIKELL REEVE FRIES,**
**3. SCOTT JAMES BRADY,**
**4. ROGER BORN AUSTIN,**
**5. WILLIAM WADE LOVETTE,**

      Defendants.

---

## UNITED STATES' MOTION FOR REVISIONS TO JURY INSTRUCTION NO. 26 AND TO PRECLUDE DEFENSE-THEORIES INSTRUCTIONS

---

The government respectfully proposes modifications to jury instruction 26, instructing the jury on the statute of limitations.  The government's proposed modifications, shown in Attachment A, are intended to clarify points of law about which the jury in the February 2022 trial expressed significant confusion, specifically (1) who needs to act within the limitations period and (2) what constitutes a qualifying act within the limitations period.  The government also respectfully requests the removal of the Defendants' theory-of-defense instructions, which the jury could mistakenly believe the Court endorses.  If defense-theory instructions for this trial are similar to those given in the first two trials, these instructions would be inappropriate under Tenth Circuit precedent because they are merely argument or summaries of the evidence in the light

most favorable to the Defendants.  The government also respectfully requests the preclusion of any inaccurate or misleading statements of law from these defense-theories instructions.[1]

The government reserves the right to propose additional changes or new instructions depending on developments in trial.[2]

## I.   The Statute-of-Limitations Instruction Merits Clarification.

The jury in the second trial sent three notes to the Court regarding Instruction No. 26, which describes requirements related to the statute of limitations.  The juror notes expressed significant confusion as to (1) *who* must commit an act within the limitations period and (2) *what* that act may be.  Specifically, Jury Note #1 sought "Clarification on instruction #26" and asked, "[By] 'performed' some act, does that include signing of contracts prior to 2015?"  (Docket No. 1234 at 1.)  Jury Note #2, issued on the same day, asked: "What date range does jury instruction #26 exclude from our consideration of evidence due to statue [sic] of limitations? * Please 'dumb down' response for us + elaborate! :)"  (*Id.* at 2.)  Jury Note #3 asked: "if evidence shows actions of collusion for <u>individual</u> occurred in 2014, but no future evidence within statue [sic] of limitations—then does that warent [sic] a 'not guilty' verdict for <u>that individual</u>?" (emphases added).  (*Id.* at 4.)

To address the confusion apparent in jury questions #2-3, the Court responded in

---

[1] The government requests no other modifications to the verdict form beyond the changes necessary to account for the dismissal of five Defendants.
[2] This includes the right to request an instruction on venue—consistent with the Court's decision in the second charge conference—should the Defendants not stipulate.

pertinent part:

> "The dates in Instruction No. 26 relate to . . . the statute of limitations.  A statute of limitations is a law providing that a conviction is barred if the government does not file charges within a prescribed time period.  As noted in Instruction No. 26, the statute of limitations for Section 1 of the Sherman Act is five years . . .
>
> [F]or purposes of the statute of limitations, it is not necessary that the government prove that each defendant performed some act in furtherance of the conspiracy after one of those dates.  As Instruction No. 26 states, to prove that the conspiracy existed within the statute of limitations, the government must prove beyond a reasonable doubt that one or more members of the conspiracy performed some act after the applicable date in furtherance of the conspiracy."

(*Id.* at 3, 5.)  The government's proposed modifications address both of these issues.

Act of Coconspirator Sufficient. As the Court acknowledged (5/25/2022 R. Tr. at 19:21-20:6, 23:24-24:4[3]) and as the government described in its prior briefing on this topic (Docket No. 1224), the jurors' emphases on the actions of a particular "individual" revealed clear confusion about who needs to commit an act within the limitations period. (*See* Jury Note #3.)  Juror confusion on this topic is inevitable in the third trial unless the instruction is revised.  The current phrasing tells the jurors the government must prove a member of the conspiracy "performed some act after June 2015 *as to Mr. Penn, Mr. Fries, Mr. Brady, or Mr. Austin* or after October 2015 *as to . . . Mr. Lovette* . . . in furtherance of the conspiracy."  Instruction No. 26 (emphases added).  This phrasing, which applies different time periods "as to" each person based on when he was

---

[3] Citations are to the real-time transcript as the certified versions are not yet available. The government defers to the Court's recollection, should it differ from what is reflected.

indicted, leads the jury to believe that each defendant must "perform[] some act" after the specified period.

But this is not the case—an act by any member of the conspiracy can satisfy this requirement, based on clear Supreme Court and Tenth Circuit precedent, as well as prior rulings by this Court.  (Docket No. 553 at 12 (Order on Defendants' Motions to Dismiss); R. Tr. Mar. 25, 2022 at 15:6-12 (The Court: "The statute of limitations is not focused on each individual defendant.")); *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1271 (10th Cir. 2018); *United States v. Evans & Associates Constr. Co.*, 839 F.2d 656, 661 (10th Cir. 1988); *United States v. Barton*, No. CRIM. C3-91-113, 1992 WL 133111, at *1 (D.N.D. Feb. 14, 1992).  *See also Smith v. United States*, 568 U.S. 106, 111 (2013) (explaining "conspiracy is a continuing offense"); *United States v. Fishman*, 645 F.3d 1175, 1191 (10th Cir. 2011).

The government's proposed revisions, as reflected in Attachment A, ameliorates the confusing phrasing.  The changes make clear that the relevant question is whether the *conspiracy* existed within the limitations period for each Defendant, and that a Defendant need not personally commit an act within the limitations period.  The government's proposed revisions are especially important if defense instructions continue incorrectly to suggest that the government must show a particular Defendant committed a qualifying act.  Although it is black-letter law that any particular defendant need not perform an action within the limitations period, defense counsel suggested during closing statements and in their theories of the defense instructions in the February 2022 trial that the government needed to "allege[], []or prove[], that within the

4

five year statute of limitations," a defendant "discussed pricing with anyone outside of his own coworkers, directed anyone else to share pricing information, or agreed with anyone to share pricing information."  (Instruction No. 34 (Fries' theory of the defense).)[4]  Absent the revisions, the same confusion that arose in the last trial is sure to arise again.

A Qualifying Act Includes Payment.  Instruction No. 26 instructs the jury that they must find a member of the conspiracy "performed some act" within the limitations period, but gives no guidance as to what acts qualify.  Jury Note #1 highlights the need for this guidance.  The government's proposed addition, as reflected in Attachment A, clarifies for the jury a clear source of confusion evidenced by Jury Note #1, which asks whether "'performed' some act" includes "signing of contracts." (ECF No. 1234 at 1.)

Because the "performance" of an act unduly suggests that a "passive" act would not qualify, the jury should be instructed what acts can show a continuing conspiracy— especially in a Sherman Act case, where the government does not need to prove any overt acts.  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. at 224-25 n. 59 (1940) ("no overt act" necessary under Sherman Act Section 1).  It is well established that a coconspirator's receipt of payment on contracts rigged or fixed as part of the conspiracy is sufficient for purposes of the statute of limitations.  *United States v. Evans & Assocs. Const. Co.*, 839 F.2d 656, 661 (10th Cir.), on reh'g, 857 F.2d 720 (10th Cir. 1988)

---

[4] Indeed, a coconspirator does not need to commit any overt act at all.  *Salinas v. United States*, 522 U.S. 52, 64 (1997) ("To require an overt act to be proven against every member of the conspiracy, or a distinct act connecting him with the combination to be alleged, would not only be an innovation upon established principles, but would render most prosecutions for the offence nugatory.").

(finding both "the submission of noncompetitive bids *and* . . . receipt of payments at anti-competitive levels" sufficient for delaying the start of the statute of limitations) (quoting *United States v. Northern Improvement Company*, 814 F.2d 540, 543 n.2 (8th Cir. 1987)).  It is also not required for the coconspirator to be a named defendant in the case.  *Kemp*, 907 F.3d at 1271 ("[T]he alleged conspiracy continue[d] here so long as *the co-conspirators* were receiving and distributing contingency fees among the conspirators on the allocated estates.") (emphasis added).

Moreover, out of an abundance of caution, the government has requested in its motion to supplement the James log that the Court make a Rule 104 preliminary finding that Pilgrim's Pride is a coconspirator.  That finding would make Pilgrim's acceptance of payments a clear act in furtherance of the conspiracy. ECF 1272 at 8-9.

## II.    Defense Theories of the Case Instructions Are Inappropriate and Must Be Accurate Statements of the Law.

In the first two trials, the jury received a set of instructions, labeled "defendants' theories or statements of their defense."  In the first trial, the defendants' theory-of-defense instructions were submitted directly to the Court for review.  *See* C. Tr. Dec. 7, 2021 at 4738:25-4743:10.  In the second trial, the government objected to these defense instructions, but the Court ruled that an additional instruction added before the defense-theory instructions—explaining "[t]he next ten instructions are each defendants' theories or statements of their defense"—would be sufficient to assuage the government's concerns.  R. Tr. Mar. 22 at 157:3:11.  However, when the government clarified in rebuttal in the second trial that the Defendants' theories of the case "are not

coming from the Court," counsel for defendant Fries objected in front of the jury that

"Those are coming from the court." R. Tr. Mar. 24 at 42:4-5.  Due to such

representations and the framing of the defense instructions themselves, there is

immense risk that the jury may believe the instructions carry the weight of the Court.

The government therefore objects to including defense theory-of-the-case instructions in

this third trial—especially if the defendants' proposed instructions take a form similar to

the prior defense-theory instructions.

Although a defendant is allowed a theory-of-defense instruction if it is supported

by the evidence and the law, *United States v. Williams,* 403 F.3d 1188, 1195 (10th Cir.

2005), the Tenth Circuit has repeatedly held such instructions inappropriate if they

contain argument or if they merely summarize the evidence in a light favorable to the

defense.  *See, e.g.*, *United States v. Schuler,* 458 F.3d 1148, 1156 (10th Cir.

2006); *United States v. Johnston,* 146 F.3d 785, 792-93 (10th Cir. 1998); *United States

v. Davis,* 953 F.2d 1482, 1492 (10th Cir. 1992).  The Defendants' instructions in the

prior trials suffer from both of these flaws, and the admission of similar instructions in

this trial would be contrary to Tenth Circuit precedent and the instructions of this Court.

C. Tr. Dec. 7, 2021 4739:22-24, 4740:23-4741:2 ("[T]o the extent that a theory of

defense instruction is starting to get into the reiteration of evidence, that's appropriate

for closings . . . [The instructions are] not the defendant's closing argument or summary

of the closing argument.").

In the last trial, for example, each of the Defendants' theory-of-the-defense

instructions was almost entirely argument or favorable summaries. *See, e.g.*:

- **Instruction No. 33**: "He contends that price increases and decreases during the time period at issue were caused by the ordinary market forces of supply and demand. . . . Mr. Penn further contends that not a single witness, not even the government's purported "insiders," testified that Mr. Penn (i) agreed to rig bids and fix prices, (ii) instructed anyone else to do so, or (iii) was even aware of others engaging in such conduct."

- **Instruction No. 34**: "Claxton Poultry's actions were the result of independent decision making in the best interests of Claxton Poultry, and not the result of an illegal agreement to fix prices and rig bids. . . . [T]he source of [defendant Fries'] knowledge was interactions with other customers, distribution centers, other suppliers, and the buyers themselves."

- **Instruction No. 35**: "The evidence shows that Mr. Brady, at the direction of Claxton, competed against other suppliers on pricing to obtain additional volume. . . . The government failed to prove beyond a reasonable doubt that Mr. Brady's communications were in furtherance of any conspiracy or agreement to fix prices and rig bids, rather than ordinary and lawful exchanges of information incident to legitimate personal or business activities."

- **Instruction No. 36**: "Mr. Austin had many reasons to communicate with other suppliers, and to the extent he communicated with other suppliers about pricing it was because Pilgrim's wanted as much information as possible so it could compete, not collude. . . . The evidence has shown that Mr. Austin did not have authority to determine Pilgrim's prices and that he frequently advocated for lower prices for his customer, KFC."

- **Instruction No. 40**: "Mr. Lovette maintains his actions and decisions were never in furtherance of or the result of an agreement among competitors to rig bids and fix prices for broiler chicken products—a charged agreement he contends never existed and that the government did not prove. . . . Mr. Lovette asserts that Robert Bryant, a Pilgrim's employee and one of only two government witnesses who claim to have knowledge about the charged agreement, testified that he had no basis to believe Mr. Lovette was aware of the alleged conspiracy much less any basis to believe Mr. Lovette ever agreed with any competitor to fix prices and rig bids or ever instructed anyone to do so."

These are precisely the kinds of instructions the Tenth Circuit has rejected in the past—*i.e.*, arguments and factual summaries masquerading as a defendant's "theory of defense."  Examples of rejected theory-of-the-defense instructions include:

- *United States v. Davis*, 953 F.2d 1482, 1492 (10th Cir. 1992): Rejecting the following defendant's proposed instruction because "[t]hese summaries" merely "marshal facts supporting [defendant's] version of the events": "Mr. Davis did not enter into an agreement with Dan Burke, John Edmiston or anyone else to commit criminal acts. While the government claims that he conspired to control three banks, the evidence clearly showed that Mr. Davis was attempting to sell his interest as required by government regulators."
- *United States v. Schuler*, 458 F.3d 1148, 1156 (10th Cir. 2006): Rejecting the following proposed instruction as "inappropriate" because it is "nothing more than a recapitulation of the evidence in the light most favorable to [defendant]": "[T]he government cannot use the move of Ms. Schuler's business to Wyoming as evidence of guilty knowledge, if that move to Wyoming could be motivated by an innocent or legitimate purpose[.]"
- *United States v. Johnston*, 146 F.3d 785, 792–93 (10th Cir. 1998): Rejecting the following proposed instruction as inappropriate because it "merely states why the defendant believes he is not guilty and that the government did not prove its case": "Defendant ... contends that he is not guilty of the crimes charged because the government has failed to prove that the defendant and any other person arrived at any form of agreement to distribute marijuana."

The defense-theory instructions previously given in this case largely mirror the instructions already rejected by the Tenth Circuit.  If the Defendants' instructions for this trial again merely reiterate the Defendants' interpretation of the evidence and present the defense theories in factual terms, the Court should reject any proposed defense-theory instructions.  Permitting the jury to receive these instructions risks juror confusion

9

and "put[s] the court's imprimatur on [the defendants'] interpretation of the evidence." *United States v. Chadwick*, 554 F. App'x 721, 724 (10th Cir. 2014) (*citing United States v. Grissom,* 44 F.3d 1507, 1513 (10th Cir.1995)); *see also United States v. Davis,* 953 F.2d 1482, 1492 (10th Cir.1992) ("[S]ummaries of the evidence in the light most favorable to the defense ... [are] more appropriate for closing argument."); *United States v. Barham,* 595 F.2d 231, 244 (5th Cir.1979) (finding a theory of defense instruction properly refused as it "was essentially a recounting of the facts as seen through the rose-colored glasses of the defense....").

These risks are not sufficiently cured by the inclusion of Instruction No. 32, a separate instruction which states only the instructions were submitted by the defendants.  The jury may still believe the instructions carry the weight of the Court, in part because of defendants' own representations.    *See* R. Tr. Mar. 24 at 42:4-5.

Moreover, some of the theory of defense instructions contain *inaccurate* statements of the law.  For example, Defendant Fries' theory of defense instruction implies the government needed to show each Defendant personally committed an offense within the limitations period.  *See* Instruction No. 34 ("Further, the government has not alleged, nor proven, that within the five year statute of limitations, Mr. Fries discussed pricing with anyone outside of his own coworkers, directed anyone else to share pricing information, or agreed with anyone to share pricing information").  But this is incorrect, as described above.  Inclusion of such instruction stands to increase juror confusion and is inappropriate under Tenth Circuit precedent.

The government therefore requests that any defense theories of the case be

excluded.  If the Court is inclined not to grant this relief, the government respectfully

asks that the Court order the defendants to submit instructions that do not include (1)

argument or summary of evidence in the light most favorable to the defendant, and (2)

any incorrect or misleading statements of law. In the alternative, the government

requests that the Court amend Instruction No. 32 to add the portion in bold: "The next

five instructions are each defendants' theories or statements of their defense.  These

instructions were submitted by each individual defendant **and were not written by the**

**Court.**"

*        *        *

For the foregoing reasons, the government respectfully requests the Court

amend the Statute of Limitations instruction and exclude theory-of-defense instructions.

Dated: May 23, 2022                  Respectfully submitted,

*/s/ Yixi (Cecilia) Cheng*
YIXI (CECILIA) CHENG
KEVIN B. HART
LESLIE A. WULFF
PAUL J. TORZILLI
DANIEL A. LOVELAND Jr.
Antitrust Division
U.S. Department of Justice
Washington D.C. 20530
Tel: (202) 705-8342
Email: yixi.cheng@usdoj.gov
*Attorneys for the United States*